**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X

Towaki Komatsu,                                          **COMPLAINT**

          Plaintiff,

                                         **JURY DEMAND**

       -vs-

The City of New York, Shauna Stribula, Harold Miller, Jane Doe1
10/12/17, NYPD Detective Nicholas Mason (shield #: 6995), NYPD
Officer Lance (shield #: 245), NYPD Officer Ranieri (shield #: 24361),
NYPD Officer Suzuki (shield #: 7373), NYPD Officer John Doe1
10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John
Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer
John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD
Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17,
NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4
10/12/17, Marco Carrion, Jessica Ramos, Bill de Blasio, James
O'Neill, Cyrus Vance, Jr., Lawrence Byrne, Jr.


- All of the defendants listed above who are people are being sued in
  their individual and official capacities,

                       Defendants.
-------------------------------------------------------- X

# TABLE OF CONTENTS

I.    Preliminary Remarks ..................................................................................................... 3

II.   Jurisdiction ................................................................................................................... 20

III.  Parties ........................................................................................................................... 21

IV.   Background Facts .......................................................................................................... 52

V.    Legal Standards ............................................................................................................ 53

VI.   Statement of Facts ........................................................................................................ 58

      A.  My objectives for attending public forums that the Mayor conducted ................... 60

      B.  Facts about the Mayor's 10/12/17 town hall ........................................................... 67

VII.  Causes of Action .......................................................................................................... 85

VIII. Jury Demand ................................................................................................................. 95

IX.   Prayer for Relief ........................................................................................................... 95

Plaintiff Towaki Komatsu (hereinafter referred to in the first-person as "I", "me", and "my"), proceeding pro se in this action, does hereby state and allege all that follows in this pleading.

## PRELIMINARY REMARKS

1.     The following applies throughout this complaint in the interests of brevity:

a.     Acronyms and aliases in the second column of the following table will be used throughout this pleading instead of the entries in the third column to which they correspond:

| # | Abbreviation | Corresponds To |
|---|---|---|
| 1 | Bronx DA | Bronx District Attorney's office |
| 2 | CCRB | New York City Civilian Complaint Review Board |
| 3 | City Council | New York City Council |
| 4 | City Hall email excerpts | Excerpts from a 374-page PDF file that I was provided on 2/15/19 by the New York City Mayor's office in response to a Freedom of Information Law demand that I submitted to it. Those excerpts correspond to e-mail messages that appear on pages 211 212, and 361 thru 374 in that file. Information shown on those pages was provided to me with redactions. Copies of e-mail messages about me that were sent 4/10/17, 6/28/17, and 6/29/17 appear on those pages. Those e-mail messages partly concern litigation that I commenced against the New York City Human Resources Administration ("HRA") in which I was then involved that are closely related to my claims in this action. Senior members of the New York City Mayor's administration and the head of the Mayor's NYPD security detail (Defendant Redmond) sent those e-mail messages to HRA Commissioner Steven Banks and amongst themselves. Those excerpts are available in a PDF file that is available on the Internet at https://drive.google.com/file/d/16wSpJ7kk-aOtx7Bkg8MeqUpyWd5Io2hR/view?usp=sharing |
| 5 | Defendant City | Defendant City of New York |
| 6 | DHS | New York City Department of Homeless Services |
| 7 | DOE | New York City Department of Education |
| 8 | DOI | New York City Department of Investigations |
| 9 | DOJ | U.S. Department of Justice |
| 10 | DSS | New York City Department of Social Services |

| 11 | FOIL | Freedom of Information Law |
|---|---|---|
| 12 | FRCP | Federal Rule of Civil Procedure |
| 13 | HRA | New York City Human Resources Administration |
| 14 | IAB | The NYPD's Internal Affairs Bureau |
| 15 | K1 | The related federal lawsuit that I commenced against the City of New York, Defendant Nieves, and others in April of 2018 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 18-cv-3698 (LGS)(GWG)(S.D.N.Y.) that my claims in this case relate back to and amplify. The judges in that case refused to grant me sufficient time to file a further amended complaint in that case that would have otherwise enabled me to assert my claims in that case instead of in this case. In fact, Judge Lorna Schofield explicitly directed me to instead commence a new civil action for additional claims that I sought to assert in that case. |
| 16 | K2 | The related federal lawsuit that I commenced against the City of New York, Mr. Banks, and others on 8/14/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 18-cv-6510(LLS)(S.D.N.Y.) that my claims in this case relate back to and amplify. |
| 17 | K3 | The related federal lawsuit that I commenced against the City of New York, Defendant Nieves, Hansen, and others on 8/29/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 18-cv-7046 (ER)(S.D.N.Y.) that my claims in this case relate back to and amplify. |
| 18 | K4 | The related federal lawsuit that I commenced against the City of New York as well as Defendants, Mason, Nieves, and others on 9/13/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 18-cv-7502(S.D.N.Y.) that my claims in this case relate back to and amplify. |
| 19 | K5 | The related federal lawsuit that I commenced against the City of New York as well as Defendants, Mason, Nieves, and others on 9/25/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 18-cv-8004(S.D.N.Y.) that my claims in this case relate back to and amplify. |
| 20 | K6 | The related federal lawsuit that I commenced against the City of New York as well as Defendants, Mason, Nieves, and others on 10/5/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 18-cv-8251(ER)(S.D.N.Y.) that my claims in this case relate back to and amplify. |
| 21 | The Mayor | New York City Mayor Bill de Blasio |

| | | |
|---|---|---|
| 22 | Mayor's 4/27/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, New York City Councilman Jimmy Van Bramer, and other government officials as a mostly traditional public forum on 4/27/17 in Long Island City in Queens that was subject to New York State's Open Meetings Law and was used a campaign event to support the Mayor's re-election interests that I was illegally barred from attending while I had active litigation against HRA. |
| 23 | Mayor's 5/23/17 resource fair | The public resource fair meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, and other government officials as a mostly traditional public forum on 5/23/17 inside of the Bronx Supreme Court. That public forum was subject to New York State's Open Meetings Law and I was illegally barred from attending it while I had active litigation against HRA that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted. |
| 24 | Mayor's 9/8/17 public hearing | The public hearing that the Mayor conducted on 9/8/17 at 2 pm in the Blue Room in City Hall that partly concerned proposed legislation about reforming the NYPD as I was illegally prevented from attending that hearing. That public forum was subject to New York State's Open Meetings Law and I was illegally barred from attending it while I had active litigation against HRA that included claims about being illegally barred from public forums that the Mayor conducted. |
| 25 | Mayor's 9/14/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, New York City Councilman Chaim Deutsch, and other government officials as a mostly traditional public forum on 9/14/17 at 2525 Haring Street in Brooklyn. That public forum was subject to New York State's Open Meetings Law and I was illegally barred from attending it from within the room in which it was conducted while I had active litigation against HRA that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted. |

| 26 | Mayor's 9/26/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, former New York City Councilman Dan Garodnick, and other government officials as a mostly traditional public forum on 9/26/17 at 245 East 56th Street in Manhattan. That public forum was subject to New York State's Open Meetings Law and I was illegally barred from attending it from within the room in which it was conducted while I had active litigation against HRA that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted. |
|----|---------------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 27 | Mayor's 9/27/17 resource fair | The public resource fair meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, and other government officials as a mostly traditional public forum on 9/27/17 at 3940 Broadway in Manhattan. That public forum was subject to New York State's Open Meetings Law and I was illegally barred from attending it while I had active litigation against HRA that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted. |
| 28 | Mayor's 9/28/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, former New York City Councilwoman Melissa Mark-Viverito, and other government officials as a mostly traditional public forum on 9/28/17 at 1833 Lexington Avenue in Manhattan. That public forum was subject to New York State's Open Meetings Law and I was illegally barred from attending it while I had active litigation against HRA that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted. |

| 29 | Mayor's 10/4/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, New York City Councilman Ritchie Torres, and other government officials as a mostly traditional public forum on 10/4/17 at 2452 Washington Avenue in the Bronx. That public forum was subject to New York State's Open Meetings Law. I was illegally barred from attending that public forum: |
|---|---|---|
| | | **a)** While I had active litigation against HRA that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted, |
| | | **b)** Just 1 day after Defendants Mason and Hansen illegally prevented me from attending a public press conference in front of City Hall that concerned reforming the NYPD. |
| | | **c)** Just 1 day after both Manhattan District Attorney Cyrus Vance, Jr. and Lawrence Byrne, Jr. informed me during a meeting that was conducted at the New York City Bar Association that was partly recorded on audio that they would willfully violate their Fourteenth Amendment affirmative legal duty as law-enforcement officials to intervene on my behalf to uphold my constitutional rights by refusing to do their jobs as I apprised them of crimes that members of the NYPD were committing against me at public forums that the Mayor was conducting and they told me then that they would not do anything about that. |
| | | **d)** Just 2 days after I testified to New York City Councilman Eric Ulrich and others during the public hearing that the City Council's Committee on Veterans conducted in City Hall partly about being illegally barred from public forums that the Mayor conducted. |

| 30 | Mayor's 10/12/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, former New York City Councilwoman Rosie Mendez, and other government officials as a mostly traditional public forum on 10/12/17 in a school located at 442 E Houston Street in Manhattan. That school is controlled by the New York City Department of Education. That public forum was subject to New York State's Open Meetings Law. I was illegally barred from attending that public forum by Defendant Stribula and others:<br><br>**a)** While I continued to have active litigation against HRA that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted,<br><br>**b)** While I was engaged in protected activity on 10/12/17 partly by distributing literature containing whistleblowing information against the Mayor's administration and NYPD security detail that I prepared to members of the public as I waited in line with them to attend that town hall before I was illegally coerced by Defendant Stribula to leave that line as she then threatened me by telling me that she would arrange for Defendant Redmond to coerce me to leave that line if I didn't immediately exit it.<br><br>**c)** While Defendant Stribula flat out lied to my face by claiming that I had turned down offers of legal assistance that she claimed I had received as a result of referrals that I received to legal services organizations. Contrary to her deceit, I never received any offers that to be provided legal assistance.<br><br>**d)** Just 8 days after Defendant Mason and others illegally prevented me from attending the Mayor's 10/4/17 town hall. |
| --- | --- | --- |
| 31 | Mayor's 10/12/17 town hall video | The video recording that the Mayor's office arranged to be recorded of the Mayor's 10/12/17 town hall. That video is available on the Internet at https://www.youtube.com/watch?v=seUP48e0KUY |

| 32 | Mayor's 10/18/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, New York City Councilwoman Stephen Levin, and other government officials as a mostly traditional public forum on 10/18/17 at 180 Remsen Street in Brooklyn. That public forum was subject to New York State's Open Meetings Law. I was illegally barred from attending that public forum by Defendants Ringel, Atcheson, Stribula and others:

**a)** While I continued to have active litigation against HRA that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted. Prior to trying to attend the Mayor's 10/18/17 town hall, I submitted an application to the New York State Supreme Court's Appellate Division's First Department on that date to be granted immediate interim relief. Among the relief that I requested through that application was the immediate issuance of an order by that court that would compel the City of New York to cause its personnel to stop illegally interfering with my constitutional rights to attend public forums that the Mayor conducted. Prior to denying that application on that date, I talked with Judge Richard T. Andrias in the clerk's office of that courthouse on that date. He told me then that he wasn't sure if his court could possibly grant me the relief that I sought through that application and suggested that I might want to try commencing a federal lawsuit instead for that relief. He also then directed personnel who worked in that office to telephone the New York City Corporation Counsel to discuss my application. I have no knowledge about whether such a telephone call was made. The primary reason why Judge Andrias denied my application for interim relief about public forums that the Mayor had been conducting was because no written notice was ever issued to me that informed me that I was barred from them or that my attendance in regards to them would otherwise be restricted.

**b)** Just 1 day before an attorney for HRA named Jeffrey Mosczyc filed an affirmation in my ongoing HRA lawsuit in which he committed perjury.

**c)** Just 1 day before I participated in a 50-h hearing against Defendant Redmond. |

| 33 | Mayor's 10/18/17 town hall video | The video recording that the Mayor's office arranged to be recorded of the Mayor's 10/12/17 town hall. That video is available on the Internet at https://www.youtube.com/watch?v=QJ9MnU8so4E. |
|---|---|---|
| 34 | Mayor's 10/25/17 resource fair | The public resource meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, and other government officials as a traditional public forum on 10/25/17 at Brooklyn College that is located at 2705 Campus Road in Brooklyn. That public forum was subject to New York State's Open Meetings Law. I was illegally barred from attending that public forum by Defendants Redmond, Nieves, Baez, Gerola, and others:<br><br>**a)** While I continued to have active litigation against HRA |
| 35 | Mayor's 3/18/19 public hearing | The public hearing that the Mayor conducted at 4:30 pm on 3/18/19 in the Blue Room inside of City Hall for which the Mayor's Office issued public's notice on the Internet that is available at https://a856-cityrecord.nyc.gov/RequestDetail/20190307108 and confirmed that the agenda for that hearing partly concerned labor rights. |
| 36 | Mayor's 3/18/19 public hearing video | The video recording that the Mayor's office arranged to be recorded of the Mayor's 3/19/17 town hall. That video is available on the Internet at https://www.youtube.com/watch?v=rqwyR7ZD23M. |
| 37 | Mayor's CAU | The Mayor's Community Affairs Unit |
| 38 | Mr. Banks | HRA Commissioner Steven Banks |
| 39 | My HRA lawsuit | The hybrid lawsuit that I commenced against HRA in January of 2017 that corresponds to *Komatsu v. New York City Human Resources Administration*, No. 100054/2017 (Sup. Ct., New York Cty.) and is being appealed. I asserted claims in that case that my claims in this case relate back to and amplify. Prior to 6/8/17, I asserted claims in that case that concerned illegal acts and omissions that were committed against me by defendants in this action that caused me to have been illegally barred from attending both the Mayor's 4/27/17 town hall and the Mayor's 5/23/17 public resource fair meeting. |
| 40 | NTT Data, Inc. | NTT |
| 41 | NYAG | New York State Attorney General's Office |
| 42 | OCA | New York State Office of Court Administration |
| 43 | OTDA | The New York State Office of Temporary and Disability Assistance |
| 44 | Second Circuit | United States Court of Appeals for the Second Circuit |

| 45 | Urban | Urban Pathways, Inc. It is the slumlord for the building in which I reside. |
|----|-------|------------------------------------------------------------------------------|

2.      In response to a FOIL demand that I submitted to the NYPD on 3/18/19, it provided me with a set of video recordings that were recorded by video security cameras that it controls that are installed in the immediate vicinity of City Hall that were recorded on 3/18/19 as it also illegally didn't provide me additional video recordings that were recorded on that date by additional video security cameras that it controls that are located in that same area that it was required to provide to me pursuant to FOIL and my First Amendment rights. Among the video recordings that the NYPD provided to me in response to that FOIL demand to which the NYPD assigned the FOIL identification code of "FOIL-2019-056-04374" were two significant video recordings about which the following fact apply:

      a.      One of those video recordings is a file that I have renamed as "View of Park Row entrance to City Hall on 3-18-19_7.26183 - Park Row ES 1 North of Spruce St (City Hall) Cam-2 (26116).mp4". The following additional relevant facts apply about that video:

         i.It is hereinafter referred to in this complaint as "NYPD 3/18/19 video2".

         ii.It shows a wide view of the area by the entrance to City Hall that is located by Park Row.

         iii.A copy of it is available on the Internet at

           https://drive.google.com/open?id=1IKBHpLvN7zSX6RLwaBiQ5G6a1JKokErR.

         iv.That video is 1 hour and 4 seconds long.

         v.That video was recorded at some point between 4:10 pm and 5:30 pm on 3/18/19.

         vi.Defendant NYPD John Doe5 3/18/19 appears in it at the elapsed time of 56 minutes and 54 seconds. The next screenshot is from that video and corresponds

to that elapsed time. Defendant NYPD John Doe5 3/18/19 is the person who appears on the far-left in it. I appear in that screenshot on the right and was then wearing a white sweater, blue jeans, and a black backpack.



b.  The other video recording is a file that I have renamed as "Aerial view of entrance to City Hall from Park Row on 3-18-19_7.26183 - Park RowCITYHALL-C114-EXT-City Hall Plaza PTZ (26118).mp4". The following additional relevant facts apply about that video:

     i.It is hereinafter referred to in this complaint as "NYPD 3/18/19 video1".

    ii.It shows an aerial view of the area of City Hall that is located of the front of City Hall.

    iii.A copy of it is available on the Internet at

        https://drive.google.com/open?id=1rTBOcU2txrQwI23vkaB2lRK90H8dsv1j.

    iv.That video is 1 hour long.

     v.That video was recorded at some point between 4:10 pm and 5:30 pm on 3/18/19.

    vi.Defendant Gungor and I appear in it at the elapsed time of 54 minutes and 17

seconds as he escorted me out of City Hall's building through its main entrance.

3.    The next screenshot is from a video recording that was recorded on 4/8/19 that the NYPD provided to me in response to a timely FOIL demand that I submitted to it. That video was recorded by a video security camera that the NYPD controls from which the NYPD illegally didn't provide me any video recording that was recorded on 3/18/19. I appear in this screenshot as I stood near City Hall's entrance by Park Row as I wore a gray sweatshirt, blue jeans, a black backpack. The Mayor also appears in it near a SUV vehicle that was parked on City Hall's grounds as he stood in front of that SUV.



4.    Defendant NYPD John Doe1 3/18/19 is clearly shown at the elapsed time of 17 minutes and 29 seconds in the video recording that the Mayor's Office arranged to be recorded of the Mayor's 3/18/19 4:30 pm public hearing.

5.    Every reference that I make in this pleading that concerns my efforts to have attended the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, and **c)** 10/25/17 resource fair concern those that I made to lawfully attend them from within the room in which the Mayor, Mr. Banks, and/or other government officials jointly conducted them as they were conducted, shortly before they began, and shortly after they ended.

6.     Every reference that I make in this pleading that concerns my efforts to have attended the Mayor's 3/18/19 public hearing concern those that I made to lawfully attend and testify in it in accordance with the entire array of my constitutional rights and all other applicable laws without illegal interference from anyone and certainly without being illegally seized while doing so.

7.     References to HRA, DHS, and DSS will be used interchangeably in this pleading for simplicity.

8.     The **<u>Exhibit A</u>** that is annexed to this complaint is comprised of public notices that the City of New York issued on the Internet for the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, and **c)** 10/25/17 resource fair. Those notices contain the following details:

   a.     When and where those public forums would be conducted.

   b.     How those who sought to attend those public forums could register in advance to do so.

   c.     When the doors would open for those public forums on the dates when they were conducted.

   d.     The identities of some of the government officials and government agencies with which the Mayor conducted those meetings as mostly traditional public forums.

   e.     The identities of various groups that helped to sponsor those public forums.

9.     At 10:40 am on 10/11/17, a Twitter posting was posted on the Internet at https://twitter.com/RosieMendez/status/918124076358668289 by a Twitter account that is registered to former New York City Councilwoman Rosie Mendez. That Twitter account has the username of "@RosieMendez". Ms. Mendez was the moderator of the Mayor's 10/12/17 town hall. That Twitter posting included the following pertinent remark about attending the Mayor's 10/12/17 town hall as well as images that were public notices about the Mayor's 10/12/17 town

hall:

"Deadline to rsvp for Thursday's townhall has been extended to Thursday at 12pm"

10.     At 6:25 pm on 10/18/17, a Twitter posting was posted on the Internet at

https://twitter.com/StephenLevin33/status/920777889305579521 by a Twitter account that is

registered to Defendant Levin. That Twitter account has the username of "@StephenLevin33".

That Twitter posting included the following pertinent remark in violation of New York State

General Business Law §349 about attending the Mayor's 10/18/17 town hall that hindsight

confirms was entirely and grossly misleading, fraudulent, deceptive, and disingenuous with

respect to whether I could lawfully attend that public forum in accordance with my constitutional

rights to have done so:

"Join us and LIVE as we host a town hall right here in @NYCMayor the 33rd District!"

11.     The following shows an e-mail message that I sent to register in advance to attend the

Mayor's 10/12/17 town hall:

> **From:** Towaki Komatsu <towaki_komatsu@yahoo.com>
> **Subject:** RSVP for 10/12/17 public Town Hall meeting with New York City's Mayor
> **Date:** October 5, 2017 at 12:11:01 PM EDT
> **To:** manhattantownhall@cityhall.nyc.gov
>
> My name is Towaki Komatsu
>
> This e-mail serves as my RSVP for the 10/12/17 public Town Hall meeting New York
> City's Mayor will hold.
>
> Pursuant to New York State's Open Meetings Law, I have a legal right to attend that
> public town hall meeting.
>
> Any attempt to hinder my ability to attend it will constitute a violation of both that law
> and the federal criminal statute that concerns obstruction of justice, specifically 18 U.S.C.
> 1512.
>
> Any such attempt to hinder my ability to attend that public meeting will be severely dealt
> with from a legal standpoint.

12.     The statements that I made in that e-mail message were entirely appropriate and reflected the fact that members of the Mayor's staff and members of the NYPD had repeatedly and illegally prevented me from attending public town hall meetings, public resource fair meetings, public hearings that the Mayor conducted since 4/27/17.

13.     The following shows an e-mail message that I sent to register in advance to attend the Mayor's 10/18/17 town hall:

> **From:** Towaki_Komatsu@yahoo.com
> **Subject:** Re: RSVP for 10/18/17 public Town Hall meeting with New York City's Mayor
> **Date:** October 11, 2017 at 7:09:25 PM EDT
> **To:** brooklyntownhall@cityhall.nyc.gov
>
> This is my RSVP for the Mayor's 10/18/17 public town hall meeting.
>
> Towaki Komatsu

14.     The next screenshot is from an online form that I submitted on 10/19/17 to register in advance to attend the Mayor's 10/25/17 resource fair before saved that form information as a PDF file that truncated some of the text that submitted in that form. I expressed in that form that I intended to discuss illegal and repeated acts of viewpoint discrimination while attending the Mayor's 10/25/17 resource fair. That form also confirms that I then made it clear that I sought to talk with personnel who then worked for DSS, the NYPD, and DOE as well as people who dealt with issues for tenants.

**Let us know what questions you will bring to the resource fair!***

Viewpoint dis

**What agencies are you most interested in speaking with?***

☐ Department of Transportation
☐ Department of Finance
☑ New York Police Department
☐ Department of Sanitation
☐ Economic Development Corporation
☑ Department of Social Services
☑ Department of Education
☐ Department of Health
☐ Small Business Services
☐ Department of Parks and Recreation
☐ Universal Pre-K
☐ ThriveNYC
☑ Tenant Support Unit

15.     After I submitted that online registration form to attend the Mayor's 10/25/17 resource

fair, the following confirmation notice appeared on the web page that sufficiently confirmed I

would be able to attend the Mayor's 10/25/17 resource fair:



16.     The illegal acts and omissions that were committed against me on 10/12/17, 10/18/17,

10/25/17, and 3/18/19 at the sites of public forums that my claims in this complaint concern were committed in relation to my efforts to have exercised my legal right to have done the following:

    a.      Lawfully attended those public forums in accordance with my constitutional rights.

    b.      Exercised the full extent of my rights while attending them partly by engaging in protected whistleblowing about a broad array of matters of public concern and private matters.

17.      This is a civil rights action to vindicate my rights in response to illegal acts and omissions that were committed against me on 10/12/17, 10/18/17, 10/25/17, and 3/18/19 at the sites of public forums that the Mayor conducted with other government officials in relation to my efforts to have lawfully attended them while Defendant Howard Redmond was **a)** the head of the Mayor's NYPD security detail and **b)** the primary defendant in _Sherrard v. City of New York,_ _No. 15-cv-7318 (MB) (S.D.N.Y. Jun. 13, 2018)._ Since 4/27/17, I was aware of his status as the defendant in _Sherrard v. City of New York_ by having conducted research about him then in the wake of illegal acts and omissions that he and others committed against me on 4/27/17 that caused me to be illegally barred from attending the Mayor's 4/27/17 town hall in flagrant violation of my constitutional rights and other applicable laws. Those who committed such illegal acts and omissions against me on 10/12/17, 10/18/17, 10/25/17, and 3/18/19 mostly did so as part of a conspiracy in retaliation against me that was mainly for protected whistleblowing and litigation activities that I continued to be engaged in against Mr. Redmond, themselves, other members of the NYPD, members of the Mayor's staff, HRA, HRA's business partners, Mr. Banks, New York State court officers, and others. Such protected whistleblowing and litigation activities that this concerns were largely related to my HRA lawsuit and earlier illegal acts and

omissions that were committed against me in flagrant violation of the Hatch Act (5 U.S.C. §1502(a)(1)) and other laws for the mutual benefit of the Mayor, members of the City Council, and those who committed such illegal acts and omissions leading up to the 2017 New York City government election in the interest of extending their job security and maintaining their access to opportunities to further advance their careers. Such illegal acts and omissions wee committed against me on the following dates by the defendants in this action and others in relation to efforts that I previously undertook to exercise my constitutional rights to lawfully attend and participate in 14 earlier public forums that **a)** would have otherwise been conducted partly by me on 4/12/17 with respect to a scheduled oral arguments hearing in my HRA lawsuit that Jeffrey Moszyc of HRA illegally stole from me by engaging in illegal ex-parte communications to request an adjournment and **b)** were partly conducted by the Mayor, Mr. Banks, and others that included public town hall meetings, public resource meetings, public hearings, a publicity stunt that the Mayor conducted on 7/25/17 in a public area of a subway station, and a public press conference on 10/3/17 that about reforming the NYPD:

> 4/12/17, 4/27/17, 5/23/17, 6/8/17, 7/12/17, 7/25/17, 8/30/17, 9/8/17, 9/14/17, 9/26/17, 9/27/17, 9/28/17, 10/3/17, 10/4/17

18.     While committing such illegal acts and omissions against me on 10/12/17, 10/18/17, 10/25/17, and 3/18/19 that my claims in this complaint concern, that was done to extend a campaign of harassment, retaliation, and unequal and discriminatory acts against me at public forums dating back to 4/27/17 that the Mayor and other government officials conducted with members of the public in a collaborative manner as the Mayor and such other government officials were running for re-election and using those public forums to try to improve their re-election prospects partly by trying to attract publicity.

19.     The illegal acts and omissions that were committed against me on 10/12/17, 10/18/17,

10/25/17, and 3/18/19 as well as on earlier dates that go as far back to 4/27/17 at public forums that the Mayor conducted with other government officials and continued long after 10/25/17 at additional public forums that they conducted were acts of voter suppression, voter fraud, whistleblower retaliation, a malicious and naked abuse of process, illegal selective-enforcement, standardless discretion, viewpoint discrimination in violation of the Hatch Act, my constitutional rights, federal and New York State criminal statutes, New York State's Open Meetings Law, and other applicable laws that were against me directly and others indirectly largely by illegally depriving the public of relevant and significant information that it could use to make informed voting decisions during the 2017 New York City government elections that I sought to lawfully and widely broadcast by attending public forums that the Mayor conducted within the rooms in which they were conducted while they were recorded on video that could amplify and extend the reach of the critical views against the Mayor's administration, the NYPD, the Mayor's administration's business partners, and whistleblower news censors in journalism that I sought to lawfully express.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§1331 and 1343. This action is brought pursuant to 42 U.S.C. §§1983, 1985, 1988 and the First, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution.

2.      My claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and 2202, FRCP Rules 57 and 65, and the general legal and equitable powers of this Court.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because I reside in the Bronx and the illegal acts and omissions that were committed against me that this complaint concerns occurred in Manhattan and Brooklyn.

4.      An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

5.      Consistent with the requirements of New York General Municipal Law § 50-e, I filed a timely Notice of Claim with the New York City Comptroller within 90 days of the accrual of my claims under New York law.

6.      My claims have not been adjusted by the New York City Comptroller's Office.

## PARTIES

1.      I am, and was at all times relevant to this action, a resident of Bronx County in the State of New York. I am also a U.S. Navy veteran, who swore to defend the U.S. Constitution against all of its enemies indefinitely and without exceptions. I have honored that oath and continue to do so.

2.      At all times relevant herein Defendant Bill de Blasio and Defendant James O'Neill were employees of the City of New York.

3.      At all times relevant herein, **a)** Defendant de de Blasio has been the Mayor of the City of New York, **b)** Defendant James O'Neill was the commissioner of the NYPD, and **c)** Defendant Lawrence Byrne, Jr. was the Deputy Commissioner for Legal Matters for the NYPD. As the commissioner of the NYPD, Defendant O'Neill was among others who were responsible for how the NYPD operated, how the NYPD's personnel were trained, how they were supervised, and how they were disciplined. In his capacity as the Deputy Commissioner for Legal Matters for the NYPD, Defendant Byrne, Jr. was similarly responsible for having the members of the NYPD operate within the bounds of applicable laws while they were on-duty as members of the NYPD. Defendant de Blasio was also partly responsible for how the NYPD operated and was supervised at all times relevant herein partly by having the power to replace Defendant O'Neill as the NYPD's commissioner and set the budget for the NYPD.  In regards to this point, Mr. de Blasio

was recorded on video on 11/30/17 during the public town hall meeting that he conducted in Queens as he stated the following:

"If you have a problem with policing, I am ultimately responsible."

4.     Mr. De Blasio is shown and heard as he made that remark in that video at the elapsed time of 1 hour, 49 minutes, and 19 seconds. That video recording is available on the Internet at https://www.youtube.com/watch?v=CRV0IKbg5tQ.

5.     Defendant City of New York is a municipal corporation duly incorporated and authorized under the laws of the State of New York pursuant to §431 of its Charter. The City of New York is authorized under the laws of the State of New York to maintain a police department, the NYPD, which is supposed to act as its agent in the area of law-enforcement and for which it and the Mayor are ultimately responsible. The City and the Mayor both assume the risks incidental to the maintenance of a police force and the employment of police officers.

6.     The following defendants in this action were at all times relevant herein officers, employees, and agents of the NYPD and the City of New York:

NYPD Detective Nicholas Mason (shield #: 6995), NYPD Officer Lance (shield #: 245), NYPD Officer Ranieri (shield #: 24361), NYPD Officer Suzuki (shield #: 7373), NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, NYPD Officer Jerry Ioveno (shield #: 5560), NYPD Officer Santana (shield #: 7291), NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, NYPD Inspector Howard Redmond, NYPD Lieutenant Ralph Nieves, NYPD Officer Baez (shield #: 5984), NYPD Officer Raymond Gerola (shield #: 6577), NYPD Officer Joe Ventri, NYPD John Doe3 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, NYPD Officer Jemaal Gungor, NYPD Officer Edward Klein, NYPD Officer Zappia (shield #: 4152), NYPD Officer Barker (shield #: 13845), NYPD Officer John Doe1 3/18/19, NYPD Officer John Doe2 3/18/19, NYPD Officer John Doe3 3/18/19, NYPD Officer John Doe4 3/18/19, NYPD Officer John Doe5 3/18/19, NYPD Sergeant Ryan Dwyer, NYPD Sergeant Jordan Mazur, NYPD Detective Stephen Halk, James O'Neill, Lawrence Byrne, Jr.

7.     Defendants Nieves, O'Neill, and Byrne, Jr. have retired from the NYPD.

8.     Upon information and belief, Defendants NYPD John Doe6 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, and NYPD John Doe4 10/25/17 were officers, employees, and/or agents of the NYPD and the City of New York on 10/25/17.

9.     The following facts apply to the defendants in this action who I identify with John Doe and Jane Doe in their names:

    a.     They were people whose real names I don't know.

    b.     They worked for the NYPD and/or Mayor's office at all times relevant herein.

    c.     They appear in video recordings that I recorded on 10/12/17, 10/18/17, 10/25/17, and 3/18/19 as they were committing illegal acts and omissions against me that concern my claims in this action.

    d.     Most of those defendants appear in the video recordings listed in the following table at the elapsed time shown while some of those defendants instead appear in other video recordings that I didn't record and sufficiently discuss in this complaint to identify those other defendants:

| # | Defendant | Video | Elapsed Time |
|---|-----------|-------|--------------|
| 1 | NYPD John Doe1 10/12/17 | IMG_2581.MOV | 1 second |
| 2 | NYPD John Doe2 10/12/17 | IMG_2591.MOV | 2 seconds |
| 3 | NYPD John Doe3 10/12/17 | IMG_2591.MOV | 2 seconds |
| 4 | NYPD John Doe4 10/12/17 | IMG_2582.MOV IMG_2736.mov | 2 seconds 34 seconds |
| 5 | NYPD John Doe5 10/12/17 | IMG_2585.MOV IMG_2587.mov | 3 seconds 2 seconds |
| 6 | NYPD John Doe6 10/12/17 | IMG_2588.MOV | 2 seconds |

| 7 | NYPD Jane Doe1 10/12/17 | IMG_2581.MOV | 2 seconds |
|---|---|---|---|
| 8 | NYPD Jane Doe2 10/12/17 | IMG_2593.MOV | 2 seconds |
| 9 | NYPD Jane Doe3 10/12/17 | IMG_2582.MOV | 2 seconds |
| 10 | NYPD Jane Doe4 10/12/17 | IMG_2588.MOV | 2 seconds |
| 11 | Jane Doe1 10/12/17 | IMG_2581.MOV | The very beginning |
| 12 | NYPD John Doe1 10/18/17 | IMG_2736.MOV | 19 seconds |
| 13 | NYPD John Doe2 10/18/17 | IMG_2736.MOV | 34 seconds |
| 14 | NYPD John Doe3 10/18/17 | IMG_2736.MOV | 34 seconds |
| 15 | NYPD John Doe4 10/18/17 | IMG_2736.MOV | 34 seconds |
| 16 | NYPD John Doe5 10/18/17 | IMG_2737.MOV | 12 seconds |
| 17 | NYPD John Doe6 10/18/17 | IMG_2737.MOV | 12 seconds |
| 18 | NYPD John Doe1 10/25/17 | IMG_2853.MOV | 26 seconds, 28 seconds |
| 19 | NYPD John Doe2 10/25/17 | IMG_2853.MOV | 27 seconds |
| 20 | NYPD John Doe3 10/25/17 | IMG_2857.MOV | 33 seconds |
| 21 | NYPD John Doe4 10/25/17 | IMG_2857.MOV<br><br>IMG_2863.MOV | 34 seconds<br><br>7 seconds |
| 22 | NYPD John Doe5 10/25/17 | IMG_2857.MOV | 34 seconds |
| 23 | NYPD John Doe6 10/25/17 | IMG_2857.MOV | 34 seconds |
| 24 | NYPD John Doe2 3/18/19 | IMG_8277.MOV | 13 seconds |
| 25 | NYPD John Doe3 3/18/19 | IMG_8374.MOV | 59 seconds |
| 26 | NYPD John Doe4 3/18/19 | IMG_8277.MOV | 2 minutes and 25 seconds |

10.     The faces of the defendants in this action who I identify with John and Jane Doe in their names are shown in the following table at the elapsed times in the video recordings to which I

just referred and otherwise referred earlier in this complaint:

| # | Defend-ant | Image | Comments |
|---|------------|-------|----------|
| 1 | NYPD Officer John Doe1 10/12/17 |  | He is shown standing next to Defendant Lance and behind ad top the left of Defendant Stribula.<br><br>He illegally didn't try to intervene on my behalf to enable me to attend the Mayor's 10/12/17 town hall in violation of 42 USC §1986, 42 USC §1985, his oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws as he acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum. |
| 2 | NYPD Jane Doe2 10/12/17 |  | She is shown standing behind Defendants Lance and NYPD Officer John Doe1 10/12/17 as they stood next to one another and behind Defendant Stribula.<br><br>She illegally didn't try to intervene on my behalf to enable me to attend the Mayor's 10/12/17 town hall in violation of 42 USC §1986, 42 USC §1985, her oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws as she acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum. |

| 3 | NYPD John Doe2 10/12/17 |  | He is shown standing on a sidewalk near Defendant Stribula and an entrance to the property of the school that hosted the Mayor's 10/12/17 town hall as he illegally didn't try to intervene on my behalf to enable me to attend that town hall in violation of 42 USC §1986, 42 USC §1985, his oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws as he acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum. |
| 4 | NYPD John Doe3 10/12/17 | | He is shown standing on a sidewalk near Defendant Stribula and an entrance to the property of the school that hosted the Mayor's 10/12/17 town hall as he illegally didn't try to intervene on my behalf to enable me to attend that town hall in violation of 42 USC §1986, 42 USC §1985, his oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws as he acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum. |

| 5 | NYPD Jane Doe2 10/12/17 |  | She is shown walking along a sidewalk in front of the school that hosted the Mayor's 10/12/17 town hall in my direction and that of Defendant Stribula's while Defendant Stribula and others were illegally preventing me from attening that public forum. Defendant NYPD Jane Doe2 10/12/17 illegally didn't try to intervene on my behalf to enable me to attend that town hall in violation of 42 USC §1986, 42 USC §1985, her oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws as she acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum.<br><br>She also then walked in the direction of a video security camera that was attached to that school that was likely controlled by the DOE and recorded a clearer image of her face than what appears to the left. |
| 6 | NYPD John Doe4 10/12/17 |  | The first image shown to the left is from the video recording that has the filename of "IMG_2582.mov". He is the Black male in it who is standing in front of Defendant Mason in this image as he stood on a sidewalk near an entrance to the property of the school that hosted the Mayor's 10/12/17 town hall as he illegally didn't try to intervene on my behalf to enable me to attend that town hall in violation of 42 USC §1986, 42 USC §1985, his oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws. That occurred as he acted in |



concert with Defendant Stribula and others to illegally prevent me from attending that public forum.

The second image shown to the left is from the video recording that has the filename of "IMG_2736.mov" and corresponds ot the elapsed time of 34 seconds in it as he illegally told me that he wouldn't arrange to hae a commanding officer of his to promptly come to where he and I then were as he and others were illegally acting in concert as they illegally prevented me from attending the Mayor's 10/18/17 town hall while I conducted myself in an entirely lawful manner in contrast to them. He also illegally prevented me from attending the Mayor's 10/25/17 resource fair by preventing me from accessing the building in which it was conducted in violation of my constitutional rights of access to a public forum.

| 7 | NYPD Jane Doe3 10/12/17 |  | She is a Black female who is shown wearing a black hat and a blue NYPD shirt. She was then near a door that was used to grant access to members of the public and Defendant Stribula who appears in this image to the school that hosted the Mayor's 10/12/17 town hall. NYPD Jane Doe3 10/12/17 illegally didn't try to intervene on my behalf to enable me to attend the Mayor's 10/12/17 town hall in violation of 42 USC §1986, 42 USC §1985, her oath as a member of the NYPD, my Fourteenth Amendment rights, and other |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | laws as she acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum. She did so largely by enabling Defendant Stribula and others that include members of the public to enter that school at the same time that I was being illegally prevented from doing so in flagrant violation of my Fourteenth Amendment rights that pertain to discrimination, selective-enforcement, abuse of process as well as my First Amendment right of access to a public forum.<br><br>As she was where she appears in the image to the left, she was in an area that was located close to a video security camera that was attached to that school and likely controlled by the DOE. That video security camera likely recorded a clearer image of her face than what appears to the left. |
| 8 | NYPD John Doe5 10/12/17 |  | The first image shown to the left is from the video recording that has the filename of "IMG_2585.MOV". He is shown walking in my direction from the property of the school that hosted the Mayor's 10/12/17 town hall as he illegally didn't try to intervene on my behalf to enable me to attend that town hall in violation of 42 USC §1986, 42 USC §1985, his oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws. That occurred as he acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum. |



As he left the property of that school then, he was in an area that was located close to a video security camera that was attached to that school and likely controlled by the DOE. That video security camera likely recorded a clearer image of his face than what appears to the left.

The second image of him that is shown to the left is from the video recording that has the filename of "IMG_2587.mov" and corresponds ot the elapsed time of 2 seconds in it as he walked next to Defendant Harold Miller and Paola Ruiz of the Mayor's office. At that time, NYPD John Doe5 10/12/17 also illegally didn't try to intervene on my behalf to enable me to attend that town hall in violation of 42 USC §1986, 42 USC §1985, his oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws. That occurred as he continued to act in concert with Defendant Stribula and others that included Defendant Miller to illegally prevent me from attending that public forum.

| 9 | NYPD Jane Doe4 10/12/17 |  | She is a female member of the NYPD who then wore a black NYPD uniform as she was then near a door that was used to grant access to members of the public to the school that hosted the Mayor's 10/12/17 town hall.<br><br>NYPD Jane Doe4 10/12/17 illegally didn't try to intervene on my behalf to enable me to attend the Mayor's 10/12/17 town hall in violation of 42 USC §1986, 42 USC §1985, her oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws as she acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum. She did so largely by enabling Defendant Stribula and others that include members of the public to enter that school at the same time that I was being illegally prevented from doing so in flagrant violation of my Fourteenth Amendment rights that pertain to discrimination, selective-enforcement, abuse of process as well as my First Amendment right of access to a public forum.<br><br>As she was where she appears in the image to the left, she was in an area that was located close to a video security camera that was attached to that school and likely controlled by the DOE. That video security camera likely recorded a clearer image of her face than what appears to the left. |

| 10 | NYPD John Doe6 10/12/17 |  | He is the Black male who I have reason to believe was a member of the NYPD on 10/12/17 as he appeared on the right in the image shown to the left. He appears next to Defendant NYPD Jane Doe3 10/12/17 in that image.<br><br>He illegally didn't try to intervene on my behalf to enable me to attend the Mayor's 10/12/17 town hall in violation of 42 USC §1986, 42 USC §1985, his oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws as he acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum. He did so largely by enabling Defendant Stribula and others that include members of the public to enter that school at the same time that I was being illegally prevented from doing so in flagrant violation of my Fourteenth Amendment rights that pertain to discrimination, selective-enforcement, abuse of process as well as my First Amendment right of access to a public forum.<br><br>As he was where he appears in the image to the left, he was in an area that was located close to a video security camera that was attached to that school and likely controlled by the DOE. That video security camera likely recorded a clearer image of his face than what appears to the left. |

| 11 | Jane Doe1 10/12/17 |  | Here, Jane Doe1 10/12/17 is shown after she flagrantly violated my rights pursuant to the Fourteenth Amendment, Fifth Amendment, and First Amendment to be issued an admission ticket to attend the Mayor's 10/12/17 town hall while I waited in line behind the man shown in this image who is wearing a black jacket and a hat while I was conducting myself in an entirely lawful manner in contrast to her and Defendant Stribula who also appears in this image. |
| 12 | NYPD John Doe1 10/18/17 |  | He is wearing the blue shirt with a NYPD patch by his left shoulder on it as he stood next to Defendant Ioveno on a sidewalk near me. Both Defendant Ioveno and NYPD John Doe1 10/18/17 illegally didn't intervene on my behalf to enable me to attend the Mayor's 10/18/17 town hall as they instead acted in concert with Defendants NYPD John Doe4 10/12/17, Ringel, Atcheson, Stribula, and others through their illegal acts and omissions to illegally prevent me from attending the Mayor's 10/18/17 town hall. That occurred before Defendant Ioveno intervened on my behalf on 11/30/17 by talking with Defendants Carrion and Ridener then in front of the school that hosted the public town hall meeting that the Mayor conducted on that date that enabled me to attend that town hall after Defendant Stribula told me in front of Defendants Ringel, |

| | | | |
|---|---|---|---|
| | | | Miller, and Baez and numerous witnesses that she wouldn't allow me to attend that town hall in spite of the fact that I was conducting myself in an entirely lawful manner in contrast to her and other defendants. I recorded Ms. Stribula on video then. |
| 13 | NYPD John Doe2 10/18/17 |  | He is shown in this image as he wore a black NYPD uniform with a black hat and stood on a sidewalk near the entrance to the building that hosted the Mayor's 10/18/17 town hall that was used to grant members of the public access to it to attend that public forum on that date. He also illegally didn't intervene on my behalf as Defendants NYPD John Doe4 10/12/17, Ringel, Atcheson, Stribula, and others were acting in concert through their illegal acts and omissions to illegally prevent me from attending the Mayor's 10/18/17 town hall. He had a realistic opportunity then to have intervened on my behalf for that purpose. |
| 14 | NYPD John Doe3 10/18/17 |  | He is shown in this image as he stood on a sidewalk near the entrance to the building that hosted the Mayor's 10/18/17 town hall that was used to grant members of the public access to it to attend that public forum on that date. He also illegally didn't intervene on my behalf as Defendants NYPD John Doe4 10/12/17, Ringel, Atcheson, Stribula, and others were acting in concert through their illegal acts and omissions to illegally prevent me from attending the Mayor's 10/18/17 town hall. He had a realistic opportunity then to have intervened on my behalf for that |

| | | | | purpose. |
|---|---|---|---|---|
| 15 | NYPD John Doe4 10/18/17 |  | | He is shown in this image as he stood on a sidewalk near the entrance to the building that hosted the Mayor's 10/18/17 town hall that was used to grant members of the public access to it to attend that public forum on that date. He also illegally didn't intervene on my behalf as Defendants NYPD John Doe4 10/12/17, Ringel, Atcheson, Stribula, and others were acting in concert through their illegal acts and omissions to illegally prevent me from attending the Mayor's 10/18/17 town hall. He had a realistic opportunity then to have intervened on my behalf for that purpose. |
| 16 | NYPD John Doe5 10/18/17 |  | | He is shown in this image as he stood on a sidewalk in front of Defendant Ringel (also shown in this on the left) and I as Defendants NYPD John Doe4 10/12/17, Ringel, Stribula, Atcheson, and others were nearby and acting in concert through their illegal acts and omissions to illegally prevent me from attending the Mayor's 10/18/17 town hall.

Defendant NYPD John Doe5 10/18/17 illegally didn't intervene on my behalf to enable me to attend that town hall in spite of the fact that he had a realistic opportunity to have done so for that purpose. |

| 17 | NYPD John Doe6 10/18/17 |  | He is shown in this image as he stood on a sidewalk in front of Defendant Ringel and I as Defendants NYPD John Doe4 10/12/17, Ringel, Stribula, Atcheson, and others were nearby and acting in concert through their illegal acts and omissions to illegally prevent me from attending the Mayor's 10/18/17 town hall.<br><br>Defendant NYPD John Doe6 10/18/17 illegally didn't intervene on my behalf to enable me to attend that town hall in spite of the fact that he had a realistic opportunity to have done so for that purpose. |
| 18 | NYPD John Doe1 10/25/17 |  | The first image of him corresponds to the elapsed time of 26 seconds and the second image of him corresponds to the elapsed time of 28 seconds.<br><br>He is shown standing on the sidewalk near me and Defendants Nieves and Baez as they were illegally prevented me from walking past them through a gated entrance from the sidewalk where I stood to the entrance of the school that hosted the Mayor's 10/25/17 resource fair. He illegally didn't intervene on my behalf to enable me to attend that resource fair meeting in spite of the fact that he had a realistic opportunity to have done so for that purpose.<br><br>Although I can't say for certain at this point, I have reason to believe that NYPD John Doe1 10/25/17 was a member of the NYPD on 10/25/17 or was otherwise some |



| | | | other law-enforcement official then because of his behavior then. |
|---|---|---|---|
| 19 | NYPD John Doe2 10/25/17 | | He is shown standing on the sidewalk near me and Defendants Nieves and Baez as they were illegally prevented me from walking past them through a gated entrance from the sidewalk where I stood to the entrance of the school that hosted the Mayor's 10/25/17 resource fair. He illegally didn't intervene on my behalf to enable me to attend that resource fair meeting in spite of the fact that he had a realistic opportunity to have done so for that purpose.<br><br>Although I can't say for certain at this point, I have reason to believe that NYPD John Doe1 10/25/17 was a member of the NYPD on 10/25/17 or was otherwise some other law-enforcement official then because of his behavior |

| 20 | NYPD John Doe3 10/25/17 |  | He is shown standing in front of the front-passenger door for a NYPD car with an identifcation number of 5249 on it as he stood across the street from where I and Defendants Nieves and Baez then were as they were illegally preventing me from walking past them through a gated entrance from the sidewalk where I stood to the entrance of the school that hosted the Mayor's 10/25/17 resource fair. He illegally didn't intervene on my behalf to enable me to attend that resource fair meeting in spite of the fact that he had a realistic opportunity to have done so for that purpose. |
| 21 | NYPD John Doe4 10/25/17 |  | In the video that has the filename of "IMG_2857.MOV", he is shown standing next to Defendants NYPD John Doe5 10/18/17, and NYPD John Doe6 10/18/17 in an area that was located across the street from where I and Defendants Nieves and Baez then were as Defendants Nieves and Baez were illegally preventing me from walking past them through a gated entrance from the sidewalk where I stood to the entrance of the school that hosted the Mayor's 10/25/17 resource fair. He illegally didn't intervene on my behalf to enable me to attend that resource fair meeting in spite of the fact that he had a realistic opportunity to have done so for that purpose. |

| | | | |
|---|---|---|---|
| | |  | In the video that has the filename of "IMG_2863.MOV", he is shown standing on a sidewalk near where I and Defendants Baez, Gerola, and NYPD John Doe4 10/12/17 then were as they were illegally preventing me from walking past them through a gated entrance from the sidewalk where I stood to the entrance of the school that hosted the Mayor's 10/25/17 resource fair.. |
| 22 | NYPD John Doe5 10/25/17 |  | He is shown standing next to Defendants NYPD John Doe4 10/18/17, and NYPD John Doe6 10/18/17 in an area that was located across the street from where I and Defendants Nieves and Baez then were as Defendants Nieves and Baez were illegally preventing me from walking past them through a gated entrance from the sidewalk where I stood to the entrance of the school that hosted the Mayor's 10/25/17 resource fair. He illegally didn't intervene on my behalf to enable me to attend that resource fair meeting in spite of the fact that he had a realistic opportunity to have done so for that purpose. |

| 23 | NYPD John Doe6 10/25/17 |  | | He is shown standing next to Defendants NYPD John Doe4 10/18/17, and NYPD John Doe5 10/18/17 in an area that was located across the street from where I and Defendants Nieves and Baez then were as Defendants Nieves and Baez were illegally preventing me from walking past them through a gated entrance from the sidewalk where I stood to the entrance of the school that hosted the Mayor's 10/25/17 resource fair. He illegally didn't intervene on my behalf to enable me to attend that resource fair meeting in spite of the fact that he had a realistic opportunity to have done so for that purpose. |

| 24 | NYPD John Doe1 3/18/19 |  | This corresponds to the elapsed time of 17 minutes and 29 seconds in the video that the Mayor's Office arranged to be recorded of the Mayor's 3/18/19 4:30 pm public hearing that was conducted in the Blue Room in City Hall. This shows NYPD John Doe1 3/18/19 as he criminally assaulted me as I was conducting myself in an entirely lawful manner in stark contrast to the Mayor and him by illegally seizing my left arm and making contact with my back with his right hand. He did so as I was in the middle of testifying to the Mayor in accordace with my constitutional rights as the Mayor was flagrantly violating my First Amendment and Fourteenth Amendment rights to do so. Through his actions against me then, NYPD John Doe1 3/18/19 flagrantly violated my Fourth Amendment, Fifth Amendment, First Amendment, and Fourteenth Amendment rights as well as additional applicable laws.

Instead of illegally seizing me on 3/18/19 and interfering with my testimony to the Mayor duri that hearing, it was his duty as a member of the NYPD to immediately intervene on my behalf against the Mayor to stop him from illegally engaging in flagrant witness tampering and obstruction in regards to the testimony that I was then giving. As a result, he then acted in concert with the Mayor as a co-conspirator to illegally subject me to witness tampering. |

| 25 | NYPD John Doe2 3/18/19 |  | NYPD John Doe2 3/18/19 was inside of the Blue Room in City Hall as NYPD John Doe1 3/18/19 criminally assaulted me by seizing me while I was in the middle of lawfully testifying and otherwise conducting myself during the Mayor's 3/18/19 public hearing. NYPD John Doe2 3/18/19 illegally didn't try to intervene on my behalf then against both **a)** NYPD John Doe1 3/18/19 and **b)** the Mayor partly by immediately arresting NYPD John Doe1 3/18/19 for illegally assaulting me, seizing me, harassing me, witness tampering, and other crimes and offenses that occurred in his immediate presence I that relatively small room. He also had a duty then to stop the Mayor from continuing to willfully engage in witness tampering against me in that room as he clearly obstructed my testimony. |
| | | | He also illegally didn't intervene on my behalf to enable me to re-enter the Blue Room on 3/18/19 after I was illegally ejected from it to retrieve my backpack and laptop own my own instead of having others touch that property. He also illegally didn't try to intervene on my behalf thereafter on 3/18/19 as I proceeded to be illegally coerced to leave City Hall's building and its grounds while I was criminally assaulted and otherwise coerced to do so by Defendants Klein, Gungor, and other members of the NYPD. |
| | | | In sum, he flagrantly violated 42 USC §1986, 42 USC §1985, his |

| | | | |
|---|---|---|---|
| | | | oath as a member of the NYPD, my Fourteenth Amendment rights to have had him intervene on my behalf on 3/18/19, and other applicable laws. Instead, he acted in concert with NYPD John Doe1 3/18/19, the Mayor, and Defendants Gungor, NYPD John Doe3 3/18/19, Klein, and other NYPD defendants in regards to the illegal acts and omissions that were committed against me on 3/18/19 inside of City Hall and on its grounds. |
| 26 | NYPD John Doe3 3/18/19 |  | What I just discussed about NYPD John Doe2 3/18/19 is equally true and accurate about NYPD John Doe3 3/18/19. He was also inside of the Blue Room in City Hall as I testified to the Mayor and was illegally seized by Defendant NYPD John Doe1 3/18/19. |

| 27 | NYPD John Doe4 3/18/19 |  | NYPD John Doe4 3/18/19 illegally didn't intervene on my behalf against Defendant Klein and Gungor as they illegally assaulted me and otherwise illegally coerced me to leave City Hall's property on 3/18/19. NYPD John Doe4 3/18/19 was then in their immediate presence as I sought to remain on City Hall's grounds and inside of City Hall partly to try to lawfully talk with journalists and other government officials then and there about the fact that I was illegally seized and assaulted by NYPD John Doe1 3/18/19 inside of its Blue Room and also ejected from it as well as the fact that the Mayor illegally subjected me to witness tampering during the Mayor's 3/18/19 public hearing as members of the NYPD illegally didn't intervene on my behalf. |
| | | | I also sought to remain on City Hall's grounds and in City Hall's building then to apprise such journalists and other government officials about the fact that Defendants Klein, Gungor, NYPD John Doe4 3/18/19, and other members of the NYPD were illegally assaulting me, harassing me, and otherwise illegally coercing me to leave City Hall's grounds while I was conducting myself in an entirely lawful manner in contrast to them. |

| 28 | NYPD John Doe5 3/18/19 |  | NYPD John Doe5 3/18/19 is the member of the NYPD who appears on the left in this image that also appears to show Defendant NYPD Officer Barker (shield #: 13845) in it as they stood near the NYPD guardhouse that is located just inside of the Park Row entrance to City Hall.<br><br>What I just discussed about NYPD John Doe4 3/18/19 is equally true about NYPD John Doe5 3/18/19. |

11.     The table shown next contains brief information about as well as links to copies of video recordings that I recorded with my cell phone on 10/12/17, 10/18/17, 10/25/17, and 3/19/19 to which I just referred above as well as other video recordings that I recorded on those dates. I recorded all of those video recordings while I lawfully conducted myself as I stood outside of and in close proximity to the buildings that hosted the Mayor's 10/12/17 town hall, 10/18/17 town hall, 10/25/17 resource fair, and 3/19/19 public hearing while I was being illegally prevented from attending those public forums in flagrant violation of my constitutional rights and other applicable laws. The second table that follows this one includes further relevant descriptions about what appears in those video recordings.

| # | Creation Date and Time | Filename | Link to video |
|---|---|---|---|

| 1 | 10/12/17 at 5:51 pm | IMG_2581.MOV | https://drive.google.com/file/d/1dDdtcWzTQViDUJm2mIaNH6wTTnJAYAN5/view?usp=sharing |
|---|---|---|---|
| 2 | 10/12/17 at 7:14 pm | IMG_2582.MOV | https://drive.google.com/file/d/13MW6rctyDJ-VxtQxtxRLw3AO733cJjgL/view?usp=sharing |
| 3 | 10/12/17 at 7:14 pm | IMG_2583.MOV | https://drive.google.com/file/d/1JsWXTEJOvVbIyBtfdxRBO4i8YbeIx-oF/view?usp=sharing |
| 4 | 10/12/17 at 7:15 pm | IMG_2584.MOV | https://drive.google.com/file/d/1R-9B91znm0XPZRU_WNP7tYmEP2Loq1QZ/view?usp=sharing |
| 5 | 10/12/17 at 7:25 pm | IMG_2585.MOV | https://drive.google.com/file/d/1UzPXmt2SQ0zQxcKLIVcRgBeKKTTjST2X/view?usp=sharing |
| 6 | 10/12/17 at 7:25 pm | IMG_2586.MOV | https://drive.google.com/file/d/1KZVuSbN8yDDKfcjcJGR5z9S1IUIlpeyR/view?usp=sharing |
| 7 | 10/12/17 at 7:25 pm | IMG_2587.mov | https://drive.google.com/file/d/1MNAFz4QBuGPk5D9xq6PxIdvlh603wPQf/view?usp=sharing |
| 8 | 10/12/17 at 7:26 pm | IMG_2588.MOV | https://drive.google.com/file/d/1sHyMLV_RKx_ga6JG517PY6l57AYtiVtN/view?usp=sharing |
| 9 | 10/12/17 at 7:30 pm | IMG_2589.MOV | https://drive.google.com/file/d/1eEAMLC53rryddcqYKx6TtD4hVSSkVgC1/view?usp=sharing |
| 10 | 10/12/17 at 7:31 pm | IMG_2590.MOV | https://drive.google.com/file/d/1s99q8odr_GWXNbv7ksuX04KKw75pDr8b/view?usp=sharing |
| 11 | 10/12/17 at 7:32 pm | IMG_2591.MOV | https://drive.google.com/file/d/1THKpFq5qdmQL-5PCnffe28p_JaTTv4xD/view?usp=sharing |
| 12 | 10/12/17 at 7:32 pm | IMG_2592.MOV | https://drive.google.com/file/d/1g1OCNAPmFxHV1eSCNvp-eTrosK5zVftK/view?usp=sharing |
| 13 | 10/12/17 at 7:43 pm | IMG_2593.MOV | https://drive.google.com/file/d/1TljYxZWfsPn_tIVV8dTijuZI7oxrj9Oq/view?usp=sharing |

| 14 | 10/18/17 at 5:01 pm | IMG_2736.mov | https://drive.google.com/file/d/11 9Jbry4NU62uo3kRJXA6jTqoeY fBP3PS/view?usp=sharing |
|---|---|---|---|
| 15 | 10/18/17 at 5:03 pm | IMG_2737.mov | https://drive.google.com/file/d/1 6RJzqtWXmQlgqfJ50ZOVbnhX 1MOgh3MW/view?usp=sharing |
| 16 | 10//25/17 at 11:59 am | IMG_2853.MOV | https://drive.google.com/file/d/1 Yht0dK15TuIh_McSy2AdG2C YPCfGFgav/view?usp=sharing |
| 17 | 10/25/17 at 12:48 pm | IMG_2857.MOV | https://drive.google.com/file/d/1 Twwochabl-z_otheC- yjwdOyFsta6ka8/view?usp=shar ing |
| 18 | 10/25/17 at 2:32 pm | IMG_2863.MOV | https://drive.google.com/file/d/1 qKiqYx4DBUKFFtAXIszYvDE WXJN4RBuH/view?usp=sharin g |
| 19 | 3/18/19 at 5:04 pm | IMG_8277.MOV | https://drive.google.com/open?id =1r9ZGamyup1x- GnSKsjEBm2AcSLGYdH2j |
| 20 | 3/21/19 at 12:29 pm | IMG_8374.MOV | https://drive.google.com/file/d/1 v3DZxaPskhCK8kywq6G2kR3z hPpzHInC/view?usp=sharing |

12.     Upon information and belief, Defendants Redmond, Nieves, Mason, Gerola, Ventri, and

Ioveno, NYPD John Doe4 10/12/17, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19,

NYPD John Doe3 3/18/19, Gungor, and Dwyer were at all times relevant herein members of the

NYPD security detail for the Mayor.

13.     At all times relevant herein, Mr. Redmond helped to direct and supervise how the

Mayor's NYPD security detail operated.

14.     Defendants Mazur and Halk were assigned to work on the timely FOIL demand that I

submitted to the NYPD on 3/18/19 to which the NYPD assigned the identification code of FOIL-

2019-056-04374 in which I directed the NYPD to provide me video recordings and provided

sufficient information to the NYPD in doing so to allow its personnel to immediately provide me

the entirety of the video recordings that I directed the NYPD to provide to me through that FOIL

demand. Upon information and belief, Defendants Mazur and Halk acted in concert with unknown others that caused me to be illegally deprived of video recordings that were recorded on 3/18/19 by video security cameras controlled by the NYPD in the immediate vicinity of City Hall in flagrant violation of my rights pursuant to FOIL, the First Amendment, the Fourteenth Amendment, and other applicable laws that also confirm that the City of New York was required to preserve and provide me those video recordings in unedited and non-redacted form largely in response to the fact that I submitted timely complaints about the illegal acts and omissions that were committed against me on 3/18/19 inside of City Hall and otherwise on City Hall's grounds and within its immediate vicinity to the CCRB and other government bodies as I also was preparing to commence entirely valid litigation in response to the illegal acts and omissions that were committed against me on 3/18/19 by the Mayor and members of the NYPD. In short, the City of New York and members of the NYPD engaged in willful and illegal spoliation of evidence and obstruction of justice by not providing me the entirety of the video recordings that I ordered the NYPD to provide to me in furtherance of a criminal scheme to cover-up the illegal acts and omissions that were committed against me on 3/18/19 to which I just referred.

15.     At all times relevant herein, Defendant Vance, Jr. has been the Manhattan District Attorney and has been responsible for enforcing applicable laws that include New York State's Penal Code in New York City by commencing prosecutions.

16.     At all times relevant herein, Defendant Stephen Levin has been a member of the City Council, and employee of the City of New York. He was also the moderator of the Mayor's 10/18/17 town hall and I told Mr. Levin very clearly as he arrived to the site of that town hall on 10/18/17 that I was being illegally prevented from attending that town hall and that I sought his assistance with enabling me to exercise my constitutional right to attend that public forum. He

lied to me then as we talked on a public sidewalk outside of the building that hosted that town

hall by telling me that there was nothing that he could do to help me to be able to attend that

town hall. By not trying to enable me to attend that town hall in spite of the fact that he would be

its moderator, Mr. Levin then flagrantly violated 42 USC §1986, his constitutional oath as an

employee of the City of New York, New York City Charter §1116, NYPL §195.00, and my

Fourteenth Amendment due process and equal protection rights as he acted in concert with others

who were illegally preventing me from attending that town hall.

17.     At all times relevant herein, Defendants Ringel, Atcheson, Stribula, Miller, Jane Doe1

10/12/17, and Carrion were employees of the City of New York who worked for the Mayor's

CAU as Mr. Carrion was the commissioner of the Mayor's CAU.

18.     At all times relevant herein, Defendants Jessica Ramos and Dustin Ridener were

employees of the City of New York who worked for the Mayor's office.

19.     The defendants in this action who are people violated oaths that they were required to

take through the illegal acts and omissions that they committed against me on 10/12/17,

10/18/17, 10/25/17, and 3/18/19 in relation to my efforts to lawfully attend the Mayor's **a)**

10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public

hearing. The specific oaths that the defendants violated then in regards to me were those that

they were required to take upon **a)** joining the NYPD and/or **b)** otherwise working for the City of

New York. Those oaths required them to swear or affirm that they would perform their duties as

members of the NYPD and/or other personnel of the City of New York in accordance with the

U.S. Constitution and New York State Constitution to the best of their abilities. In regards to this

point, the Mayor's press office made a transcript available on the Internet of a swearing-in

ceremony for new members of the NYPD that the Mayor presided over on 10/8/15. That

transcript is available on the Internet at https://www1.nyc.gov/office-of-the-mayor/news/702-15/transcript-mayor-de-blasio-delivers-remarks-nypd-swearing-in-ceremony.

20.     The next screenshot shows an excerpt from that transcript that reflects how those new members of the NYPD pledged to uphold the U.S. and New York Constitution and to faithfully discharge their duties as members of the NYPD to the best of their abilities after the defendant in this action who are members of the NYPD most likely did the same before they committed illegal acts and omissions against me that this action concerns. Hindsight therefore confirms that they lied in the oaths that they took upon joining the NYPD to become part of a criminal mob as liars and con artists instead of joining the ranks of actual law-enforcement.



Mayor: I do hereby pledge – I'm sorry, I should say repeat after me – I do hereby pledge and declare –

Recruits: I do hereby pledge and declare –

Mayor: – to uphold the Constitution of the United States –

Recruits: – to uphold the Constitution of the United States –

Mayor: – and the Constitution of the State of New York –

Recruits: – and the Constitution of the State of New York –

Mayor: – and faithfully discharge my duties –

Recruits: – and faithfully discharge my duties –

Mayor: – as a New York City Police Officer –

Recruits: – as a New York City Police Officer –

Mayor: – to the best of my ability –

Recruits: – to the best of my ability –

Mayor: – so help me God.

Recruits: – so help me God.

21.     In a similar vein, other personnel of the City of New York are required upon working for the City of New York by New York State Civil Service Law §62 to take and file an oath or

affirmation in which they pledge and declare that they will support the U.S. and New York State Constitution and faithfully discharge the duties of their jobs with the City of New York to the best of their abilities. The terms of New York State Civil Service Law §62 are shown on the New York State Senate's web site at https://www.nysenate.gov/legislation/laws/CVS/62.

22.      On a closely related note, the following shows the terms of New York City Charter Section 435(a) that address the legal duties that all members of the NYPD have and underscores the fact that the defendants in this action who were members of the NYPD between 10/3/17 and 10/4/17 committed illegal acts and omissions against me in relation to my claims in this case by flagrantly violating and disregarding their legal duties as members of the NYPD:

> "**The police department and force shall have the power and it shall be their duty to preserve the public peace, prevent crime, detect and arrest offenders, suppress riots, mobs and insurrections, disperse unlawful or dangerous assemblages and assemblages which obstruct the free passage of public** streets, **sidewalks**, parks and places; **protect the rights of persons** and property, **guard the public health**, **preserve order at** elections and **all public meetings and assemblages**; subject to the provisions of law and the rules and regulations of the commissioner of traffic,* regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public as well as the proper protection of human life and health; **remove all nuisances in the public** streets, parks and **places**; arrest all street mendicants and beggars; provide proper police attendance at fires; inspect and observe all places of public amusement, all places of business having excise or other licenses to carry on any business; **enforce and prevent the violation of all laws and ordinances in force in the city**; and for these purposes **to arrest all persons guilty of violating any law or ordinance for the suppression or punishment of crimes or offenses**.

(boldface formatting added for emphasis)

23.      By committing the illegal acts and omissions against me that my claims in this action concern, the defendants who did so and were then personnel of the City of New York violated New York City Charter §1116 that requires them to be promptly fired and prohibited from working for the City of New York again.

24.      The individual defendants are being sued herein in their individual and official capacities.

25.     At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD and City of New York. They were acting for and on behalf of the NYPD, Mayor, Mr. Banks, HRA, and one another at all times relevant herein. While doing so, the defendants in this action who are members of the NYPD did so with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

26.     The individual defendants' acts hereafter complained of were carried out intentionally, recklessly, and oppressively with malice and egregious, callous, and wanton disregard of plaintiff's rights.

27.     At all relevant times, the individual defendants were engaged in joint ventures, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

## BACKGROUND FACTS

1.     I incorporate by reference the statements that I made in all of the preceding paragraphs as though fully set forth herein.

2.     In the interests of brevity and pursuant to FRCP Rule 10(c), I incorporate by reference as though fully set forth herein both **a)** the "Background Facts" section and **b)** the "Legal Standards and Additional Background Facts" section that appear in the following:

        a.     The First Amended Complaint that I filed in K4 on 10/5/20. That submission corresponds to docket number 4 in that case.

        b.     The complaint that I filed in K5 on 9/25/20. That submission corresponds to docket number 2 in that case.

c.    The complaint that I filed in K6. That submission corresponds to docket number 2 in that case.

## LEGAL STANDARDS

1.    I incorporate by reference the statements that I made in all of the preceding paragraphs as though fully set forth herein.

2.    In the interests of brevity and pursuant to FRCP Rule 10(c), I incorporate by reference as though fully set forth herein the "Legal Standards" section and **b)** the that appear in the following:

a.    The First Amended Complaint that I filed in K4 on 10/5/20. That submission corresponds to docket number 4 in that case.

b.    The complaint that I filed in K5 on 9/25/20. That submission corresponds to docket number 2 in that case.

c.    The complaint that I filed in K6. That submission corresponds to docket number 2 in that case.

3.    The following findings that were issued in _Walsh v. Enge_, 154 F. Supp. 3d 1113 (D. Or. 2015) concern prospective exclusions from public forums and are therefore extremely relevant to my claims in this action that concern my having been illegally and prospectively barred without due process from attending the Mayor's **a)** 10/12/17 town hall, **b)** 10//18/17 town hall, and **c)** 10/25/17 resource fair as well as the fact that I was illegally and prospectively barred without due process from continuing to be on the grounds of City Hall on 3/18/19 after I was illegally ejected from the Mayor's 3/18/19 public hearing:

> This case requires the Court to decide whether the First Amendment allows a Mayor or his or her designee, acting pursuant to a city ordinance, to exclude a person, potentially indefinitely, from attending future City Council meetings to which the public is otherwise

invited to attend and present their opinions simply because the person has been disruptive at previous meetings. The First Amendment protects, among other things, "freedom of speech" and "petitioning for a governmental redress of grievances." U.S. Const. amend. I. The First Amendment is incorporated into the Fourteenth Amendment and thus applies to the states and local governmental bodies. *Gitlow v. New York,* 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). No appellate opinion of which this Court is aware has ever held that the First Amendment permits prospective exclusion orders from otherwise public city council meetings. A presiding officer may remove a disruptive individual from any particular meeting, and a sufficiently disruptive person may even be prosecuted for such conduct if public law permits. But no matter how many meetings of a city council a person disrupts, he or she does not forfeit or lose the future ability to exercise constitutional rights and may not be prospectively barred from attending future meetings. Our democratic republic is not so fragile, and our First Amendment is not so weak.

4.      The following findings from *Frain v. Baron*, 307 F. Supp. 27 (E.D.N.Y. 1969) is also

relevant to my claims in this action for reasons that are sufficiently self-explantory:

> "Fear of disorder, which the City cites to justify its policy, has been ruled out as a ground for limiting peaceful exercise of First Amendment rights. Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963)."

5.      The following findings from *Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134 (2d

Cir. 2010) address scenarios in which supervisors like **a)** Defendants de Blasio, Carrion,

Redmond, and Stribula act like mob bosses while using subordinates and others that include **b)**

Defendants Ringel, Nieves, Atcheson, and Baez like henchmen, agents, and proxies to carry out

their dirty work to commit criminal acts against others and otherwise violate the rights of others:

> We believe the court erred in this instruction. In *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 116 (2d Cir. 2000), we stated, "Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity." We then rejected the argument that in order to satisfy the causation requirement, a plaintiff must show that the particular individuals who carried out an adverse action knew of the protected activity. *Id.* at 117. Instead, we indicated that a jury may
>
> find retaliation even if the agent denies direct knowledge of a plaintiff's protected activities, for example, so long as the jury finds that the circumstances evidence knowledge of the protected activities or the jury concludes that an agent is acting explicitly or implicit[ly] upon the orders of a superior who has the requisite knowledge.

*Id. See also* <u>Gorman-Bakos v. Cornell Coop Extension of Schenectady County</u>, 252 F.3d 545, 554 (2d Cir.2001) (noting that a plaintiff can establish causation by showing protected activity was closely followed in time by adverse employment action); <u>Kessler v. Westchester County Dep't of Soc. Servs.</u>, 461 F.3d 199, 210 (2d Cir.2006). *Gordon* directly addressed the situation in which a corporate agent *carries out* an adverse employment action on the *orders,* explicit or implicit, of a superior with knowledge that the plaintiff has engaged in a protected activity. However, in order to show causation in the sense required by *McDonnell Douglas* — that is, a causal connection between the protected activity and the adverse employment action — it is not necessary that the supervisor who has knowledge of the plaintiff's protected activities have *ordered* the agent to impose the adverse action. A causal connection is sufficiently demonstrated if the agent who decides to impose the adverse action but is ignorant of the plaintiff's protected activity acts pursuant to *encouragement* by a superior (who has knowledge) to disfavor the plaintiff.

6.    <u>Gordon v. New York City Bd. of Educ.</u>, 232 F.3d 111 (2d Cir. 2000) is cited in <u>Henry v. Wyeth Pharmaceuticals, Inc.</u> and includes the following related findings:

> The lack of knowledge on the part of particular *individual agents* is admissible as some evidence of a lack of a causal connection, countering plaintiff's circumstantial evidence of proximity or disparate treatment. *See* <u>Alston,</u> 14 F.Supp.2d at 312-13. A jury, however, can find retaliation even if the agent denies direct knowledge of a plaintiff's protected activities, for example, so long as the jury finds that the circumstances evidence knowledge of the protected activities or the jury concludes that an agent is acting explicitly or implicit upon the orders of a superior who has the requisite knowledge. *See id.* at 311. This is so, moreover, regardless of whether the issue of causation arises in the context of plaintiff's satisfaction of her *prima facie* case or as part of her ultimate burden of proving that retaliation "played a motivating role in, or contributed to, the employer's decision." <u>Renz v. Grey Advertising, Inc.</u>, 135 F.3d 217, 222 (2d Cir.1997)

> Accordingly then, to the extent that the district court charged the jury that the very *agents* of the Board who engaged in retaliatory actions against Gordon had to know of her protected activity, it erred.

7.    The following findings from <u>Housing Works, Inc. v. Turner</u>, 00 Civ. 1122 (LAK)(JCF) (S.D.N.Y. Sept. 15, 2004) address an ongoing pattern of retaliation and how retaliatory intent may be proven that includes by a pattern of unequal treatment without any rational basis:

> The plaintiff can demonstrate a causal connection between its protected activities and the defendants' adverse actions either "indirectly by means of circumstantial evidence, . . . or directly by evidence of retaliatory animus." <u>Cobb v. Pozzi</u>, 363 F.3d 89, 108 (2d Cir. 2003) (quoting <u>Morris v. Lindau</u>, 196 F.3d 102, 110 (2d Cir. 1999)); <u>Kantha v. Blue</u>, 262 F. Supp. 2d 90, 103 (S.D.N.Y. 2003). Summary judgment is inappropriate when

"questions concerning the employer's motive predominate the inquiry." <u>Morris, 196 F.3d at 110</u>. "Nonetheless, we have held that a plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link . . . Instead, he must produce `some tangible proof to demonstrate that [his] version of what occurred was not imaginary.'" <u>Cobb, 363 F.3d at 108</u> (quoting <u>Morris, 196 F.3d at 111</u>)).

A plaintiff's circumstantial evidence of retaliation could include the timing of the defendant's actions, such as when the alleged retaliation closely follows the plaintiff's speech. <u>Morris, 196 F.3d at 110</u>; <u>McCullough v. Wyandanch Union Free School District, 187 F.3d 272, 280 (2d Cir. 1999)</u>. The plaintiff can also proffer evidence of unequal treatment, or an ongoing campaign of retaliation. <u>Hampton Bays Connections, Inc. v. Duffy, 127 F. Supp. 2d 364, 374 (E.D.N.Y. 2001)</u>; <u>Economic Opportunity Commission of Nassau County, Inc. v. County of Nassau, 106 F. Supp. 2d 433, 437 (E.D.N.Y. 2000)</u> (citing <u>Gagliardi v. Village of Pawling, 18 F.3d 188, 195 (2d Cir. 1994)</u>).

The defendants' arguments with respect to causation will be discussed in relation to each of the adverse actions alleged.

8.      The following is a relevant excerpt from *Musso v. Hourigan*, 836 F.2d 736 (2d Cir. 1988).

> "As a general rule, a government official is not liable for failing to prevent another from violating a person's constitutional rights, unless the official is charged with an affirmative duty to act. *See, e.g., Rizzo v. Goode,* 423 U.S. 362, 376-77 (1976); *Doe v. New York City Dep't of Social Servs.,* 649 F.2d 134, 141 (2d Cir.1981)."

9.      42 USC §1986 includes the following relevant provisions that are applicable partly about New York City government personnel who had opportunities to intervene on my behalf to attend the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing:

> "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action"

10.     New York City Charter §1116 includes the following provisions that are applicable partly

about New York City government personnel who had opportunities to intervene on my behalf to attend the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing and did not do so:

    a.      Any council member or other officer or employee of the city who shall wilfully violate or evade any provision of law relating to such officer's office or employment, or commit any fraud upon the city, or convert any of the public property to such officer's own use, or knowingly permit any other person so to convert it or by gross or culpable neglect of duty allow the same to be lost to the city, shall be deemed guilty of a misdemeanor and in addition to the penalties imposed by law and on conviction shall forfeit such office or employment, and be excluded forever after from receiving or holding any office or employment under the city government.

    b.      Any officer or employee of the city or of any city agency who shall knowingly make a false or deceptive report or statement in the course of duty shall be guilty of a misdemeanor and, upon conviction, forfeit such office or employment.

11.    NYPL §195.00 concerns official misconduct and includes the following terms that are applicable partly about New York City government personnel who had opportunities to intervene on my behalf to attend the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing and did not do so:

A public servant is guilty of official misconduct when, with intent to obtain a benefit or deprive another person of a benefit:

1. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized; or

2. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.

Official misconduct is a class A misdemeanor.

## STATEMENT OF FACTS

1.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.     The illegal acts and omissions that were committed against me on 10/12/17, 10/18/17, 10/25/17, and 3/18/19 at the sites of the town hall meetings, a resource fair meeting, and a public hearing that the Mayor conducted that concern my claims in this action were a microcosm of a much larger, pervasive, systemic, and longstanding campaign and pattern of illegal customs, practices, and policies that included flagrant violations of my First Amendment and Fourteenth Amendment rights that were jointly devised, coordinated, implemented, executed, and covered-up by senior decision-making members of the NYPD and members of the Mayor's staff against me in relation to my efforts to lawfully attend public town hall, public resource fair, and public hearings in accordance with my constitutional rights that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, and other City of New York and State of New York personnel. The Mayor, Defendant O'Neill, and other City of New York, State of New York, and federal government personnel that include members of the City Council such as Defendant Levin tacitly condoned those illegal acts and omissions against me.

3.     What follows shows an e-mail message that I received on 9/27/17 at 9:49 am that was sent to me by someone named Judith Lê while she then worked for the CCRB as an investigator. She sent me that e-mail message in response to an e-mail message that I sent to her on that date at 9:27 am in which I apprised her that Defendants Gerola, Mason, and Atcheson acted in concert on 9/26/17 to illegally prevent me from attending the public town hall meeting that the Mayor conducted then in Manhattan with Mr. Banks and other government officials.  In her e-mail

message to me on 9/27/17 at 9:49 am, Ms. Lê claimed that the Mayor's staff and Mayor's CAU

were then in charge of admittance to town hall meetings that the Mayor conducted.

> **From:** "Le, Judith (CCRB)" <JLe@ccrb.nyc.gov>
> **Subject:** RE: New viewpoint discrimination by NYPD's Howard Redmond & Lt. Nieves
> at Mayor's 8/30 town hall in Brooklyn
> **Date:** September 27, 2017 at 9:49:27 AM EDT
> **To:** Towaki Komatsu <towaki_komatsu@yahoo.com>
>
> Hi Mr. Komatsu,
>
> As we previously discussed, unfortunately, admittance in and out of the Town Hall
> events falls outside the jurisdiction. Again, if you'd like, I can forward the complaint to
> Internal Affairs, or recommend that you speak to the Mayor's staff/Community Affairs
> office, as they are in charge of admittance to the Town Halls.
>
> Best,
>
> Judith Lê
>
> Investigator, Squad 8
> Civilian Complaint Review Board
> 100 Church Street, 10th Floor
> New York, NY 10007
> (212) 912-2081

4.     On 9/28/17, the Mayor conducted a town hall in Harlem during which members of the

audience did a fantastic job of criticizing the Mayor about various matters. A Black woman was

even able to rise to the occasion to march to the center of the room in which the Mayor

conducted that town hall as it was being conducted to lawfully express her irritation about

something to the audience. All of that and more were recorded on video. I wasn't recorded on

video attending that town hall because Defendant Gerola, Mason, NYPD Officer Jane Doe4

10/12/17, and others illegally prevented me from attending that town hall after I arrived to the

site of that public forum to do so in accordance with my constitutional rights.  People who

attended that town hall were illegally ejected from it while that was also recorded on video. That

occurred mainly because the Mayor has proven to be incapable of tolerating valid criticism in contrast to his talents and apparent addiction for violating civil rights at public forums that is an criminal addition that he appears to share with several of the other defendants in this action. What I just discussed confirms that I had a Fourteenth Amendment due process and equal right to attend the town hall meetings, public resource fair meeting, and public hearing that the Mayor conducted on 10/12/17, 10/18/17, 10/25/17, and 3/18/19 and be as vocal and critical of the Mayor, his administration, and the NYPD as those who attended the Mayor's 9/28/17 town hall in Harlem were.

5.      When I tried to attend the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing, I had ongoing litigation partly through my HRA lawsuit and K1 (this applies just to the Mayor's 3/18/19 public hearing) in which I was pursuing entirely valid claims against defendants in this action for having been previously barred from public forums that the Mayor and Mr. Banks conducted that included town hall and resource fair meetings. Defendants Redmond, Carrion, and other senior members of the Mayor's staff were aware of my HRA lawsuit as early as 6/29/17 according to e-mail records that I was provided by the Mayor's office. I'm referring to what appears in the City Hall email excerpts. Much of those emails that are shown in that PDF file were provided to me by the Mayor's office with redactions applied to them and I urge this Court to immediately compel the City of New York to immediately provide me non-redacted and unedited copies of the e-mail messages that are shown in that PDF file to better facilitate my ability to prove my claims in this action on the merits. As a reminder, the following is a link to that PDF file on the Internet:

https://drive.google.com/file/d/16wSpJ7kk-aOtx7Bkg8MeqUpyWd5Io2hR/view?usp=sharing

6.      The following is a screenshot from the e-mail message that Defendant Redmond sent

about me on 6/28/17 at 2:18 pm that appears on page 8 in that PDF file:



From: Redmond, Howard DI.
Sent: Wednesday, June 28, 2017 2:18 PM
To: Phillips, Eric; Ramos, Jessica; Hagelgans, Andrea; Casca, Michael; Arslanian, Kayla; Carrion, Marco A.; Wolfe, Emma
Subject: Re: town halls

7.      That e-mail concerns illegal acts that he and other members of the NYPD and Mayor's CAU that include Defendants Nieves, Gerola. Ringel, and Miller committed against me on 4/27/17 that caused me to be illegally barred from the town hall meeting that the Mayor conducted on 4/27/17 in Queens while I conducted myself in an entirely lawful manner. Additional e-mail messages appear in that PDF file that were sent by Defendant Ramos in which

she blatantly lied about me and my HRA lawsuit as well as other matters about me to illegally cover-up the illegal acts and omissions that were committed against me that had caused me to be barred from attending town hall meetings and resource fair meetings that the Mayor conducted on 4/27/17, 5/23/17, and 6/8/17 while I had ongoing litigation against HRA that was unquestionably protected activity.

8.      The next screenshot is from the e-mail message that Defendant Ramos sent on 6/28/17 at 3:27 pm to a whistleblower news censor in journalism named Erin Durkin who works for a news organization named Politico. Ms. Durkin worked for the New York Daily News on 6/28/17.

**From:** Ramos, Jessica
**Sent:** Wednesday, June 28, 2017 3:27 PM
**To:** Erin Durkin
**Cc:** Phillips, Eric
**Subject:** RE: town halls

Hi Erin,

Mr. Komatsu has never RSVP'd to a town hall. He is allowed to enter the overflow room.

9.      The remarks that Ms. Ramos expressed in the preceding screenshot is a smoking gun and confirms that she and others were illegally subjecting me to an illegal prior restraint of my First Amendment and Fourteenth Amendment rights in regards to public forums that the Mayor was then conducting that was applicable to town hall meetings and additional types of public forums that he was conducting, such as public resource fair meetings.

10.     The following lists what some of my primary objectives were in broad terms as I sought to lawfully attend the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource

fair, and **d)** 3/18/19 public hearing and testify in the Mayor's 3/18/19 public hearing:

      a.      I sought to engage in extensive protected whistleblowing about matters of both public concern and private matters while attending those public forums as **a)** reporters, members of the public, and numerous government officials were present and nearby and **b)** those public forums were recorded on video that was broadcast on the Internet that could greatly amplify the message that I was trying to widely broadcast through word-of-mouth advertising.

      b.      The subject matter of whistleblowing that I intended to lawfully engage in while attending those public forums largely concerned the sum and substance of my HRA lawsuit that was a complex hybrid proceeding, illegal acts and omissions that had been committed against me since 4/11/17 in regards to public forums that the Mayor and Mr. Banks conducted and also included the scheduled 4/12/17 oral arguments hearing in my HRA lawsuit that Jeffrey Mosczyc illegally caused me to be deprived of just 1 day prior to that scheduled hearing.

      c.      The subject matter of whistleblowing that I intended to lawfully engage in while attending those public forums also the sum and substance of the face-to-face conversations that I had with the Mayor and Mr. Banks prior to 10/12/17 that dated back to 3/1/16 with respect to Mr. Banks and 3/15/17 with respect to the Mayor as both the Mayor and Mr. Banks had proven to be con artists as far as I was concerned. I sought to lawfully and widely apprise voters and potential voters as well as political rivals of the Mayor and members of the City Council while attending public forums that the Mayor conducted with others that New Yorkers sorely needed a complete overhaul of New York City's government personnel and that the primary way to get that done was by

immediately firing the Mr. De Blasio, his entire administration, and the entire City Council as well as other New York City government personnel through the power of their votes.

d.      Clarification about matters that I intended to engage in whistleblowing about while attending such public forums that the Mayor conducted is readily apparent by the sum and substance of the testimony that I gave during public hearings that committees of the City Council conducted on the following dates that were recorded on video:

    i.      4/27/17: General Welfare Committee

    ii.     6/14/17: Public Safety Committee

    iii.    6/19/17: Oversight and Investigations Committee

    iv.     6/27/17: General Welfare Committee

    v.      10/2/17: Committee on Veterans

e.      Further clarification about matters that I intended to engage in whistleblowing about while attending such public forums that the Mayor conducted is readily apparent by the sum and substance of the conversations that I had with the following government officials that were recorded on video and otherwise on audio:

    i.      3/15/17 and 7/18/17: With the Mayor during the town hall and resource fair meetings that he conducted on those dates.

    ii.     6/26/17: With Defendant O'Neill at the New York City Bar Association.

    iii.    10/3/17: With Defendant Vance, Jr. at the New York City Bar Association.

    iv.     10/13/17: With Defendant Shorris at the New York Law School.

f.      Further clarification about matters that I intended to engage in whistleblowing about while attending such public forums that the Mayor conducted is readily apparent by

the sum and substance of what I discussed during numerous 50-h hearings that I participated in with lawyers about my claims against the City of New York and other defendants in this action that I was permitted to record on audio during most of those hearings. I had one such 50-h hearing on 10/19/17.

g.      Additional whistleblowing that I intended to engage in while attending such public forums that the Mayor conducted concerned the lawsuit of *Sherrard v. City of New York*, No. 15-cv-7318 (MB) (S.D.N.Y. Jun. 13, 2018) that was commenced against Defendant Redmond before he committed perjury in relation to it about material matters during a deposition on 5/19/17 and as he testified at trial in it.

h.      Further whistleblowing that I intended to engage in while attending such public forums that the Mayor conducted concerned the needs of other tenants who resided in the building in which I reside that is housing for military veterans that is subsidized by taxpayers and terribly mismanaged by Urban through a contract it has with HRA that has illegally shirked its legal duty to provide proper oversight of how Urban operates as the landlord of that building. Concerning this point, I intended to voluntarily serve as an advocate for the needs of such other tenants in that building while attending those public forums before Mr. Banks, Ann Marie Scalia of HRA, and Urban's personnel significantly caused or contributed to the death of one of those tenants that occurred on or about 8/11/17 by depriving him of an air conditioner in his apartment. His name is Robert Vargas. He was both a U.S. Marines ad Army National Guard military veteran who had suffered from numerous strokes. I sent an e-mail message to Mr. Banks and Ms. Scalia on 8/3/20 in which I urged them to immediately cause an air conditioner to be installed in Mr. Vargas' apartment in the building in which I reside. Instead, members of the New

York Fire Department broke open the front door to Mr. Vargas' apartment on 8/11/20 and discovered that Mr. Vargas had died in his apartment while there was no air conditioner installed in it. Prior to that date, I twice testified on Mr. Vargas' behalf during public hearings that the City Council conducted. Mr. Banks attended one of them as I testified about Mr. Vargas. Mr. Vargas' death occurred after I was viciously assaulted in the living room of my apartment on 7/2/16 that was largely due to HRA and Urban having illegally subjected me to a bait-and-switch fraud and forgery concerning a binding apartment lease agreement that I signed on 2/16/16 with Urban to be issued apartment 4C in the building in which I reside in its entirety instead of being a shared apartment. If not for that illegal bait-and-switch, I wouldn't have had my 7/2/16 assailant as my roommate because I wouldn't' have had any roommate in the apartment that I would otherwise have resided in within the building in which I reside. That 7/2/16 assault occurred after that assailant tried to assault me on 5/12/16 in that same living room. I reported that attempted assault and actual assault to try to get my roommate immediately evicted from where I resided. However, that never happened because of criminal negligence by HRA and Urban's personnel that HRA has steadfastly illegally covered-up with Mr. Banks' knowledge and approval. This certainly was also a matter that I intended to engage in whistleblowing about during the Mayor's public forums to befit the public's interests in public safety as well as proper procurement and oversight practices.

i.

j.      is readily apparent by the sum and substance of what I discussed during numerous 50-h hearings that I participated in with lawyers about my claims against the City of New York and other defendants in this action that I was permitted to record on audio during

most of those hearings. I had one such 50-h hearing on 10/19/17.

**Facts about the Mayor's 10/12/17 town hall:**

11.     On 10/12/17, I arrived sufficiently early and prior to 5:50 pm to the site of the Mayor's 10/12/17 town hall to be granted access to that town hall in accordance with my constitutional rights and other applicable laws with respect to being able to attend that town hall from within the room in which it would be conducted. Defendants in this action with whom I talked outside of and in close proximity to the building that hosted that town hall shortly before it began in regards to my efforts to lawfully attend that town hall included, but wasn't limited to the following defendants in this action:

> Stribula, Miller, Mason, Lance, Ranieri, Suzuki, Jane Doe1 10/12/17, NYPD Officer
> John Doe4 10/12/17

12.     The next screenshot is from the video that I recorded on 10/12/17 at 5:51 pm that has the filename of "IMG_2851.MOV" as I stood next to a line of people that had formed in which I had previously lawfully waited behind the last person shown in that line to be granted access to the school that hosted the Mayor's 10/12/17 town hall in order to be accorded my constitutional right of access to that town hall with respect to the room in which it would be conducted.



13.     The primary reason why I was no longer in that line when I recorded this video is because Defendant Stribula illegally coerced me to leave that line after I was lawfully engaged in protected activity by distributing whistleblowing literature against the Mayor's administration, members of the Mayor's NYPD security detail, HRA's business partners, and others while I was in that line to those who stood in front and behind me in it. I recall having presciently told other members of the public who were then in that line with me that I anticipated that members of the Mayor's staff and members of the Mayor's NYPD security detail would resume their illegal practice at that town hall of illegally preventing me from attending it while I conducted myself in an entirely lawful manner in contrast to them. Defendant Stribula and others proved that I was totally right. Ms. Stribula coerced me to leave that line by threatening me that she would

summon Defendant Redmond to come to where she and I were to force me to leave it if I didn't acquiesce to her illegal demand for me to leave that line. I regrettably left that line in response to that threat. In hindsight, I should have stayed in that line and lawfully forced my way into that school to attend that town hall while lawfully engaging in self-defense against everyone who initiated physical contact with me to continue to violate my constitutional right to attend that town hall.

14.     While I was in that line, Defendant Jane Doe1 10/12/17 illegally refused to issue me an admission ticket for that town hall in flagrant violation of my rights pursuant to the First Amendment, Fifth Amendment, and Fourteenth Amendment and other applicable laws as she illegally discriminated against me by doing so.

15.     All of the following defendants illegally refused to intervene on my behalf on 10/12/17 at the site of that town hall and otherwise simply didn't do so to enable me to attend that town hall as they acted in concert with Defendant Stribula to prevent me from attending that town hall as co-conspirators for that illegal scheme:

> Defendants Miller, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17,
> NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer
> John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6
> 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD
> Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17

16.     All of the defendants that I just identified had a realistic opportunity to have intervened on my behalf on 10/12/17 to enable me to attend that town hall. They also had a legal, ethical, inherent, and affirmative duty to have then intervened on my behalf for that purpose that is confirmed by what I discussed in the Legal Standards section about them and the jobs that they then held. Through my remarks to them on 10/12/17 at the site of that town hall as well as through their own ears and eyes with which they could and should have otherwise made

independent assessments about the illegal acts and omissions that were being perpetrated against me in their immediate presence with respect to my efforts to lawfully attend that town hall, sufficient information was available to all of those defendants to have spurred them to have properly intervened on my behalf to attend that town hall. No one did so however as all of them exhibited acceptance of that illegal practice against me. Instead, they allowed other members of the public to attend that town hall who arrived to the site of that town hall after I did for that purpose. That violated my Fourteenth Amendment due process and equal protection rights largely because that was discriminatory against me.

17.     The next screenshot is from the video that I recorded on 10/12/17 at 7:25 pm that has the filename of "IMG_2587.MOV" as I continued to wait on a sidewalk located next to where I had previously been in line to attend the Mayor's 10/12/17 town hall. Defendant Miller is shown as he stood next to Paola Ruiz of the Mayor's CAU while he was aware that I sought to be able to lawfully attend that town hall.



18.     The next screenshot is from the video that I recorded on 10/12/17 at 7:31 pm that has the filename of "IMG_2590.MOV" as I stood on a sidewalk near Defendant Stribula and an alleyway that led from that sidewalk to an entrance on the side of the school that hosted the Mayor's 10/12/17 town hall that was used to grant members of the public access to that school to attend that town hall. A copy of that video is available on the Internet at

https://drive.google.com/file/d/1s99q8odr_GWXNbv7ksuX04KKw75pDr8b/view?usp=sharing.

The back of Ms. Stribula's head and a video security camera that was then attached to that school are shown in that screenshot. I urge this Court to immediately issue an order that will compel the City of New York to immediately provide me all of the video recordings that were recorded by that video security camera on 10/12/17 between 5 pm and 11 pm to better facilitate my ability to prove my claims in this action about the Mayor's 10/12/17 town hall.



19.     The next screenshot is of a draft e-mail message that I saved on 10/12/17 at 6:26 pm to

record information about members of the NYPD that I had just talked with as I urged them to

intervene on my behalf to enable me to attend that town hall. That e-mail message has the last

names of Defendants Ranieri and Suzuki in it with their NYPD shield numbers. They stood near

me when I had those conversations with them.



Towaki Komatsu <Towaki_Komatsu@yahoo.com>    Drafts - Yahoo!    October 12, 2017 at 6:26 PM

(No Subject)

Ranieri
24361

Suzuki
7373

20.     As I talked with Defendant Stribula on 10/12/17 at the site of that town hall, she lied to
me by claiming that I had rejected an offer that she claimed I had received to be provided legal
assistance. I never received such an offer.


**Facts about the Mayor's 10/18/17 town hall:**

**Facts about the press conference that was conducted on 10/3/17 in front of City Hall that victims of NYPD abuse conducted and concerned reforming the NYPD as I was illegally prevented from attending it:**

1.       On 10/3/17, Defendants Baez, Hansen, and Mason all were personally involved in illegally prevented me from being able to observe a public forum that New York City Councilman Jumaane Williams and others held at noon in that same location that involved "taking a knee" in front of the main steps of City Hall in support of civil rights and reforming the NYPD. Mr. Baez was the first member of the NYPD who didn't let me attend that public forum, after I met him inside of the entrance to City Hall located by Park Row. After he told me, "You know why" in response to my question to him about why I could not attend that public forum, I immediately headed to the entrance to City Hall located by Broadway, where I met both Mr. Hansen and Mr. Mason at the guardhouse located just inside of that entrance. Both of them also refused to let me attend that public forum, as they let others pass through that entrance toward City Hall. Due to their unlawful actions against me City Hall on 10/3/17, Mr. Baez, Mr. Hansen,

and Mr. Mason all violated 18 U.S.C. § 241, 18 U.S.C. § 242, 18 U.S.C. § 245(b)(5), and my First and Fourteenth Amendment rights. The next screenshot is from a photograph that I took with my cell phone at 12:17 pm on 10/3/17. It shows Mr. Hansen standing next to the guardhouse located just inside of the Broadway entrance to City Hall while Mr. Hansen was illegally refusing to let me proceed to the public forum that New York City Councilman Jumaane Williams and others held in front of the steps that lead to City Hall.

2.      The next screenshot is from a video that I recorded with my cell phone at 12:25 pm on 10/3/17 while standing a short distance inside of the Broadway entrance to City Hall. It shows Mr. Mason standing next to the guardhouse located just inside of the Broadway entrance to City Hall while he was illegally refusing to let me proceed to the public forum that New York City Councilman Jumaane Williams and others held in front of the steps that lead to City Hall.



3.      The next screenshot was created from a video that I recorded with my cell phone at 12:25

pm on 10/3/17 while standing a short distance inside of the Broadway entrance to City Hall. It shows Mr. Mason standing next to the guardhouse located just inside of the Broadway entrance to City Hall while he was illegally refusing to let me proceed to the public forum that New York City Councilman Jumaane Williams and others held in front of the steps that lead to City Hall.



4.      The next screenshot is from a video that I recorded with my cell phone at 12:43 pm on 10/3/17 while standing a short distance inside of the Broadway entrance to City Hall and in front of the guardhouse located there.



5.     The video that screenshot is from was recorded as I clearly asked Mr. Hansen the following pertinent question about the public forum that New York City Councilman Jumaane Williams held on that date in front of the steps that lead to City Hall:

"So Mr. Hansen…this meeting about "Take-A-Knee"….Can I please attend?"

6.     Instead of answering my question then, Mr. Hansen ignored it and walked into the nearby NYPD guardhouse.

**Facts about the Mayor's 10/4/17 Town Hall:**

1.     Everything that I have discussed thus far in this complaint about whistleblowing and litigation that I engaged in were matters about which I intended to engage in protected whistleblowing while attending the Mayor's 10/4/17 town hall largely to try to engage in word-

of-mouth advertising against the Mayor's administration and its business partners that I hoped would spread quickly, widely, and sufficiently enough as I hoped its sum and substance would persuade enough people to fire the Mayor in the 2017 New York City government elections that would give New Yorkers leadership instead all that the Mayor and his administration represent. By having New Yorkers throw out Bill de Blasio and his administration like a disease by the power of their votes, I hoped that new management at the Mayor's office would clean house across New York City's government and with its business partners to usher in proper governance. Among other things, that would require Urban's contract with HRA to be cancelled.

2.      On 10/4/17, I lawfully stood on a public sidewalk next to the school that hosted the Mayor's 10/4/17 town hall as I lawfully waited in a line with other members of the public to be issued an admission ticket for the Mayor's 10/4/17 town hall that would enable me to attend it from within the room in which it was conducted as it was conducted. While doing so, I distributed various literature that I had prepared and brought with me to members of the public nearby that contained factual information that was critical of the Mayor's administration, NYPD, the Mayors administration's business partners, and others. While doing so, those who I distributed that information to were appreciative of that. I also told several of them then that I was a whistleblower against the Mayor's administration, NYPD, HRA, business partners of the Mayor's administration, and others and that I then had ongoing litigation against HRA. I also told them then that I had illegally and repeatedly been prevented from attending town hall and resource fair meetings that the Mayor had been conducting with others while I had been conducting myself in a lawful manner and that I expected that I would again be prevented from doing so by being illegally prevented from attending the Mayor's 10/4/17 town hall.

3.      I recall that as I waited in that area before the Mayor's 10/4/17 town hall began,

Defendants John Doe1, John Doe2, and Nick Gulotta all refused to issue me an admission ticket for that town hall and instead mostly ignored me as they issued admission tickets to others who were in the same line as me and in back of me for that town hall as they illegally discriminated against me in the process. As that occurred, I recall that I talked with both Defendant Hill and Bronx DA John Doe bodyguard about the fact that I was being illegally prevented from attending the Mayor's 10/4/17 town hall. Although I was aware then that both of them were required to intervene on my behalf to enable me to attend that town hall, neither of them made any attempt to do so.

4.      While I was being illegally prevented from attending that town hall, that was occurring in the immediate presence of the following additional defendants who also illegally didn't intervene to enable me to attend that public forum:

> Defendants Mason, Hansen, NYPD Officer John Doe1 10/4/17, NYPD Officer John Doe2 10/4/17, Nieves.

5.      The next screenshot is from a video recording that I recorded on 10/4/17 at 7:23 pm that shows Defendant Mason as he made a hand gesture toward me that is clearly known to mean to stay away. He made that gesture to me as he stood just inside of the entrance to the school that hosted the Mayor's 10/4/17 town hall. Defendant Hansen is also partially shown in this screenshot as he was illegally preventing me from entering that school to attend the Mayor's 10/4/17 town hall.



6.      The next screenshot is from a video recording that I recorded on 10/4/17 at 6:55 pm that shows Defendant Mason as he and Defendant Hansen stood near one another just inside of the entrance to the school that hosted the Mayor's 10/4/17 town hall while they were aware that I was being prevented from attending that town hall while I was conducting myself lawfully as they illegally made no attempt to allow me to attend that public forum.



7.      The next screenshot is from a photograph that I took on 10/4/17 at 6:57 pm that shows

Defendants Nieves, Mason, and Hansen as they stood near one another just inside of the entrance

to the school that hosted the Mayor's 10/4/17 town hall while they were aware that I was being

prevented from attending that town hall while I was conducting myself lawfully as they illegally

made no attempt to allow me to attend that public forum. Mr. Nieves is partially shown on the

left in that screenshot. NYPD John Doe1 10/4/17 appears on the far-right in that screenshot and

also illegally then didn't intervene on my behalf.



8.     The next screenshot is from a video recording that I recorded on 10/4/17 at 6:03 pm that shows Defendant Hill as she and I stood in front of the entrance to the school that hosted the Mayor's 10/4/17 town hall. I was then pointing out to her that I was again illegally being prevented from attending a public forum then and there that the Mayor was about to conduct as I was referring to the Mayor's 10/4/17 town hall. This screenshot clearly shows her NYPD badge.



9.      The next screenshot is from a video recording that I recorded on 10/4/17 at 6:55 pm that shows Defendant Gulotta in the top-left corner while he was inside of the school that hosted the Mayor's 10/4/17 town hall after he had previously been outside of it on that date and was among others who were involving in granting members of the public access into that school to attend that town hall while illegally bypassing me for that same purpose in violation of my

constitutional rights to attend that town hall.



10.     Mr. Gulotta was previously involved in treating me exactly like that at earlier town hall meetings that the Mayor conducted. He did so previously on 6/8/17 at the site of the Mayor's town hall then. He was also present on 4/27/17 at the site of the Mayor's town hall while I was being illegally prevented from attending it by Defendant Redmond and others while Mr. Gulotta was aware of that and illegally didn't try to intervene on my behalf to enable me to attend that town hall. That occurred after I had registered in advance to attend that 4/27/17 town hall during a telephone conversation that I had with him a few days prior to 4/27/17.

11.     To close out this section, it is worth pointing out that the New York City 2017 general elections were held in November of 2017 and likely heavily factored into the decisions that were made to commit the illegal acts and omissions against me on 10/3/17 and 10/4/17 in relation to my efforts to have lawfully attended the public forums that this complaint concerns to minimize, marginalize, and murder my First Amendment and Fourteenth Amendment right to lawfully

assassinate the character of the Mayor, members of his NYPD security detail, Mr. Banks, other personnel of HRA, and others as they ran for re-election and otherwise stood to benefit from Bill de Blasio being re-elected as New York City's Mayor. The timing of the illegal acts that continued to be perpetrated against me on 10/3/17 and 10/4/17 truly matters in that sense.

## CAUSES OF ACTION

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

**CLAIM #1:**      Violations of the First Amendment right of access to a public forum, to protest in a public forum, to record audio and video recordings in a public forum, to take photographs in a public forum, to receive information in a public forum, to have the opportunity to talk with journalists in a public forum, to distribute whistleblowing literature in a public forum, to engage in lawful assembly in a public forum, to engage in freedom of expression in a public forum, to otherwise engage in whistleblowing and criticism of government officials in a public forum, to engage in expressive association, and to petition government officials in a public forum for redress of grievances

**A.  For my 10/12/17 claims:**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      I also incorporate by reference as though fully set forth herein the decision that was issued on 5/19/20 in *Dunn v. City of Fort Valley,* No. 19-cv-287(TES) (M.D. Ga. May 19, 2020) due to relevant findings it contains about First Amendment rights in public forums, supervisory

liability, and other pertinent things.

3.       My right to lawfully protest in a public forum in a manner that doesn't disrupt how that public forum is conducted while valid time, place, and manner restrictions do not exist to prohibit such protest in a public forum was acknowledged the following remark that Judge Schofield expressed in the decision that she issued in _Gonzalez v. City of New York_, No. 14 Civ. 7721 (LGS) (S.D.N.Y. Sept. 29, 2016):

> "Two branches of First Amendment claims are relevant to the present case: (a) interference with the right to protest in a public forum and (b) retaliation for exercising First Amendment rights."

4.       More importantly, my right to lawfully protest in a public forum in a manner that doesn't disrupt how that public forum is conducted while valid time, place, and manner restrictions do not exist to prohibit such protest in a public forum was confirmed by the following excerpt from _Occupy Nashville v. Haslam_, 949 F. Supp. 2d 777 (M.D. Tenn. 2013):

> "a state may not restrict First Amendment rights, absent valid time, place, or manner restriction. _See Dean,_ 354 F.3d at 551; _Galvin v. Hay,_ 374 F.3d 739, 751 (9th Cir.2004) (**"As speakers may generally control the presentation of their message by choosing a location for its importance to the meaning of their speech, speakers may ordinarily— absent a valid time, place and manner restriction—do so in a public forum."); _Childs v. Dekalb Cnty., Ga.,_ 286 Fed.Appx. 687, 693-94 (11th Cir.2008)** (denying qualified immunity and stating that, based on Supreme Court precedent, "police officers have known for decades that protestors present on public property have a First Amendment right to peacefully express their view, in the absence of narrowly tailored ordinances restricting the time, place, or manner of the speech")."

> (boldface formatting added for emphasis)

5.       Due to the facts and circumstances that I have discussed at length and with sufficient specificity in this pleading, I have decisively established that the Defendants identified above that this claim concerns were personally involved in having willfully, callously, and wantonly illegally violated my First Amendment rights in relation to my efforts to have attended the Mayor's 10/12/17 town hall.

6.      I have further established that the defendants that this claim concerns violated my First

Amendment right of access to public records that were made available in the building that hosted

the Mayor's 10/12/17 town hall that were made available strictly to the members of the public

who were permitted to attend that town hall.

7.      Ms. Ramos is also liable for this cause of action due to her role as co-conspirator in that

conspiracy as she illegally deceived Ms. Durkin on 6/28/17 and 6/29/17 in e-mail messages that

she sent to Ms. Durkin about me and the illegal acts that continued to be illegally committed

against me on 10/12/17 and prevented me from being able to lawfully attend the Mayor's

10/12/17 town hall. Ms. Ramos sent those e-mail messages to Ms. Durkin about me in

furtherance of a fraudulent scheme to try to illegally cover-up such illegal acts and omissions

that were committed against me. Relevant findings that support this assertion about Ms. Ramos'

liability exist in the decisions that were issued in *US v. Blackmon*, 839 F.2d 900 (2d Cir. 1988),

*Escalera v. Samaritan Village Men's Shelter*, No. 17-cv-4691 (CM) (S.D.N.Y. Sept. 27, 2019),

*US v. Basey*, 816 F.2d 980 (5th Cir. 1987), *Vann v. City of New York*, 72 F.3d 1040 (2d Cir.

1995), *Pangburn v. Culbertson*, 200 F.3d 65 (2d Cir. 1999), and *Dunn v. City of Fort Valley,* No.

19-cv-287(TES) (M.D. Ga. May 19, 2020).


**CLAIM #2:**      **First Amendment Retaliation and Viewpoint Discrimination**


   **A.   For my 10/12/17 claims:**

      (Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason,
      Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2
      10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17,
      NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer
      Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3
      10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill,
      Vance, Jr., Byrne, Jr.)

1.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**CLAIM #3:**                    **Violations of the Fourth Amendment**

    **A.  For my 10/12/17 claims:**

       (Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason,
Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2
10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17,
NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer
Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3
10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill,
Vance, Jr., Byrne, Jr.)

1.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**CLAIM #4:**                    **Violations of the Fifth Amendment**

    **A.  For my 10/12/17 claims:**

       (Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason,
Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2
10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17,
NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer
Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3
10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill,
Vance, Jr., Byrne, Jr.)

1.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**CLAIM #5:**                    **Violations of the Fourteenth Amendment**
                                  **Substantive Due Process Rights**

    **A.  For my 10/12/17 claims:**

       (Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason,
Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2

10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**CLAIM #6:**                  **Violations of Procedural Due Process**

   A. **For my 10/12/17 claims:**

      (Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**CLAIM #7:**                  **Violations of the Fourteenth Amendment**
                              **Equal Protection Rights**

   A. **For my 10/12/17 claims:**

      (Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**CLAIM #8:**  <u>**Violations of the Fourteenth Amendment**</u>
<u>**Prohibitions Against Selective-Enforcement**</u>

**A. <u>For my 10/12/17 claims:</u>**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**CLAIM #9:**  <u>**Failure to Intervene in Violation of the**</u>
<u>**Fourteenth Amendment**</u>

**A. <u>For my 10/12/17 claims:</u>**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**CLAIM #10:**  <u>**Failure to Train and Supervise**</u>

**A. <u>For my 10/12/17 claims:</u>**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill,

Vance, Jr., Byrne, Jr.)

1.    The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.


**CLAIM #11:**        <u>**Violation of the New York State's Open Meetings Law**</u>

    **A.** <u>**For my 10/12/17 claims**</u>**:**

        (Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.    The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.


**CLAIM #12:**                    <u>**Abuse of Process**</u>

    **A.** <u>**For my 10/12/17 claims**</u>**:**

        (Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.    The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.


**CLAIM #13:**                    <u>**Deliberate Indifference**</u>

    **A.** <u>**For my 10/12/17 claims**</u>**:**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**CLAIM #14:**      **Fraudulent Misrepresentation and Fraudulent Inducement**

   A. **For my 10/12/17 claims:**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**CLAIM #15:**      **Violation of New York State General Business Law 349**

   A. **For my 10/12/17 claims:**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**CLAIM #16:**                            <u>**Negligence**</u>

**A. <u>For my 10/12/17 claims:</u>**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.       The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #17:**                           <u>**Municipal Liability**</u>

**(Against Defendant City of New York)**

1.       I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.       Defendant City of New York is liable for this claim due to the information that I presented in this complaint.

**CLAIM #18:**      <u>**Intentional and Negligent Infliction of Emotional Distress**</u>

**A. <u>For my 10/12/17 claims:</u>**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.       The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #19:** <u>**Conspiracy to Violate Civil Rights and**</u>
<u>**Cover-Up Such Abuse**</u>

A. <u>**For my 10/12/17 claims:**</u>

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**CLAIM #20:** <u>**Unjust Enrichment**</u>

A. <u>**For my 10/12/17 claims:**</u>

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**CLAIM #21:** <u>**Public and Private Nuisance**</u>

A. <u>**For my 10/12/17 claims:**</u>

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill,

Vance, Jr., Byrne, Jr.)

1.    The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**CLAIM #22:        Violations of the Hatch Act (see 5 U.S.C. §1502(a)(1))**

   **A. For my 10/12/17 claims:**

   (Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason,
   Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2
   10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17,
   NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer
   Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3
   10/12/17, NYPD Officer Jane Doe4 10/12/17, Carrion, Ramos, de Blasio, O'Neill,
   Vance, Jr., Byrne, Jr.)

1.    The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


## DEMAND FOR A JURY TRIAL

1.    I demand a trial by jury in this action on each and every one of my damage claims.


## PRAYER FOR RELIEF

WHEREFORE, this Court should accept jurisdiction over this entire matter and grant me

additional relief by:

1.    Causing this Court to exercise supplemental jurisdiction over K1, K2, K3, K4, K5, and

K6 before then consolidating them with this action that will result in having this action to control

how all of that litigation is conducted. This request stems from a common nucleus of operative

fact and is pursuant to FRCP Rule 42.

2.    Empaneling a jury to hear and decide this case strictly on its merits.

3.    Granting me the following additional relief against the defendants individually and

jointly:

a.      Compensation for violations of my constitutional rights, defamation, abuse of process, nuisance, unjust enrichment, wire fraud, and fraudulent misrepresentations as well as pain, suffering, mental anguish, and humiliation that I experienced due to the illegal acts and omissions by the defendants.

b.      Declaratory, injunctive, and equitable relief through the issuance of an order that voids the results of the 2017 New York City government elections for the jobs of New York City Mayor, New York City Councilmember, Bronx District Attorney, Queens Borough President, New York City Comptroller, and New York City Public Advocate primarily because it is reasonable to believe that results of those elections were materially tainted by voter fraud, voter suppression, and whistleblower retaliation in violation of 5 U.S.C. §1502(a)(1) that occurred partly by illegally:

   i.      Preventing whistleblowers from attending public forums that the Mayor conducted with them and were partly used as campaign events to attract various types of support from voters and prospective voters.

   ii.      Segregating and discriminating against whistleblowers at such public forums.

c.      Declaratory, injunctive, and equitable relief in accordance with findings expressed in *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899 (8th Cir. 2012) through the issuance of an order that enjoins Defendant City's personnel and agencies from continuing to commit illegal acts and omissions against me that violate my rights.

d.      Further declaratory, injunctive, and equitable relief through the immediate issuance of an order that:

   i.      Prohibits all members of the NYPD from deliberately making any physical

contact with me while I am conducting myself in a lawful manner.

ii. Requires all members of the Mayor's NYPD security detail to not come within 10 feet from me while they are on-duty as members of the Mayor's NYPD security detail and I am conducting myself in a lawful manner, unless I explicitly grant consent for that to occur.

iii. Requires all members of the Mayor's CAU to not come within 10 feet from me while I am conducting myself in a lawful manner and they are on-duty as members of the Mayor's CAU, unless I explicitly grant consent for that to occur.

iv. Prohibits Defendant City's personnel from illegally interfering with my ability to attend public forums that the Mayor may conduct from within the room in which he does so as he does so.

v. Prohibits Defendant City's personnel from illegally interfering with the rights that other people have to lawfully attend public forums that the Mayor conducts that may allow others and I to exercise our First Amendment right to observe, hear, and enjoy lawful speech and other expression that such people may engage in to criticize the Mayor and others during them.

vi. Prohibits Defendant City's personnel from illegally interfering with the First Amendment and Fifth Amendment rights that people have to **a)** bring literature and signs with them into rooms in which the Mayor conducts public forums, **b)** lawfully distribute such literature during those meetings without disrupting those meetings, **c)** distribute such literature and otherwise show it and signs in the rooms in which the Mayor conducts such meetings before they begin and after they end, and **d)** Keep such literature and signs with them as the Mayor conducts

such public forums.

vii.    Requires Defendant City to grant access to public forums that the Mayor conducts inside of buildings based on the order in which members of the public line up directly outside of those buildings shortly before those meetings begin to be granted access to the room in which the Mayor conducts such public forums on those dates.

viii.    Prohibits Defendant City from allowing its personnel to prevent members of the public from attending public forums that the Mayor conducts inside of buildings from within the rooms in which he does so while sufficient seating is available in those rooms.

ix.    Orders Defendant City to immediately cause all members of the NYPD who are present in areas where the Mayor conducts public town hall meetings, public resource meetings, public hearings, and press conferences that the public may observe to wear body-cameras that are always on and always recording both audio and video recordings.

x.    Orders Defendant City of New York to provide all audio and video recordings from such body-cameras in unedited and non-redacted form along with their audit trail records to allow for an independent forensic analysis within 24 hours of any adverse encounter that occurs between a) members of the public and b) the members of the NYPD wearing those body-cameras.

xi.    Orders Defendant City to immediately a) cause clear audio recordings to be recorded of all verbal communications that members of the NYPD have while they are on-duty as members of the NYPD and present in areas where the Mayor

conducts public town hall meetings, public resource meetings, public hearings, and press conferences that the public may observe.

xii.   Orders Defendant City of New York to provide all such audio recordings in unedited and non-redacted form that includes information that identifies the date and time when those recordings began to be recorded as well as the speakers heard in those communications that are personnel of Defendant City within 24 hours of any adverse encounter that occurs between **a)** members of the public and **b)** the members of the NYPD heard in those audio recordings while they are being recorded.

xiii.  Orders Defendant City to immediately cause all other electronic communications (such as e-mail messages, cell phone text messages, and encrypted communications) that are engaged in by those who are part of the Mayor's NYPD security detail to be recorded and preserved for possible use in litigation by people that they commit illegal acts and omissions against.

xiv.  Orders Defendant City to provide all such electronic communications within 24 hours in unedited and non-redacted form that includes information that identifies the date and time when those communications occurred and the identities of those who engaged in them to members of the public who have adverse encounters with members of the Mayor's NYPD security detail to the extent that those communications concern those adverse encounters.

xv.   Orders Defendant City to provide me copies of all communications that its personnel have had about me since 2/1/16 in unedited and non-redacted form. This includes, but is not limited to all of the following:

1)      All communications that have taken place by using personally-
owned devices, personal e-mail accounts, personal encrypted
messaging accounts, and personal cell phone plans as well as by
using computers and other devices that are owned or leased by
Defendant City and e-mail, cell phone, and encrypted messaging
accounts that are administered and/or controlled by Defendant
City.

e.      Further declaratory, injunctive, and equitable relief through the immediate issuance of
an order that:

i.      Orders Defendant City to immediately cause the CCRB and DOI to be provided
all video recordings within 24 hours after a complaint is reported to them about
illegal acts and omissions that are committed by members of the NYPD and other
personnel of Defendant City that are recorded by video security cameras that
Defendant City controls. This includes, but is not limited to illegal acts that are
related to public forums that the Mayor conducts and occur on the dates and at the
locations where the Mayor conducts them.

ii.     Further orders Defendant City to make those video recordings available within 24
hours in unedited and non-redacted form to those who report such illegal acts and
omissions to the CCRB and DOI.

iii.    Orders that the following Defendants are also required to be fired at the earliest
possible instead of practical or convenient time from the jobs that they hold with
Defendant City of New York largely pursuant to Section 1116 of the New York
City Charter in response to the illegal acts and omissions that they committed

against me in relation to my efforts to have lawfully attended the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, **d)** 3/18/19 public hearing and that they are prohibited from being employed by Defendant City again:

> Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Atcheson, Ringel, Ridener, Ioveno, Santana, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Gungor, Klein, Zappia, Barker, NYPD Officer John Doe1 3/18/19, NYPD Officer John Doe2 3/18/19, NYPD Officer John Doe3 3/18/19, NYPD Officer John Doe4 3/18/19, NYPD Officer John Doe5 3/18/19, Dwyer, Carrion, Ramos, de Blasio, Shorris, O'Neill, Vance, Jr., Byrne, Jr.

iv. Orders the following defendants to immediately and fully reimburse the City of New York with pre-judgment and post-judgment interest for the total value of pay and benefits that they received that directly correspond to the length of time during which they were involved in the illegal acts and omissions that were committed against me in relation to my efforts to have lawfully attended the Mayor' **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing:

> Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Atcheson, Ringel, Ridener, Ioveno, Santana, NYPD John Doe1 10/18/17,

NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Gungor, Klein, Zappia, Barker, NYPD Officer John Doe1 3/18/19, NYPD Officer John Doe2 3/18/19, NYPD Officer John Doe3 3/18/19, NYPD Officer John Doe4 3/18/19, NYPD Officer John Doe5 3/18/19, Dwyer, Carrion, Ramos, de Blasio, Shorris, O'Neill, Vance, Jr., Byrne, Jr.

v.     Restrains Defendant City's personnel and agencies from continuing to commit illegal acts and omissions against me that violate my rights, especially in all areas that are public forums.

vi.     Restrains the City of New York from allowing the NYPD to provide more security and law-enforcement that would benefit members of the press in public forums and other public areas than what members of the NYPD extended to Plaintiff on 10/12/17, 10/18/17, 10/25/17, and 3/18/19 in relation to Plaintiff's efforts to attend public town hall meetings, resource fair meetings, and public hearings that the Mayor conducted on those dates and to otherwise lawfully assemble inside of City Hall and on its property on 3/18/19 on the grounds that such greater security and law-enforcement would violate Plaintiff's Fourteenth Amendment rights that pertain to selective-enforcement, equal protection, due process, and discrimination.

vii.     Declares that the ban that the Mayor announced that prohibits large gatherings of people in New York City and protests from being conducted is overly broad, pretextual, void, and unenforceable largely because it impermissibly violates core First Amendment rights as well as Fifth Amendment and Fourteenth Amendment rights that pertain to due process, selective-enforcement, equal protection, and

liberty.

viii.　Further declares that though it may possibly be advisable to wear a face mask in New York City, no one is required to do so partly because **a)** members of the NYPD are not themselves wearing face masks outside and **b)** doing so impedes the flow of oxygen to healthy people and impermissibly infringes upon the First Amendment rights that people have to engage in freedom of expression, such as by having people see them smiling, expressing affection by kissing, being able to yawn without having to wear a face mask, and having other facial expressions that they make seen by others. Although it is potentially dangerous to one's health to engage in a wide variety of other activities that include driving a car because of the possibility that a drunk driver may pass by and having a drink in a bar because there is a possibility to breathe in second-hand smoke, bans on driving and visiting bars have not been imposed due to such risk factors.

ix.　Similarly declares that the social-distancing restrictions in New York State are overly broad, void, and unenforceable for the same reasons just discussed and declares that those restrictions have been selectively-enforced by the NYPD in violation of the Fourteenth Amendment.

f.　Declaratory relief by declaring that the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing were public forums that were subject to New York State's Open Meetings Law and that all actions that were taken in relation to those meetings are void pursuant to Section 107 of New York State's Public Officer Law because those public forums were conducted in violation of New York State's Open Meetings Law.

g.     Injunctive and equitable relief by ordering Defendant City to immediately provide me the following in unedited and non-redacted form:

    i.    Copies of all video recordings and photographs that were recorded and otherwise taken by Defendant City's personnel inside of the buildings that hosted the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing between the time when **a)** the first member of the public entered those buildings on the dates when those public forums were conducted in relation to attending those public forums and **b)** everyone who attended those public forums exited those buildings after they concluded on the dates when they were conducted.

    ii.    Copies of all video recordings and photographs that were recorded and otherwise taken by Defendant City's personnel in the areas where I interacted with the defendants on 10/12/17, 10/18/17, 10/25/17, and 3/18/17 at the sites of the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing while they and/or others illegally prevented me from attending those public forums through their illegal acts and omissions and otherwise caused me to be illegally ejected from the Mayor's 3/18/19 public hearing and coerced to exit City Hall's grounds on 3/18/19.

    iii.    Copies of all records that have been in the possession of Defendant City's personnel that pertain to the deliberations, planning, coordination, execution, and cover-up that took place in regards to my having been illegally:

        1)    Prevented from attending the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19

public hearing.

      2)     Ejected from the Mayor's 3/18/19 public hearing and coerced to exit City Hall's grounds on 3/18/19.

    iv.    Copies of all records that have been in the possession of Defendant City's personnel that describe staff assignments that were issued to the members of the Mayor's staff, the Mayor's CAU, the members of the Mayor's NYPD security detail, and the other members of the NYPD who were assigned work to do in relation to the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing.

    v.    Copies of all records that have been in the possession of Defendant City's personnel that consist of the names and contact information for the members of the public who registered to attend the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing as well as the names and contact information for the journalists who attended those public forums

h.    Injunctive and equitable relief by ordering Defendant City of New York to immediately provide me all video recordings as an ".avi", ".mp4", or ".mov" computer file that were recorded on 2/19/20 by all video security cameras that were installed in the school and are controlled by DOE that hosted the town hall meeting that the Mayor conducted on that date between the times when the first member of the public was allowed into that school for the purpose of attending that town hall until everyone who attended that town hall exited that school.

i.    Compensation for all costs and attorney fees that are related to my pursuit of this civil

action.

j.     Equitable and injunctive relief that authorizes me and others that I may ask to help me to paint, write, or draw any message or image of any size indefinitely throughout New York City without needing pre-approval from anyone on any public street, sidewalk, public passageway, concourse, and park indefinitely by using resources that will be provided to me by the City of New York for that purpose.

k.     Equitable and injunctive relief that orders the City of New York to cause its NYPD to accord whatever messages and images that I may paint, write, or draw in public areas throughout New York City to receive equal law-enforcement protection that is accorded to Black Lives Matter signs on streets in New York City, especially the one located in front of Trump Tower in Manhattan.

l.     An award of damages against the following defendants pursuant to 18 U.S.C. §1986 for having not intervened on my behalf in relation to my effort to have attended the Mayor's he Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing:

> The City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Atcheson, Ringel, Ridener, Ioveno, Santana, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Gungor, Klein, Zappia, Barker, NYPD Officer John Doe1 3/18/19, NYPD Officer John Doe2 3/18/19, NYPD Officer John Doe3 3/18/19, NYPD Officer John Doe4 3/18/19, NYPD Officer John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, Shorris, O'Neill, Vance, Jr., Byrne, Jr.

m.    An award of damages against the following defendants pursuant to New York State General Business Law §349 for deception in relation to my efforts to have attended the Mayor's he Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing with respect to how those defendants conducted themselves as criminal accomplices instead of the law-enforcement personnel that they technically were on 10/12/17 and 10/18/17, 10/25/17, and 3/18/19:

> Mason, Lance, Ranieri, Suzuki, NYPD Officer John Doe1 10/12/17, NYPD Officer John Doe2 10/12/17, NYPD Officer John Doe3 10/12/17, NYPD Officer John Doe4 10/12/17, NYPD Officer John Doe5 10/12/17, NYPD Officer John Doe6 10/12/17, NYPD Officer Jane Doe1 10/12/17, NYPD Officer Jane Doe2 10/12/17, NYPD Officer Jane Doe3 10/12/17, NYPD Officer Jane Doe4 10/12/17, Ioveno, Santana, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Gungor, Klein, Zappia, Barker, NYPD Officer John Doe1 3/18/19, NYPD Officer John Doe2 3/18/19, NYPD Officer John Doe3 3/18/19, NYPD Officer John Doe4 3/18/19, NYPD Officer John Doe5 3/18/19, Dwyer, Mazur, Halk, O'Neill, Cyrus Vance, Jr., Byrne, Jr.

n.    An award of punitive damages for all of my claims set forth in this pleading.

o.    An award of pre-judgment and post-judgment interest.

p.    Declares that the Mayor's 10/12/17 town hall was illegally conducted inside of a public school.

q.    Equitable and injunctive relief that orders the City of New York to remove all obstructions from public sidewalks, public streets, public parks, and public concourses that include traditional public forums within 24 hours that the NYPD and Mayor's office has set up and otherwise allowed to exist on them and to not setup such obstructions again in such public areas nor otherwise allow them to exist on and in them without prior approval by this

Court. The existence of such obstructions on sidewalks violates New York City Administrative Code §16-122(b). Also, such obstructions impermissibly infringe upon and otherwise burden the First Amendment rights that people have to lawfully walk, bicycle, and otherwise freely move about and congregate in such areas – especially on sidewalks and in parks that are traditional public forums – while some who seek to do so may have various disabilities that include blindness and physical ailments. Allowing such obstructions to exist on public sidewalks, in public streets, in public parks, and on public concourses in New York City is clearly inequitable and quite literally an insult to injury with respect to my claims in this action that largely concern illegal acts and omissions that were committed against me while no pandemic existed in New York City that prevented me from lawfully attending public forums. It is patently inequitable to my countervailing interest and ability to lawfully exercise my constitutional rights on public sidewalks and in parks to be curtailed by the NYPD and Mayor's administration during the ongoing Coronavirus pandemic to accommodate such things as outdoor dining after the NYPD and Mayor's administration flagrantly, willfully, criminally, and repeatedly violated my constitutional rights to lawfully attend public forums inside of buildings that the Mayor and other government officials conducted. In the same way that I took a risk that I would be illegally prevented from lawfully attending such public forums that the Mayor conducted while no pandemic existed in New York City as I visited the sites where those public forums were conducted on the dates when they were conducted, the owners of restaurants and other businesses that would benefit by being able to expand their operations on public sidewalks and in public parks in New York City at the expense of my First Amendment, Fifth Amendment, and Fourteenth Amendment rights to freely make use of all areas on such public sidewalks and public parks

that are traditional public forums took a risk that circumstances beyond their control would possibly arise that would materially and repeatedly disrupt their ability to operate their businesses. A reasonable, equitable, and creative accommodation may be made for owners of businesses that wish to conduct their operations outside by having this Court order the immediate bulldozing of City Hall; the NYPD headquarters, precincts, and training facilities, and Gracie Mansion to allow such businesses to promptly expand their operations on account of the fact that those locations have been the primary sanctuaries of mobsters dressed as government officials and members of the NYPD that committed illegal acts and omissions that rigged and stole the 2017 New York City government elections through voter suppression, voter fraud, whistleblower retaliation, and terrorism that persists against New Yorkers.

r.    Equitable relief that will have this Court adopt the practice in _USA v. Donziger_, No. 11-cv-0691(LAK)(RWL)(S.D.N.Y.) to similarly appoint private prosecutors to commence criminal prosecutions against the defendants that this action concerns in response to criminal acts and omissions that they committed and/or condoned against me that are addressed in this complaint to remedy the fact that prosecutors have negligently refused to do so.

s.    Declares that New York City has proven to be and remains an anarchist jurisdiction largely because of illegal acts and omissions that the defendants in this action criminally perpetrated in New York City in relation to the constitutional rights that people have to lawfully attend and participate in public forums in New York City.

t.    Declares that all restrictions that have been established in New York City by New York State Governor Andrew Cuomo. Defendant de Blasio, and the NYPD that restrict peaceful **a)** protesting and demonstrating activities outdoors and indoors and **b)** gatherings of

people indoors and outdoors for other purposes that may possibly include obtaining information from witnesses and formulating plans to establish a class-action lawsuit against the City of New York in relation to this case and related litigation that I commenced impermissibly violate the First Amendment, are overly broad, is clear standardless discretion, are an unlawful prior restraint on First Amendment rights, are being selective-enforced in violation of the Fourteenth Amendment, and are void.

u. Orders the City of New York to immediately close the buildings in which New York City's Housing Courts operate that the City of New York maintains until 60 days after the following occurs:

    i. All New York City public libraries have fully re-opened to allow all members of the public to use the Internet access and other resources that such libraries make available that would be of benefit to pro se litigants who need Internet access and may not otherwise have that with which to:

        1) Engage in legal research and prepare legal papers to properly prepare for legal proceedings assigned to New York City's housing courts.

        2) Search for and apply for employment opportunities.

        3) Stay abreast of news pertaining to the coronavirus and how best to take care of themselves, their families, and friends to stay healthy during the ongoing coronavirus pandemic.

        4) Engage in research to make contingency plans about housing and other matters.

        5) Stay abreast of news pertaining to upcoming government elections that directly impact their life.

v. Declares that video evidence and the totality of the circumstances sufficiently confirm that Defendant de Blasio flagrantly, willfully, oppressively, and wantonly committed illegal acts and omissions during the Mayor's 3/18/19 public hearing against Plaintiff directly with respect to Plaintiff's status as a speaker and the general public by extension with respect to public's First Amendment right to receive information from speakers in violation of his oath of office as the New York City Mayor, the First Amendment, Fourteenth Amendment, New

York State's Open Meetings Law, New York City Charter §1116, NYPL §195.00, NYPL §215.10, 18 U.S.C. §1513(e), 18 U.S.C. §245(b)(5), 18 U.S.C. §241, 42 U.S.C. §1985, 42 U.S.C. §1986, NYPL §240.20, NYPL §240.26, NYPL §240.65, and NYPL §175.25 partly by illegally subjecting Plaintiff to viewpoint discrimination and First Amendment in response to testimony that was protected activity that Plaintiff attempted to lawfully deliver during the Mayor's 3/18/19 public hearing that was also the but-for cause for Plaintiff having been illegally seized, assaulted, and ejected from both the Blue Room in City Hall and City Hall's grounds immediately thereafter without any due process having been accorded to Plaintiff that caused Plaintiff substantial and irreparable harm partly to his First Amendment freedoms.

w.    Orders the City of New York to immediately both suspend and terminate the employment of Defendant de Blasio as an employee of the City of New York and to bar him from future employment opportunities with the City of New York pursuant to New York City Charter §1116.

x.    Such other, further, and different relief as the interests of justice and equity may require.


Dated:        New York, New York
              October 11, 2020



                                        From,


                                        s_/Towaki Komatsu

                                        *Plaintiff, Pro Se*
                                        802 Fairmount Pl., Apt. 4B

Bronx, NY 10460
(347) 872-1205
Towaki_Komatsu@yahoo.com

# Exhibit A



## Council Member Rosie Mendez
with Borough President Gale A. Brewer
& Assembly Member Brian Kavanagh
present

# WORKING FOR **COUNCIL DISTRICT 2**


# TOWN HALL
## - with -

# Mayor Bill de Blasio

## **THURSDAY,** October 12ᵀᴴ at 7pm
DOORS OPEN AT 6:00PM AND CLOSE AT 7:30PM

### PS 188 - The Island School
442 East Houston Street, New York, NY 10002
(Main entrance on corner of East Houston & Baruch Drive)

### Space is limited - please RSVP by October 10ᵗʰ at 5PM



**TOWN HALL** CO-SPONSORS
**MANHATTAN** Community Boards **2, 3, 5 & 6**
**GRAND STREET** Settlement
**HENRY STREET** Settlement
**THE LOISAIDA** Center

## TO RSVP
**Visit:** www.nyc.gov/cd2townhall
**Email:** manhattantownhall@cityhall.nyc.gov
**or Call:** (212) 788-2781

ACCESS PROVIDED:

Please contact us if you have any additional accessibility needs.



**Council Member Stephen T. Levin**
with Borough President Eric L. Adams
U.S. Representative Nydia Velázquez
Assembly Member Jo Anne Simon
present

# WORKING FOR **COUNCIL DISTRICT 33**



## TOWN HALL
- with -

# Mayor Bill de Blasio

## **WEDNESDAY,** October 18ᵀᴴ at 6pm

DOORS OPEN AT 5:00PM AND CLOSE AT 6:30PM

**FIRST COME, FIRST SEATED**

### St. Francis College

180 Remsen Street, Brooklyn, NY 11201

(Between Clinton and Court Streets)

**Space is limited - please RSVP by October 16ᵗʰ at 6PM**



**Mayor's Community Affairs Unit**

**TOWN HALL** CO-SPONSORS
**BROOKLYN** Community boards **1, 2, 3 & 6**
**FRIENDS** of Bushwick Inlet Park
**DOWNTOWN** Brooklyn Partnership

**TO RSVP**
**Visit:** www.nyc.gov/cd33townhall
**Email:** brooklyntownhall@cityhall.nyc.gov
**or Call:** (212) 788-7929

ACCESS PROVIDED:

Please contact us if you have any additional accessibility needs.




The Office of the Mayor and
Office of the Brooklyn Borough President

*cordially invite you to:*

# CITY HALL IN YOUR BOROUGH:
# **CITY RESOURCE FAIR**

## Wednesday October 25th, 2017  |
## 11:00 A.M. to 3:00 P.M.

**Brooklyn College Student Center**
2705 Campus Road 2nd Floor (Entrance at Amersfort Place)
Brooklyn, NY 11210

Meet with top city commissioners and senior staff during scheduled office hours
to address your questions and concerns.

Meet with top representatives from City Hall, Department of Transportation,
Department of Finance, NYPD, Economic Development Corporation, Department
of Education, Department of Health, Small Business Services, Department of Parks
and Recreation, and more.

**Sign Up Here to Attend:** www.nyc.gov/brooklyn or by calling 212-748-0281

