**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------------- X

Towaki Komatsu,

**FIRST AMENDED**
**COMPLAINT**

Plaintiff,

**No. 20-cv-8540**

-vs-

**JURY DEMAND**

The City of New York, Shauna Stribula, Harold Miller, Jane Doe1
10/12/17, NYPD Detective Nicholas Mason (shield #: 6995), NYPD
Officer Lance (shield #: 245), NYPD Officer Ranieri (shield #: 24361),
NYPD Officer Suzuki (shield #: 7373), NYPD John Doe1 10/12/17,
NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John
Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6
10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17,
NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Rachel
Atcheson, Pinny Ringel, Dustin Ridener, Jane Doe1 10/18/17, NYPD
Officer Jerry Ioveno (shield #: 5560), NYPD Officer Santana (shield #:
7291), NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD
John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5
10/18/17, NYPD John Doe6 10/18/17, NYPD Inspector Howard
Redmond, NYPD Lieutenant Ralph Nieves, NYPD Officer Baez (shield
#: 5984), NYPD Officer Raymond Gerola (shield #: 6577), NYPD
Officer Joe Ventri, NYPD John Doe1 10/25/17, NYPD John Doe2
10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17,
NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, NYPD Officer
Jemaal Gungor, NYPD Officer Edward Klein, NYPD Officer Zappia
(shield #: 4152), NYPD Officer Barker (shield #: 13845), NYPD John
Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19,
NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, NYPD Sergeant
Ryan Dwyer, NYPD Sergeant Jordan Mazur, NYPD Detective Stephen
Halk, Marco Carrion, Jessica Ramos, Stephen Levin, Bill de Blasio,
Anthony Shorris, James O'Neill, Cyrus Vance, Jr., Lawrence Byrne, Jr.,

- All of the defendants listed above who are people are being sued in
  their individual and official capacities,

Defendants.

-------------------------------------------------------------------------------- X

## TABLE OF CONTENTS

I.   Preliminary Remarks .................................................................. 4

II.  Jurisdiction ............................................................................ 21

III. Parties .................................................................................. 21

IV.  Background Facts ..................................................................... 54

V.   Retrospective Facts .................................................................. 79

   A. My interactions with the defendants on 11/30/17 at the Mayor's 11/30/17 town hall ............................................................................... 79

   B. How David Rem lawfully expressed himself during the Mayor's 2/19/20 town hall, was applauded for that by audience, and was retaliated against for that by Defendant Redmond and the Mayor ...................................... 85

   C. My conversations with David Cole of the ACLU and Arthur Eisenberg of the New York Civil Liberties Union on 10/30/17 about attending public forums that the Mayor conducted ..................................................... 95

VI.  Legal Standards ....................................................................... 97

VII. Main Statement of Facts ........................................................... 106

   A. My objectives for attending public forums that the Mayor conducted ........ 109

   B. Facts about my 10/13/17 conversation with Anthony Shorris at the New York Law School ............................................................... 136

   C. Facts about the Mayor's 10/12/17 town hall ...................................... 143

   D. Facts about the Mayor's 10/18/17 town hall ...................................... 151

      1. Facts about my 10/18/17 application for interim relief to the New York State Supreme Court's Appellate Term's First Department .................. 151

      2. Facts about my 10/19/17 50-h hearing ......................................... 153

   E. Facts about the Mayor's 10/25/17 resource fair .................................. 178

   F. Facts about the Mayor's 3/18/19 town hall ........................................ 216

G.  Facts about spoliation of video recording evidence by the NYPD concerning my 3/18/19 claims Mayor's 3/18/19 town hall ........................ 282

VIII.   Causes of Action ................................................................................ 305

IX.   Jury Demand ..................................................................................... 339

X.   Prayer for Relief ................................................................................. 339

Plaintiff Towaki Komatsu (hereinafter referred to in the first-person as "I", "me", and "my"), proceeding pro se in this action, does hereby state and allege all that follows in this pleading.

## PRELIMINARY REMARKS

1.    The following applies throughout this complaint in the interests of brevity:

    a.    Acronyms and aliases in the second column of the following table will be used throughout this pleading instead of the entries in the third column to which they correspond:

| # | Abbreviation | Corresponds To |
|---|---|---|
| 1 | ACLU | American Civil Liberties Union |
| 2 | Bronx DA | Bronx District Attorney's office |
| 3 | CCRB | New York City Civilian Complaint Review Board |
| 4 | City Council | New York City Council |
| 5 | City Hall email excerpts | Excerpts from a 374-page PDF file that I was provided on 2/15/19 by the New York City Mayor's office in response to a Freedom of Information Law demand that I submitted to it. Those excerpts correspond to e-mail messages that appear on pages 211 212, and 361 thru 374 in that file. Information shown on those pages was provided to me with redactions. Copies of e-mail messages about me that were sent 4/10/17, 6/28/17, and 6/29/17 appear on those pages. Those e-mail messages partly concern litigation that I commenced against the New York City Human Resources Administration ("HRA") in which I was then involved that are closely related to my claims in this action. Senior members of the New York City Mayor's administration and the head of the Mayor's NYPD security detail (Defendant Redmond) sent those e-mail messages to HRA Commissioner Steven Banks and amongst themselves. Those excerpts are available in a PDF file that is available on the Internet at https://drive.google.com/file/d/16wSpJ7kk-aOtx7Bkg8MeqUpyWd5Io2hR/view?usp=sharing |
| 6 | Defendant City | Defendant City of New York |
| 7 | DHS | New York City Department of Homeless Services |
| 8 | DOE | New York City Department of Education |
| 9 | DOI | New York City Department of Investigations |
| 10 | DOJ | U.S. Department of Justice |

| 11 | DSS | New York City Department of Social Services |
|----|-----|---------------------------------------------|
| 12 | FOIL | Freedom of Information Law |
| 13 | FRCP | Federal Rule of Civil Procedure |
| 14 | HPD | New York City Department of Housing, Preservation and Development |
| 15 | HRA | New York City Human Resources Administration |
| 16 | IAB | The NYPD's Internal Affairs Bureau |
| 17 | K1 | The related federal lawsuit that I commenced against the City of New York, Defendant Nieves, and others in April of 2018 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 18-cv-3698 (LGS)(GWG)(S.D.N.Y.) that my claims in this case relate back to and amplify. The judges in that case refused to grant me sufficient time to file a further amended complaint in that case that would have otherwise enabled me to assert my claims in that case instead of in this case. In fact, Judge Lorna Schofield explicitly directed me to instead commence a new civil action for additional claims that I sought to assert in that case. |
| 18 | K2 | The related federal lawsuit that I commenced against the City of New York, Mr. Banks, and others on 8/14/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 18-cv-6510(LLS)(S.D.N.Y.) that my claims in this case relate back to and amplify. |
| 19 | K3 | The related federal lawsuit that I commenced against the City of New York, Defendant Nieves, Hansen, and others on 8/29/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 18-cv-7046 (ER)(S.D.N.Y.) that my claims in this case relate back to and amplify. |
| 20 | K4 | The related federal lawsuit that I commenced against the City of New York as well as Defendants, Mason, Nieves, and others on 9/13/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 18-cv-7502(S.D.N.Y.) that my claims in this case relate back to and amplify. |
| 21 | K5 | The related federal lawsuit that I commenced against the City of New York as well as Defendants, Mason, Nieves, and others on 9/25/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 18-cv-8004(S.D.N.Y.) that my claims in this case relate back to and amplify. |
| 22 | K6 | The related federal lawsuit that I commenced against the City of New York as well as Defendants, Mason, Nieves, and others on 10/5/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 18-cv-8251(ER)(S.D.N.Y.) that my claims in this case relate back to and amplify. |
| 23 | The Mayor | New York City Mayor Bill de Blasio |

| 24 | Mayor's 3/15/17 town hall | The town hall meeting that the Mayor conducted on 3/15/17 in the Chelsea district in Manhattan as New York City Councilman Corey Johnson was its moderator |
|----|----|----|
| 25 | Mayor's 4/27/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, New York City Councilman Jimmy Van Bramer, and other government officials as a mostly traditional public forum on 4/27/17 in Long Island City in Queens that was subject to New York State's Open Meetings Law and was used a campaign event to support the Mayor's re-election interests that I was illegally barred from attending while I had active litigation against HRA. |
| 26 | Mayor's 5/23/17 resource fair | The public resource fair meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, and other government officials as a mostly traditional public forum on 5/23/17 inside of the Bronx Supreme Court. That public forum was subject to New York State's Open Meetings Law and I was illegally barred from attending it while I had active litigation against HRA that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted. |
| 27 | Mayor's 9/8/17 public hearing | The public hearing that the Mayor conducted on 9/8/17 at 2 pm in the Blue Room in City Hall that partly concerned proposed legislation about reforming the NYPD as I was illegally prevented from attending that hearing. That public forum was subject to New York State's Open Meetings Law and I was illegally barred from attending it while I had active litigation against HRA that included claims about being illegally barred from public forums that the Mayor conducted. |
| 28 | Mayor's 9/14/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, New York City Councilman Chaim Deutsch, and other government officials as a mostly traditional public forum on 9/14/17 at 2525 Haring Street in Brooklyn. That public forum was subject to New York State's Open Meetings Law and I was illegally barred from attending it from within the room in which it was conducted while I had active litigation against HRA that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted. |

| 29 | Mayor's 9/26/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, former New York City Councilman Dan Garodnick, and other government officials as a mostly traditional public forum on 9/26/17 at 245 East 56th Street in Manhattan. That public forum was subject to New York State's Open Meetings Law and I was illegally barred from attending it from within the room in which it was conducted while I had active litigation against HRA that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted. |
| --- | --- | --- |
| 30 | Mayor's 9/27/17 resource fair | The public resource fair meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, and other government officials as a mostly traditional public forum on 9/27/17 at 3940 Broadway in Manhattan. That public forum was subject to New York State's Open Meetings Law and I was illegally barred from attending it while I had active litigation against HRA that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted. |
| 31 | Mayor's 9/28/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, former New York City Councilwoman Melissa Mark-Viverito, and other government officials as a mostly traditional public forum on 9/28/17 at 1833 Lexington Avenue in Manhattan. That public forum was subject to New York State's Open Meetings Law and I was illegally barred from attending it while I had active litigation against HRA that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted. |

| 32 | Mayor's 10/4/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, New York City Councilman Ritchie Torres, and other government officials as a mostly traditional public forum on 10/4/17 at 2452 Washington Avenue in the Bronx. That public forum was subject to New York State's Open Meetings Law. I was illegally barred from attending that public forum: |
|---|---|---|
| | | **a)** While I had active litigation against HRA that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted, |
| | | **b)** Just 1 day after Defendants Mason and Hansen illegally prevented me from attending a public press conference in front of City Hall that concerned reforming the NYPD. |
| | | **c)** Just 1 day after both Manhattan District Attorney Cyrus Vance, Jr. and Lawrence Byrne, Jr. informed me during a meeting that was conducted at the New York City Bar Association that was partly recorded on audio that they would willfully violate their Fourteenth Amendment affirmative legal duty as law-enforcement officials to intervene on my behalf to uphold my constitutional rights by refusing to do their jobs as I apprised them of crimes that members of the NYPD were committing against me at public forums that the Mayor was conducting and they told me then that they would not do anything about that. |
| | | **d)** Just 2 days after I testified to New York City Councilman Eric Ulrich and others during the public hearing that the City Council's Committee on Veterans conducted in City Hall partly about being illegally barred from public forums that the Mayor conducted. |

| 33 | Mayor's 10/12/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, former New York City Councilwoman Rosie Mendez, and other government officials as a mostly traditional public forum on 10/12/17 in a school located at 442 E Houston Street in Manhattan. That school is controlled by the New York City Department of Education. That public forum was subject to New York State's Open Meetings Law. I was illegally barred from attending that public forum by Defendant Stribula and others:<br><br>**a)** While I continued to have active litigation against HRA that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted,<br><br>**b)** While I was engaged in protected activity on 10/12/17 partly by distributing literature containing whistleblowing information against the Mayor's administration and NYPD security detail that I prepared to members of the public as I waited in line with them to attend that town hall before I was illegally coerced by Defendant Stribula to leave that line as she then threatened me by telling me that she would arrange for Defendant Redmond to coerce me to leave that line if I didn't immediately exit it.<br><br>**c)** While Defendant Stribula flat out lied to my face by claiming that I had turned down offers of legal assistance that she claimed I had received as a result of referrals that I received to legal services organizations. Contrary to her deceit, I never received any offers that to be provided legal assistance.<br><br>**d)** Just 8 days after Defendant Mason and others illegally prevented me from attending the Mayor's 10/4/17 town hall. |
| --- | --- | --- |
| 34 | Mayor's 10/12/17 town hall video | The video recording that the Mayor's office arranged to be recorded of the Mayor's 10/12/17 town hall. That video is available on the Internet at https://www.youtube.com/watch?v=seUP48e0KUY |

| 35 | Mayor's 10/18/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, New York City Councilwoman Stephen Levin, and other government officials as a mostly traditional public forum on 10/18/17 at 180 Remsen Street in Brooklyn. That public forum was subject to New York State's Open Meetings Law |
|---|---|---|
| 36 | Mayor's 10/18/17 town hall video | The video recording that the Mayor's office arranged to be recorded of the Mayor's 10/12/17 town hall. That video is available on the Internet at https://www.youtube.com/watch?v=QJ9MnU8so4E. |
| 37 | Mayor's 10/25/17 resource fair | The public resource meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, and other government officials as a traditional public forum on 10/25/17 at Brooklyn College that is located at 2705 Campus Road in Brooklyn. That public forum was subject to New York State's Open Meetings Law. I was illegally barred from attending that public forum by Defendants Redmond, Nieves, Baez, Gerola, and others:<br><br>**a)** While I continued to have active litigation against HRA |
| 38 | Mayor's 3/18/19 public hearing | The public hearing that the Mayor conducted at 4:30 pm on 3/18/19 in the Blue Room inside of City Hall for which the Mayor's Office issued public notice on the Internet that is available at https://a856-cityrecord.nyc.gov/RequestDetail/20190307108 and confirmed that the agenda for that hearing partly concerned labor rights. |
| 39 | Mayor's 3/18/19 public hearing video | The video recording that the Mayor's office arranged to be recorded of the Mayor's 3/19/17 town hall. That video is available on the Internet at https://www.youtube.com/watch?v=rqwyR7ZD23M. |
| 40 | Mayor's CAU | The Mayor's Community Affairs Unit |
| 41 | Mr. Banks | HRA Commissioner Steven Banks |

| 42 | My HRA lawsuit | The hybrid lawsuit that I commenced against HRA in January of 2017 that corresponds to _Komatsu v. New York City Human Resources Administration_, No. 100054/2017 (Sup. Ct., New York Cty.) and is being appealed. I asserted claims in that case that my claims in this case relate back to and amplify. Prior to 6/8/17, I asserted claims in that case that concerned illegal acts and omissions that were committed against me by defendants in this action that caused me to have been illegally barred from attending both the Mayor's 4/27/17 town hall and the Mayor's 5/23/17 public resource fair meeting. |
| 43 | NTT Data, Inc. | NTT |
| 44 | NYAG | New York State Attorney General's Office |
| 45 | NYCHA | New York City Housing Authority |
| 46 | NYCLU | New York Civil Liberties Union |
| 47 | OCA | New York State Office of Court Administration |
| 48 | OTDA | The New York State Office of Temporary and Disability Assistance |
| 49 | Second Circuit | United States Court of Appeals for the Second Circuit |
| 50 | Urban | Urban Pathways, Inc. It is the slumlord for the building in which I reside. |

2.      In response to a FOIL demand that I submitted to the NYPD on 3/18/19, it provided me with a set of video recordings that were recorded by video security cameras that it controls that are installed in the immediate vicinity of City Hall that were recorded on 3/18/19 as it also illegally didn't provide me additional video recordings that were recorded on that date by additional video security cameras that it controls that are located in that same area that it was required to provide to me pursuant to FOIL and my First Amendment rights. Among the video recordings that the NYPD provided to me in response to that FOIL demand to which the NYPD assigned the FOIL identification code of "FOIL-2019-056-04374" were two significant video recordings about which the following fact apply:

a.      One of those video recordings is a file that I have renamed as "View of Park Row entrance to City Hall on 3-18-19_7.26183 - Park Row ES 1 North of Spruce St (City Hall) Cam-2 (26116).mp4". The following additional relevant facts apply about that

video:

    i.It is hereinafter referred to in this complaint as "NYPD 3/18/19 video2".

    ii.It shows a wide view of the area by the entrance to City Hall that is located by Park Row.

    iii.A copy of it is available on the Internet at

      https://drive.google.com/open?id=1IKBHpLvN7zSX6RLwaBiQ5G6a1JKokErR.

    iv.That video is 1 hour and 4 seconds long.

    v.That video was recorded at some point between 4:10 pm and 5:30 pm on 3/18/19.

    vi.Defendant NYPD John Doe5 3/18/19 appears in it at the elapsed time of 56 minutes and 54 seconds. The next screenshot is from that video and corresponds to that elapsed time. Defendant NYPD John Doe5 3/18/19 is the person who appears on the far-left in it. I appear in that screenshot on the right and was then wearing a white sweater, blue jeans, and a black backpack.



b.    The other video recording is a file that I have renamed as "Aerial view of entrance to City Hall from Park Row on 3-18-19_7.26183 - Park RowCITYHALL-C114-EXT-

City Hall Plaza PTZ (26118).mp4". The following additional relevant facts apply about that video:

     i. It is hereinafter referred to in this complaint as "NYPD 3/18/19 video1".

     ii. It shows an aerial view of the area of City Hall that is located of the front of City Hall.

     iii. A copy of it is available on the Internet at

       https://drive.google.com/open?id=1rTBOcU2txrQwI23vkaB2lRK90H8dsv1j.

     iv. That video is 1 hour long.

     v. That video was recorded at some point between 4:10 pm and 5:30 pm on 3/18/19.

     vi. Defendant Gungor and I appear in it at the elapsed time of 54 minutes and 17 seconds as he escorted me out of City Hall's building through its main entrance.

3.     The next screenshot is from a video recording that was recorded on 4/8/19 that the NYPD provided to me in response to a timely FOIL demand that I submitted to it. That video was recorded by a video security camera that the NYPD controls from which the NYPD illegally didn't provide me any video recording that was recorded on 3/18/19. I appear in this screenshot as I stood near City Hall's entrance by Park Row as I wore a gray sweatshirt, blue jeans, a black backpack. The Mayor also appears in it near a SUV vehicle that was parked on City Hall's grounds as he stood in front of that SUV.



4.      Defendant NYPD John Doe1 3/18/19 is clearly shown at the elapsed time of 17 minutes and 29 seconds in the video recording that the Mayor's Office arranged to be recorded of the Mayor's 3/18/19 4:30 pm public hearing.

5.      Every reference that I make in this pleading that concerns my efforts to have attended the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, and **c)** 10/25/17 resource fair concern those that I made to lawfully attend them from within the room in which the Mayor, Mr. Banks, and/or other government officials jointly conducted them as they were conducted, shortly before they began, and shortly after they ended.

6.      Every reference that I make in this pleading that concerns my efforts to have attended the Mayor's 3/18/19 public hearing concern those that I made to lawfully attend and testify in it in accordance with the entire array of my constitutional rights and all other applicable laws without illegal interference from anyone and certainly without being illegally seized while doing so.

7.      References to HRA, DHS, and DSS will be used interchangeably in this pleading for simplicity.

8.      The **<u>Exhibit A</u>** that is annexed to this complaint is comprised of public notices that the City of New York issued on the Internet for the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town

hall, and **c)** 10/25/17 resource fair. Those notices contain the following details:

  a.  When and where those public forums would be conducted.

  b.  How those who sought to attend those public forums could register in advance to

do so.

  c.  When the doors would open for those public forums on the dates when they were

conducted.

  d.  The identities of some of the government officials and government agencies with

which the Mayor conducted those meetings as mostly traditional public forums.

  e.  The identities of various groups that helped to sponsor those public forums.

9.  At 10:40 am on 10/11/17, a Twitter posting was posted on the Internet at

https://twitter.com/RosieMendez/status/918124076358668289 by a Twitter account that is

registered to former New York City Councilwoman Rosie Mendez. That Twitter account has the

username of "@RosieMendez". Ms. Mendez was the moderator of the Mayor's 10/12/17 town

hall. That Twitter posting included the following pertinent remark about attending the Mayor's

10/12/17 town hall as well as images that were public notices about the Mayor's 10/12/17 town

hall:

  "Deadline to rsvp for Thursday's townhall has been extended to Thursday at 12pm"

10.  At 6:25 pm on 10/18/17, a Twitter posting was posted on the Internet at

https://twitter.com/StephenLevin33/status/920777889305579521 by a Twitter account that is

registered to Defendant Levin. That Twitter account has the username of "@StephenLevin33".

That Twitter posting included the following pertinent remark in violation of New York State

General Business Law §349 about attending the Mayor's 10/18/17 town hall that hindsight

confirms was entirely and grossly misleading, fraudulent, deceptive, and disingenuous with

respect to whether I could lawfully attend that public forum in accordance with my constitutional rights to have done so:

"Join us and LIVE as we host a town hall right here in @NYCMayor the 33rd District!"

11.    The following shows an e-mail message that I sent to register in advance to attend the Mayor's 10/12/17 town hall:

> **From:** Towaki Komatsu <towaki_komatsu@yahoo.com>
> **Subject:** RSVP for 10/12/17 public Town Hall meeting with New York City's Mayor
> **Date:** October 5, 2017 at 12:11:01 PM EDT
> **To:** manhattantownhall@cityhall.nyc.gov
>
> My name is Towaki Komatsu
>
> This e-mail serves as my RSVP for the 10/12/17 public Town Hall meeting New York City's Mayor will hold.
>
> Pursuant to New York State's Open Meetings Law, I have a legal right to attend that public town hall meeting.
>
> Any attempt to hinder my ability to attend it will constitute a violation of both that law and the federal criminal statute that concerns obstruction of justice, specifically 18 U.S.C. 1512.
>
> Any such attempt to hinder my ability to attend that public meeting will be severely dealt with from a legal standpoint.

12.    The statements that I made in that e-mail message were entirely appropriate and reflected the fact that members of the Mayor's staff and members of the NYPD had repeatedly and illegally prevented me from attending public town hall meetings, public resource fair meetings, public hearings that the Mayor conducted since 4/27/17.

13.    The following shows an e-mail message that I sent to register in advance to attend the Mayor's 10/18/17 town hall:

> **From:** Towaki_Komatsu@yahoo.com
> **Subject:** Re: RSVP for 10/18/17 public Town Hall meeting with New York City's Mayor
> **Date:** October 11, 2017 at 7:09:25 PM EDT
> **To:** brooklyntownhall@cityhall.nyc.gov

> This is my RSVP for the Mayor's 10/18/17 public town hall meeting.
>
> Towaki Komatsu

14.     The next screenshot is from an online form that I submitted on 10/19/17 to register in advance to attend the Mayor's 10/25/17 resource fair before saved that form information as a PDF file that truncated some of the text that submitted in that form. I expressed in that form that I intended to discuss illegal and repeated acts of viewpoint discrimination while attending the Mayor's 10/25/17 resource fair. That form also confirms that I then made it clear that I sought to talk with personnel who then worked for DSS, the NYPD, and DOE as well as people who dealt with issues for tenants.

**Let us know what questions you will bring to the resource fair!***

Viewpoint di:

**What agencies are you most interested in speaking with?***

☐ Department of Transportation
☐ Department of Finance
☑ New York Police Department
☐ Department of Sanitation
☐ Economic Development Corporation
☑ Department of Social Services
☑ Department of Education
☐ Department of Health
☐ Small Business Services
☐ Department of Parks and Recreation
☐ Universal Pre-K
☐ ThriveNYC
☑ Tenant Support Unit

15.    After I submitted that online registration form to attend the Mayor's 10/25/17 resource

fair, the following confirmation notice appeared on the web page that sufficiently confirmed I

would be able to attend the Mayor's 10/25/17 resource fair:



16.    The illegal acts and omissions that were committed against me on 10/12/17, 10/18/17,

10/25/17, and 3/18/19 at the sites of public forums that my claims in this complaint concern were

committed in relation to my efforts to have exercised my legal right to have done the following:

a.    Lawfully attended those public forums in accordance with my constitutional

rights.

b.    Exercised the full extent of my rights while attending them partly by engaging in

protected whistleblowing about a broad array of matters of public concern and private

matters.

17.    This is a civil rights action to vindicate my rights in response to illegal acts and omissions

that were committed against me on 10/12/17, 10/18/17, 10/25/17, and 3/18/19 at the sites of

public forums that the Mayor conducted with other government officials in relation to my efforts

to have lawfully attended them while Defendant Howard Redmond was **a)** the head of the

Mayor's NYPD security detail and **b)** the primary defendant in _Sherrard v. City of New York,_

_No. 15-cv-7318 (MB) (S.D.N.Y. Jun. 13, 2018)._ Since 4/27/17, I was aware of his status as the

defendant in _Sherrard v. City of New York_ by having conducted research about him then in the

wake of illegal acts and omissions that he and others committed against me on 4/27/17 that

caused me to be illegally barred from attending the Mayor's 4/27/17 town hall in flagrant violation of my constitutional rights and other applicable laws. Those who committed such illegal acts and omissions against me on 10/12/17, 10/18/17, 10/25/17, and 3/18/19 mostly did so as part of a conspiracy in retaliation against me that was mainly for protected whistleblowing and litigation activities that I continued to be engaged in against Mr. Redmond, themselves, other members of the NYPD, members of the Mayor's staff, HRA, HRA's business partners, Mr. Banks, New York State court officers, and others. Such protected whistleblowing and litigation activities that this concerns were largely related to my HRA lawsuit and earlier illegal acts and omissions that were committed against me in flagrant violation of the Hatch Act (5 U.S.C. §1502(a)(1)) and other laws for the mutual benefit of the Mayor, members of the City Council, and those who committed such illegal acts and omissions leading up to the 2017 New York City government election in the interest of extending their job security and maintaining their access to opportunities to further advance their careers. Such illegal acts and omissions wee committed against me on the following dates by the defendants in this action and others in relation to efforts that I previously undertook to exercise my constitutional rights to lawfully attend and participate in 14 earlier public forums that **a)** would have otherwise been conducted partly by me on 4/12/17 with respect to a scheduled oral arguments hearing in my HRA lawsuit that Jeffrey Moszyc of HRA illegally stole from me by engaging in illegal ex-parte communications to request an adjournment and **b)** were partly conducted by the Mayor, Mr. Banks, and others that included public town hall meetings, public resource meetings, public hearings, a publicity stunt that the Mayor conducted on 7/25/17 in a public area of a subway station, and a public press conference on 10/3/17 that about reforming the NYPD:

> 4/12/17, 4/27/17, 5/23/17, 6/8/17, 7/12/17, 7/25/17, 8/30/17, 9/8/17, 9/14/17, 9/26/17, 9/27/17, 9/28/17, 10/3/17, 10/4/17

18.     While committing such illegal acts and omissions against me on 10/12/17, 10/18/17, 10/25/17, and 3/18/19 that my claims in this complaint concern, that was done to extend a campaign of harassment, retaliation, and unequal and discriminatory acts against me at public forums dating back to 4/27/17 that the Mayor and other government officials conducted with members of the public in a collaborative manner as the Mayor and such other government officials were running for re-election and using those public forums to try to improve their re-election prospects partly by trying to attract publicity.

19.     The illegal acts and omissions that were committed against me on 10/12/17, 10/18/17, 10/25/17, and 3/18/19 as well as on earlier dates that go as far back to 4/27/17 at public forums that the Mayor conducted with other government officials and continued long after 10/25/17 at additional public forums that they conducted were acts of voter suppression, voter fraud, whistleblower retaliation, a malicious and naked abuse of process, illegal selective-enforcement, standardless discretion, viewpoint discrimination in violation of the Hatch Act, my constitutional rights, federal and New York State criminal statutes, New York State's Open Meetings Law, and other applicable laws that were against me directly and others indirectly largely by illegally depriving the public of relevant and significant information that it could use to make informed voting decisions during the 2017 New York City government elections that I sought to lawfully and widely broadcast by attending public forums that the Mayor conducted within the rooms in which they were conducted while they were recorded on video that could amplify and extend the reach of the critical views against the Mayor's administration, the NYPD, the Mayor's administration's business partners, and whistleblower news censors in journalism that I sought to lawfully express.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C.

§§1331 and 1343. This action is brought pursuant to 42 U.S.C. §§1983, 1985, 1988 and the First,

Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution.

2.      My claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and

2202, FRCP Rules 57 and 65, and the general legal and equitable powers of this Court.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because I reside in the Bronx and the

illegal acts and omissions that were committed against me that this complaint concerns occurred

in Manhattan and Brooklyn.

4.      An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

5.      Consistent with the requirements of New York General Municipal Law § 50-e, I filed a

timely Notice of Claim with the New York City Comptroller within 90 days of the accrual of my

claims under New York law.

6.      My claims have not been adjusted by the New York City Comptroller's Office.

## PARTIES

1.      I am, and was at all times relevant to this action, a resident of Bronx County in the State

of New York. I am also a U.S. Navy veteran, who swore to defend the U.S. Constitution against

all of its enemies indefinitely and without exceptions. I have honored that oath and continue to

do so.

2.      At all times relevant herein Defendant Bill de Blasio and Defendant James O'Neill were

employees of the City of New York.

3.      At all times relevant herein, **a)** Defendant de de Blasio has been the Mayor of the City of

New York, **b)** Defendant James O'Neill was the commissioner of the NYPD, and **c)** Defendant

Lawrence Byrne, Jr. was the Deputy Commissioner for Legal Matters for the NYPD. As the commissioner of the NYPD, Defendant O'Neill was among others who were responsible for how the NYPD operated, how the NYPD's personnel were trained, how they were supervised, and how they were disciplined. In his capacity as the Deputy Commissioner for Legal Matters for the NYPD, Defendant Byrne, Jr. was similarly responsible for having the members of the NYPD operate within the bounds of applicable laws while they were on-duty as members of the NYPD. Defendant de Blasio was also partly responsible for how the NYPD operated and was supervised at all times relevant herein partly by having the power to replace Defendant O'Neill as the NYPD's commissioner and set the budget for the NYPD.  In regards to this point, Mr. de Blasio was recorded on video on 11/30/17 during the public town hall meeting that he conducted in Queens as he stated the following:

"If you have a problem with policing, I am ultimately responsible."

4. Mr. De Blasio is shown and heard as he made that remark in that video at the elapsed time of 1 hour, 49 minutes, and 19 seconds. That video recording is available on the Internet at https://www.youtube.com/watch?v=CRV0IKbg5tQ.

5. Defendant City of New York is a municipal corporation duly incorporated and authorized under the laws of the State of New York pursuant to §431 of its Charter. The City of New York is authorized under the laws of the State of New York to maintain a police department, the NYPD, which is supposed to act as its agent in the area of law-enforcement and for which it and the Mayor are ultimately responsible. The City and the Mayor both assume the risks incidental to the maintenance of a police force and the employment of police officers.

6. The following defendants in this action were at all times relevant herein officers, employees, and agents of the NYPD and the City of New York:

NYPD Detective Nicholas Mason (shield #: 6995), NYPD Officer Lance (shield #: 245), NYPD Officer Ranieri (shield #: 24361), NYPD Officer Suzuki (shield #: 7373), NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, NYPD Officer Jerry Ioveno (shield #: 5560), NYPD Officer Santana (shield #: 7291), NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, NYPD Inspector Howard Redmond, NYPD Lieutenant Ralph Nieves, NYPD Officer Baez (shield #: 5984), NYPD Officer Raymond Gerola (shield #: 6577), NYPD Officer Joe Ventri, NYPD John Doe3 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, NYPD Officer Jemaal Gungor, NYPD Officer Edward Klein, NYPD Officer Zappia (shield #: 4152), NYPD Officer Barker (shield #: 13845), NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, NYPD Sergeant Ryan Dwyer, NYPD Sergeant Jordan Mazur, NYPD Detective Stephen Halk, James O'Neill, Lawrence Byrne, Jr.

7.     Defendants Nieves, O'Neill, and Byrne, Jr. have retired from the NYPD.

8.     Upon information and belief, Defendants NYPD John Doe6 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, and NYPD John Doe4 10/25/17 were officers, employees, and/or agents of the NYPD and the City of New York on 10/25/17.

9.     The following facts apply to the defendants in this action who I identify with John Doe and Jane Doe in their names:

    a.     They were people whose real names I don't know.

    b.     They worked for the NYPD and/or Mayor's office at all times relevant herein.

    c.     They appear in video recordings that I recorded on 10/12/17, 10/18/17, 10/25/17, and 3/18/19 as they were committing illegal acts and omissions against me that concern my claims in this action.

    d.     Most of those defendants appear in the video recordings listed in the following table at the elapsed time shown while some of those defendants instead appear in other video recordings that I didn't record and sufficiently discuss in this complaint to identify those other defendants:

| # | Defendant | Video | Elapsed Time |
|---|---|---|---|
| 1 | NYPD John Doe1 10/12/17 | IMG_2581.MOV | 1 second |
| 2 | NYPD John Doe2 10/12/17 | IMG_2591.MOV | 2 seconds |
| 3 | NYPD John Doe3 10/12/17 | IMG_2591.MOV | 2 seconds |
| 4 | NYPD John Doe4 10/12/17 | IMG_2582.MOV<br><br>IMG_2736.mov | 2 seconds<br><br>34 seconds |
| 5 | NYPD John Doe5 10/12/17 | IMG_2585.MOV<br><br>IMG_2587.mov | 3 seconds<br><br>2 seconds |
| 6 | NYPD John Doe6 10/12/17 | IMG_2588.MOV | 2 seconds |
| 7 | NYPD Jane Doe1 10/12/17 | IMG_2581.MOV | 2 seconds |
| 8 | NYPD Jane Doe2 10/12/17 | IMG_2593.MOV | 2 seconds |
| 9 | NYPD Jane Doe3 10/12/17 | IMG_2582.MOV | 2 seconds |
| 10 | NYPD Jane Doe4 10/12/17 | IMG_2588.MOV | 2 seconds |
| 11 | Jane Doe1 10/12/17 | IMG_2581.MOV | The very beginning |
| 12 | Jane Doe1 10/18/17 | IMG_2736.MOV | 7 seconds |
| 13 | NYPD John Doe1 10/18/17 | IMG_2736.MOV | 19 seconds |
| 14 | NYPD John Doe2 10/18/17 | IMG_2736.MOV | 34 seconds |
| 15 | NYPD John Doe3 10/18/17 | IMG_2736.MOV | 34 seconds |
| 16 | NYPD John Doe4 10/18/17 | IMG_2736.MOV | 34 seconds |
| 17 | NYPD John Doe5 10/18/17 | IMG_2737.MOV | 12 seconds |
| 18 | NYPD John Doe6 10/18/17 | IMG_2737.MOV | 12 seconds |
| 19 | NYPD John Doe1 10/25/17 | IMG_2853.MOV | 26 seconds, 28 seconds |
| 20 | NYPD John Doe2 10/25/17 | IMG_2853.MOV | 27 seconds |
| 21 | NYPD John Doe3 10/25/17 | IMG_2857.MOV | 33 seconds |
| 22 | NYPD John Doe4 10/25/17 | IMG_2857.MOV<br><br>IMG_2863.MOV | 34 seconds<br><br>7 seconds |

| 23 | NYPD John Doe5 10/25/17 | IMG_2857.MOV | 34 seconds |
| 24 | NYPD John Doe6 10/25/17 | IMG_2857.MOV | 34 seconds |
| 25 | NYPD John Doe2 3/18/19 | IMG_8277.MOV | 13 seconds |
| 26 | NYPD John Doe3 3/18/19 | IMG_8374.MOV | 59 seconds |
| 27 | NYPD John Doe4 3/18/19 | IMG_8277.MOV | 2 minutes and 25 seconds |

10.     The faces of the defendants in this action who I identify with John and Jane Doe in their names are shown in the following table at the elapsed times in the video recordings to which I just referred and otherwise referred earlier in this complaint:

| # | Defend-ant | Image | Comments |
|---|------------|-------|----------|
| 1 | NYPD John Doe1 10/12/17 | | He is shown standing next to Defendant Lance and behind ad top the left of Defendant Stribula. He illegally didn't try to intervene on my behalf to enable me to attend the Mayor's 10/12/17 town hall in violation of 42 USC §1986, 42 USC §1985, his oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws as he acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum. |

| 2 | NYPD Jane Doe2 10/12/17 | | | She is shown standing behind Defendants Lance and NYPD John Doe1 10/12/17 as they stood next to one another and behind Defendant Stribula.<br><br>She illegally didn't try to intervene on my behalf to enable me to attend the Mayor's 10/12/17 town hall in violation of 42 USC §1986, 42 USC §1985, her oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws as she acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum. |
| 3 | NYPD John Doe2 10/12/17 | | | He is shown standing on a sidewalk near Defendant Stribula and an entrance to the property of the school that hosted the Mayor's 10/12/17 town hall as he illegally didn't try to intervene on my behalf to enable me to attend that town hall in violation of 42 USC §1986, 42 USC §1985, his oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws as he acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum. |

| 4 | NYPD John Doe3 10/12/17 | | He is shown standing on a sidewalk near Defendant Stribula and an entrance to the property of the school that hosted the Mayor's 10/12/17 town hall as he illegally didn't try to intervene on my behalf to enable me to attend that town hall in violation of 42 USC §1986, 42 USC §1985, his oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws as he acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum. |
| 5 | NYPD Jane Doe2 10/12/17 | | She is shown walking along a sidewalk in front of the school that hosted the Mayor's 10/12/17 town hall in my direction and that of Defendant Stribula's while Defendant Stribula and others were illegally preventing me from attening that public forum. Defendant NYPD Jane Doe2 10/12/17 illegally didn't try to intervene on my behalf to enable me to attend that town hall in violation of 42 USC §1986, 42 USC §1985, her oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws as she acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum.

She also then walked in the direction of a video security camera that was attached to that school that was likely controlled by the DOE and recorded a clearer image of her face than what appears to the left. |

| 6 | NYPD John Doe4 10/12/17 |   | The first image shown to the left is from the video recording that has the filename of "IMG_2582.mov". He is the Black male in it who is standing in front of Defendant Mason in this image as he stood on a sidewalk near an entrance to the property of the school that hosted the Mayor's 10/12/17 town hall as he illegally didn't try to intervene on my behalf to enable me to attend that town hall in violation of 42 USC §1986, 42 USC §1985, his oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws. That occurred as he acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum.

The second image shown to the left is from the video recording that has the filename of "IMG_2736.mov" and corresponds ot the elapsed time of 34 seconds in it as he illegally told me that he wouldn't arrange to hae a commanding officer of his to promptly come to where he and I then were as he and others were illegally acting in concert as they illegally prevented me from attending the Mayor's 10/18/17 town hall while I conducted myself in an entirely lawful manner in contrast to them. He also illegally prevented me from attending the Mayor's 10/25/17 resource fair by preventing me from accessing the building in which it was conducted in violation of my constitutional rights of access to a public forum. |

| 7 | NYPD Jane Doe3 10/12/17 |  | She is a Black female who is shown wearing a black hat and a blue NYPD shirt. She was then near a door that was used to grant access to members of the public and Defendant Stribula who appears in this image to the school that hosted the Mayor's 10/12/17 town hall.<br><br>NYPD Jane Doe3 10/12/17 illegally didn't try to intervene on my behalf to enable me to attend the Mayor's 10/12/17 town hall in violation of 42 USC §1986, 42 USC §1985, her oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws as she acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum. She did so largely by enabling Defendant Stribula and others that include members of the public to enter that school at the same time that I was being illegally prevented from doing so in flagrant violation of my Fourteenth Amendment rights that pertain to discrimination, selective-enforcement, abuse of process as well as my First Amendment right of access to a public forum.<br><br>As she was where she appears in the image to the left, she was in an area that was located close to a video security camera that was attached to that school and likely controlled by the DOE. That video security camera likely recorded a clearer image of her face than what appears to the left. |

| 8 | NYPD John Doe5 10/12/17 |  | The first image shown to the left is from the video recording that has the filename of "IMG_2585.MOV". He is shown walking in my direction from the property of the school that hosted the Mayor's 10/12/17 town hall as he illegally didn't try to intervene on my behalf to enable me to attend that town hall in violation of 42 USC §1986, 42 USC §1985, his oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws. That occurred as he acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum.<br><br>As he left the property of that school then, he was in an area that was located close to a video security camera that was attached to that school and likely controlled by the DOE. That video security camera likely recorded a clearer image of his face than what appears to the left.<br><br>The second image of him that is shown to the left is from the video recording that has the filename of "IMG_2587.mov" and corresponds ot the elapsed time of 2 seconds in it as he walked next to Defendant Harold Miller and Paola Ruiz of the Mayor's office. At that time, NYPD John Doe5 10/12/17 also illegally didn't try to intervene on my behalf to enable me to attend that town hall in violation of 42 USC §1986, 42 USC §1985, his oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws. That occurred as he |

| | | | |
|---|---|---|---|
| | | | continued to act in concert with Defendant Stribula and others that included Defendant Miller to illegally prevent me from attending that public forum. |
| 9 | NYPD Jane Doe4 10/12/17 | | She is a female member of the NYPD who then wore a black NYPD uniform as she was then near a door that was used to grant access to members of the public to the school that hosted the Mayor's 10/12/17 town hall.<br><br>NYPD Jane Doe4 10/12/17 illegally didn't try to intervene on my behalf to enable me to attend the Mayor's 10/12/17 town hall in violation of 42 USC §1986, 42 USC §1985, her oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws as she acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum. She did so largely by enabling Defendant Stribula and others that include members of the public to enter that school at the same time that I was being illegally prevented from doing so in flagrant violation of my Fourteenth Amendment rights that pertain to discrimination, selective-enforcement, abuse of process as well as my First Amendment right of access to a public forum.<br><br>As she was where she appears in the image to the left, she was in an area that was located close to a video security camera that was attached to that school and likely controlled by the DOE. That video security camera likely |

| 10 | NYPD John Doe6 10/12/17 | | recorded a clearer image of her face than what appears to the left. |
|---|---|---|---|
| | | | He is the Black male who I have reason to believe was a member of the NYPD on 10/12/17 as he appeared on the right in the image shown to the left. He appears next to Defendant NYPD Jane Doe3 10/12/17 in that image.<br><br>He illegally didn't try to intervene on my behalf to enable me to attend the Mayor's 10/12/17 town hall in violation of 42 USC §1986, 42 USC §1985, his oath as a member of the NYPD, my Fourteenth Amendment rights, and other laws as he acted in concert with Defendant Stribula and others to illegally prevent me from attending that public forum. He did so largely by enabling Defendant Stribula and others that include members of the public to enter that school at the same time that I was being illegally prevented from doing so in flagrant violation of my Fourteenth Amendment rights that pertain to discrimination, selective-enforcement, abuse of process as well as my First Amendment right of access to a public forum.<br><br>As he was where he appears in the image to the left, he was in an area that was located close to a video security camera that was attached to that school and likely controlled by the DOE. That video security camera likely recorded a clearer image of his face than what appears to the left. |

| 11 | Jane Doe1 10/12/17 |  | Here, Jane Doe1 10/12/17 is shown after she flagrantly violated my rights pursuant to the Fourteenth Amendment, Fifth Amendment, and First Amendment to be issued an admission ticket to attend the Mayor's 10/12/17 town hall while I waited in line behind the man shown in this image who is wearing a black jacket and a hat while I was conducting myself in an entirely lawful manner in contrast to her and Defendant Stribula who also appears in this image. |
|  | Jane Doe1 10/18/17 |  | She appears in the first screenshot shown to the left that is from the elapsed time of 7 seconds in the video that has the filename of "IMG_2736.MOV" as she wore eyeglasses and had dark hari while it seems that she then carrried a tablet computer in her left hand.<br><br>She also appears in the second screenshot shown to the left that is from the elapsed time of 1 hour, 51 minutes, and 20 seconds in the video recording that the Mayor's office arranged to be recorded of the Mayor's 9/28/17 town hall meeting. That video recording is available on the Internet at https://www.youtube.com/watch?v=4s9fYZNLK8o. |



| 12 | NYPD John Doe1 10/18/17 |  | He is wearing the blue shirt with a NYPD patch by his left shoulder on it as he stood next to Defendant Ioveno on a sidewalk near me. Both Defendant Ioveno and NYPD John Doe1 10/18/17 illegally didn't intervene on my behalf to enable me to attend the Mayor's 10/18/17 town hall as they instead acted in concert with Defendants NYPD John Doe4 10/12/17, Ringel, Atcheson, Stribula, and others through their illegal acts and omissions to illegally prevent me from attending the Mayor's 10/18/17 town hall. That occurred before Defendant Ioveno intervened on my behalf on 11/30/17 by talking with Defendants Carrion and Ridener then in front of the school that hosted the public town hall meeting that the Mayor conducted on that date that enabled me to attend that town hall after Defendant Stribula told me in front of Defendants Ringel, Miller, and Baez and numerous witnesses that she wouldn't allow me to attend that town hall in spite of the fact that I was |

| | | | |
|---|---|---|---|
| | | | conducting myself in an entirely lawful manner in contrast to her and other defendants. I recorded Ms. Stribula on video then. |
| 13 | NYPD John Doe2 10/18/17 | | He is shown in this image as he wore a black NYPD uniform with a black hat and stood on a sidewalk near the entrance to the building that hosted the Mayor's 10/18/17 town hall that was used to grant members of the public access to it to attend that public forum on that date. He also illegally didn't intervene on my behalf as Defendants NYPD John Doe4 10/12/17, Ringel, Atcheson, Stribula, and others were acting in concert through their illegal acts and omissions to illegally prevent me from attending the Mayor's 10/18/17 town hall. He had a realistic opportunity then to have intervened on my behalf for that purpose. |
| 14 | NYPD John Doe3 10/18/17 | | He is shown in this image as he stood on a sidewalk near the entrance to the building that hosted the Mayor's 10/18/17 town hall that was used to grant members of the public access to it to attend that public forum on that date. He also illegally didn't intervene on my behalf as Defendants NYPD John Doe4 10/12/17, Ringel, Atcheson, Stribula, and others were acting in concert through their illegal acts and omissions to illegally prevent me from attending the Mayor's 10/18/17 town hall. He had a realistic opportunity then to have intervened on my behalf for that purpose. |

| 15 | NYPD John Doe4 10/18/17 | | He is shown in this image as he stood on a sidewalk near the entrance to the building that hosted the Mayor's 10/18/17 town hall that was used to grant members of the public access to it to attend that public forum on that date. He also illegally didn't intervene on my behalf as Defendants NYPD John Doe4 10/12/17, Ringel, Atcheson, Stribula, and others were acting in concert through their illegal acts and omissions to illegally prevent me from attending the Mayor's 10/18/17 town hall. He had a realistic opportunity then to have intervened on my behalf for that purpose. |
| 16 | NYPD John Doe5 10/18/17 | | He is shown in this image as he stood on a sidewalk in front of Defendant Ringel (also shown in this on the left) and I as Defendants NYPD John Doe4 10/12/17, Ringel, Stribula, Atcheson, and others were nearby and acting in concert through their illegal acts and omissions to illegally prevent me from attending the Mayor's 10/18/17 town hall.<br><br>Defendant NYPD John Doe5 10/18/17 illegally didn't intervene on my behalf to enable me to attend that town hall in spite of the fact that he had a realistic opportunity to have done so for that purpose. |

| 17 | NYPD John Doe6 10/18/17 |  | He is shown in this image as he stood on a sidewalk in front of Defendant Ringel and I as Defendants NYPD John Doe4 10/12/17, Ringel, Stribula, Atcheson, and others were nearby and acting in concert through their illegal acts and omissions to illegally prevent me from attending the Mayor's 10/18/17 town hall.<br><br>Defendant NYPD John Doe6 10/18/17 illegally didn't intervene on my behalf to enable me to attend that town hall in spite of the fact that he had a realistic opportunity to have done so for that purpose. |
| 18 | NYPD John Doe1 10/25/17 |  | The first image of him corresponds to the elapsed time of 26 seconds and the second image of him corresponds to the elapsed time of 28 seconds.<br><br>He is shown standing on the sidewalk near me and Defendants Nieves and Baez as they were illegally prevented me from walking past them through a gated entrance from the sidewalk where I stood to the entrance of the school that hosted the Mayor's 10/25/17 resource fair. He illegally didn't intervene on my behalf to enable me to attend that resource fair meeting in spite of the fact that he had a realistic opportunity to have done so for that purpose.<br><br>Although I can't say for certain at this point, I have reason to believe that NYPD John Doe1 10/25/17 was a member of the NYPD on 10/25/17 or was otherwise some |

| | | | |
|---|---|---|---|
| | |  | other law-enforcement official then because of his behavior then. |
| 19 | NYPD John Doe2 10/25/17 | | He is shown standing on the sidewalk near me and Defendants Nieves and Baez as they were illegally prevented me from walking past them through a gated entrance from the sidewalk where I stood to the entrance of the school that hosted the Mayor's 10/25/17 resource fair. He illegally didn't intervene on my behalf to enable me to attend that resource fair meeting in spite of the fact that he had a realistic opportunity to have done so for that purpose.<br><br>Although I can't say for certain at this point, I have reason to believe that NYPD John Doe1 10/25/17 was a member of the NYPD on 10/25/17 or was otherwise some other law-enforcement official then because of his behavior |

| 20 | NYPD John Doe3 10/25/17 |  | He is shown standing in front of the front-passenger door for a NYPD car with an identifcation number of 5249 on it as he stood across the street from where I and Defendants Nieves and Baez then were as they were illegally preventing me from walking past them through a gated entrance from the sidewalk where I stood to the entrance of the school that hosted the Mayor's 10/25/17 resource fair. He illegally didn't intervene on my behalf to enable me to attend that resource fair meeting in spite of the fact that he had a realistic opportunity to have done so for that purpose. |
| 21 | NYPD John Doe4 10/25/17 |  | In the video that has the filename of "IMG_2857.MOV", he is shown standing next to Defendants NYPD John Doe5 10/18/17, and NYPD John Doe6 10/18/17 in an area that was located across the street from where I and Defendants Nieves and Baez then were as Defendants Nieves and Baez were illegally preventing me from walking past them through a gated entrance from the sidewalk where I stood to the entrance of the school that hosted the Mayor's 10/25/17 resource fair. He illegally didn't intervene on my behalf to enable me to attend that resource fair meeting in spite of the fact that he had a realistic opportunity to have done so for that purpose. |

| | | | |
|---|---|---|---|
| | |  | In the video that has the filename of "IMG_2863.MOV", he is shown standing on a sidewalk near where I and Defendants Baez, Gerola, and NYPD John Doe4 10/12/17 then were as they were illegally preventing me from walking past them through a gated entrance from the sidewalk where I stood to the entrance of the school that hosted the Mayor's 10/25/17 resource fair.. |
| 22 | NYPD John Doe5 10/25/17 |  | He is shown standing next to Defendants NYPD John Doe4 10/18/17, and NYPD John Doe6 10/18/17 in an area that was located across the street from where I and Defendants Nieves and Baez then were as Defendants Nieves and Baez were illegally preventing me from walking past them through a gated entrance from the sidewalk where I stood to the entrance of the school that hosted the Mayor's 10/25/17 resource fair. He illegally didn't intervene on my behalf to enable me to attend that resource fair meeting in spite of the fact that he had a realistic opportunity to have done so for that purpose. |

| 23 | NYPD John Doe6 10/25/17 |  | | He is shown standing next to Defendants NYPD John Doe4 10/18/17, and NYPD John Doe5 10/18/17 in an area that was located across the street from where I and Defendants Nieves and Baez then were as Defendants Nieves and Baez were illegally preventing me from walking past them through a gated entrance from the sidewalk where I stood to the entrance of the school that hosted the Mayor's 10/25/17 resource fair. He illegally didn't intervene on my behalf to enable me to attend that resource fair meeting in spite of the fact that he had a realistic opportunity to have done so for that purpose. |

| 24 | NYPD John Doe1 3/18/19 |  | This corresponds to the elapsed time of 17 minutes and 29 seconds in the video that the Mayor's Office arranged to be recorded of the Mayor's 3/18/19 4:30 pm public hearing that was conducted in the Blue Room in City Hall. This shows NYPD John Doe1 3/18/19 as he criminally assaulted me as I was conducting myself in an entirely lawful manner in stark contrast to the Mayor and him by illegally seizing my left arm and making contact with my back with his right hand. He did so as I was in the middle of testifying to the Mayor in accordace with my constitutional rights as the Mayor was flagrantly violating my First Amendment and Fourteenth Amendment rights to do so. Through his actions against me then, NYPD John Doe1 3/18/19 flagrantly violated my Fourth Amendment, Fifth Amendment, First Amendment, and Fourteenth Amendment rights as well as additional applicable laws.

Instead of illegally seizing me on 3/18/19 and interfering with my testimony to the Mayor duri that hearing, it was his duty as a member of the NYPD to immediately intervene on my behalf against the Mayor to stop him from illegally engaging in flagrant witness tampering and obstruction in regards to the testimony that I was then giving. As a result, he then acted in concert with the Mayor as a co-conspirator to illegally subject me to witness tampering. |

| 25 | NYPD John Doe2 3/18/19 |  | NYPD John Doe2 3/18/19 was inside of the Blue Room in City Hall as NYPD John Doe1 3/18/19 criminally assaulted me by seizing me while I was in the middle of lawfully testifying and otherwise conducting myself during the Mayor's 3/18/19 public hearing. NYPD John Doe2 3/18/19 illegally didn't try to intervene on my behalf then against both **a)** NYPD John Doe1 3/18/19 and **b)** the Mayor partly by immediately arresting NYPD John Doe1 3/18/19 for illegally assaulting me, seizing me, harassing me, witness tampering, and other crimes and offenses that occurred in his immediate presence I that relatively small room. He also had a duty then to stop the Mayor from continuing to willfully engage in witness tampering against me in that room as he clearly obstructed my testimony.

He also illegally didn't intervene on my behalf to enable me to re-enter the Blue Room on 3/18/19 after I was illegally ejected from it to retrieve my backpack and laptop own my own instead of having others touch that property. He also illegally didn't try to intervene on my behalf thereafter on 3/18/19 as I proceeded to be illegally coerced to leave City Hall's building and its grounds while I was criminally assaulted and otherwise coerced to do so by Defendants Klein, Gungor, and other members of the NYPD.

In sum, he flagrantly violated 42 USC §1986, 42 USC §1985, his |

| | | | |
|---|---|---|---|
| | | | oath as a member of the NYPD, my Fourteenth Amendment rights to have had him intervene on my behalf on 3/18/19, and other applicable laws. Instead, he acted in concert with NYPD John Doe1 3/18/19, the Mayor, and Defendants Gungor, NYPD John Doe3 3/18/19, Klein, and other NYPD defendants in regards to the illegal acts and omissions that were committed against me on 3/18/19 inside of City Hall and on its grounds. |
| 26 | NYPD John Doe3 3/18/19 | | What I just discussed about NYPD John Doe2 3/18/19 is equally true and accurate about NYPD John Doe3 3/18/19. He was also inside of the Blue Room in City Hall as I testified to the Mayor and was illegally seized by Defendant NYPD John Doe1 3/18/19. |

| 27 | NYPD John Doe4 3/18/19 |  | NYPD John Doe4 3/18/19 illegally didn't intervene on my behalf against Defendant Klein and Gungor as they illegally assaulted me and otherwise illegally coerced me to leave City Hall's property on 3/18/19. NYPD John Doe4 3/18/19 was then in their immediate presence as I sought to remain on City Hall's grounds and inside of City Hall partly to try to lawfully talk with journalists and other government officials then and there about the fact that I was illegally seized and assaulted by NYPD John Doe1 3/18/19 inside of its Blue Room and also ejected from it as well as the fact that the Mayor illegally subjected me to witness tampering during the Mayor's 3/18/19 public hearing as members of the NYPD illegally didn't intervene on my behalf.

I also sought to remain on City Hall's grounds and in City Hall's building then to apprise such journalists and other government officials about the fact that Defendants Klein, Gungor, NYPD John Doe4 3/18/19, and other members of the NYPD were illegally assaulting me, harassing me, and otherwise illegally coercing me to leave City Hall's grounds while I was conducting myself in an entirely lawful manner in contrast to them. |

| 28 | NYPD John Doe5 3/18/19 |  | NYPD John Doe5 3/18/19 is the member of the NYPD who appears on the left in this image that also appears to show Defendant NYPD Officer Barker (shield #: 13845) in it as they stood near the NYPD guardhouse that is located just inside of the Park Row entrance to City Hall.<br><br>What I just discussed about NYPD John Doe4 3/18/19 is equally true about NYPD John Doe5 3/18/19. |

11.     The table shown next contains brief information about as well as links to copies of video recordings that I recorded with my cell phone on 10/12/17, 10/18/17, 10/25/17, and 3/19/19 to which I just referred above as well as other video recordings that I recorded on those dates. I recorded all of those video recordings while I lawfully conducted myself as I stood outside of and in close proximity to the buildings that hosted the Mayor's 10/12/17 town hall, 10/18/17 town hall, 10/25/17 resource fair, and 3/19/19 public hearing while I was being illegally prevented from attending those public forums in flagrant violation of my constitutional rights and other applicable laws. The second table that follows this one includes further relevant descriptions about what appears in those video recordings.

| # | Creation Date and Time | Filename | Link to video |
|---|---|---|---|
| 1 | 10/12/17 at 5:51 pm | IMG_2581.MOV | https://drive.google.com/file/d/1dDdtcWzTQViDUJm2mIaNH6wTTnJAYAN5/view?usp=sharing |
| 2 | 10/12/17 at 7:14 pm | IMG_2582.MOV | https://drive.google.com/file/d/13MW6rctyDJ-VxtQxtxRLw3AO733cJjgL/view?usp=sharing |
| 3 | 10/12/17 at 7:14 pm | IMG_2583.MOV | https://drive.google.com/file/d/1JsWXTEJOvVbIyBtfdxRBO4i8YbeIx-oF/view?usp=sharing |
| 4 | 10/12/17 at 7:15 pm | IMG_2584.MOV | https://drive.google.com/file/d/1R-9B91znm0XPZRU_WNP7tYmEP2Loq1QZ/view?usp=sharing |
| 5 | 10/12/17 at 7:25 pm | IMG_2585.MOV | https://drive.google.com/file/d/1UzPXmt2SQ0zQxcKLIVcRgBeKKTTjST2X/view?usp=sharing |
| 6 | 10/12/17 at 7:25 pm | IMG_2586.MOV | https://drive.google.com/file/d/1KZVuSbN8yDDKfcjcJGR5z9S1IUIlpeyR/view?usp=sharing |
| 7 | 10/12/17 at 7:25 pm | IMG_2587.mov | https://drive.google.com/file/d/1MNAFz4QBuGPk5D9xq6PxIdvlh603wPQf/view?usp=sharing |
| 8 | 10/12/17 at 7:26 pm | IMG_2588.MOV | https://drive.google.com/file/d/1sHyMLV_RKx_ga6JG517PY6l57AYtiVtN/view?usp=sharing |
| 9 | 10/12/17 at 7:30 pm | IMG_2589.MOV | https://drive.google.com/file/d/1eEAMLC53rryddcqYKx6TtD4hVSSkVgC1/view?usp=sharing |
| 10 | 10/12/17 at 7:31 pm | IMG_2590.MOV | https://drive.google.com/file/d/1s99q8odr_GWXNbv7ksuX04KKw75pDr8b/view?usp=sharing |
| 11 | 10/12/17 at 7:32 pm | IMG_2591.MOV | https://drive.google.com/file/d/1THKpFq5qdmQL-5PCnffe28p_JaTTv4xD/view?usp=sharing |
| 12 | 10/12/17 at 7:32 pm | IMG_2592.MOV | https://drive.google.com/file/d/1g1OCNAPmFxHV1eSCNvp-eTrosK5zVftK/view?usp=sharing |

| 13 | 10/12/17 at 7:43 pm | IMG_2593.MOV | https://drive.google.com/file/d/1TljYxZWfsPn_tIVV8dTijuZI7oxrj9Oq/view?usp=sharing |
| 14 | 10/18/17 at 5:01 pm | IMG_2736.mov | https://drive.google.com/file/d/119Jbry4NU62uo3kRJXA6jTqoeYfBP3PS/view?usp=sharing |
| 15 | 10/18/17 at 5:03 pm | IMG_2737.mov | https://drive.google.com/file/d/16RJzqtWXmQlgqfJ50ZOVbnhX1MOgh3MW/view?usp=sharing |
| 16 | 10//25/17 at 11:59 am | IMG_2853.MOV | https://drive.google.com/file/d/1Yht0dK15TuIh_McSy2AdG2CYPCfGFgav/view?usp=sharing |
| 17 | 10/25/17 at 12:48 pm | IMG_2857.MOV | https://drive.google.com/file/d/1Twwochabl-z_otheC-yjwdOyFsta6ka8/view?usp=sharing |
| 18 | 10/25/17 at 2:32 pm | IMG_2863.MOV | https://drive.google.com/file/d/1qKiqYx4DBUKFFtAXIszYvDEWXJN4RBuH/view?usp=sharing |
| 19 | 3/18/19 at 5:04 pm | IMG_8277.MOV | https://drive.google.com/open?id=1r9ZGamyup1x-GnSKsjEBm2AcSLGYdH2j |
| 20 | 3/21/19 at 12:29 pm | IMG_8374.MOV | https://drive.google.com/file/d/1v3DZxaPskhCK8kywq6G2kR3zhPpzHInC/view?usp=sharing |

12.     Upon information and belief, Defendants Redmond, Nieves, Mason, Gerola, Ventri, and Ioveno, NYPD John Doe4 10/12/17, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, Gungor, and Dwyer were at all times relevant herein members of the NYPD security detail for the Mayor.

13.     At all times relevant herein, Mr. Redmond helped to direct and supervise how the Mayor's NYPD security detail operated.

14.     Defendants Mazur and Halk were assigned to work on the timely FOIL demand that I submitted to the NYPD on 3/18/19 to which the NYPD assigned the identification code of FOIL-2019-056-04374 in which I directed the NYPD to provide me video recordings and provided

sufficient information to the NYPD in doing so to allow its personnel to immediately provide me the entirety of the video recordings that I directed the NYPD to provide to me through that FOIL demand. Upon information and belief, Defendants Mazur and Halk acted in concert with unknown others that caused me to be illegally deprived of video recordings that were recorded on 3/18/19 by video security cameras controlled by the NYPD in the immediate vicinity of City Hall in flagrant violation of my rights pursuant to FOIL, the First Amendment, the Fourteenth Amendment, and other applicable laws that also confirm that the City of New York was required to preserve and provide me those video recordings in unedited and non-redacted form largely in response to the fact that I submitted timely complaints about the illegal acts and omissions that were committed against me on 3/18/19 inside of City Hall and otherwise on City Hall's grounds and within its immediate vicinity to the CCRB and other government bodies as I also was preparing to commence entirely valid litigation in response to the illegal acts and omissions that were committed against me on 3/18/19 by the Mayor and members of the NYPD. In short, the City of New York and members of the NYPD engaged in willful and illegal spoliation of evidence and obstruction of justice by not providing me the entirety of the video recordings that I ordered the NYPD to provide to me in furtherance of a criminal scheme to cover-up the illegal acts and omissions that were committed against me on 3/18/19 to which I just referred.

15.     At all times relevant herein, Defendant Vance, Jr. has been the Manhattan District Attorney and has been responsible for enforcing applicable laws that include New York State's Penal Code in New York City by commencing prosecutions.

16.     At all times relevant herein, Defendant Stephen Levin has been a member of the City Council, and employee of the City of New York. He was also the moderator of the Mayor's 10/18/17 town hall.

17.    At all times relevant herein, Defendants Ringel, Atcheson, Stribula, Miller, Jane Doe1

10/12/17, and Carrion were employees of the City of New York who worked for the Mayor's

CAU as Mr. Carrion was the commissioner of the Mayor's CAU.

18.    Upon information and belief, Defendant Jane Doe1 10/18/17 was an employee of the City

of New York and worked for the Mayor's office at all times relevant herein.

19.    The next table contains links to the LinkedIn profiles on the Internet for Defendants

Atcheson, Carrion, Ioveno, Miller, Ridener, Ringel, and Stribula that contain summary

information about their careers and educational backgrounds:

| # | Name | Link to LinkedIn Profile |
|---|------|--------------------------|
| 1 | Rachel Atcheson | https://www.linkedin.com/in/rachel-atcheson-517b47a0/ |
| 2 | Marco Carrion | https://www.linkedin.com/in/marco-a-carrion/ |
| 3 | Jerry Ioveno | https://www.linkedin.com/in/jerry-ioveno-512794b/ |
| 4 | Harold Miller | https://www.linkedin.com/in/harold-miller-305502171/ |
| 5 | Dustin Ridener | https://www.linkedin.com/in/dustinridener/ |
| 6 | Pinny Ringel | https://www.linkedin.com/in/pinny-ringel-24b9045/ |
| 7 | Shauna Stribula | https://www.linkedin.com/in/shauna-stribula-294912a7/ |

20.    At all times relevant herein, Defendants Jessica Ramos and Dustin Ridener were

employees of the City of New York who worked for the Mayor's office.

21.    The defendants in this action who are people violated oaths that they were required to

take through the illegal acts and omissions that they committed against me on 10/12/17,

10/18/17, 10/25/17, and 3/18/19 in relation to my efforts to lawfully attend the Mayor's **a)**

10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public

hearing. The specific oaths that the defendants violated then in regards to me were those that

they were required to take upon **a)** joining the NYPD and/or **b)** otherwise working for the City of

New York. Those oaths required them to swear or affirm that they would perform their duties as

members of the NYPD and/or other personnel of the City of New York in accordance with the

U.S. Constitution and New York State Constitution to the best of their abilities. In regards to this

point, the Mayor's press office made a transcript available on the Internet of a swearing-in ceremony for new members of the NYPD that the Mayor presided over on 10/8/15. That transcript is available on the Internet at https://www1.nyc.gov/office-of-the-mayor/news/702-15/transcript-mayor-de-blasio-delivers-remarks-nypd-swearing-in-ceremony.

22.     The next screenshot shows an excerpt from that transcript that reflects how those new members of the NYPD pledged to uphold the U.S. and New York Constitution and to faithfully discharge their duties as members of the NYPD to the best of their abilities after the defendant in this action who are members of the NYPD most likely did the same before they committed illegal acts and omissions against me that this action concerns. Hindsight therefore confirms that they lied in the oaths that they took upon joining the NYPD to become part of a criminal mob as liars and con artists instead of joining the ranks of actual law-enforcement.

Mayor: I do hereby pledge – I'm sorry, I should say repeat after me – I do hereby pledge and declare –

Recruits: I do hereby pledge and declare –

Mayor: – to uphold the Constitution of the United States –

Recruits: – to uphold the Constitution of the United States –

Mayor: – and the Constitution of the State of New York –

Recruits: – and the Constitution of the State of New York –

Mayor: – and faithfully discharge my duties –

Recruits: – and faithfully discharge my duties –

Mayor: – as a New York City Police Officer –

Recruits: – as a New York City Police Officer –

Mayor: – to the best of my ability –

Recruits: – to the best of my ability –

Mayor: – so help me God.

Recruits: – so help me God.

23.     In a similar vein, other personnel of the City of New York are required upon working for

the City of New York by New York State Civil Service Law §62 to take and file an oath or

affirmation in which they pledge and declare that they will support the U.S. and New York State

Constitution and faithfully discharge the duties of their jobs with the City of New York to the

best of their abilities. The terms of New York State Civil Service Law §62 are shown on the New

York State Senate's web site at https://www.nysenate.gov/legislation/laws/CVS/62. The

following are two relevant excerpts from that law:

    a.     "Every person employed by the state or any of its civil divisions, except an
employee in the labor class, before he shall be entitled to enter upon the discharge
of any of his duties, shall take and file an oath or affirmation in the form and
language prescribed by the constitution for executive, legislative and judicial
officers, which may be administered by any officer authorized to take the
acknowledgment of the execution of a deed of real property, or by an officer in
whose office the oath is required to be filed. In lieu of such oath administered by
an officer, an employee may comply with the requirements of this section by
subscribing and filing the following statement: **"I do hereby pledge and declare
that I will support the constitution of the United States, and the constitution
of the state of New York, and that I will faithfully discharge the duties of the
position of ............, according to the best of my ability.** " Such oath or
statement shall be required only upon original appointment or upon a new
appointment following an interruption of continuous service, and shall not be
required upon promotion, demotion, transfer, or other change of title during the
continued service of the employee, or upon the reinstatement pursuant to law or
rules of an employee whose services have been terminated and whose last
executed oath or statement is on file."

    (boldface formatting added for emphasis)

    b.     "The refusal or wilful failure of such employee to take and file such oath or
subscribe and file such statement shall terminate his employment until such oath
shall be taken and filed or statement subscribed and filed as herein provided."

24.     On a closely related note, the following shows the terms of New York City Charter

Section 435(a) that address the legal duties that all members of the NYPD have and underscores

the fact that the defendants in this action who were members of the NYPD between 10/3/17 and

10/4/17 committed illegal acts and omissions against me in relation to my claims in this case by

flagrantly violating and disregarding their legal duties as members of the NYPD:

> "**The police department and force shall have the power and it shall be their duty to preserve the public peace, prevent crime, detect and arrest offenders, suppress riots, mobs and insurrections, disperse unlawful or dangerous assemblages and assemblages which obstruct the free passage of public** streets, **sidewalks**, parks and places; **protect the rights of persons** and property, **guard the public health**, **preserve order at** elections and **all public meetings and assemblages**; subject to the provisions of law and the rules and regulations of the commissioner of traffic,* regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public as well as the proper protection of human life and health; **remove all nuisances in the public** streets, parks and **places**; arrest all street mendicants and beggars; provide proper police attendance at fires; inspect and observe all places of public amusement, all places of business having excise or other licenses to carry on any business; **enforce and prevent the violation of all laws and ordinances in force in the city**; and for these purposes **to arrest all persons guilty of violating any law or ordinance for the suppression or punishment of crimes or offenses**.

(boldface formatting added for emphasis)

25.     By committing the illegal acts and omissions against me that my claims in this action concern, the defendants who did so and were then personnel of the City of New York violated New York City Charter §1116 that requires them to be promptly fired and prohibited from working for the City of New York again.

26.     The individual defendants are being sued herein in their individual and official capacities.

27.     At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD and City of New York. They were acting for and on behalf of the NYPD, Mayor, Mr. Banks, HRA, and one another at all times relevant herein. While doing so, the defendants in this action who are members of the NYPD did so with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

28.     The individual defendants' acts hereafter complained of were carried out intentionally,

recklessly, and oppressively with malice and egregious, callous, and wanton disregard of plaintiff's rights.

29.     At all relevant times, the individual defendants were engaged in joint ventures, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

## BACKGROUND FACTS

1.     I incorporate by reference the statements that I made in all of the preceding paragraphs as though fully set forth herein.

2.     In the interests of brevity and pursuant to FRCP Rule 10(c), I incorporate by reference as though fully set forth herein both **a)** the "Background Facts" section and **b)** the "Legal Standards and Additional Background Facts" section that appear in the following:

    a.     The First Amended Complaint that I filed in K4 on 10/5/20. That submission corresponds to docket number 4 in that case.

    b.     The complaint that I filed in K5 on 9/25/20. That submission corresponds to docket number 2 in that case.

    c.     The complaint that I filed in K6. That submission corresponds to docket number 2 in that case.

3.     Long before I was first prevented from attending a public forum that the Mayor conducted, a news organization named DNAInfo published a news article on the Internet on 12/18/16 at https://www.dnainfo.com/new-york/20161217/upper-west-side/mayor-de-blasio-town-hall-upper-west-side/ that was written by Carolina Pichardo and is entitled, "De Blasio's Town Hall Initially Bars Media Due to 'Miscommunication'" in which that article reported that members of the press were initially prevented from attending a town hall meeting that the Mayor

conducted on 12/15/16 while Mr. Levine was the moderator for that town hall meeting that was a

public forum. That article also reported that someone named Thomas Lopez-Pierre was barred

from that public forum and wasn't eventually permitted to attend that town hall. Mr. Lopez-

Pierre was then a political rival of New York City Councilman Mark Levine who was seeking to

be Mr. Levine's replacement on the City Council. This means that the illegal acts and omissions

that the defendants in this action committed against me in relation to town hall meetings, a

resource fair meeting, and a public hearing that the Mayor conducted were a resumption of

illegal acts and omissions that were part of a municipal custom and practice by members of the

Mayor's office and members of the NYPD to illegally bar people from public forums that the

Mayor conducted in violation of the U.S. Constitution and other applicable laws. The following

is a relevant excerpt from that news article that sufficiently confirms that Mr. Levine and/or

people who acted on his behalf violated the Hatch Act by barring Thomas Lopez-Pierre from that

town hall meeting:

> The local tenant activist Thomas Lopez-Pierre — who is running against Levine for City Council — said he was also barred, after registering for the event and receiving a call for confirmation from the Mayor's office on Monday.
>
> Levine said Lopez-Pierre has a "violent history" and "has behaved in threatening ways at numerous such events."
>
> Levine said there was "some vetting for security concerns," but that a mixture of about two dozen community organizations, including nonprofits and NYCHA tenant groups, brought their own constituents. There was open registration as well, in which those interested could register by calling or emailing a designated number.
>
> Lopez-Pierre said he also spoke to Paola Ruiz, the Manhattan Borough Director for the mayor's community affairs unit, on Dec. 6 to directly register for the event.

4.      The next screenshot is from a Twitter posting that Mr. Lopez-Pierre posted on the

Internet at https://twitter.com/VoteLopezPierre/status/809560855151071232 on 12/15/16 at 7:48

pm by using a Twitter account that is registered to him and has the username of

"@VoteLopezPierre". His remarks in that posting sufficiently confirm that Mr. Levine violated

the Hatch Act (5 U.S.C. §1502(a)(1)) by causing Mr. Lopez-Pierre to be barred from that town

hall meeting and that town hall meeting was illegally conducted inside of a public school in

violation of *Bloomberg v. The New York City Department of Education*, No. 17-cv-3136 (PGG)

(S.D.N.Y. Sept. 24, 2019).



5.      The next screenshot is from a Twitter posting that a journalist named Brigid Bergin

posted on the Internet at https://twitter.com/brigidbergin/status/809555592125759488 on

12/15/16 at 7:27 pm by using a Twitter account that is registered to her and has the username of

"@brigidbergin". Her remarks in that posting confirm that she observed Mr. Lopez-Pierre on

12/15/16 as he was being illegally barred from attending the public town hall meeting that the

Mayor conducted with New York City Councilman Mark Levine at a time when Mr. Lopez-

Pierre sought to be Mr. Levine's replacement on the City Council.



**Brigid Bergin**
@brigidbergin

Mayor @BilldeBlasio praises  @MarkLevineNYC. Thomas Lopez-
Pierre who is challenging Levine next year was not being allowed in
when I arrived

7:27 PM · Dec 15, 2016 · TweetDeck

6.      On a related note, on 12/16/16, a news organization named Pix11 published a news

article that was written by a Mario Diaz that is entitled "Demonstrators Brave the Cold to Protest

De Blasio's Homeless Policy Outside Town Hall Meeting" and available on the Internet at

https://pix11.com/2016/12/16/demonstrators-brave-the-cold-to-protest-de-blasios-homeless-

policy-outside-town-hall-meeting/. That article reported the following:

a.      Mr. Lopez-Pierre was prevented from attending the town hall meeting that the

Mayor conducted on 12/15/16 with Mr. Levine.

b.      Mr. Lopez-Pierre told a journalist outside of that public town hall meeting on

12/15/16 that though he received confirmation that he would be able to attend that town

hall, he was prevented from doing so once officials of Defendant City learned that he was

a political candidate who was running against New York City Councilman Mark Levine

in an election to become a member of the City Council.

c.       Journalists observed Mr. Lopez-Pierre joking with members of the NYPD outside of that town hall meeting as they left it as temperatures outside were then well below freezing.

d.       d. A press secretary named Rosemary Boeglin for the Mayor thereafter claimed that Mr. Lopez-Pierre skipped a line for entering the school that hosted that town hall meeting in order to cause a scene and that he asked to be arrested then. However, that clearly was a fraudulent pretext that was designed to illegally cover-up the fact that Mr. Lopez-Pierre was illegally barred from that public forum in violation of applicable laws.

7.       Long before Defendant Stribula was among those who illegally prevented me from attending the Mayor's 10/12/17 town hall, I took a photograph of her and Defendant Ringel at 7:46 pm on 4/27/17 near the entrance to the school that hosted the Mayor's 4/27/17 town hall as I was being illegally prevented from attending that public forum by Defendants Redmond, Ringel, Miller, and others as Ms. Stribula was aware of that and didn't intervene on my behalf to enable me to attend that town hall. The next screenshot is from that 4/27/17 photograph and shows Ms. Stribula on the far-left as Mr. Ringel appears near its center.



8.      Hindsight suggests that Ms. Stribula's failure to intervene on my behalf on 4/27/17 to enable me to attend the Mayor's 4/27/17 town hall was a clear sign that she was then a co-conspirator with Defendants Redmond, Ringel, Miller, and others in a criminal scheme to violate my constitutional right to attend that town hall while those conspirators were violating the Hatch Act (5 U.S.C. §1502(a)(1)) in the process partly by engaging in voter suppression, whistleblower retaliation, and viewpoint discrimination against me and the public by extension while the Mayor used that town hall partly as a campaign event to attract publicity and goodwill to bolster his re-election prospects. Prior to that 4/27/17 town hall, Ms. Stribula sent an e-mail message on 4/27/17 at 2:46 pm to various people to communicate work assignments that she was issuing to people who included Defendant Miller for that town hall. Those work assignments partly pertained to tasks that would be performed in granting members of the public access to that town hall. A copy of that e-mail message appears in the annexed **Exhibit B**. I received a copy of that e-mail message on 2/18/20 from Hannah Faddis of the New York City Law Department. The redactions that appear in that e-mail message reflect how Ms. Faddis provided it to me. Also,

Defendant City illegally engaged in spoliation of critically significant video recording evidence that it was legally required to have preserved that was recorded on 4/27/17 between 5:30 pm and 6:30 pm by a video security camera that was installed on 4/27/17 by the entrance to the school that hosted the Mayor's 4/27/17 town hall. That video security camera is controlled by the DOE and the video recording that Defendant City illegally didn't preserve was recorded between 5:40 pm and 6:30 pm on 4/27/17 by that specific video security camera.

9.      Additionally, long before Defendant Stribula illegally prevented me from attending the Mayor's 10/12/17 town hall, an eyewitness of mine sent an e-mail message on 6/24/17 at 4:26 pm to a whistleblower news censor in journalism named Graham Rayman and I in which that witness discussed illegal acts that Ms. Stribula committed against that witness on 6/8/17 during the public town hall meeting in Rego Park in Queens. That witness asked me to keep that witness' identity confidential and I agreed to do so. As a result, I will refer to that witness as "Person X" in this complaint. Person X worked for the New York State Attorney General's office on 6/8/17 and 6/24/17. It's ironic that this means that Defendant Stribula illegally violated the constitutional rights of someone on 6/8/17 by refusing to allow that person to access the room in which the Mayor conducted his 6/8/17 town hall while seating was available in that room as that town hall was being conducted. In short, the following excerpt from that e-mail message that Person X sent on 6/24/17 at 4:26 pm about Ms. Stribula, the Mayor's 6/8/17 town hall, and I confirms that Ms. Stribula illegally subjected me to stigma-plus defamation on 6/8/17 in remarks that she made to Person X by baselessly referring to me as a "harasser" as I watched Ms. Stribula and Person X talk in a stairwell in the building that hosted the Mayor's 6/8/17 town hall:

> **Subject:** Re: Information about police misconduct on 6/8 at Mayor's public town hall meeting in Rego Park
> **Date:** June 24, 2017 at 4:26:20 PM EDT
> **To:** Towaki Komatsu <towaki_komatsu@yahoo.com>

**Cc:** "Rayman, Graham" <grayman@nydailynews.com>

I would just like to add that I was allowed to write my question on a card, after which the guard told me they would allow me in to ask the question after they reviewed it and people emptied the room. As the room emptied, they did not let me in saying that the room was full even though we saw empty seats in the TV screens. When I asked a Mayor's staff member why they wouldn't let me in, she explained it was because I was associated with Towaki and he was a "harasser", but did not explain anything else to me. I think maybe she was referencing Towaki's litigation history with different city agencies, but I am not sure since I just met him that day. I also think maybe they did not let me in because they did not like my question which was about police accountability, but I'm not sure about that since I know someone else in the room was allowed to ask a question about broken windows policing. Also, please keep my name anonymous. Thanks.

10.     Person X mistakenly expressed in the preceding e-mail message that I had litigation

against different agencies of Defendant City. Although I used my HRA lawsuit prior to 6/8/17 to

pursue entirely valid claims against personnel who worked for Defendant City and were assigned

to different agencies of Defendant City, the sole opposing party in my HRA lawsuit on 6/8/17

continued to be HRA. When I met Person X for the first and only time on 6/8/17 while attending

the Mayor's 6/8/17 town hall from within an overflow room in the basement of the building in

which the Mayor conducted that town hall in a room elsewhere within that building, I then had

ongoing and entirely valid litigation against HRA through my HRA lawsuit and had just

presented oral arguments in that case on 6/7/17 because Jeffrey Mosczyc of HRA illegally

colluded and conspired with New York State Judge Nancy Bannon in between 4/5/17 and

4/11/17 to illegally adjourn the scheduled 4/12/17 oral arguments hearing in that case through an

illegal ex-parte adjournment application that he faxed on 4/5/17 to Judge Bannon's chambers to

illegally prevent me from being able to oppose his illegal adjournment application before Judge

Bannon illegally granted it on 4/11/17 in flagrant violation of my due process rights while she

then was running for re-election as a judge. In hindsight, it appears that Ms. Stribula told Person

X on 6/8/17 that I was a harasser simply because I commenced litigation against HRA in which I

also asserted entirely valid claims on 5/19/17 through an order to show cause application that

concerned illegal acts and omissions that were committed against me on 4/27/17 that caused me

to be illegally prevented from attending the Mayor's 4/27/17 town hall and illegally assaulted by

NYPD Officer Rafael Beato on that date on a public sidewalk next to the school that hosted the

Mayor's 4/27/17 town hall by being shoved 3 times without cause as I lawfully sought to apprise

the Mayor from a sufficient distance away as he left the building that hosted that town hall partly

about the fact that I was illegally barred from that town hall and assaulted by Mr. Beato.

11.     Before she was among others who illegally prevented me from attending the Mayor's

10/18/17 town hall, Defendant Atcheson was recorded on video on 4/27/17 that confirms that she

was present then in the immediate vicinity of where I was near the entrance to the school that

hosted the Mayor's 4/27/17 town hall as Defendants Redmond, Ringel, and Miller were illegally

preventing me from entering that school to attend that town hall from within an overflow room

that was setup for that town hall after I was issued an admission ticket for that purpose. Ms.

Atcheson then was among others who illegally prevented me from attending the public resource

fair meeting that the Mayor conducted on 5/23/17 inside of the Veteran's Memorial Hall

chamber inside of the Bronx Supreme Court while I was conducting myself in an entirely lawful

manner in that courthouse on that date. That was after I registered in advance to attend that

5/23/17 resource fair. I thereafter received video recordings from OCA that were recorded in that

courthouse on 5/23/17 that show Ms. Atcheson as she used a variety of body language toward

me in conjunction with remarks to illegally direct me to move away from the entrance to the

Veteran's Memorial Hall chamber in that courthouse that was then being used to grant other

members of the public access to that public forum. Coincidentally, that 5/23/17 resource fair was

conducted during the U.S. Navy's annual Fleet Week event in New York City while I continued

to be a U.S. Navy veteran and as that 5/23/17 resource fair was conducted in **Veteran's**

Memorial Hall. The next screenshot is from one of the video recordings that I received from

OCA that was recorded on 5/23/17 by a video security camera it controls that is installed inside

of the Bronx Supreme Court. Defendant Atcheson and I appear on the left in that screenshot that

corresponds to the time of 9:30.24.444 am on 5/23/17. Ms. Atcheson was then using her left

hand to illegally direct me to move away from the entrance to the Veteran's Memorial Hall

chamber in that courthouse in spite of the fact that she and I were then in a public corridor in that

courthouse over which she certainly had absolutely no control whatsoever. Andrew Berkowitz of

the Mayor's NYPD security detail also appears in that screenshot as he then had his left hand

near his mouth while apparently engaging in a radio communication by using a device that was

installed near his left wrist. A female member of the NYPD is also shown in that screenshot as

she doing something with a cell phone instead of performing her legal duty to uphold my

constitutional rights by intervening on my behalf to enable me to attend that 5/23/17 resource

fair.



12. New York State Court Officers Anthony Manzi (badge #: 182), Matthew Brunner (badge #: 478), and Ramon Dominguez (badge #: 508) all were eyewitnesses to the illegal acts and omissions that were committed against me on 5/23/17 inside of the Bronx Supreme Court that caused me to be illegally prevented from attending the Mayor's 5/23/17 resource fair meeting in it. They then jointly prepared an official report on 5/24/17 that is known as an "Unusual Occurrence Report" that was submitted to their supervisors. I received a copy of that report from OCA on 8/28/20 in response to a FOIL demand that I submitted to it.  The first page in that report contains the following relevant statement about me and the fact that I was illegally prevented at 9:50 am on 5/23/17 from attending the Mayor's 5/23/17 resource fair by them and Defendants Atcheson, Gerola, Nieves, and Mr. Berkowitz as all of them then worked as co-conspirators for that purpose:

"AT ABOVE T/P/O, THE ABOVE UNKNOWN SUBJECT WAS DENIED ENTRY INTO A CITY HALL EVENT BEING HELD IN THE ROTUNDA BY CITY HALL STAFF AND MAYOR DEBLASIO'S NYPD DETAIL. SUBJECT WAS ASKED TO VACATE THE AREA HE WAS STANDING IN"

13. No facts in that report exist that indicate that valid grounds existed to bar me from the Mayor's 5/23/17 resource fair nor move from where I lawfully stood in a hallway in that courthouse as I waited to be granted access to that public resource fair. Also, prior to being among those who illegally caused me to be prevented from attending the Mayor's 10/18/17 town hall by refusing to issue me an admission ticket to do so, Ms. Atcheson also illegally refused to issue me admission such admission tickets on 9/14/17 and 9/26/17 to enable me to attend the town hall meetings that the Mayor conducted near the buildings that hosted those public forums on the dates when they were conducted in spite of the fact that I registered in advance to attend those town hall meetings and I conducted myself in an entirely lawful manner at the sites of those town hall meetings on the dates when they were conducted in contrast to her. The circumstance clearly foreshadowed further such illegal acts by her against at the sites of town hall meetings that the Mayor conducted on the dates when they would be conducted. That circumstance was also an indication of an apparent addiction that Defendant Atcheson had to remaining a faithless servant on account of the fact that she was willfully violating her oath of office for her job with Defendant City by virtue of how she was illegally treating me at the sites of public forums that the Mayor conducted. In short, Ms. Atcheson proved to be an incorrigible addict with others who were all addicted to violating my constitutional rights at public forums that the Mayor conducted to steal the 2017 New York City government elections by voter suppression, voter fraud, and whistleblower retaliation largely to protect their careers. An equitable remedy that I hope such addicts promptly receive to cure that addition would entail having them receive the lasting gift that

the coronavirus can offer them largely because that would likely greatly improve my chances

at the same time of being able to lawfully attend public forums in the future without any

unreasonable interference and reduce crime.

14.      E-mail records confirm that senior members of the Mayor's staff received updates about

my HRA lawsuit on 4/10/17 in spite and in flagrant violation of the fact that my HRA lawsuit

had been sealed at my request since January of 2017 and was still sealed on 4/10/17. The next

screenshot is from the e-mail message that appears on page 1 within the PDF file that I'm

referring to as "City Hall email excerpts" in this complaint. That e-mail message was sent on

4/10/17 at 5:24 pm by someone named Raquel Lucas in her capacity as a senior assistant for Mr.

Banks. That e-mail message was sent to Mr. Banks as well as Defendant Carrion and other senior

members of the Mayor's office about me, my litigation against HRA, and my scheduled

attendance on 4/11/17 at the Mayor's 4/11/17 public resource fair meeting before I discovered at

9:56 am on 4/11/17 that Mr. Mosczyc and Judge Bannon had illegally conspired and colluded to

steal my First Amendment and Fourteenth Amendment right to have testified as scheduled on

4/12/17 in my HRA lawsuit and submit opposition in my HRA lawsuit to oppose the 4/5/17

adjournment application by Mr. Mosczyc before that adjournment could be legally granted just

one day after I engaged in parallel litigation against HRA that was assigned to OTDA in its

capacity as a New York State administrative appellate forum for claims asserted against HRA.

| From: | Lucas, Raquel |
|---|---|
| To: | Lauter, Rachel; Carrion, Marco A.; Arslanian, Kayla; Rothenberg, Jaclyn |
| Cc: | Banks, Steven (HRA); Yeaw, Jennifer |
| Subject: | Staten Island Resource Fair 4/11 Re: Towaki Komatsu |
| Date: | Monday, April 10, 2017 5:24:02 PM |
| Attachments: | image001.png |

Good Afternoon,

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

See below for his case history:

15.     What follows shows an e-mail message that I received on 9/27/17 at 9:49 am that was

sent to me by someone named Judith Lê while she then worked for the CCRB as an investigator.

She sent me that e-mail message in response to an e-mail message that I sent to her on that date

at 9:27 am in which I apprised her that Defendants Gerola, Mason, and Atcheson acted in concert

on 9/26/17 to illegally prevent me from attending the public town hall meeting that the Mayor

conducted then in Manhattan with Mr. Banks and other government officials.  In her e-mail

message to me on 9/27/17 at 9:49 am, Ms. Lê claimed that the Mayor's staff and Mayor's CAU

were then in charge of admittance to town hall meetings that the Mayor conducted.

> **From:** "Le, Judith (CCRB)" <JLe@ccrb.nyc.gov>
> **Subject:** RE: New viewpoint discrimination by NYPD's Howard Redmond & Lt. Nieves
> at Mayor's 8/30 town hall in Brooklyn
> **Date:** September 27, 2017 at 9:49:27 AM EDT
> **To:** Towaki Komatsu <towaki_komatsu@yahoo.com>
>
> Hi Mr. Komatsu,

As we previously discussed, unfortunately, admittance in and out of the Town Hall events falls outside the jurisdiction. Again, if you'd like, I can forward the complaint to Internal Affairs, or recommend that you speak to the Mayor's staff/Community Affairs office, as they are in charge of admittance to the Town Halls.

Best,

Judith Lê

Investigator, Squad 8
Civilian Complaint Review Board
100 Church Street, 10th Floor
New York, NY 10007
(212) 912-2081

16.     On 9/28/17, the Mayor conducted a town hall in Harlem during which members of the audience did a fantastic job of criticizing the Mayor about various matters. They did so after New York City Councilman Bill Perkins urged the audience for that town hall to speak freely about whatever was on their mind during that town has as they addressed the Mayor and other government personnel during it. While urging them to do so, he told the audience that he didn't want its members to feel restrained and to be shy in doing so. He instead then explicitly urged that audience's members to shout out whatever was on their minds as they addressed the Mayor and other government personnel who attended that that town hall. The Mayor's office arranged for that town hall meeting to be recorded on video that is available on the Internet at https://www.youtube.com/watch?v=4s9fYZNLK8o. Mr. Perkins is shown in the next screenshot at the elapsed time of 5 minutes and 37 seconds as he urged the audience members for that town hall to conduct themselves during it in the manner that I just discussed. Mr. Perkins' remarks then were a clear indication that it was certainly permissible pursuant to the First Amendment and Fourteenth Amendment for members of the public to shout their remarks to all government personnel who attended town hall meetings that the Mayor conducted following 9/28/17 because

due process and equal protection was applicable to being able to be as vocal during such

subsequent public forums.



17.      While following the instructions that Mr. Perkins gave during that town hall meeting, a

Black woman rose to the occasion and marched to the center of the room in which the Mayor

conducted that town hall as it was being conducted to lawfully express her irritation about

something to the audience. All of that and more was recorded in the video recording that I just

discussed. The next screenshot is from the elapsed time of 1 hour, 26 minutes, and 2 seconds in

the video recording that I just discussed. It shows the fantastic Black woman on the right to

whom I just referred as she stood and hilariously stole the stage from the Mayor during his

9/28/17 town hall as she raised a finger on her left hand, wore an circular earring on her right ear

and a blue denim jacket as she had her mouth open and had her right hand near her right hip.



18.     The Mayor appears on the right in the preceding screenshot as he wore a white shirt and

stood. Defendant Redmond appears in the upper-left corner in that screenshot. The fantastic

Black woman that I just discussed was very boisterous during that town hall and was permitted

to continue to attend that town hall for more than 30 minutes after she stole the stage from the

Mayor in the manner that I just described and was recorded on video. The next screenshot is

from the elapsed time of 1 hour, 59 minutes, and 10 seconds in that video and shows her again as

she talked to the Mayor while she held a microphone in her right hand and was lawfully

expressing a grievance to him about inadequate public notice that was issued for the Mayor's

9/28/17 town hall.



19.     The next screenshot is from the elapsed time of 1 hour, 59 minutes, and 50 seconds in that same video as I played it back with the closed-captioning feature enabled. That screenshot shows that same fantastic Black woman on the far left as she continued to talk to the Mayor while using a microphone. As she did so, she brilliantly told the Mayor, "you're in with the criminals". I totally agree with her remark about him and genuinely appreciate her outspokenness then for having reminded him quite clearly, publicly, and loudly about his status as a criminal while she stood next to Defendant Redmond. Mr. Redmond promptly thereafter coerced her to

leave that town hall meeting in retaliation for her remarks to the Mayor. Although the Mayor and Defendant Redmond certainly didn't like her remarks to the Mayor then, an excerpt from _Cohen v. California_, 403 U.S. 15, 91 S. Ct. 1780, 29 L. Ed. 2d 284 (1971) that appears in this complaint's Legal Standards section confirms that what I just stated about that fantastic Black woman's speech may have been another person's "lyric" at the same time that others objected to it.



20.     The next screenshot is from the elapsed time of 1 hour, 50 minutes, and 37 seconds in that video and shows another fantastic woman as she stood up and assertively addressed the Mayor while lawfully criticizing him about his policies that concern rezoning and affordable housing matters as other members of that audience certainly supported her. At that time, she was a teacher and was schooling the Mayor about his lack of honesty, transparency, accountability, and leadership. I would have loved to have witnessed her addressing the Mayor firsthand as she

did so by having been permitted to exercise my constituonal right to have attended that town

hall from within the room in which it was conducted and seen her face that is not shown in that

video recording. If I had been able to attend that town hall within that room, I would have tried

to lawfully thank her for her criticism of the Mayor and recorded a video of her as she then

delivered her remarks to the Mayor. I had a First Amendment and Fourteenth Amendment right

to have recorded her conversation with the Mayor on video in a way that showed her face and the

defendants in this action.



day you have sold huge parcels of
city-owned land in East Harlem

21.    The next screenshot is from the elapsed time of 1 minute, 51 minutes, and 58 seconds in

that same video as it shows an unknown bald male as he looked in the direction of the video

camera that recorded that video and stood near the woman who had just schooled the Mayor

about his rezoning policies. That bald man whio is shown wearing a pink shirt and dark colored

sportscoat was recorded on video as he was present on 4/27/17 at the site of the Mayor's 4/27/17

town hall near its entrance as I was being illegally prevented from attending it by members of the

NYPD as well as Defendant Miller and Pinny Ringel of the Mayor's CAU. That bald man who wore the pink shirt during the Mayor's 9/28/17 town hall illegally didn't make any effort on 4/27/17 to allow me to attend the Mayor's 4/27/17 town hall as he was aware that I was being prevented from attending it. The totality of the circumstances on 9/28/17 strongly suggests that he was then in the middle of harassing that woman in response to her remarks to the Mayor then in spite of the fact that her remarks to the Mayor then had been protected speech about matters of public concern.



22.     The next screenshot is from the elapsed time of 1 minute, 52 minutes, and 18 seconds in that same video as it shows an unknown Black woman harassing the teacher who schooled the Mayor about his rezoning policies. The bald man who was then wearing a pink shirt and dark colored sportscoat that I just discussed also appears in that screenshot as he also appeared to then be harassing that teacher.



23.    The next screenshot is from the elapsed time of 1 minute, 52 minutes, and 20 seconds in that same video as it shows Jane Doe1 10/18/17 on the right as she stood near the fantastic teacher that I have been discussing while she continued to address the Mayor.



24.     The next screenshot is from the elapsed time of 1 minute, 52 minutes, and 6 seconds in that video as it showed Melissa Mark-Viverito, who was then both the Speaker of the City Council and the moderator for that town hall. She was then telling the audience that people have a First Amendment right to **a)** express their views and disagree with others and that **b)** people had a First Amendment right to express their views in that room then.



25.     She made those remarks while I was being illegally prevented from attending that town hall and before she told me on 9/28/17 as she left that event in front of the building that hosted it and near a street that didn't know what the NYPD's problems with me were as I apprised her of the fact that I was illegally prevented from attending that town hall in flagrant violation of my First Amendment rights as I then expected her to promptly and effectively intervene on my behalf to immediately remedy that. Instead, she illegally did nothing about that in spite of the fact that she then had the power to introduce legislation that could have addressed and resolved that.

26.     I wasn't recorded on video attending the Mayor's 9/28/17 town hall primarily because Defendants Gerola, Mason, NYPD Jane Doe4 10/12/17, and others illegally prevented me from attending that town hall after I arrived to the site of that public forum to do so in accordance with my constitutional rights.  People who attended that town hall were illegally ejected from it while that was also recorded on video. That occurred mainly because the Mayor has proven to be incapable of tolerating valid criticism in contrast to his talents and apparent addiction for violating civil rights at public forums that is an criminal addition that he appears to share with several of the other defendants in this action. What I just discussed confirms that I had a Fourteenth Amendment due process and equal right to attend the town hall meetings, public resource fair meeting, and public hearing that the Mayor conducted on 10/12/17, 10/18/17, 10/25/17, and 3/18/19 and be as vocal and critical of the Mayor, his administration, and the NYPD as those who attended the Mayor's 9/28/17 town hall in Harlem were.

27.     On a related note, the next screenshot is a composite that shows **a)** a screenshot on the left that is from the elapsed time of 21 seconds within a video recording that I recorded on 9/28/17 at 5:58 pm as I lawfully waited in front of a woman named Marie Miranda to be granted access to the Mayor's 9/28/17 town hall in front of the building in which it would be conducted on that date with **b)** a screenshot on the right that shows Ms. Miranda as she spoke to the Mayor during that town hall while attending it from within the room in which it was conducted.



28.     The screenshot on the right in the preceding screenshot is from the elapsed time of 1

hour, 26 minutes, and 36 seconds within the video recording that the Mayor's office arranged to

be recorded of the Mayor's 9/28/17 town hall. This screenshot further and overwhelmingly

confirms that I had a Fourteenth Amendment due process and equal protection right to have

attended that town hall during which Ms. Miranda talked with the Mayor about one of the very

same types of housing issues that was among the types of matters that I sought to discuss with

government officials while attending the Mayor's **a)** 9/28/17 town hall, **b)** 10/12/17 town hall, **c)**

10/18/17 town hall, and **d)** 10/25/17 resource fair. As she talked with the Mayor during that

9/28/17 town hall, Ms. Miranda told the Mayor that she needed assistance from his

administration to contend with a landlord her landlord who wasn't properly maintaining

conditions in her apartment building. In response, Vito Mustaciuolo told Ms. Miranda that HPD

was suing her landlord. Mr. Mustaciuolo was then a senior member of HPD and I have talked

with him face-to-face a few times. Ms. Miranda also told the Mayor then that she and other

tenants in her building were suing that same landlord, but she needed conditions in her apartment

building to be properly addressed in the interim. The sum and substance of what she discussed

with the Mayor was very closely-related to problems that I have had with Urban and HRA in

relation to conditions in the building in which I reside about which I sought to have the Mayor

commit to immediately remedying while attending the Mayor's **a)** 9/28/17 town hall, **b)** 10/12/17

town hall, **c)** 10/18/17 town hall, and **d)** 10/25/17 resource fair.

## **RETROSPECTIVE FACTS**

1.      This section is comprised of relevant facts about matters that occurred after most of the

events occurred that gave rise to my claims in this action. These facts support my claims in this

action by hindsight and what they reveal about a propensity and proclivity by the defendants to

violate my rights at public forums that the Mayor conducted.

**Facts about my interactions with the defendants on 11/30/17 at the site of the Mayor's town**

**hall on that date**:

2.      To mercilessly and legally kill any possible doubt that anyone may have about whether

it's objectively reasonable to infer from the totality of the circumstances that **a)** Defendant

Stribula was personally involved with others in causing me to have been illegally prevented from

attending the Mayor's 10/12/17 town hall through their acts and omissions as they acted in

concert and **b)** Defendant Ringel was personally involved with others in causing me to have been

illegally prevented from attending the Mayor's 10/18/17 town hall through their acts and

omissions as they acted in concert, I will next discuss a critically significant video recording that

I recorded of them, Defendant Baez, and Defendant Miller on 11/30/17 at 5:30 pm in front of the

building that hosted the town hall meeting that the Mayor conducted in Queens as I conducted

myself in an entirely lawful manner in stark contrast to Defendants Stribula, Ringel, Baez, and Miller as I stood in front of eyewitnesses that were comprised of other members of the public who were also waiting to attend that town hall.

3.      The next screenshot is from the elapsed time of 3 seconds in a video recording that I recorded on 11/30/17 at 5:30 pm that has the filename of "IMG_3280.MOV" as I stood in front of the building that hosted the public town hall meeting that the Mayor conducted in Queens on that date.



4.      As I recorded that video, I stood in front of other members of the public who also were lawfully conducting themselves and were also waiting to be granted access to that building to lawfully attend that town hall. As I recorded that video, I recorded Defendants Stribula, Ringel, Miller, Ridener, and Baez in it as well as members of the public who certainly then were eyewitnesses. A copy of that video is available on the Internet at

https://drive.google.com/file/d/1p43pfi4DWQYVZi8b1GkHkcunEoN2Lhm4/view?usp=sharing.

This screenshot shows Defendant Stribula as she was about to tell me again that she was not

allowing me to attend the Mayor's 11/30/17 town hall.

5.      The next screenshot from that same video is from the elapsed time of 5 seconds and

reflects what appears in it as Defendant Miller appears on the right. At that point in that video,

Ms. Stribula was about to tell me that I couldn't attend that town hall simply because she said

that she wouldn't allow me to do so without any additional clarification about that. I had just

asked her to provide me a valid legal basis for why she was attempting to prevent me from

attending that town hall meeting that was certainly a public forum and subject to my

constitutional rights and New York State's Open Meetings Law. How she treated me on

11/30/17 by trying to prevent me from attending that town hall is exactly how she treated me on

10/12/17 in regard to my efforts to have lawfully attended the Mayor's 10/12/17 town hall as

well as how **a)** she and defendants Ringel, Atcheson, and others illegally barred me from the

Mayor's 10/18/17 town hall and **b)** Defendants Baez, Nieves, Gerola, Redmond, and others

illegally barred me from the Mayor's 10/25/17 resource fair as I was subjected to illegal

standardless discretion by them on 10/12/17, 10/18/17, 10/25/17, and 11/30/17 in that regard.



6.      Defendant Stribula never provided me any due process nor an objectively valid legal

justification on 11/30/17 about her decision to try to illegally exclude me from being able to

lawfully attend the Mayor's 11/30/17 town hall meeting and Defendants Baez, Miller, Ringel,

and Ridener certainly made no attempt to enable me to exercise my constitutional right to

lawfully attend that town hall. One of the members of the public who was also waiting in line

near me as I recorded that video is heard in that video as he agreed to a request that I then made

to him to also record what was occurring in his presence with respect to the fact that I was then

being illegally prevented from attending that town hall.

7.      The next screenshot from that same video that I recorded is from the elapsed time of 42

seconds and shows Defendant Ringel right after he nodded his head to express agreement with a

remark that I made as I was narrating information about what I was then experiencing in regards

to being illegally prevented from attending that town hall without being provided an objectively

valid legal justification for that. Right before he nodded his head to express that agreement, I

stated that I wasn't being provided such a legal justification and showed a printout from a news

article that was written by Margo Schlanger, is entitled "The Supreme Court Gives a Subtle

Boost to Free Speech", and was published on the Internet at

https://newrepublic.com/article/117925/woodv- moss-subtle-victory-free-speech on 5/28/14 by a

news organization named New Republic. That news article focused on the U.S. Supreme Court's

decision in _Wood v. Moss_, 134 S. Ct. 2056, 572 U.S., 188 L. Ed. 2d 1039 (2014).



8.     The next screenshot is from that same video from the elapsed time of 36 seconds and shows the news article that I just discussed.



9.     The only reason why I was able to eventually able to attend the Mayor's 11/30/17 town

hall was because Defendant Ioveno intervened on my behalf to enable me to do so after I apprised both him and New York City Councilman Rory Lancman in front of the building that hosted that town hall about the fact that I was being illegally prevented from attending that town hall. Mr. Lancman was the moderator for that town hall meeting and flagrantly violated his legal duty pursuant to 42 USC §1986, the constitutional oath he took to work for the City of New York, New York City Charter §1116, and NYPL §195.00 to have attempted to intervene on my behalf to enable me to attend that town hall. Mr. Ioveno then intervened on my behalf by briefly talking with Defendant Carrion and Ridener on a sidewalk before he returned to where I was and told me that I would be able to attend that town hall. I had a Fourteenth Amendment due process and equal protection right on 10/12/17, 10/18/17, and 10/25/17 to have had other members of the NYPD to have similarly intervened on my behalf then and overruled those who were illegally preventing me from attending the town hall and resource fair meetings that the Mayor conducted on those dates while doing so to enable me to attend all of those public forums.

**Facts about how David Rem lawfully expressed himself during the Mayor's 2/19/20 town hall, was applauded for that by audience, and was retaliated against for that by Defendant Redmond and the Mayor**:

10.     I will next briefly jump forward to a discussion of remarks that were made on 2/19/20 by another trailblazer named David Rem, who followed the lead of the fantastic Black woman who attended the Mayor's 9/28/17 town hall and stole the stage from him that I talked about earlier. Mr. Rem picked up where she left off as Mr. Rem truthfully and refreshingly told the Mayor in no uncertain terms that he was the "worst Mayor ever" during the town hall meeting that the Mayor conducted on 2/19/20 in Forest Hills in Queens. The Mayor's office arranged for that 2/19/20 town hall to be recorded on video that is available on the Internet at

https://www.youtube.com/watch?v=5le6DCaxiG8. Along with the discussion that I presented about the fantastic Black woman who attended the Mayor's 9/28/17 town hall, this discussion about Mr. Rem is being presented to clearly establish the fact that the Defendants in this action illegally subjected me to a double-standard with respect to my ability to attend public town hall meetings, public resource fair meetings, and public hearings that the Mayor conducted as they illegally discriminated against me and used a fraudulent pretext in doing so as they illegally subjected me to an abuse of process, standardless discretion, and flagrant violation of my First Amendment rights and Fourteenth Amendment rights that pertain to **a)** selective-enforcement that corresponds to the class-of-one theory and is predicated upon an illegitimate animus and invidious discriminatory intent, **b)** due process, and **c)** equal protection. This is proven by the fact that those defendants treated the fantastic Black woman who attended the Mayor's 9/28/17 town hall and that I discussed earlier and Mr. Rem on 2/19/20 much differently than they treated me by allowing them to attend and remain in the town hall meetings that the Mayor conducted on those dates even after they criticized the Mayor and other members of his administration while attending them.

11.     The next screenshot is from that video and shows Mr. Rem at the elapsed time of 1 hour, 37 minutes, and 55 seconds in that video as he **a)** exercised his First Amendment rights by lawfully reminding Bill de Blasio that he was the "worst Mayor ever" and **b)** received cheers from the audience in response for being so honest about that view concerning Mr. de Blasio that I certainly share. Mr. Rem is shown in this screenshot on the right as he stood and wore a hooded sweatshirt that had a red hood, red sleeves, and gray backside. When the Mayor entered the room that hosted that town hall on 2/19/20, he was met with a chorus of boos from its audience. Those who did so besides perhaps Mr. Rem were not forced to leave that town hall. That fact

underscored the fact that it is entirely lawful behavior to criticize the Mayor and other

government personnel who attend public forums that the Mayor conducts as they're conducted

and as such personnel attend them.



12.     The next screenshot is from that same video and shows the Mayor making a hand signal

to Defendant Redmond at the elapsed time of 1 hour, 38 minutes, and 23 seconds to criminally

retaliate against Mr. Rem in response to Mr. Rem's valid criticism of the Mayor and Richard

Carranza during that public forum. Mr. Carranza is the Chancellor of the DOE and was

characterized as a racist by Mr. Rem during that town hall. By directing Mr. Redmond then

through the use of that hand signal, the Mayor clearly demonstrated that he was acting in concert

with Mr. Redmond to have Mr. Rem coerced to leave that town hall in violation of the First

Amendment and Fourteenth Amendment with respect to both Mr. Rem as a speaker and those

who sought to continue to receive Mr. Rem's speech as he attended that town hall.



13.     The totality of what is shown and heard in that video sufficiently establishes that Mr. de Blasio retaliated against Mr. Rem during that town hall in violation of **a)** Mr. Rem's First Amendment rights, **b)** other laws that include 18 U.S.C. §245(b)(5), NYPL §240.20, and New York State's Open Meetings Law, and **c)** the First Amendment right that other people who shared Mr. Rem's views and didn't share his views had to continue to hear what Mr. Rem had to say during that public forum while both they and Mr. Rem remained in that room as that town hall continued to be conducted.

14.     That 2/19/20 town hall meeting was co-sponsored by a variety of groups instead of having been organized and conducted strictly by the Mayor's office. In her capacity as the moderator of that 2/19/20 hall instead of someone else, Ms. Koslowitz's duties were identical to those that New York City Councilman Corey Johnson performed on 3/15/17 during the town hall meeting that the Mayor conducted. Specifically, just like how Mr. Johnson did on 3/15/17 during the town hall meeting that he then conducted with the Mayor, it was strictly Ms. Koslowitz' job during the Mayor's 2/19/20 town hall to control the length of time that people could speak to the

Mayor after she gave them a chance to do so as that town hall was conducted. The point here is that only Ms. Koslowitz was authorized to interfere with Mr. Rem's lawful freedom of expression that he directed against the Mayor during that 2/19/20 town hall because she was the moderator of that public forum instead of someone else.

15.     This fact is significant largely because though Ms. Koslowitz clearly proved that she does not support the First Amendment as she criticized Mr. Rem in response to him having lawfully exercised his First Amendment rights during that 2/19/20 town hall by criticizing the Mayor and Mr. Carranza, the video recording of that town hall that was recorded as a result of arrangements that the Mayor's office made does not indicate that she communicated anything to end Mr. Rem's remarks to the Mayor during that public forum.

16.     The next screenshot is from that same video and shows Defendant Redmond, Defendant Ringel, Mr. Rem, and the Mayor in it at the elapsed time of 1 hour, 38 minutes, and 25 seconds as Mr. Redmond appears to be clearly scowling to express anger about how Mr. Rem was fabulously criticizing the Mayor in front of an appreciate audience.



17.     Shortly thereafter, Defendant Redmond illegally coerced Mr. Rem to leave that public

forum in violation of his constitutional right to remain in it and continue to receive the cheers

and applause from its audience that he received for his leadership and honesty by having told

him that he was the worst Mayor ever. The next screenshot is from the elapsed time of 1 hour, 38

minutes, and 27 seconds in that video and shows Defendant Redmond as he was about to assault

Mr. Rem with right hand by illegally grabbing Mr. Rem's left arm in flagrant violation of Mr.

Rem's Fourth Amendment rights.



18.     Although it may appear from the next screenshot that is from the elapsed time of 1 hour,

38 minutes, and 29 seconds in that video that Mr. Rem punched the Mayor in his face that would

make me and other New Yorkers quite happy, it is far more likely that what is shown in that

screenshot indicates that Mr. Rem yanked his left arm away from Defendant Redmond's illegal

grasp of it in response to Mr. Redmond having illegally grabbed it.



19.     The next screenshot is from the elapsed time of 1 hour, 37 minutes, and 58 seconds in that video and shows Mr. Rem as he pointed at the Mayor while he finished his outstanding criticism of the Mayor then and received well-deserved applause from an unknown man who appears in the upper-right corner and stood up from his seat to pay respect to Mr. Rem for his leadership and outspokenness by taking off the gloves and showing the Mayor up in such a refreshing way during that public forum.



20.     The next screenshot is also from the elapsed time of 1 hour, 37 minutes, and 58 seconds in that video and shows Mr. Rem as he received well-deserved applause from a woman on the far-left as well as the man on the right who continued to applaud Mr. Rem.



21.    The next screenshot is from what appears at the elapsed time of 6 minutes and 3 seconds

in the video recording that the Mayor's office arranged to be recorded on 7/8/20 of the public

hearing that the Mayor conducted remotely at 12:30 pm on 7/8/20. That video recording is

available on the Internet at https://www.youtube.com/watch?v=Ze4v5p44590. This screenshot

shows New York City Councilwoman Carlina Rivera as she testified in that hearing.



22.    The preceding screenshot is relevant to my claims in this complaint that concern the

Mayor's 3/18/19 public hearing because it decisively establishes that when the Mayor claimed to

me on 3/18/19 during the Mayor's 3/18/19 public hearing that I attended and briefly testified in

that he was unsure about whether my playback of video recordings in conjunction with my

testimony that I sought to lawfully then do could be accepted, that wasn't an isolated instance in

which he and perhaps other members of the Mayor's office illegally discriminated against the

public's First Amendment right to receive information from those who testified in public

hearings that he conducted through the video recordings that the Mayor's office arranged to be

recorded of them. In doing so, the Mayor and perhaps other members of the Mayor's office

illegally chilled my First Amendment right to expression as a speaker during that 3/18/19 public

hearing as well as the public's corresponding First Amendment right to receive information from

speakers and that violation of First Amendment freedoms caused irreparable harm. This

screenshot confirms that the Mayor's office committed an abuse of discretion and discrimination

by illegally not showing the faces of everyone who testified in that 7/8/20 public hearing in that

video recording. The Mayor's office illegally discriminated against those who testified in that

hearing whose faces weren't shown in that video as well as me and other members of the public

who also sought to observe the facial expressions and other body language that may have been

exhibited by all who testified in that hearing as they did so. The First Amendment right that

people have to receive information from speakers includes those who are deaf and rely on sign

language and/or lip-reading to receive information from speakers.

23.     The following is a relevant excerpt from _Robar v. Village of Potsdam Board of Trustees_,

No. 8: 20-cv-0972 (LEK/DJS) (N.D.N.Y. Sept. 21, 2020) that addressed a legal standard that

pertained to an application for a preliminary injunction to uphold First Amendment rights that

was granted through that decision:

> ""Violations of the First Amendment are presumed irreparable." Tunick v. Safir, 209 F.3d
> 67, 70 (2d Cir. 2000). The Supreme Court has declared that "the loss of First Amendment
> freedoms, for even minimal periods of time, constitutes irreparable injury." Elrod v. Burns,
> 427 U.S. 347, 373 (1976); see also Bery, 97 F.3d at 693 ("Violations of First Amendment
> rights are commonly considered irreparable injuries for the purposes of a preliminary
> injunction."); Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1984) (noting that "[w]hen an
> alleged deprivation of a constitutional right is involved, most courts hold that no further
> showing of irreparable injury is necessary," and collecting cases).

24.     In _Snyder v. Phelps_, 562 U.S. 443, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011), the U.S.

Supreme Court issued the following findings about the First Amendment that are very relevant to

my claims in this action and the relief that I seek to be granted:

"Speech is powerful. It can stir people to action, move them to tears of both joy and sorrow, and—as it did here—inflict great pain. On the facts before us, we cannot react to that pain by punishing the speaker. As a Nation we have chosen a different course—to protect even hurtful speech on public issues to ensure that we do not stifle public debate."

25.     Similarly, the judge who issued the decision in _Center for Bio-Ethical Reform, Inc. v._

_Black_, 234 F. Supp. 3d 423 (W.D.N.Y. 2017) cited _Snyder v. Phelp_ in the following pertinent

excerpt from it that is also very relevant to my claims in this action and the relief that I seek to be

granted:

""[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." _Police Dep't of Chicago. v. Mosley,_ 408 U.S. 92, 95-96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). State actors are "not permitted to privilege the feelings or viewpoints of one group over the viewpoints of another group." _See Forsyth County, Ga. v. Nationalist Movement,_ 505 U.S. 123, 134, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). "[U]nder our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers, or simply because bystanders object...." _Bachellar v. Maryland,_ 397 U.S. 564, 567, 90 S.Ct. 1312, 25 L.Ed.2d 570 (1970). Indeed, "[a]s a Nation, we have chosen ... to protect even hurtful speech on public issues to ensure that we do not stifle public debate." _Snyder v. Phelps,_ 562 U.S. 443, 460-61, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011). It is well settled that 435*435 "the right to engage in peaceful and orderly political demonstrations is, under appropriate conditions, a fundamental aspect of the `liberty' protected by the Fourteenth Amendment." _Shuttlesworth v. City of Birmingham, Ala.,_ 394 U.S. 147, 161, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (Harlan, J., concurring)."

26.     On 10/30/17, I attended a meeting that was about the U.S. Constitution that Arthur

Eisenberg of the NYCLU and David Cole of the ACLU conducted at the Fordham Law School

that is located at 150 West 62nd Street in Manhattan. Those who organized that meeting

arranged for it to be recorded on video that is available on the Internet at

https://livestream.com/accounts/14230140/events/7870400/videos/165193623. During that

meeting's question and answer session with its audience, I told Mr. Eisenberg and Mr. Cole that

I was both a U.S. Navy veteran and a whistleblower. I also told them that the Mayor's NYPD

security detail had been illegally preventing me from attending public forums that the Mayor had been conducting. I told them that as I asked them how I could get legal representation from their organizations to address that problem. Mr. Eisenberg was then the NYCLU's legal director and Mr. Cole was then the ACLU's national legal director. In response, Mr. Eisenberg clearly told me that I had a legal right to attend the Mayor's public forums as long as I was not disrupting those public forums. The conversation that I had with both of them during that meeting during which I made the remarks to them that I just discussed and Mr. Eisenberg gave me the answer that I just discussed begins at the elapsed time of 55 minutes and 25 seconds in the video recording of that meeting. I'm shown later in that video at the elapsed time of 1 hour, 6 minutes, and 12 seconds as I talked with Mr. Eisenberg as I wore a white sweater and was carrying a backpack. The next screenshot shows both Mr. Cole on the left and Mr. Eisenberg on the right immediately after Mr. Eisenberg told me that I had a right to attend the Mayor's public forums while I was not disrupting those meetings.



## **LEGAL STANDARDS**

1.      I incorporate by reference the statements that I made in all of the preceding paragraphs as though fully set forth herein.

2.      In the interests of brevity and pursuant to FRCP Rule 10(c), I incorporate by reference as though fully set forth herein the "Legal Standards" section that appears in the following:

      a.      The First Amended Complaint that I filed in K4 on 10/5/20. That submission corresponds to docket number 4 in that case.

      b.      The complaint that I filed in K5 on 9/25/20. That submission corresponds to docket number 2 in that case.

      c.      The complaint that I filed in K6. That submission corresponds to docket number 2 in that case.

3.      By illegally preventing me from attending the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, and **c)** 10/25/17 resource fair as well as ejecting me from the Mayor's 3/18/19 public hearing and City Hall's property on that date, those who did so and illegally didn't intervene on my behalf to stop and otherwise reverse that violated my First Amendment right to communicate directly to government officials that is articulated as follows in *Kittay v. Giuliani*, 112 F. Supp. 2d 342 (S.D.N.Y. 2000):

> "The right to petition in general guarantees only that individuals have a right to communicate directly to government officials, and that individuals have the right of access to the courts to redress constitutional violations. *See McDonald v. Smith,* 472 U.S. 479, 482, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985); *Mozzochi v. Borden,* 959 F.2d 1174, 1180 (2d Cir.1992)"

4.      According to *Bloomberg v. The New York City Department of Education*, No. 17-cv-3136 (PGG) (S.D.N.Y. Sept. 24, 2019), the Mayor, members of the City Council, and other government officials were explicitly prohibited by from conducting town hall meetings and other

similar meetings inside of schools controlled by the DOE after school, unless the following

prerequisites were satisfied:

    a.     "Candidate forums are permitted provided all candidates are invited to

    participate."

    b.     "Permit applications for candidate forums must include a written representation

    that all candidates have been invited to participate."

5.     The preceding prerequisites clearly confirm that they were designed to foster discussion

and debate by political rivals in government elections in accordance with the intent of New York

State's Open Meetings Law. This point is reinforced by the fact that the preceding excerpts apply

to the additional excerpt from *Bloomberg v. The New York City Department of Education* that

confirms it:

    "No rallies, forums, programs, etc., on behalf of, or for the benefit of any elected official,
    candidate, candidates, slate of candidates or political organization/committee may be held
    in a school building after school/business hours, except as indicated in paragraphs II.C
    and II.D below."

6.     The prohibition that I just discussed is discussed in greater detail in a memorandum that

was issued by the DOE on 6/22/09 and is shown in a PDF file that is available on the Internet at

https://cdn-blob-prd.azureedge.net/prd-pws/docs/default-source/default-documentlibrary/d-130-

6-22-2009-final-remediated-wcag2-0.pdf.

7.     That PDF file corresponds to regulation number D-130 that was established by a DOE

Chancellor that remained in effect on and after 10/12/17. The prohibition that I discussed above

appears on page 6 within that regulation. Information on that page indicates that prohibition

stems from New York State Education Law section 414 and policies by the DOE.

8.     There is no reason to believe that the Mayor, members of the Mayor's administration, and

members of the City Council complied with the prerequisites for being able to lawfully conduct a

public town hall meeting within the school that hosted the Mayor's 10/12/17 town hall by having

invited people to attend that town hall who were rivals of the Mayor in the 2017 New York City

government elections. Concerning this point, Politico New York published a news article on

2/29/16 on the Internet at https://www.politico.com/states/new-york/albany/story/2016/02/avella-

outraged-by-lateinvite-to-de-blasio-town-hall-031750 that is entitled "Avella Outraged by Late

Invite to De Blasio Town Hall" that was written by Laura Nahmias. That article reported about a

claim that was made by New York State Senator Tony Avella that the Mayor's administration

failed to invite him to attend a town hall meeting that the Mayor would conduct until it was too

late for Mr. Avella to be able to attend it. That article further reported that Mr. Avella was a critic

of the Mayor and his administration and believed that the Mayor's staff deliberately waited to

invite him to attend the Mayor's town hall meeting that the Mayor held on 2/29/16 in Queens

until it would be too late for Mr. Avella to attend it.

9.     The following findings that were issued in _Walsh v. Enge_, 154 F. Supp. 3d 1113 (D. Or.

2015) concern prospective exclusions from public forums and are therefore extremely relevant to

my claims in this action that concern my having been illegally and prospectively barred without

due process from attending the Mayor's **a)** 10/12/17 town hall, **b)** 10//18/17 town hall, and **c)**

10/25/17 resource fair as well as the fact that I was illegally and prospectively barred without due

process from continuing to be on the grounds of City Hall on 3/18/19 after I was illegally ejected

from the Mayor's 3/18/19 public hearing:

> This case requires the Court to decide whether the First Amendment allows a Mayor or
> his or her designee, acting pursuant to a city ordinance, to exclude a person, potentially
> indefinitely, from attending future City Council meetings to which the public is otherwise
> invited to attend and present their opinions simply because the person has been disruptive
> at previous meetings. The First Amendment protects, among other things, "freedom of
> speech" and "petitioning for a governmental redress of grievances." U.S. Const. amend. I.
> The First Amendment is incorporated into the Fourteenth Amendment and thus applies to
> the states and local governmental bodies. _Gitlow v. New York,_ 268 U.S. 652, 666, 45

S.Ct. 625, 69 L.Ed. 1138 (1925). No appellate opinion of which this Court is aware has ever held that the First Amendment permits prospective exclusion orders from otherwise public city council meetings. A presiding officer may remove a disruptive individual from any particular meeting, and a sufficiently disruptive person may even be prosecuted for such conduct if public law permits. But no matter how many meetings of a city council a person disrupts, he or she does not forfeit or lose the future ability to exercise constitutional rights and may not be prospectively barred from attending future meetings. Our democratic republic is not so fragile, and our First Amendment is not so weak.

10.    The following findings from _Frain v. Baron_, 307 F. Supp. 27 (E.D.N.Y. 1969) is also

relevant to my claims in this action for reasons that are sufficiently self-explanatory:

> "Fear of disorder, which the City cites to justify its policy, has been ruled out as a ground for limiting peaceful exercise of First Amendment rights. Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963)."

11.    The U.S. Supreme Court issued the following critically significant findings in _Cohen v._

_California_, 403 U.S. 15, 91 S. Ct. 1780, 29 L. Ed. 2d 284 (1971):

> a.    "It may be that **one has a more substantial claim to a recognizable privacy interest when walking through a courthouse corridor** than, for example, strolling through Central Park"

> b.    "Finally, in arguments before this Court much has been made of the claim that Cohen's distasteful mode of expression was thrust upon unwilling or unsuspecting viewers, and that the State might therefore legitimately act as it did in order to protect the sensitive from otherwise unavoidable exposure to appellant's crude form of protest. Of course, the mere presumed presence of unwitting listeners or viewers does not serve automatically to justify curtailing all speech capable of giving offense. See, _e.g._, _Organization for a Better Austin v. Keefe_, 402 U. S. 415 (1971). While this Court has recognized that government may properly act in many situations to prohibit intrusion into the privacy of the home of unwelcome views and ideas which cannot be totally banned from the public dialogue, _e.g._, _Rowan v. Post Office Dept._, 397 U. S. 728 (1970), we have at the same time consistently stressed that "we are often `captives' outside the sanctuary of the home and subject to objectionable speech." _Id._, at 738. The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is, in other words, dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner. Any broader view of this authority would effectively empower a majority to silence dissidents simply as a matter of personal predilections."

> c.    "it is nevertheless often true that one man's vulgarity is another's lyric."

d. ""[o]ne of the prerogatives of American citizenship is the right to criticize public men and measures—and that means not only informed and responsible criticism but the freedom to speak foolishly and without moderation." *Baumgartner v. United States*, 322 U. S. 665, 673674 (1944).

Finally, and in the same vein, we cannot indulge the facile assumption that one can forbid particular words without also running a substantial risk of suppressing ideas in the process. Indeed, governments might soon seize upon the censorship of particular words as a convenient guise for banning the expression of unpopular views. We have been able, as noted above, to discern little social benefit that might result from running the risk of opening the door to such grave results."

e. "The constitutional right of free expression is powerful medicine in a society as diverse and populous as ours. It is designed and intended to remove governmental restraints from the arena of public discussion, putting the decision as to what views shall be voiced largely into the hands of each of us, in the hope that use of such freedom will ultimately produce a more capable citizenry and more perfect polity and in the belief that no other approach would comport with the premise of individual dignity and choice upon which our political system rests. See *Whitney v. California*, 274 U. S. 357, 375377 (1927) (Brandeis, J., concurring)."

12. The admission tickets that were issued by the Mayor's staff for town hall meetings that the Mayor conducted were functionally equivalent to press credentials that grant members of the press access to meetings that government officials conduct. What follows is a relevant excerpt from *Karem v. Trump*, No. 19-cv-5255 (D.C. Cir. June 5, 2020) that addressed what is required of due process in the context of a denial of access to government officials through the revocation of a press credential. In short, that lawsuit led to Brian Karem having a press credential revoked from him by the Whitehouse reinstated.

"A fundamental principle in our legal system," the Supreme Court observed in *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012), "is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *Id*. at 253. Such "[e]lementary notions of fairness," the Court explained in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), "dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that [the government] may impose." *Id*. at 574. "This requirement of clarity[,] . . . essential to the protections provided by the Due Process Clause of the Fifth Amendment," *Fox Television*, 567 U.S. at 253, "is implicated" whenever the government imposes "civil penalties," *Gore*, 517 U.S. at 574 n.22 (emphasis omitted). Where such penalties

"threaten[] to inhibit the exercise of constitutionally protected rights[,] . . . a more stringent vagueness [and fair-notice] test should apply." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982).

That "essential . . . protection[]" of fair notice applies here. *Fox Television*, 567 U.S. at 253. As we explained in *Sherrill*, "the interest of a bona fide Washington correspondent in obtaining a White House press pass . . . undoubtedly qualifies as [a] liberty [interest] which may not be denied without due process of law under the fifth amendment." 569 F.2d at 130–131. And because "any deprivation" of a protected liberty interest must "be effected pursuant to constitutionally adequate procedures," *Brandon v. District of Columbia Board of Parole*, 823 F.2d 644, 648 (D.C. Cir. 1987), a duly issued hard pass may not be suspended without due process. Accordingly, "[e]lementary notions of fairness" required that Karem "receive fair notice not only of the conduct that [would] subject him to punishment, but also of the . . . magnitude of the sanction that [the White House] might impose." *Gore*, 517 U.S. at 574. Furthermore, because the suspension of a hard pass, like the denial of a hard pass, "implicate[s]" "important first amendment rights," *Sherrill*, 569 F.2d at 130, we evaluate Karem's suspension under a particularly "stringent vagueness [and fair-notice] test," *Village of Hoffman Estates*, 455 U.S. at 498–99.

Applying that test, we think Karem's due process claim is likely to succeed because, on this record, nothing put him on notice of "the magnitude of the sanction"—a month-long loss of his White House access, an eon in today's news business—that the White House "might impose" for his purportedly unprofessional conduct at the non-press-conference event. *Gore*, 517 U.S. at 574.

13.   The following is a relevant excerpt from *Kass v. City of New York*, 864 F.3d 200 (2d Cir. 2017) that addresses the matter of illegal dispersal orders that law-enforcement personnel issue.

"New York courts have held that "a refusal to obey such an order [to move] can be justified only where the circumstances show conclusively that the police officer's direction was purely arbitrary and was not calculated in any way to promote the public order." *People v. Todaro*, 26 N.Y.2d 325, 328-29, 310 N.Y.S.2d 303, 258 N.E.2d 711 (1970) (quoting *People v. Galpern*, 259 N.Y. 279, 284-85, 181 N.E. 572 (1932)); *Crenshaw v. City of Mount Vernon*, 372 Fed.Appx. 202, 206 (2d Cir. 2010) (summary order) (same)."

14.   The following findings from *Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134 (2d Cir. 2010) address scenarios in which supervisors like **a)** Defendants de Blasio, Carrion, Redmond, and Stribula act like mob bosses while using subordinates and others that include **b)** Defendants Ringel, Nieves, Atcheson, and Baez like henchmen, agents, and proxies to carry out their dirty work to commit criminal acts against others and otherwise violate the rights of others:

We believe the court erred in this instruction. In _Gordon v. New York City Bd. of Educ.,_ 232 F.3d 111, 116 (2d Cir. 2000), we stated, "Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity." We then rejected the argument that in order to satisfy the causation requirement, a plaintiff must show that the particular individuals who carried out an adverse action knew of the protected activity. _Id._ at 117. Instead, we indicated that a jury may

find retaliation even if the agent denies direct knowledge of a plaintiff's protected activities, for example, so long as the jury finds that the circumstances evidence knowledge of the protected activities or the jury concludes that an agent is acting explicitly or implicit[ly] upon the orders of a superior who has the requisite knowledge.

_Id. See also Gorman-Bakos v. Cornell Coop Extension of Schenectady County,_ 252 F.3d 545, 554 (2d Cir.2001) (noting that a plaintiff can establish causation by showing protected activity was closely followed in time by adverse employment action); _Kessler v. Westchester County Dep't of Soc. Servs.,_ 461 F.3d 199, 210 (2d Cir.2006). _Gordon_ directly addressed the situation in which a corporate agent _carries out_ an adverse employment action on the _orders,_ explicit or implicit, of a superior with knowledge that the plaintiff has engaged in a protected activity. However, in order to show causation in the sense required by _McDonnell Douglas_ — that is, a causal connection between the protected activity and the adverse employment action — it is not necessary that the supervisor who has knowledge of the plaintiff's protected activities have _ordered_ the agent to impose the adverse action. A causal connection is sufficiently demonstrated if the agent who decides to impose the adverse action but is ignorant of the plaintiff's protected activity acts pursuant to _encouragement_ by a superior (who has knowledge) to disfavor the plaintiff.

15.   _Gordon v. New York City Bd. of Educ._, 232 F.3d 111 (2d Cir. 2000) is cited in _Henry v. Wyeth Pharmaceuticals, Inc._ and includes the following related findings:

The lack of knowledge on the part of particular _individual agents_ is admissible as some evidence of a lack of a causal connection, countering plaintiff's circumstantial evidence of proximity or disparate treatment. _See Alston,_ 14 F.Supp.2d at 312-13. A jury, however, can find retaliation even if the agent denies direct knowledge of a plaintiff's protected activities, for example, so long as the jury finds that the circumstances evidence knowledge of the protected activities or the jury concludes that an agent is acting explicitly or implicit upon the orders of a superior who has the requisite knowledge. _See id._ at 311. This is so, moreover, regardless of whether the issue of causation arises in the context of plaintiff's satisfaction of her _prima facie_ case or as part of her ultimate burden of proving that retaliation "played a motivating role in, or contributed to, the employer's decision." _Renz v. Grey Advertising, Inc.,_ 135 F.3d 217, 222 (2d Cir.1997)

Accordingly then, to the extent that the district court charged the jury that the very _agents_ of the Board who engaged in retaliatory actions against Gordon had to know

of her protected activity, it erred.

16.     The following findings from _Housing Works, Inc. v. Turner_, 00 Civ. 1122 (LAK)(JCF)

(S.D.N.Y. Sept. 15, 2004) address an ongoing pattern of retaliation and how retaliatory intent

may be proven that includes by a pattern of unequal treatment without any rational basis:

> The plaintiff can demonstrate a causal connection between its protected activities and the defendants' adverse actions either "indirectly by means of circumstantial evidence, . . . or directly by evidence of retaliatory animus." Cobb v. Pozzi, 363 F.3d 89, 108 (2d Cir. 2003) (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)); Kantha v. Blue, 262 F. Supp. 2d 90, 103 (S.D.N.Y. 2003). Summary judgment is inappropriate when "questions concerning the employer's motive predominate the inquiry." Morris, 196 F.3d at 110. "Nonetheless, we have held that a plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link . . . Instead, he must produce `some tangible proof to demonstrate that [his] version of what occurred was not imaginary.'" Cobb, 363 F.3d at 108 (quoting Morris, 196 F.3d at 111)).
>
> A plaintiff's circumstantial evidence of retaliation could include the timing of the defendant's actions, such as when the alleged retaliation closely follows the plaintiff's speech. Morris, 196 F.3d at 110; McCullough v. Wyandanch Union Free School District, 187 F.3d 272, 280 (2d Cir. 1999). The plaintiff can also proffer evidence of unequal treatment, or an ongoing campaign of retaliation. Hampton Bays Connections, Inc. v. Duffy, 127 F. Supp. 2d 364, 374 (E.D.N.Y. 2001); Economic Opportunity Commission of Nassau County, Inc. v. County of Nassau, 106 F. Supp. 2d 433, 437 (E.D.N.Y. 2000) (citing Gagliardi v. Village of Pawling, 18 F.3d 188, 195 (2d Cir. 1994)).
>
> The defendants' arguments with respect to causation will be discussed in relation to each of the adverse actions alleged.

17.     The following is a relevant excerpt from _Musso v. Hourigan_, 836 F.2d 736 (2d Cir.

1988).

> "As a general rule, a government official is not liable for failing to prevent another from violating a person's constitutional rights, unless the official is charged with an affirmative duty to act. _See, e.g., Rizzo v. Goode,_ 423 U.S. 362, 376-77 (1976); _Doe v. New York City Dep't of Social Servs.,_ 649 F.2d 134, 141 (2d Cir.1981)._"

18.     42 USC §1986 includes the following relevant provisions that are applicable partly about

New York City government personnel who had opportunities to intervene on my behalf to attend

the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)**

3/18/19 public hearing:

> "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action"

19.    New York City Charter §1116 includes the following provisions that are applicable partly about New York City government personnel who had opportunities to intervene on my behalf to attend the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing and did not do so:

   a.    Any council member or other officer or employee of the city who shall wilfully violate or evade any provision of law relating to such officer's office or employment, or commit any fraud upon the city, or convert any of the public property to such officer's own use, or knowingly permit any other person so to convert it or by gross or culpable neglect of duty allow the same to be lost to the city, shall be deemed guilty of a misdemeanor and in addition to the penalties imposed by law and on conviction shall forfeit such office or employment, and be excluded forever after from receiving or holding any office or employment under the city government.

   b.    Any officer or employee of the city or of any city agency who shall knowingly make a false or deceptive report or statement in the course of duty shall be guilty of a misdemeanor and, upon conviction, forfeit such office or employment.

20.    NYPL §195.00 concerns official misconduct and includes the following terms that are applicable partly about New York City government personnel who had opportunities to intervene on my behalf to attend the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17

resource fair, and **d)** 3/18/19 public hearing and did not do so:

> A public servant is guilty of official misconduct when, with intent to obtain a benefit or deprive another person of a benefit:
>
> 1. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized; or
>
> 2. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.
>
> Official misconduct is a class A misdemeanor.

## MAIN STATEMENT OF FACTS

1.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.     The illegal acts and omissions that were committed against me on 10/12/17, 10/18/17, 10/25/17, and 3/18/19 at the sites of the town hall meetings, a resource fair meeting, and a public hearing that the Mayor conducted that concern my claims in this action were a microcosm of a much larger, pervasive, systemic, and longstanding campaign and pattern of illegal customs, practices, and policies that included flagrant violations of my First Amendment and Fourteenth Amendment rights that were jointly devised, coordinated, implemented, executed, and covered-up by senior decision-making members of the NYPD and members of the Mayor's staff against me in relation to my efforts to lawfully attend public town hall, public resource fair, and public hearings in accordance with my constitutional rights that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, and other City of New York and State of New York personnel. The Mayor, Defendant O'Neill, and other City of New York, State of New York, and federal government personnel that include members of the City Council such as Defendant Levin tacitly condoned those illegal acts and omissions against me.

3.      When I tried to attend the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing, I had ongoing litigation partly through my HRA lawsuit and K1 (this applies just to the Mayor's 3/18/19 public hearing) in which I was pursuing entirely valid claims against defendants in this action for having been previously barred from public forums that the Mayor and Mr. Banks conducted that included town hall and resource fair meetings. Defendants Redmond, Carrion, and other senior members of the Mayor's staff were aware of my HRA lawsuit as early as 6/29/17 according to e-mail records that I was provided by the Mayor's office. I'm referring to what appears in the City Hall email excerpts. Much of those emails that are shown in that PDF file were provided to me by the Mayor's office with redactions applied to them and I urge this Court to immediately compel the City of New York to immediately provide me non-redacted and unedited copies of the e-mail messages that are shown in that PDF file to better facilitate my ability to prove my claims in this action on the merits. As a reminder, the following is a link to that PDF file on the Internet:

https://drive.google.com/file/d/16wSpJ7kk-aOtx7Bkg8MeqUpyWd5Io2hR/view?usp=sharing

4.      The following is a screenshot from the e-mail message that Defendant Redmond sent about me on 6/28/17 at 2:18 pm that appears on page 8 in that PDF file:



**From:** Redmond, Howard DI.
**Sent:** Wednesday, June 28, 2017 2:18 PM
**To:** Phillips, Eric; Ramos, Jessica; Hagelgans, Andrea; Casca, Michael; Arslanian, Kayla; Carrion, Marco A.; Wolfe, Emma
**Subject:** Re: town halls

5.     That e-mail concerns illegal acts that he and other members of the NYPD and Mayor's CAU that include Defendants Nieves, Gerola. Ringel, and Miller committed against me on 4/27/17 that caused me to be illegally barred from the town hall meeting that the Mayor conducted on 4/27/17 in Queens while I conducted myself in an entirely lawful manner. Additional e-mail messages appear in that PDF file that were sent by Defendant Ramos in which she blatantly lied about me and my HRA lawsuit as well as other matters about me to illegally

cover-up the illegal acts and omissions that were committed against me that had caused me to be

barred from attending town hall meetings and resource fair meetings that the Mayor conducted

on 4/27/17, 5/23/17, and 6/8/17 while I had ongoing litigation against HRA that was

unquestionably protected activity.

6.     The next screenshot is from the e-mail message that Defendant Ramos sent on 6/28/17 at

3:27 pm to a whistleblower news censor in journalism named Erin Durkin who works for a news

organization named Politico. Ms. Durkin worked for the New York Daily News on 6/28/17.

> **From:** Ramos, Jessica
> **Sent:** Wednesday, June 28, 2017 3:27 PM
> **To:** Erin Durkin
> **Cc:** Phillips, Eric
> **Subject:** RE: town halls
>
> Hi Erin,
>
>
> Mr. Komatsu has never RSVP'd to a town hall. He is allowed to
> enter the overflow room.

7.     The remarks that Ms. Ramos expressed in the preceding screenshot is a smoking gun and

confirms that she and others were illegally subjecting me to an illegal prior restraint of my First

Amendment and Fourteenth Amendment rights in regards to public forums that the Mayor was

then conducting that was applicable to town hall meetings and additional types of public forums

that he was conducting, such as public resource fair meetings.

8.     While trying to lawfully attend the town hall meetings, resource fair meetings, and public

hearings that the Mayor conducted with Mr. Banks and others on and after 4/27/17, I sought to

lawfully try to have Mr. Banks fired for cause, Urban's contracts with the City of New York to

be cancelled immediately for cause, and all of the personnel of HRA, DHS, and DSS to be
replaced largely to prevent further atrocities from occurring to those who resided in the building
in which I reside as a consequence of fraud and negligence by personnel of HRA, DHS, DSS,
Urban, and others. However, I was illegally prevented from being able to do so. As I sought to
do so, I took it upon myself to be an advocate for those who resided in the building in which I
reside that is a shelter for military veterans that is subsidized by taxpayers and comparable to
notoriously horrific NYCHA housing in that respect. Defendant City and NYCHA were sued by
the DOJ in the lawsuit that corresponds to *USA v. New York City Housing Authority*, No. 18-cv-
5213, (WHP) (S.D.N.Y. November 14, 2018) because of fraud and negligence that the Mayor's
administration perpetrated as a slumlord in regards to NYCHA housing after defendants in this
action and other members of the Mayor's staff and the NYPD stole the outcomes of the 2017
New York City government elections for the Mayor's benefit and their own. Such fraud and
negligence by NYCHA and the Mayor's administration was illegally covered-up prior to the
2017 New York City government elections to protect the re-election interests of the Mayor and
his administration. The written transcript that was prepared from the public hearing that U.S.
District Judge William Pauley conducted on 9/26/18 in *USA v. New York City Housing
Authority*, No. 18-cv-5213, (WHP) (S.D.N.Y. November 14, 2018) confirms that I testified to
him during that hearing. As I did so, I correctly and analytically pointed out to him that there
really isn't any meaningful difference between how HRA and NYCHA operate directly and
indirectly as slumlords of public housing. I recall that he gave short shrift to my testimony then.
My testimony in that hearing occurred after Letitia James engaged in grandstanding during that
hearing through her remarks before she rushed away from the duties that she then had as New
York City's Public Advocate to accord proper due process to the rest of the public who were also

there to testify. Ms. James instead rushed out of that courtroom immediately after she finished

grandstanding with the testimony that she delivered. Perhaps the deaths of Robert Vargas and

Gilda Giscombe that occurred thereafter in the building in which I reside due to negligence by

both Urban and HRA and were preventable will now spur Judge Pauley to visit wherever they

may be buried and humbly apologize to them and their families while buying the arrogance and

narrow-mindedness that he showed to me on 9/26/18. I will discuss the deaths of both Mr.

Vargas and Ms. Giscombe in greater detail shortly.

9.      Largely as a result of the fact that I was illegally prevented from attending many public

town hall meetings and public resource fair meetings that the Mayor conducted with Mr. Banks

and others on and after 4/27/17 prior to the 2017 New York City government elections that were

conducted in September of 2017 and November of 2017, Bill de Blasio was able to steal his re-

election win as New York City's Mayor with significant criminal assistance of the defendants in

this action and others by engaging in voter suppression, voter fraud, and whistleblower

retaliation at the same time that atrocious, complicit, and pervasive news censorship by the press

facilitated that.

10.     If not for my having been illegally prevented from attending public town hall meetings

and public resource fair meetings that the Mayor conducted with Mr. Banks and others on and

after 4/27/17, it clearly stands to reason that I would be able to use Robert Vargas as a witness in

litigation that I have against Defendant City, Urban, HRA, Mr. Banks, and others. However, I

will never have the opportunity to do so nor to speak to Mr. Vargas again because Mr. Banks,

Ann Marie Scalia of HRA, and personnel of Urban significantly contributed to the circumstances

that caused his death to occur on or about 8/11/20 in the apartment in which he resided in the

building in which I reside roughly 8 days after I sent the following e-mail message about Mr.

Vargas and his needs to Mr. Banks and Ms. Scalia at 1:27 pm on 8/3/20:

**From:** Towaki_Komatsu <towaki_komatsu@yahoo.com>
**Subject:** Question about helping a disabled military veteran in my building
**Date:** August 3, 2020 at 1:27:32 PM EDT
**To:** "Scalia, Ann Marie" <scaliaa@dss.nyc.gov>
**Cc:** "banksst@dss.nyc.gov" <banksst@dss.nyc.gov>, "Calhoun, Martha" <calhounm@dss.nyc.gov>

Ms. Scalia,

I'm sending you this to find out what you, Mr. Banks, and HRA is willing to do to help the disabled military veteran who lives in apartment 1D in the building in which I reside who needs an air conditioner to be installed in his living room.

He told me yesterday that Urban Pathways, Inc.'s personnel told him that though it has an air conditioner to install that is located in the basement of that building, it will take 2 weeks from when he was told last week for bars to be cut outside of his living room window to install that air conditioner.

I previously talked with you and Mr. Banks on his behalf and i also testified on his behalf during a City Council public hearing.

The person I'm talking about has had several strokes and can barely move.

It is unconscionable for HRA to allow him to have to sweat in his apartment only because Urban's personnel, its contractors, and HRA won't get off of their fat ass to abide by applicable health and safety laws in the middle of Summer.

I'm not anticipating a response to this e-mail and will likely use it in my federal lawsuit to further establish that HRA is blatantly disregarding its legal duties with its business partners.

From,

Towaki Komatsu

11.     After I sent that e-mail message, I received an e-mail message from Ms. Scalia on

8/10/20 at 10:42 pm. The header section from that e-mail message and a relevant excerpt from it

about Mr. Vargas is shown next.

**From:** "Scalia, Ann Marie" <scaliaa@dss.nyc.gov>
**Subject:** RE: Update
**Date:** August 10, 2020 at 10:42:40 PM EDT
**To:** Towaki_Komatsu <towaki_komatsu@yahoo.com>
**Cc:** "Aaronson, Nicola" <aaronsonn@dss.nyc.gov>, "Clary, Carin" <claryc@hra.nyc.gov>, "Wilkinson, Thatiana" <wilkinsont@hra.nyc.gov>, "Galindo, Daniel" <galindod@hra.nyc.gov>, "Jennifer, kelly" <Kellyjen@hra.nyc.gov>

Regarding the disabled veteran you referred to below we are look into this but we will not be able to communicate with you regarding this individual and his circumstances.

12.   The following is a link to an audio recording that has the filename of "Robert_Vargas on 8-2-20 at 9_11 pm_20200802 211142.m4a" that I recorded on 8/2/20 at 9:11 pm while I talked with Mr. Vargas in the kitchen area within his apartment as he was then telling me that he urgently needed to have an air conditioner to be installed in his apartment for his health after he had suffered numerous strokes:

https://drive.google.com/file/d/1kgqME-aLSNUjKknYGY9lX03pfYBCQmM6/view?usp=sharing

13.   Mr. Vargas is clearly heard in that audio recording at the elapsed time of 35 seconds as he made a remark to me in which he rhetorically asked whether those who were depriving him of an air conditioner in his apartment wanted someone else to die in the building in which I reside after a nice woman whose name was Gilda Giscombe died in it in December of 2019 due to negligence by HRA, DHS, and Urban's personnel. I talked with Mr. Vargas on 8/2/20 while it had recently been both hot and humid in the building in which I reside that is poorly ventilated due to negligence by Urban, HRA, DHS, HPD, and OTDA. Mr. Vargas and I are heard in that audio recording at the elapsed time of 1 minute and 7 seconds as we talked about Gilda's death. Mr. Vargas told me that she collapsed in the lobby of the building in which I reside in December of 2019 before she asked a security worker who then worked in that building to help her to reach her apartment on the third floor in that building. Mr. Vargas told me that the security worker

refused to assist her. Ms. Giscombe was found dead in her apartment a few days later.

14.     The following is a link to a video recording that has the filename of "FDNY forcing open Robert Vargas' apartment door on 8-11-20 at 3_39 pm_IMG_3624.MOV" that I recorded on 8/11/20 at 3:39 pm while I stood in a public area on the first floor of the building in which I reside as a recorded members of the New York City Fire Department ("FDNY") while they broke open the front door to Mr. Vargas' apartment:

https://drive.google.com/file/d/1BGbVCcAlTCTy_WpODblxPbh7H-q1zYnk/view?usp=sharing

15.     The next screenshot is from the elapsed time of 2 seconds in that video and shows 3 members of the FDNY as one of them was using a tool to force open the front door to Mr. Vargas' apartment in the building in which I reside. They had been asked to come to that building then because Mr. Vargas was no longer responding to people who were checking up on his welfare and the front door to his apartment was locked from the inside.



16.     The following is a link to a video recording that has the filename of "Urban staff member in front of apartment building on 8-11-20 at 4_04 pm with a FDNY ambulance in front and EMTs inside of the building by Roberts apartment_IMG_3636.MOV" that I recorded on 8/11/20 at 4:04 pm while I stood in front of the building in which I reside and recorded a FDNY ambulance that was there while paramedics assigned to it were inside of the building in which I reside and outside of Mr. Vargas' apartment as they were then there to respond to his death:

https://drive.google.com/file/d/1dAFNodgC63nglKYenr0Djgva_UpXJjY9/view?usp=sharing

17.     The next screenshot is from the elapsed time of 14 seconds in that video and shows

FDNY paramedics as they stood in an area of the lobby of the building in which I reside that is located just outside of Mr. Vargas' apartment.



18.     The following is a link to a video recording that has the filename of "NYC Medical Examiner's Office workers rolling Robert Vargas out of apartment building at 8_53 pm on 8-11-20_IMG_3661.MOV" that I recorded on 8/11/20 at 8:53 pm while I stood in front of the building in which I reside and recorded members of the New York City Chief Medical Examiner's Office as they used a stretcher to roll Mr. Vargas out of the building in which I reside while he was then in a black body-bag:

https://drive.google.com/file/d/1otdIE5Ggj2QMzLvY1c6sSU7XFg3MHet4/view?usp=sharing

19.     The next screenshot is from the elapsed time of 3 seconds in that video and shows the members from the New York City Chief Medical Examiner's Office and the black body-bag that Mr. Vargas was then inside of in front of the building in which I reside.



20.     The following lists what some of my primary objectives were in broad terms as I sought

to lawfully attend the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource

fair, and **d)** 3/18/19 public hearing and testify in the Mayor's 3/18/19 public hearing:

    a.       I sought to engage in extensive protected whistleblowing about matters of both

    public concern and private matters while attending those public forums as **a)** reporters,

    members of the public, and numerous government officials were present and nearby and

    **b)** those public forums were recorded on video that was broadcast on the Internet that

    could greatly amplify the message that I was trying to widely broadcast through word-of-

    mouth advertising. However, hindsight sufficiently confirms that the defendants in this

    action and others were hell-bent on trying to illegally prevent me from being able to

exercise my legal right to take advantage of public town hall meetings, public resource

fair meetings, and public hearings that the Mayor conducted with Mr. Banks and others to

use them and the resources that they made available to get the messages out that I was

lawfully attempting to broadcast as I sought for those messages and viewpoints of mine

to achieve the greatest possible reach largely through word-of-mouth advertising that

could occur **a)** at the sites of those public forums as they were being conducted and **b)** as

a result of those who watched the video recordings of those public forums and may have

chosen to engage in such advertising

b.        The subject matter of whistleblowing that I intended to lawfully engage in while

attending those public forums largely concerned the sum and substance of my HRA

lawsuit that was a complex hybrid proceeding, illegal acts and omissions that had been

committed against me since 4/11/17 in regards to public forums that the Mayor and Mr.

Banks conducted and also included the scheduled 4/12/17 oral arguments hearing in my

HRA lawsuit that Jeffrey Mosczyc illegally caused me to be deprived of just 1 day prior

to that scheduled hearing. On 4/11/17, HRA also illegally manipulated OTDA during a

fair hearing that OTDA pointlessly conducted between HRA and I after OTDA illegally

refused to fully enforce a fair hearing decision that one of its administrative law judges

issued on 9/15/16 in my favor that I discussed with Defendant Levin on 4/27/17 as I

testified to him in a public hearing that the City Council's Committee on General Welfare

conducted. HRA manipulated OTDA on 4/11/17 by managing to have a new

administrative law judge who was then assigned to the fair hearing that OTDA then

conducted between HRA and I to disregard the fact that an attorney for HRA named

Marin Gerber flagrantly violated res judicata and committed wire fraud during that

hearing through her remarks as both OTDA and I separately recording audio recordings of that hearing that was conducted by telephone. That hearing was conducted by telephone only because OTDA had been illegally preventing me from having such hearings face-to-face in its offices located at 14 Boerum Place in Brooklyn following 7/5/16. On 7/5/16, an administrative law judge who was assigned to OTDA illegally and abruptly terminated a face-to-face fair hearing that OTDA conducted between HRA and I in OTDA's offices located at 14 Boerum Place in Brooklyn while OTDA recorded that hearing on audio.  She did so while I was in the middle of attempting to lawfully answer a question that I was asked during that hearing just 3 days after I was viciously assaulted in the living room of where I reside by my former roommate (Ronald Sullivan) that fraud and negligence by HRA, Urban, Services for the Underserved, Inc. ("SUS") enabled. That assault was both entirely foreseeable and preventable. It occurred after Mr. Sullivan attempted to assault me in that same living room on 5/12/16 and was physically restrained by one of Urban's personnel who then happened to be in that living room as Mr. Sullivan was making verbal threats against me before he suddenly rushed toward me to try to assault me. I then promptly reported that attempted assault on 5/12/16 mainly through cell phone text messages to someone named Molly McCracken of SUS to have her act as an intermediary between Urban and I to arrange for Mr. Sullivan to be immediately evicted from the building in which I reside because he had proven that he was a clear and unacceptable threat to my safety in that building. I also made telephone calls on 5/19/16 to Lisa Lombardi and Ronald Abad while they were then among Urban's senior management to try to persuade them to immediately evict Mr. Sullivan for the same reasons. However, all of my requests for him to be evicted were denied. Instead, I

received more than 15 punches from Mr. Sullivan's fists to an area near my left temple

on my head in the living room of where I reside on 7/2/16 when Mr. Sullivan exploded as

the time bomb that I correctly recognized him to be on 5/12/16. On or about 2/24/17,

Bronx Criminal Court Judge Cori Weston issued a fraudulent determination in the case of

_People v. Sullivan_, No. 2016BX042188 (Bronx Crim. Ct. Feb. 24, 2017) in which she

claimed that Mr. Sullivan was not guilty for assaulting me on 7/2/16 in the living room of

where I reside after she abused her discretion by suppressing a critically significant

security log as evidence in the criminal case that the Bronx DA commenced against Mr.

Sullivan for assaulting me on that date in my living room as the Bronx DA committed

prosecutorial misconduct in that case in a number of significant ways that prejudiced my

right to have Mr. Sullivan to be properly prosecuted for assaulting me. Bill de Blasio

appointed Cori Weston as a judge and I have held him liable for doing so. I certainly

intended to engage in protected whistleblowing against the Mayor during the Mayor's **a)**

10/12/17 town hall, **b)** 10/18/17 town hall, and **c)** 10/25/17 resource fair about the fact

that he appointed Cori Weston to be a judge and the harm that caused me as a result of

Judge Weston having fraudulently determined that Mr. Sullivan was not guilty for having

assaulted me partly by fraudulently concealing material evidence. The Mayor also

appointed David Kirschner to be a judge and that enabled Mr. Kirschner as a Bronx

Criminal Court judge to free a gang-member named Jose Gonzalez, who then killed a

FDNY paramedic as he stole an ambulance that was assigned to her. The New York Post

published a news article on 3/20/17 about how Mr. Gonzalez killed Ms. Arroyo and how

Judge Kirschner enabled that to occur. That news article is entitled "Judge Was Soft on

Accused EMT Killer Weeks Before Rampage", was written by Larry Celona, and is

available on the Internet at https://nypost.com/2017/03/20/judge-was-soft-on-accused-emt-killer-weeks-before-rampage/. That news article was published less than one month after Judge Weston fraudulently determined that Mr. Sullivan was not guilty of having viciously assaulted me on 7/2/16. The findings in *Johnson v. NYC Health & Hosps*, 246 A.D.2d 88, 676 N.Y.S.2d 38, 676 N.Y.S. 38 (App. Div. 1998) confirm that security logs are admissible as evidence in criminal cases. The security log that I sought to have accepted as evidence in the criminal case against Mr. Sullivan for assaulting me was updated by security personnel who worked for Urban in the building in which I reside. That log contained critically significant information about how Mr. Sullivan was observed as exhibiting an angry demeanor as he fled from the building in which I reside after he viciously assaulted me in the living room of where I reside on 7/2/16. Additionally, Mr. Sullivan made incriminating remarks to a witness named Larry Kayatt on 7/2/16 as Mr. Sullivan fled from the building in which I reside after assaulting me in it. Mr. Kayatt thereafter told me both prior to 11/2/16 and on 8/29/17 how Mr. Sullivan described to him on 7/2/16 as he fled from that building about precisely how he assaulted me on 7/2/16 in the living room of where I reside. Mr. Kayatt told me then that Mr. Sullivan told him that he (Mr. Sullivan) "bitch-slapped" me and hit me with an open hand as he criminally assaulted me on 7/2/16. Also, I legally recorded an audio recording of my conversation with Mr. Kayatt at 4:01 pm on 8/29/17 as he shared that information about Mr. Sullivan with me. I have played back that audio recording while testifying in public hearings that the City Council conducted and using that recording in conjunction with the testimony that I provided. Also, I sent an e-mail message to Hayden Briklin of the Bronx DA on 11/2/16 at 6:37 pm in which I provided her Mr. Kayatt's name to have

her team use him as a witness in the criminal case that her team commenced against Mr. Sullivan for having assaulted me on 7/2/16. Mr. Briklin was involved in the criminal case against Jose Gonzalez that led to Judge Kirschner ordering him to be released from custody before he killed Ms. Arroyo. Also, the Bronx DA negligently didn't appeal the decision that Judge Weston issued in the criminal case against Mr. Sullivan to exclude the security logs as evidence to the greatest extent that its prosecutors. While he was the assistant district attorney for the Bronx DA who prosecuted the criminal case at trial against Mr. Sullivan for assaulting me, Scott McDonald, Jr. as well as a female supervisor of his instead merely debated the matter of the admissibility of the security logs with Judge Weston in her courtroom. They did so in spite of the fact that the Bronx DA could have formally pursued an appeal to an appellate court about Judge Weston's arbitrary and capricious decision to exclude those security logs from the evidence that she would consider in that case. The Bronx DA also never used any witness in that criminal case against Mr. Sullivan other than me in spite of what Mr. Kayatt and others knew about that assault and how Mr. Sullivan was observed to have an angry demeanor as he fled from the building in which he assaulted me. The Bronx DA also waited until October of 2017 to arrange for me to be issued an order of protection against Mr. Sullivan for having assaulted me on 7/2/16. That caused me to have to continue to have Mr. Sullivan as my roommate in the same apartment in which he viciously assaulted me at the same time that I was battling to recover from the concussion and trauma that assault caused me. All of this information were among the subjects of additional protected whistleblowing about which I intended to engage in whistleblowing against the Mayor, the Bronx DA, Judge Weston, the NYPD, HRA, and Urban during the public town hall meetings and

public resource fair meetings that the Mayor conducted on and after 4/27/17. Returning to

my discussion about OTDA, though it is responsible for providing proper oversight over

how HRA operates as well and is also responsible with HRA for providing proper

oversight over how Urban operates as the landlord of the building in which I reside,

hindsight confirms that no such oversight has existed over HRA nor Urban. Similarly, no

proper oversight over how OTDA operates has existed. After my 7/5/16 OTDA fair

hearing was illegally terminated by the administrative law judge assigned to it in

retaliation for entirely valid complaints that I lawfully reported to her during that hearing

about the fact that she wasn't paying proper attention to the information that I was

communicating during that hearing at the same time that I was battling a concussion that

was developing in my head as well as justifiable rage against HRA for my having been

assaulted on 7/2/16 partly because of fraud and negligence that it and Urban committed

against me, Samuel Spitzberg of OTDA sent me a letter dated 7/21/16 in which he

implicitly acknowledged the fact that my 7/5/16 OTDA fair hearing had been illegally

terminated in violation of my rights pursuant to the First Amendment and Fourteenth

Amendment.  On 7/5/16, prior to leaving the building in which my 7/5/16 OTDA fair

hearing was conducted, I lawfully expressed outrage to OTDA personnel in a public

waiting area in that building about the fact that my 7/5/16 OTDA fair hearing was

illegally terminated in violation of my rights after I travelled all the way from the Bronx

to Brooklyn to attend that hearing and was heavily suffering from the effects of having

been viciously assaulted just 3 days earlier. OTDA never accorded me any due process in

regards to its decision to illegally ban me from returning to its offices in Brooklyn after

7/5/16. Instead, OTDA's personnel have repeatedly lied to me and negligently condoned

fraud by HRA against me following 7/5/16 that concerned material matters. Such negligence contributed to the circumstances that enabled Mr. Vargas' death. Additionally, OTDA has illegally never conducted fair hearings for additional claims that I asserted against HRA that I brought to OTDA's attention on 2/9/17 in a 62-page fax that I transmitted to OTDA on 2/9/17 to have OTDA conduct fair hearings between HRA and I within 30 days in accordance with OTDA's own policies. In short, I also intended to try to engage in extensive protected whistleblowing against OTDA while attending the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, and **c)** 10/25/17 resource fair. Concerning what I just discussed about OTDA, it's necessary to bear in mind that it takes just roughly 5 minutes to walk between the site of the Mayor's 10/18/17 town hall and OTDA's offices in Brooklyn that are located at 14 Boerum Place. It's also necessary to keep in mind that in his capacity as the chairman of the City Council's Committee on General Welfare, Defendant Levin was among others who were supposed to be providing proper oversight over how HRA operated that he egregiously wasn't at the same time that he was familiar with matters pertaining to OTDA before he served as the moderator for the Mayor's 10/18/17 town hall.

c.       The subject matter of whistleblowing that I intended to lawfully engage in while attending those public forums also concerned the sum and substance of the face-to-face conversations that I had with the Mayor and Mr. Banks prior to 10/12/17 that dated back to 3/1/16 with respect to Mr. Banks and 3/15/17 with respect to the Mayor as both the Mayor and Mr. Banks had proven to be con artists as far as I was concerned. I sought to lawfully and widely apprise voters and potential voters as well as political rivals of the Mayor and members of the City Council while attending public forums that the Mayor

conducted with others that New Yorkers sorely needed a complete overhaul of New York

City's government personnel and that the primary way to get that done was by

immediately firing the Mr. De Blasio, his entire administration, and the entire City

Council as well as other New York City government personnel through the power of their

votes.

d.      Additional whistleblowing of public concern about which I intended to engage in

while attending the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall , and **c)**

10/25/17 resource fair was against whistleblower news censors in journalism.

e.      Clarification about matters that I intended to engage in whistleblowing about

while attending such public forums that the Mayor conducted is readily apparent by the

sum and substance of the testimony that I gave during public hearings that committees of

the City Council conducted on the following dates that were recorded on video as a result

of arrangements that the City Council made:

    i.      4/27/17: General Welfare Committee. That video is available on the Internet

        at https://councilnyc.viebit.com/player.php?hash=yT2sfbuWriiW. I addressed

        Defendant Levin as I testified in that hearing. My testimony in that video

        begins at the elapsed time of 3 hours, 27 minutes, and one second and lasted

        until the elapsed time of 3 hours, 29 minutes, and 28 seconds.

    ii.     6/14/17: Committee on Public Safety. That video is available on the Internet

        at https://councilnyc.viebit.com/player.php?hash=YXl0VS6f0vsZ. I primarily

        addressed New York City Councilwoman Vanessa Gibson at the end of my

        testimony in that hearing as I then testified to her and others. My testimony in

        that video begins at the elapsed time of 2 hours, 54 minutes, and 42 seconds

and lasted until the elapsed time of 3 hours, 58 minutes, and 28 seconds.

iii.   6/19/17: Committee on Oversight and Investigations. That video is available on the Internet at https://councilnyc.viebit.com/player.php?hash=mpfP5DcsXgf5. I testified then to former New York City Councilman Vincent Gentile and former New York City Councilwoman Elizabeth Crowley. My testimony in that video begins at the elapsed time of 35 minutes and 19 seconds and lasted until the elapsed time of 50 minutes, and 55 seconds.

iv.   6/27/17: General Welfare Committee. That video is available on the Internet at https://councilnyc.viebit.com/player.php?hash=5dKD0m59T0oF. I testified then to New York City Councilman Ben Kallos. My testimony in that video begins at the elapsed time of 4 hours, 42 minutes, and 50 seconds and lasted until the elapsed time of 4 hours, 51 minutes, and 37 seconds. I testified during that hearing partly about the fact that I was being illegally prevented from attending public forums that the Mayor had been conducting since 4/27/17 with other government officials.

v.   10/2/17: Committee on Veterans. That video is available on the Internet at https://councilnyc.viebit.com/player.php?hash=iL2CQdQxyO6c. I testified then to New York City Councilman Eric Ulrich. My testimony in that video begins at the elapsed time of 2 hours, 8 minutes, and 3 seconds and lasted until the elapsed time of 2 hours, 26 minutes, and 3 seconds. I also testified during that hearing partly about the fact that I was being illegally prevented from attending public forums that the Mayor had been conducting since

4/27/17 with other government officials.

vi.   10/16/17: Committee on Courts and Legal Services. That video is available on the Internet at https://councilnyc.viebit.com/player.php?hash=6D4LixzIe9Bs. I testified then to New York City Councilman Rory Lancman. My testimony in that video begins at the elapsed time of 2 hours, 43 minutes, and 4 seconds and lasted until the elapsed time of 2 hours, 26 minutes, and 3 seconds. I testified during that hearing partly about the fact that I was being illegally prevented from attending public forums that the Mayor had been conducting since 4/27/17 with other government officials. The next screenshot is from what appears at the elapsed time of 2 hours, 39 minutes, and 26 seconds in that 10/16/17 hearing as I testified about the fact that I was being illegally prevented from attending public town hall meetings and resource fair meetings that the Mayor had been conducting.



In response to that specific testimony about illegal acts and omissions against me at public forums, I reasonably expected Mr. Lancman to immediately directly or indirectly intervene on my behalf in some way that would ultimately cause that illegal practice to immediately stop. However, he unconscionably did nothing about that. The video recording of that 10/16/17 hearing also recorded Mr. Lancman on audio as I testified in it while Mr. Lancman was rude to me by answering a telephone call that he received instead of letting it go to voicemail and properly paying complete attention to my testimony. While I have testified in public hearings that the City Council has conducted in City Hall, I have observed Defendants Redmond, Mason, and Gerola as well as other members of the Mayor's NYPD security detail as they conducted surveillance against me. Since the public hearings that the City

Council conducts are broadcast over the Internet on video in real-time as they are being conducted, all of the defendants in this action and others had the opportunity to watch my testimony in such public hearings before I attempted to attend the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, and **c)** 10/25/17 resource fair.

f.      Additional clarification about matters that I intended to engage in whistleblowing about while attending such public forums that the Mayor conducted is readily apparent by the sum and substance of the conversations that I had with Marcia Kramer of CBS New York and Juliet Papa of 1010 WINS on 6/15/17 during a town hall meeting that CBS New York conducted in Corona in Queens that it recorded on video and is shown in a news report that is available on the Internet at

http://newyork.cbslocal.com/2017/06/15/queens-election-town-meeting/. Erin Durkin attended that town hall. During that town hall's video, I talked with Ms. Kramer and Ms. Juliet in Ms. Durkin's immediate presence during two separate periods and engaged in protected whistleblowing about a variety of matters while doing so. Such matters included whistleblowing that was about my having been illegally prevented from attending public town hall and resource fair meetings that the Mayor conducted on 4/27/17 5/23/17, and 6/8/17. The periods in that video recording during which I talked with Ms. Kramer and Ms. Juliet were between the following elapsed times in that video:

    i.   **a)** 40 minutes and 22 seconds and **b)** 47 minutes and 17 seconds.

    ii.  **a)** 56 minutes and 33 seconds and **b)** 57 minutes and 45 seconds.

g.      Further clarification about matters that I intended to engage in whistleblowing about while attending such public forums that the Mayor conducted is readily apparent by

the sum and substance of the conversations that I had with the following government officials that were recorded on video and otherwise on audio:

    i.    3/15/17 and 7/18/17: With the Mayor during the town hall and resource fair meetings that he conducted on those dates. The next screenshot shows me as I began talking with the Mayor during the Mayor's 3/15/17 town hall that the Mayor's office arranged to be recorded on video that is available o the Internet at https://www.youtube.com/watch?v=i5LjWB2d2vc.  The screenshot corresponds to what appears in that video at the elapsed time of 2 hours, 1 minute, and 18 seconds.



A whistleblower news censor in journalism named Michael Gartland attended that meeting along with Defendants Stribula and Redmond. Paola Ruiz of the Mayor's staff also attended that meeting. I talked with both Ms. Ruiz and Ms. Stribula during that meeting and Ms. Stribula gave me her business card then.

While I talked with Ms. Ruiz during that meeting right after I finished talking with the Mayor during it, I gave her a comment card that I was issued during that meeting. I wrote a list of issues and whistleblowing information on that card for which I sought assistance from the Mayor's office and never really received in response. I thereafter sent Ms. Stribula and Ms. Ruiz a detailed e-mail message on 3/16/17 at 10:54 pm that was partly against HRA and its business partners that include Urban and NTT. No one replied to that e-mail message. Instead, hindsight clearly suggests that I was illegally retaliated against by **a)** Ms. Stribula, other members of the Mayor's CAU that include Defendants Ringel and Miller as well as **b)** members of the Mayor's NYPD security detail that include Defendant Redmond in relation to my efforts to lawfully attend further public forums comprised of town hall meetings, resource fair meetings, and public hearings that the Mayor thereafter conducted with other government officials and the public in response to the protected whistleblowing that I engaged in through that 3/16/17 e-mail message. That e-mail message contained a large amount of entirely valid and protected whistleblowing information. I also sent that e-mail message then to others that included the following people as both courtesy-copy ("Cc") recipients and blind courtesy copy ("Bcc") recipients:

| # | Recipient Name | E-mail | Cc or Bcc? |
|---|---|---|---|
| 1 | ABC News | iwitness@abc.com, | Bcc |
| 2 | Madina Toure | mtoure@observer.com | Bcc |
| 3 | Yoav Gonen | ygonen@nypost.com | Bcc |
| 4 | Matthew Chayes | matthew.chayes@newsday.com | Bcc |
| 5 | Laura Nahmias | LNahmias@Politico.com | Bcc |
| 6 | Jeff C. Mays | jeffcmays@gmail.com | Bcc |

| 7 | Errol Louis | errol.louis@charter.com | Bcc |
| 8 | Paola Ruiz | pruiz@cityhall.nyc.gov | Cc |
| 9 | New York City Public Advocate's office | gethelp@pubadvocate.nyc.gov | Cc |
| 10 | Lourdes Rosado | lourdes.rosado@ag.ny.gov | Cc |
| 11 | Melissa Mark-Viverito | mmark-viverito@council.nyc.gov | Cc |

The next table contains additional information about some of those e-mail

recipients.

| # | Recipient Name | Notes |
|---|---|---|
| 1 | Madina Toure | She then worked for a news organization named Observer and now works for Politico. She is a whistleblower news censor in journalism. |
| 2 | Yoav Gonen | He then worked for the New York Post and now works for a news organization named "The City". He is a whistleblower news censor in journalism. |
| 3 | Matthew Chayes | He works for Newsday and is a whistleblower news censor in journalism. |
| 4 | Laura Nahmias | She then worked for Politico and now works for New York Daily News. She is a whistleblower news censor in journalism. |
| 5 | Jeff C. Mays | He works for the New York Times and is a whistleblower news censor in journalism. |
| 6 | Errol Louis | He works for Spectrum News and is a whistleblower news censor in journalism. |
| 7 | Lourdes Rosado | She was then the head of the civil rights division of the New York State Attorney General's office. I previously met her on 3/13/17 and she gave me her business card then. |
| 8 | Melissa Mark-Viverito | She was then the Speaker of the City Council. I previously met her on 3/13/17 during the meeting in which I met both Ms. Rosado and Jeff C. Mays. |

The next screenshot shows me as I began talking with the Mayor during the

Mayor's 7/18/17 resource fair meeting that the Mayor's office arranged to be

recorded on video and illegally concealed from the public while the Mayor ran

for re-election as well as thereafter in spite of the fact that that video is a

public record. The Mayor's office temporarily provided me access to that

video recording in response to a FOIL demand that I submitted to it. A video

clip of that recording that I recorded is available on the Internet at

https://drive.google.com/open?id=1-

ZUN22r8q4qARLEbMk8FVg4KuLqfTtcc.  The beginning of that video clip

corresponds to what appears in the video of the Mayor's 7/18/17 resource fair

at the elapsed time of 1 hour, 8 minutes, and 25 seconds. This screenshot is

from what appears in that video clip at the elapsed time of 1 minute and 31

seconds.  NYPD John Doe1 3/18/19 appears on the far-left in it as Mr. Banks,

the Mayor, and Jessica Ramos also appear in it. In addition to Mr. Gartland

and other whistleblower news censors in journalism who attended that

meeting, Gloria Pazmino attended it in her capacity as a whistleblower news

censor in journalism. All of them then sat within roughly 15 from where I then

talked with the Mayor. One of them was then clearly recording my

conversation with the Mayor on audio. Mr. Gartland then still worked for the

New York Post and now works for the New York Daily News. Ms. Pazmino

then worked for a news organization named Politico and now works for

Spectrum News.



ii.  6/26/17: With Defendant O'Neill at the New York City Bar Association that

arranged for the meeting in which I talked with him to be recorded on audio

that is available on the Internet at

http://dts.podtrac.com/redirect.mp3/www2.nycbar.org/mp3/Podcasts/media/po

lice_commissioner_audio_2017-06-26.mp3. During that meeting, I had two

face-to-face conversations with Mr. O'Neill. My first conversation with him

during it extends from the elapsed time of **a)** 32 minutes and 38 seconds from

the beginning of that audio recording to **b)** 33 minutes and 36 seconds in that

recording. My second conversation with him then extends from the elapsed

time of **a)** 47 minutes and 4 seconds from the beginning of that recording to **b)**

49 minutes and 14 seconds. Numerous whistleblower news censors in

journalism attended that meeting. The next screenshot is from a video

recording that I recorded during that meeting that shows microphones that are

labeled with information that correspond to Pix11News, 1010Wins, NBC,

CBS New York, WCBS 880, ABC News, and NBC New York that confirms

that whistleblower news censors from those organizations attended that meeting.



iii.   10/3/17: With Defendant Vance, Jr. at the New York City Bar Association that arranged for the meeting in which I talked with him to be recorded on audio that is available on the Internet at

http://dts.podtrac.com/redirect.mp3/www2.nycbar.org/mp3/Podcasts/media/police_commissioner_audio_2017-06-26.mp3. My discussion with Mr. Vance, Jr. during that audio recording extends from the elapsed time of roughly 2 hours, 3 minutes, and 50 seconds to 2 hours, 5 minutes, and 11 seconds. Since

the microphones that were passed to the audience during that meeting were faulty, it is necessary to significantly amplify the volume of that audio recording to clearly hear much of what I then discussed with Mr. Vance, Jr. Defendant Byrne, Jr. is clearly heard in that audio recording as he stated "Viewpoint discrimination?" in a way that clearly suggested he wasn't' aware of what viewpoint discrimination entailed in spite of the fact that he was then the head of the NYPD's legal division. A whistleblower news censor for the New York Times named Joseph Goldstein attended that meeting at briefly talked with me at the end of that meeting around the same time that I talked with an average and arrogant civil rights attorney named Ron Kuby during that meeting as Mr. Kuby then told me that he would rather walk his dogs than provide me legal representation for the matters that my litigation against Defendant City concerns insofar as that concerns illegal acts and omissions that have been committed against me at public forums that the Mayor conducted with other government officials and members of the public.

iv.    10/13/17: With Defendant Shorris during a meeting that the New York Law School hosted while whistleblower news censors in journalism named Yoav Gonen, Ben Max, Matthew Chayes, and Jillian Jorgensen attended that meeting. Mr. Gonen then worked for the New York Post. He now works for a news organization named "The City". Ben Max runs a news organization named Gotham Gazette. Mr. Chayes works for Newsday. Ms. Jorgensen then worked for the New York Daily News and now works for Spectrum News. Mr. Shorris, Mr. Max, Mr. Chayes, Mr. Gonen, and Ms. Jorgensen appear

from left to right in the next screenshot that is from a photograph that the New York Law School arranged to be taken at the end of that meeting and is available on the New York Law School's web site.



The New York Law School recorded that meeting on video and that video is available on the Internet at

https://www.youtube.com/watch?v=ZEKi8skDT0c. The next screenshot is from the elapsed time of 37 minutes and 54 seconds in that video as I talked with Mr. Shorris during that meeting. This screenshot is from how I played back that video with its closed-captioning feature enabled.



NYPD security detail going to stop violating those rights particularly

This screenshot accurately reflects the fact that I then asked Mr. Shorris to tell me when the Mayor's NYPD security detail would stop violating my First Amendment right to attend public forums that the Mayor conducted as I cited the landmark and seminal court decision about viewpoint discrimination that the U.S. Supreme Court issued in *Wood v. Moss*, 134 S. Ct. 2056, 572 U.S., 188 L. Ed. 2d 1039 (2014) as I then talked with Mr. Shorris. I also told Mr. Shorris during that conversation that **a)** I had just been illegally prevented from attending the Mayor's 10/12/17 town hall and **b)** Defendant Redmond was then both the defendant in a civil right lawsuit (I was then referring to *Sherrard v. City of New York*) and a member of the Mayor's NYPD security detail who illegally prevented me from attending public forums that the Mayor had been conducting. I also told Mr. Shorris during that conversation that I had previously attended a meeting on 12/16/16 that the New York Law School hosted in which Mr. Banks made false statements. I talked with Mr. Banks during that meeting and he lied to my face then about legal assistance

as a whistleblower news censor in journalism named Courtney Gross attended that meeting. She works for Spectrum News. The New York Law School arranged to have that 12/16/16 meeting to be recorded on video that is available on the Internet at

https://www.youtube.com/watch?v=czkZh6cAVWY. My conversation with Mr. Banks in that video begins at the elapsed time of 48 minutes and 40 seconds. The next screenshot is from the elapsed time of 48 minutes and 51 seconds as I addressed Mr. Banks and discreetly pointed out to him and that meeting's audience that hindsight confirmed that he lied to my face on 3/1/16 at the Yale Club in Manhattan by having told me then that he would thereafter try to get me some legal help that I never received and that he instead fraudulently worked to be withheld from me. I played back that video with its closed-captioning feature enabled. Mr. Banks also lied about additional material matters of fact during that 12/16/16 that ultimately significantly caused or contributed to the death of Robert Vargas on or about 8/11/17 in the building in which I reside. Mr. Banks clearly stated during that 12/16/16 meeting that he and the Mayor were committed to controlling things that were within their control. Mr. Vargas would likely still be both alive and a potential witness of mine if Mr. Banks had been truthful about that remark by him on 12/16/16.



The next screenshot is from a photo of Courtney Gross that appears on the

New York Law School's web site that was taken of her during that 12/16/16

meeting with Mr. Banks.



a.  Further clarification about matters that I intended to engage in whistleblowing about while attending such public forums that the Mayor conducted is readily apparent by the sum and substance of what I discussed during numerous 50-h hearings that I participated in with lawyers about my claims against the City of New York and other defendants in this action that I was permitted to record on audio during most of those hearings. I had one such 50-h hearing on 10/19/17.

b.  Additional whistleblowing that I intended to engage in while attending such public forums that the Mayor conducted concerned the lawsuit of *Sherrard v. City of New York*, No. 15-cv-7318 (MB) (S.D.N.Y. Jun. 13, 2018) that was commenced against Defendant Redmond before he committed perjury in relation to it about material matters during a deposition on 5/19/17 and as he testified at trial in it.

c.  Further whistleblowing that I intended to engage in while attending such public forums that the Mayor conducted concerned the needs of other tenants who resided in the building in which I reside that is housing for military veterans that is subsidized by taxpayers and terribly mismanaged by Urban through a contract it has with HRA that has illegally shirked its legal duty to provide proper oversight of how Urban operates as the landlord of that building. Concerning this point, I intended to voluntarily serve as an advocate for the needs of such other tenants in that building while attending those public forums before Mr. Banks, Ann Marie Scalia of HRA, and Urban's personnel significantly caused or contributed to the death of one of those tenants that occurred on or about 8/11/17 by depriving him of an air conditioner in his apartment. His name is Robert Vargas. He was both a U.S. Marines ad Army National Guard military veteran who had suffered from numerous strokes. I sent an e-mail

message to Mr. Banks and Ms. Scalia on 8/3/20 in which I urged them to immediately

cause an air conditioner to be installed in Mr. Vargas' apartment in the building in

which I reside. Instead, members of the New York Fire Department broke open the

front door to Mr. Vargas' apartment on 8/11/20 and discovered that Mr. Vargas had

died in his apartment while there was no air conditioner installed in it. Prior to that

date, I twice testified on Mr. Vargas' behalf during public hearings that the City

Council conducted. Mr. Banks attended one of them as I testified about Mr. Vargas.

Mr. Vargas' death occurred after I was viciously assaulted in the living room of my

apartment on 7/2/16 that was largely due to HRA and Urban having illegally

subjected me to a bait-and-switch fraud and forgery concerning a binding apartment

lease agreement that I signed on 2/16/16 with Urban to be issued apartment 4C in the

building in which I reside in its entirety instead of being a shared apartment. If not for

that illegal bait-and-switch, I wouldn't have had my 7/2/16 assailant as my roommate

because I wouldn't' have had any roommate in the apartment that I would otherwise

have resided in within the building in which I reside. That 7/2/16 assault occurred

after that assailant tried to assault me on 5/12/16 in that same living room. I reported

that attempted assault and actual assault to try to get my roommate immediately

evicted from where I resided. However, that never happened because of criminal

negligence by HRA and Urban's personnel that HRA has steadfastly illegally

covered-up with Mr. Banks' knowledge and approval. This certainly was also a

matter that I intended to engage in whistleblowing about during the Mayor's public

forums to befit the public's interests in public safety as well as proper procurement

and oversight practices.

**Facts about the Mayor's 10/12/17 town hall:**

21.     The next screenshot is from what appears in the Mayor's 10/12/17 town hall video at the elapsed time of 12 minutes and 39 seconds as I played back that video with the closed-captioning feature enabled. It confirms that the Mayor was then in the middle of telling the audience at that town hall that its members could meet with the other government officials who also attended that town hall at the end of that meeting within the room in which it was conducted to talk with them about whatever was on the minds of the members of the public who attended that town hall and that those government officials would stay there all night to talk with them, if necessary.



22.     By making such remarks then, the Mayor confirmed that town hall was a quorum that was comprised of senior government officials of his administration was present at that town hall and that they would be conducting public business during that meeting by being available for the audience members to talk with during that meeting. The Mayor's remarks then about that also confirmed that that meeting was mostly a traditional public forum because he explicitly stated that the members of the audience could meet with such senior government officials during that

meeting to freely talk with them. That circumstance also largely caused him to be a sideshow and irrelevant during that meeting because the members of the audience weren't allowed to have a free-flowing discussion with him during that meeting in contrast to the free-flowing back and forth discussion that they could instead have with senior government officials of his administration at the end of that meeting that included Mr. Banks.

23. On 10/12/17, I arrived sufficiently early and prior to 5:50 pm to the site of the Mayor's 10/12/17 town hall to be granted access to that town hall in accordance with my constitutional rights and other applicable laws with respect to being able to attend that town hall from within the room in which it would be conducted. Defendants in this action with whom I talked outside of and in close proximity to the building that hosted that town hall shortly before it began in regards to my efforts to lawfully attend that town hall included, but wasn't limited to the following defendants in this action:

> Stribula, Miller, Mason, Lance, Ranieri, Suzuki, Jane Doe1 10/12/17, NYPD John Doe4 10/12/17

24. The next screenshot is from the video that I recorded on 10/12/17 at 5:51 pm that has the filename of "IMG_2851.MOV" as I stood next to a line of people that had formed in which I had previously lawfully waited behind the last person shown in that line to be granted access to the school that hosted the Mayor's 10/12/17 town hall in order to be accorded my constitutional right of access to that town hall with respect to the room in which it would be conducted.



25.     The primary reason why I was no longer in that line when I recorded this video is

because Defendant Stribula illegally coerced me to leave that line after I was lawfully engaged in

protected activity by distributing whistleblowing literature against the Mayor's administration,

members of the Mayor's NYPD security detail, HRA's business partners, and others while I was

in that line to those who stood in front and behind me in it. No member of the public to whom I

gave that literature expressed any objection to me about how I conducted myself then nor the

information in that literature. They instead were appreciative of the fact that I shared that

information with them. I recall having presciently told members of the public who were then in

that line with me that I anticipated that members of the Mayor's staff and members of the

Mayor's NYPD security detail would resume their illegal practice at that town hall of illegally

preventing me from attending it while I conducted myself in an entirely lawful manner in

contrast to them. Defendant Stribula and others proved that I was totally right.

26.     On 10/12/17, Ms. Stribula coerced me to leave the line I lawfully waited in with other members of the public to be granted access to the Mayor's 10/12/17 town hall by threatening me that she would summon Defendant Redmond to come to where she and I were to force me to leave it if I didn't acquiesce to her illegal demand for me to leave that line. I regrettably left that line in response to that threat. In hindsight, I should have stayed in that line and lawfully forced my way into that school to attend that town hall while lawfully engaging in self-defense against everyone who initiated physical contact with me to continue to violate my constitutional right to attend that town hall.

27.     While I was in that line, Defendant Jane Doe1 10/12/17 illegally refused to issue me an admission ticket for that town hall in flagrant violation of my rights pursuant to the First Amendment, Fifth Amendment, and Fourteenth Amendment and other applicable laws as she illegally discriminated against me by doing so.

28.     All of the following defendants illegally refused to intervene on my behalf on 10/12/17 at the site of that town hall and otherwise simply didn't do so to enable me to attend that town hall as they acted in concert with Defendant Stribula to prevent me from attending that town hall as co-conspirators for that illegal scheme:

> Defendants Miller, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17

29.     All of the defendants that I just identified had a realistic opportunity to have intervened on my behalf on 10/12/17 to enable me to attend that town hall. They also had a legal, ethical, inherent, and affirmative duty to have then intervened on my behalf for that purpose that is confirmed by what I discussed in the Legal Standards section about them and the jobs that they

then held. Through my remarks to them on 10/12/17 at the site of that town hall as well as through their own ears and eyes with which they could and should have otherwise made independent assessments about the illegal acts and omissions that were being perpetrated against me in their immediate presence with respect to my efforts to lawfully attend that town hall, sufficient information was available to all of those defendants to have spurred them to have properly intervened on my behalf to attend that town hall. No one did so however as all of them exhibited acceptance of that illegal practice against me. Instead, they allowed other members of the public to attend that town hall who arrived to the site of that town hall after I did for that purpose. That violated my Fourteenth Amendment due process and equal protection rights largely because that was discriminatory against me.

30.     The next screenshot is from the video that I recorded on 10/12/17 at 7:25 pm that has the filename of "IMG_2587.MOV" as I continued to wait on a sidewalk located next to where I had previously been in line to attend the Mayor's 10/12/17 town hall.



31.     Defendant Miller is shown in this screenshot as he stood next to Paola Ruiz of the

Mayor's CAU while he was aware that I sought to be able to lawfully attend that town hall. I talked with him in that area on 10/12/17 to be provided an objectively valid explanation about why I was not being allowed to attend the Mayor's 10/12/17 town hall. In response, he used a fraudulent pretext by telling me that it was because of past behavior and didn't elaborate about that. He also told me then that I wouldn't be allowed to attend town hall meetings that the Mayor conducted without a court order.

32.      The next screenshot is from the video that I recorded on 10/12/17 at 7:31 pm that has the filename of "IMG_2590.MOV" as I stood on a sidewalk near Defendant Stribula and an alleyway that led from that sidewalk to an entrance on the side of the school that hosted the Mayor's 10/12/17 town hall that was used to grant members of the public access to that school to attend that town hall. A copy of that video is available on the Internet at

https://drive.google.com/file/d/1s99q8odr_GWXNbv7ksuX04KKw75pDr8b/view?usp=sharing.

The back of Ms. Stribula's head and a video security camera that was then attached to that school are shown in that screenshot. That security camera appears at the top of the screenshot near its center. I urge this Court to immediately issue an order that will compel the City of New York to immediately provide me all of the video recordings that were recorded by that video security camera on 10/12/17 between 5 pm and 11 pm to better facilitate my ability to prove my claims in this action about the Mayor's 10/12/17 town hall.



33.     The next screenshot is of a draft e-mail message that I saved on 10/12/17 at 6:26 pm to record information about members of the NYPD that I had just talked with as I urged them to intervene on my behalf to enable me to attend that town hall. That e-mail message has the last names of Defendants Ranieri and Suzuki in it with their NYPD shield numbers. They stood near me when I had those conversations with them.

```
Towaki Komatsu <Towaki_Komatsu@yahoo.com>     Drafts - Yahoo!   October 12, 2017 at 6:26 PM

(No Subject)


Ranieri
24361

Suzuki
7373
```

34.     As I talked with Defendant Stribula on 10/12/17 at the site of that town hall, she lied to

me by claiming that I had rejected an offer that she claimed I had received to be provided legal

assistance. I never received such an offer. Concerning this point, I sent an e-mail message to an

attorney named Norman Siegel on 10/12/17 at 9:01 pm that is shown below:

> **From:** Towaki Komatsu <Towaki_Komatsu@yahoo.com>
> **Subject:** Re: Attending tonight's town hall with the Mayor
> **Date:** October 12, 2017 at 9:01:08 PM EDT
> **To:** Norman Siegel <NSiegel@stellp.com>
>
> Shauna Stribula of the Mayor's office illegally kicked me out of the line to get in tonight,
> then lied by claiming that I had turned down legal assistance previously that had been
> made available by a partner of the New York City Resources Administration.

35.     Mr. Siegel is a prominent civil rights attorney and used to be the head of the New York

Civil Liberties Union. Prior to going to the site of the Mayor's 10/12/17 town hall on that date, I

sent him an e-mail message in which I asked him if he would be interested in attending that town

hall meeting largely because I correctly anticipated that illegal acts and omissions would be

committed against me in relation to my efforts to lawfully attend that town hall in accordance

with my rights. I thought that it would be helpful if people like him would be there to be able to

witness such illegal acts and omissions being perpetrated against me by the defendants in this

action. However, he wasn't able to attend that town hall. Moreover, the fact that I inquired as to

whether he would be able to attend that town hall speaks volumes about the fact that it wasn't my

intent whatsoever to conduct myself in any unlawful, disorderly, and threatening manner as I sought to lawfully attend the Mayor's 10/12/17 town hall.

36.     Through their illegal acts and omissions against me on 10/12/17, the defendants that my 10/12/17 claims concern illegally chilled my First Amendment right to expression as a speaker during the Mayor's 10/12/17 town hall by preventing me from attending it as well as the public's corresponding First Amendment right to receive information from speakers. Those illegal acts and omissions flagrantly violated my First Amendment right of assembly in a public forum as well as the remainder of my constitutional rights that applied that that public forum and caused me irreparable harm in that regard. That experience also caused me reputational harm, embarrassment, humiliation, and enormous justifiable anger and stress largely as a result of having been illegally coerced to leave the line that I lawfully waited in with other members of the public to attend that town hall. A key but-for cause for that experience was negligent failure to train and supervise by Defendant Carrion, Redmond, O'Neill, the Mayor, and other defendants in this action who directly and indirectly supervised those who illegally prevented me from attending that town hall.

**Facts about the Mayor's 10/18/17 town hall:**

37.     Defendants Ringel, Atcheson, Jane Doe1 10/18/17, Stribula and others illegally barred me from attending the Mayor's 10/18/17 town hall through their illegal acts and omissions against me on that date. That occurred as the following was entirely true and accurate:

      a.     I continued to have active litigation against HRA on 10/18/17 through my HRA lawsuit that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted. Prior to trying to attend the Mayor's 10/18/17 town hall, I submitted an application to the New York State Supreme Court's Appellate

Division's First Department on 10/18/17 to be granted immediate interim relief. Relief that I then sought to be immediately granted through that application was an issuance of an order by that court that would compel the City of New York to cause its personnel to stop illegally interfering with my constitutional rights to attend public forums that the Mayor conducted. Prior to denying that application on that date, I talked with Judge Richard T. Andrias of that court in the clerk's office of that courthouse on that date. He has since retired as a judge. He told me on 10/18/17 in that clerk's office that he wasn't sure if his court could possibly grant me the relief that I sought through that application and suggested that I might want to try commencing a federal lawsuit instead to be granted that relief. He also then directed personnel who were working in the rear right corner in that office to telephone the New York City Corporation Counsel to discuss my application. The next screenshot is from a draft e-mail message that I saved at 3:22 pm on 10/18/17 in which I recorded information about two people who are named Dan Ramos and Debbie Wolf who worked for that courthouse and witnessed my conversation with Judge Andrias in that clerk's office on 10/18/17.

I have no knowledge about whether such a telephone call was made by that courthouse's personnel to the New York City Corporation Counsel in response to Judge Andrias' remarks in that clerk's office about me and the illegal acts that had been committed

against me prior to that date that had been causing me to be barred from public forums that the Mayor had been conducted and otherwise discriminated against in relation to my efforts to lawfully attend those public forums in accordance with my constitutional rights. The primary reason why Judge Andrias denied my application for interim relief about public forums that the Mayor had been conducting was because no written notice was ever issued to me that informed me that I was barred from them or that my attendance in regards to them would otherwise be restricted. A true and accurate copy of the order that Judge Andrias issued on 10/18/17 in response to my application to the New York State Supreme Court's Appellate Term's First Department for interim relief appears within the annexed **Exhibit C**.

b.     Jeffrey Mosczyc filed an affirmation on 10/19/17 in my ongoing HRA lawsuit after he committed perjury in remarks that he expressed in that affirmation about material matters of fact.

c.     I was looking forward to participating in a 50-h hearing that was scheduled to be conducted of me on 10/19/17 for entirely valid claims that I asserted against Defendant Redmond in response to him having been recorded on video as he illegally seized and assaulted me on 7/25/17 in a subway station near City Hall below Broadway near Warren Street as he did so in retaliation for my having persisted in lawfully exercising my First Amendment and Fourteenth Amendment rights in accordance with the MTA's Rules in an area in close proximity to the Mayor and a large group of whistleblower news censors in journalism that included the following people while the Mayor conducted an illegal publicity stunt in a manner and in an area in that subway station that flagrantly violated both the MTA's rules and the constitutional rights that the public had in that subway

station to not be obstructed in their ability to freely assemble and otherwise move about

in all public areas in that subway station:

| # | News Censor | Employer on 7/25/17 | Employer on 10/13/20 |
|---|---|---|---|
| 1 | Matthew Chayes | Newsday | Newsday |
| 2 | Erin Durkin | New York Daily News | Politico |
| 3 | Josh Einiger | ABC News | ABC News |
| 4 | Michael Gartland | New York Post | New York Daily News |
| 5 | Mara Gay | Wall Street Journal | New York Times |
| 6 | David Goodman | New York Times | New York Times |
| 7 | Courtney Gross | Spectrum News | Spectrum News |
| 8 | Noah Hurowitz | Unknown | Unknown |
| 9 | Jillian Jorgensen | New York Daily News | Spectrum News |
| 10 | Ben Max | Gotham Gazette | Gotham Gazette |
| 11 | Gloria Pazmino | Politico | Spectrum News |
| 12 | Marc Santia | NBC New York | Unknown |
| 13 | Shant Shahrigian | New York Daily News | New York Daily News |
| 14 | Madina Toure | Observer | Politico |
| 15 | Audrey Wachs | Unknown | Unknown |

The publicity stunt that the Mayor then conducted in that subway station was

illegal partly because it was conducted right next to a staircase and in an area that

illegally obstructed and hindered the movements of the public as well as their

right to assemble in the specific area in which that publicity stunt was illegally

conducted. Also, the Mayor illegally used a microphone during that publicity

stunt in violation of the MTA's rules. Members of the Mayor's NYPD also

illegally caused a downtown subway train to be held in that subway station

without any valid justification in spite of the fact that the Mayor has repeatedly

stated that he does not control the MTA. Additionally, I sought to invite everyone

who attended the Mayor's 10/12/17 town hall and the Mayor's 10/18/17 town hall

to attend my 10/19/17 50-h hearing against Defendant Redmond while attending those town hall meetings. I sought to embarrass the Mayor, Mr. Redmond, and other members of the NYPD, and news censors in journalism while making those invitations during those town hall meetings partly by sarcastically asking the Mayor, Mr. Redmond, and other members of the NYPD, and news censors in journalism if they would like to join me and members of the public in the room in which my 10/19/17 50-h hearing would be conducted and to precisely, honestly, and fully explain to everyone who attended those town hall meetings on the spot why they wouldn't want to do so as my question to them and their responses would be recorded on video that was being broadcast over the Internet prior to the 2017 New York City general elections that would allow the public to directly and indirectly fire the Mayor, his entire administration, everyone who was then a member of the City Council, and members of the NYPD.

38.     On 10/18/17, I arrived to the site of the Mayor's town hall on that date before 5 pm and promptly joined a line of other members of the public to be granted access to the building that hosted the Mayor's 10/18/17 town hall by members of the Mayor's staff and members of the NYPD. I conducted myself in an entirely lawful manner throughout the entire time that I was at that location. However, Defendants Ringel, Atcheson, Jane Doe1 10/18/17, Stribula, and Carrion acted in concert with members of the NYPD that partly included Defendants Lance, NYPD John Doe4 10/12/17, Santana, and Ioveno through their illegal acts and omissions that caused me to be illegally barred from that town hall without any due process having been accorded to me in regards to that. In doing so, they clearly subjected me to standardless discretion and an illegal prior restraint without any objectively valid justification with respect to my rights pursuant to the

First Amendment, Fifth Amendment, Fourteenth Amendment, and New York State's Open

Meetings Law to attend the Mayor's 10/18/17 town hall. The violations of my Fifth Amendment

and Fourteenth Amendment rights partly correspond to my having been illegally denied an

admission ticket for that town hall and deprived of both liberty and property with respect to that

town hall as a consequence of having been illegally been prevented from entering the building

that hosted that town hall to make use of it for the purpose of exercising my liberty rights that

pertained to attending that town hall and otherwise lawfully exercising the entire array of my

rights while attending that town hall. Additional violations of my Fourteenth Amendment rights

in regards to that town hall meeting partly resulted from the fact that other members of the public

were granted access to that town hall after they arrived to that site after I did. That violated my

Fourteenth Amendment due process and equal protection rights as well as the prohibitions

against selective-enforcement that correspond to the class-of-one legal theory that is based upon

an illegitimate animus and invidious discriminatory intent. I was certainly entitled to equal

treatment in regards to my efforts to lawfully attend that town hall and every other member of

the public who was permitted to do so.

39.      When I arrived to the site of the Mayor's 10/18/17 town hall on 10/18/17 before 5 pm, I

promptly waited in a line on a public sidewalk that runs parallel to Remsen Street in Brooklyn in

an area that was located near the entrance to the building that hosted that town hall. I waited in

that line to be issued an admission ticket to attend that town hall from within the room in which

it would be conducted and I arrived sufficiently early to the site of that town hall on 10/18/17

that enabled me to be near the front of the line that was comprised of other similarly-

circumstanced members of the public who also sought to attend that town hall. Either the first or

one of the first members of the Mayor's staff who I met on 10/18/17 at the site of the Mayor's

10/18/17 town hall in that area was Defendant Atcheson. As I sought to have her issue me an admission ticket there and then that would enable me to attend the Mayor's 10/18/17 town hall, Ms. Atcheson illegally refused to do so in spite of the fact that I was conducting myself in an entirely lawful manner. She told me then that she received information from her supervisor that I was not to be allowed to attend that town hall. That prompted me to then ask who her supervisor was who told her that. She told me that her supervisor's name was Defendant Carrion.

40.     The next screenshot is from the elapsed time of 1 second in the video recording that has the filename of "IMG_2737.MOV" that I recorded on 10/18/17 at 5:03 pm with my cell phone as I lawfully conducted myself while I stood on a sidewalk that runs parallel to Remsen Street in Brooklyn and was in the specific area where members of the public lined up to be granted access by Defendants Atcheson, Ringel, members of the NYPD, and others to the building that hosted the Mayor's 10/18/17 town hall in order to attend that town hall. Ms. Atcheson is clearly shown standing near me in this screenshot.



41.     Ms. Atcheson is clearly heard telling me that her supervisor was then Defendant Carrion

in that video recording at the elapsed time of 6 seconds. She told me that then to identify her

supervisor from whom she received information that indicated that I was not to allowed to attend

the Mayor's 10/18/17 town hall. If I had then been conducting myself in some threatening or

disorderly manner, it clearly stands to reason that Ms. Atcheson would not have been standing

near me for obvious reasons. At the elapsed time of 14 seconds in that video, I provided

narration for it right after Mr. Ringel walked by me and as Ms. Atcheson continued to stand near me. In that narration, I clearly stated the following while I intended that remark to pertain to Defendants Atcheson, Ringel, and Carrion:

"So these people are not letting me into a public meeting."

42.      I would have recorded more video recordings with my cell phone on 10/18/17 at that location, but my cell phone lost power.

43.      Additionally, while I continued to be illegally prevented from attending the Mayor's 10/18/17 town hall, I talked with members of the public nearby who were passing by me to attend the Mayor's 10/18/17 town hall. While doing so, I distributed literature to them that I made available to them that was identical and/or similar to the literature that I distributed to members of the public on 10/12/17 at the site of the Mayor's town hall on that date as they lined up to be granted access to that public forum. Two of the people with whom I then talked were elderly women. I talked with them near the entrance to the building that hosted the Mayor's 10/18/17 town hall. I told them then and there that I was being illegally prevented from attending the Mayor's 10/18/17 town hall at the same time that I was a whistleblower against the Mayor's administration and the NYPD while I had ongoing litigation against the Mayor's administration. I informed them that Defendant Ringel was among those who were preventing me from attending that town hall and that I hadn't received any valid explanation for why I was being prevented from attending that town hall. Learning about that really upset them and they promptly approached Mr. Ringel to confront him and express their irritation about the fact that he was preventing me from attending that town hall. They clearly told Mr. Ringel then that I had a First Amendment right to attend that town hall and one of them appeared to have poked Mr. Ringel in his chest area. I never asked them to conduct themselves in any unlawful manner towards Mr.

Ringel. However, I certainly took pleasure in how they stood up for me then and there with respect to how they interacted with Mr. Ringel. While those two women talked with Mr. Ringel, they demanded to know why I was illegally not being allowed to attend the Mayor's 10/18/17 town hall. In response, Mr. Ringel made a remark to them in which he claimed that I knew what I did to have caused that to occur as he committed defamation against me because I hadn't done anything to have justified that. Mr. Ringel then instead used that remark as a fraudulent pretext to try to justify the illegal discrimination that he, Ms. Atcheson, Ms. Stribula, Mr. Carrion, and others were then committing against me that that caused me to be prevented from attending the Mayor's 10/18/17 town hall. While I was at the site of the Mayor's 10/18/17 town hall on 10/18/17 before that town hall began, I recall having a brief conversation with Ms. Stribula that was adversarial in nature and tied to the fact that she illegally prevented me from attending the Mayor's 10/12/17 town hall. Contrary to anything that she and others may possibly claim, I conducted myself in an entirely lawful manner as I interacted with her and clearly expressed justifiable frustration with her that stemmed from how she had been subjecting me to illegal acts and lying about me.

44.     I also met Defendant Levin on 10/18/17 as he arrived at the site of the Mayor's 10/18/17 town hall shortly before it began and talked with him near the entrance to the building that hosted that town hall before he entered that building to attend that town hall. I very clearly told him then that I was being illegally prevented from attending that town hall and that I sought his assistance with enabling me to exercise my constitutional right to attend that public forum. He lied to me then by telling me that there was nothing that he could do to help me to be able to attend that town hall. Contrary to his deceit, he is a lawmaker as a member of the City Council to whom I testified on 4/20/17. As the moderator for the Mayor's 10/18/17 town hall, he could

likely have arranged for me to be able to attend that town hall by boycotting that town hall until I

was permitted to attend it from within the room in which it was conducted and otherwise told the

audience during that town hall that he would instead change the location for where that town hall

meeting would continue to be conducted to the sidewalk outside of the building where he and I

talked on 10/18/17 outside of the building that hosted that town hall. He could have explained to

that town hall's audience, the Mayor, the Mayor's NYPD security detail, and members of the

Mayor's staff that he was deciding to move the location of that town hall to that sidewalk and/or

wherever else I then may have been in order to make certain that I could be among the audience

members for that town hall to uphold my constitutional rights and ask the Mayor to explain to

everyone why it was that I was illegally barred from that town hall meeting while they Mayor

was running for re-election. As the moderator of the Mayor's 10/18/17 town hall, Mr. Levin's

job was to decide which members of that town hall's audience were able to talk with the Mayor

during that town hall.  For similar reasons and as its moderator, Mr. Levin had control over

deciding who could access that town hall in much the same way that New York City Councilman

previously ordered the NYPD on 12/15/17 to arrest a political rival of his named Thomas Lopez-

Pierre at the site of the Mayor's 12/15/16 town hall if Mr. Lopez-Pierre tried to enter the school

in which that town hall was conducted as that town hall was conducted in it. By not trying to

enable me to attend that town hall, Mr. Levin acted in concert by virtue of his failure to act with

those who were illegally preventing me from attending that town hall. In doing so, he flagrantly

violated 42 USC §1986, his constitutional oath as an employee of the City of New York, New

York City Charter §1116, NYPL §195.00, and my Fourteenth Amendment due process and equal

protection rights. He thereafter continued to commit illegal acts and omissions against me in

relation to public hearings in which I testified that the City Council's Committee on General

Welfare conducted. For example, after I lawfully testified to him on 3/25/19 during the public

hearing that the City Council's Committee on General Welfare conducted and arranged to be

recorded on video that was required by New York City Charter §1063 to be available on the

Internet for the public to view within 3 days after that hearing, that video recording wasn't

available on the Internet. I sent him an e-mail message on 4/11/19 at 1:55 pm in which I apprised

him about that to have him immediately make arrangements to cause that video recording to be

immediately available on the Internet to view. The following shows a relevant excerpt from that

e-mail message:

> **From:** Towaki Komatsu <towaki_komatsu@yahoo.com>
> **Subject:** Re: Missing video of 3/25/19 General Welfare Committee hearing
> **Date:** April 11, 2019 at 1:55:41 PM EDT
> **To:** slevin@council.nyc.gov
>
> Mr. Levin,
>
> The video of the 3/25/19 General Welfare Committee public hearing you conducted is
> missing for the time period for while you conducted it in the Committee Room in City
> Hall after you began it in its main chamber.
>
> Section 1063 of the New York City Charter required the entirety of the video recording
> for that public hearing in which I testified in the Committee Room to be available to the
> general public within 3 days following that hearing.
>
> This needs to be immediately resolved. I also require the identities of all who have
> concealed that video recording from the general public.

45.     Mr. Levin completely ignored that e-mail message. As a result, the video recording of my

testimony on 3/25/19 to him during that public hearing was illegally not made available on the

Internet until 5/31/19 in flagrant violation of my First Amendment and Fourteenth Amendment

rights as a speaker to have had that video recording available on the Internet for the public to

watch within 3 days after that 3/25/19 hearing. The more than 2-month delay in having that

video recording available on the Internet caused irreparable harm to my First Amendment rights

as a speaker to disseminate information of public concern to the public through that video over the Internet. This point is made perfectly clear by relevant findings in _Elrod v Burns,_ 427 US 347 (1976) and _Piesco v. City of New York, Dept. of Personnel_, 933 F.2d 1149 (2d Cir. 1991). In regards to this point, _Elrod v Burns_ includes the following findings:

      a.      "The timeliness of political speech is particularly important. _See Carroll v. Princess Anne_, 393 U. S. 175, 182 (1968); Wood v. Georgia, 370 U. S. 375, 391-392 (1962)."

      b.      "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

46.      The video recording of the public hearing that the City Council's Committee on General Welfare conducted on 3/25/19 that the City Council arranged to be recorded is available on the Internet at https://councilnyc.viebit.com/player.php?hash=poUr8soKY686. My testimony in that video begins at the elapsed time of 7 hours, 40 minutes, and 19 seconds. I testified against HRA, Mr. Banks, and Urban during that hearing. Much of the sum and substance of that testimony was among the whistleblowing subjects about which I intended to engage in protected whistleblowing against HRA, Urban, and Mr. Banks while attending the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, and **c)** 10/25/17 town hall.

47.      While I was at the site of the Mayor's 10/18/17 town hall on 10/18/17 shortly before it began and as it was being conducted, I didn't observe anyone besides me who was being illegally prevented from attending that town hall as they attempted to attend it. Instead, I was the only person who was illegally singled-out to be illegally discriminated against in a premeditated way by being barred from that public forum. While I was there, I observed a group of demonstrators who gathered in front of the entrance to the building that hosted that town hall as they demonstrated against various housing initiatives that New York City Councilman Stephen Levin apparently supported in favor of real estate developers. I also met a political rival of the

Mayor who is named Sal Albanese while I was there. I also met a woman there who I believe

was then running for a seat on the City Council. I believe that I pointed out to both of them and

others that I was then being illegally prevented from attending that town hall meeting. At 6:37

pm on 10/18/17, a Twitter posting was posted on the Internet at

https://twitter.com/SalAlbaneseNYC/status/920780996013953024 by a Twitter account that is

registered to Mr. Albanese that has the username of "SalAlbaneseNYC". That Twitter posting

included a photograph that was taken in front of the entrance to the building that hosted the

Mayor's 10/18/17 town hall. Mr. Albanese, Defendants Atcheson and NYPD John Doe4

10/12/17, someone who has worked as a bodyguard for Mr. Banks, and others in that

photograph. That photograph also shows a video security camera that was then installed on the

right side of the entrance to the building that hosted that town hall.  I have been able to identify 2

additional video security cameras that were installed in the areas on Remsen Street in Brooklyn

near that building where I waited on 10/18/17 to be granted access to that building.to attend the

Mayor's 10/18/17 town hall. What follows is the photograph that appears in the Twitter posting

that I just discussed. Mr. Albanese appears in the center, Ms. Atcheson's head appears behind his

right shoulder, the person who I know has been a bodyguard for Mr. Banks is shown on the left

and next to a set of steps as he appeared to then be holding a cellphone with his left hand next to

his left ear while he wore a suit and tie, and NYPD John Doe4 10/12/17 appears behind Ms.

Atcheson.



48.     Although I don't like the fact that Mr. Albanese supports the NYPD, I partly sought to

attend the Mayor's 10/18/17 town hall to engage in protected whistleblowing against the Mayor

and his administration that I hoped would be beneficial to Mr. Albanese and other political rivals

of the Mayor to cause a sufficient number of voters to make informed and independent decisions

that would cause Bill de Blasio to be fired as New York City's Mayor on 1/1/118 as a result of

the 2017 New York City government elections that were held in November of 2017.

49.     The next screenshot is from the elapsed time of 7 seconds in the video recording that has

the filename of "IMG_2736.MOV" that I recorded on 10/18/17 at 5:01 pm with my cell phone as

I lawfully conducted myself while I stood on a sidewalk that runs parallel to Remsen Street in

Brooklyn and was in the specific area where members of the public lined up to be granted access

by Defendants Atcheson, Ringel, members of the NYPD, and others to the building that hosted

the Mayor's 10/18/17 town hall in order to attend that town hall.



50.     Defendant Atcheson is shown in the preceding screenshot as she then had her right hand covering her mouth as she looked in my direction as she wore a blue jacket and a red shirt. Also, an unknown female member of the Mayor's staff who wore eyeglasses and had dark hair stood next to her then. That screenshot also confirms that I then had a printed copy of my RSVP for the Mayor's 10/18/17 town hall with me. At the elapsed time of 15 seconds in that video, Defendant Ringel is heard saying the following to me:

"Take your phone out of my face and then we can talk."

51.     He made that remark to me in response to my having just said the following to him as he loitered on the sidewalk where he and I then while he was acting in concert as a co-conspirator with Defendant Atcheson, Stribula, Carrion, and others to illegally cause me to be prevented from attending the Mayor's 10/18/17 town hall by causing me to be deprived of an admission ticket for that town hall:

"You want me to stand outside the line? Tell me what to do. I'll obey it."

52.     Although I made the preceding remark to him while I was lawfully and intended to continue to conduct myself in an entirely lawful manner then and there, I wasn't sincere in the preceding remark that I made to him to the extent that I then claimed that I would voluntarily exit the line in which I was then lawfully exercising my First Amendment and Fourteenth Amendment right to assemble in order to be granted access to the Mayor's 10/18/17 town hall just like every other member of the public who was granted that access by having waited in an orderly manner in that same area in a line for that specific purpose. I also wasn't then sincere to Mr. Ringel in regards to my claim that that I would follow any instruction that I received from him to attend the Mayor's 10/18/17 town hall that was different from steps that other members of the public had to take in order to attend the Mayor's 10/18/17 town hall.  If I had instead

accepted that, I would have acquiesced to the patently illegal customs and practices that

constituted illegal discrimination, segregation, selective-enforcement, and abuse of process

against me to which Defendants Ringel, Atcheson, Stribula, Carrion, and others were subjecting

me in regards to my efforts to lawfully attend the Mayor's 10/18/17 town hall. Instead, my

remarks to Mr. Ringel then really were part of a tactic that I used to try to have Mr. Ringel made

a remark to me from which it could objectively be inferred from the totality of the applicable

circumstances that he was then illegally acting in concert as a co-conspirator with Defendants

Atcheson, Carrion, Stribula, and others to cause me to be prevented from attending the Mayor's

10/18/17 town hall and violate my rights pursuant to the First Amendment, Fourth Amendment,

Fifth Amendment, Fourteenth Amendment, New York State's Open Meetings Law and other

applicable laws by doing so. I had no legal duty then to not use such a tactic with Mr. Ringel and

others to try to get them to incriminate himself in regards to the illegal acts and omissions that

were being committed against me concerning my efforts to lawfully attend public forums that the

Mayor conducted. I was quite sure then that Mr. Ringel would have possibly told me that if I

agreed not to express criticism against anyone while attending that town hall, he or someone else

would then possibly relent and allow me to attend that town hall from within the room in which

it was condition. However, such a condition would certainly be an illegal prior restraint on my

First Amendment rights and something that I would never agree to.

53.     The following is a relevant excerpt from *Puckett v. City of Glen Cove*, 631 F. Supp. 2d

226 (E.D.N.Y. 2009) that confirms that I had a First Amendment right to criticize government

personnel without being retaliated against for doing so:

> "Plaintiff must first allege that she engaged in protected activity to state a First
> Amendment claim of retaliation. **The First Amendment p**rotects the right of access to
> the courts, and **an individual's right to complain to public officials**. *Lewis v. Casey*,
> 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (right of access); *Monsky v.*

*Moraghan*, 127 F.3d 243, 246 (2d Cir.1997) (right of access); *Patriots Way, LLC v. Marconi*, 2007 WL 988712 *4 (D.Conn.2007); *see Colondres v. Scoppetta*, 290 F.Supp.2d 376, 381 (E.D.N.Y.2003) (right of access is "bound up" with the First Amendment right to petition the government); *Gagliardi*, 18 F.3d at 194-95 (right to complain to public officials protected by First Amendment). **These First Amendment rights include the right to be free from retaliation for their exercise**. *Colondres*, 290 F.Supp.2d at 382; *see Patriots Way*, 2007 WL 988712"

54.     At the elapsed time of 3 seconds in the video that I just discussed that I recorded at 5:01 pm on 10/18/17, I'm clearly heard asking Defendant Ringel as he walked by me whether I could enter the building that hosted the Mayor's 10/18/17 town hall to attend that public forum as I stated that I had my RSVP for that event with me and presented a printed copy of it to him. In response, he ignored me until I made the claim to him that I just discussed in which I claimed to him that I would obey whatever he would possibly tell me to do in order to be granted access to that public forum. While he and I then talked, we were separated by a vertical metal barrier on that sidewalk that is shown in the video that I recorded and my cell phone was never in his face on 10/18/17. Although I positioned it in close proximity to him, it is not my view that my cell phone was ever in his face on 10/18/17. Moreover, he was equitably estopped from objecting to how close my cell phone was to him on 10/18/17 on that street on account of the fact that he and others were then illegally preventing me from attending the Mayor's 10/18/17 town hall and I was then recording a video recording to gather evidence for use in entirely valid litigation against him and others in response to that. The following excerpt from the Second Circuit's decision in *Hansen v. Harris*, 619 F.2d 942 (2d Cir. 1980) sufficiently articulates the fact that Mr. Ringel was then estopped from objecting to how I then used my cell phone in relation to him:

> "The Government may sometimes be estopped from enforcing its rules, based on the conduct of its agents."

55.     The following excerpt from *Glus v. Brooklyn Eastern Dist. Terminal*, (359 U.S. 231, 79 S. Ct. 760, 3 L. Ed. 2d 770 (1959) reinforces this point:

"To decide the case we need look no further than the maxim that no man may take advantage of his own wrong."

56.     Defendant Lance is shown standing in very close proximity to me at the start of the video recording that I recorded at 5:01 pm on 10/18/17 that I have been discussing above. He continued to stand there in close proximity to both me and Mr. Ringel as Mr. Ringel and I talked with one another in that video recording. Although Mr. Lance was required to have intervened on my behalf on 10/12/17 and 10/18/17 to try to enable me to attend the town hall meetings that the Mayor conducted on those dates, he made no effort to do so. He was required to have done so by 42 USC §1986, his oath as a member of the NYPD, his constitutional oath as an employee of Defendant, New York City Charter §1116, and his duties as a police officer that are partly enumerated in New York City Charter §435(a). Among his legal duties on 10/12/17 and 10/18/17 as a member of the NYPD were those that required him to:

a.   Prevent crimes. This duty required him to prevent violations of NYPL §240.20(4), NYPL §240.20(5), 18 U.S.C. §1513(e), 5 U.S.C. §1502(a), and other applicable laws by the defendants to my detriment in regards to my efforts to lawfully attend the Mayor's 10/18/17 town hall.

b.   Preserve the public peace. This required him to eliminate the source of the conflict between the defendants in this action and I in regards to my efforts to lawfully attend the Mayor's 10/18/17 town hall by causing them to allow me to lawfully exercise my constitutional right to attend that town hall.

c.   Detect and arrest offenders. This required him to arrest Defendants Atcheson, Ringel, Stribula, and others for committing illegal acts and omissions against me by not allowing me to attend public forums that the Mayor conducted while I was conducting myself in a lawful manner at the sites of those public forums on the dates

when they were conducted.

    d.   Disperse unlawful or dangerous assemblages and assemblages which obstruct the free passage of public streets, sidewalks, and places. This required him to cause everyone to move away from me who prevented me from being able to attend public forums that the Mayor conducted while I conducted myself in a lawful manner at the sites o those public forums on the dates when they were conducted.

    e.   Protect the rights of persons. This required him to intervene on my behalf to protect my rights in regards to public forums that the Mayor conducted.

    f.   Preserve order at all public meetings and assemblages. This further required him to intervene on my behalf in regards to my efforts to lawfully attend public forums that the Mayor conducted.

    g.   Remove all nuisances in the public streets, parks and places. This required him to cause all of the defendants and all other nuisances to be removed that caused me to be prevented from attending public forums that the Mayor conducted while I conducted myself in a lawful manner.

    h.   Enforce and prevent the violation of all laws and ordinances in force in the city. This is self-explanatory.

    i.   To arrest all persons guilty of violating any law or ordinance for the suppression or punishment of crimes or offenses. This is self-explanatory.

57.    At the elapsed time of 18 seconds in the video that I recorded on 10/18/17 at 5:01 pm, I'm heard asking Defendants Lance and NYPD John Doe4 10/12/17 to arrange to have a commanding officer within the NYPD to come to where we were. NYPD John Doe4 10/12/17 also then stood near where Defendant Lance and I were. My grounds for that entirely warranted

request was the fact that both of them were illegally shirking their legal duties as members of the NYPD that I just discussed by illegally not intervening on my behalf to try to enable me to attend the Mayor's 10/18/17 town hall. I sought to have such a commanding officer to immediately cause me to be able to attend that town hall and have everyone who was involving in preventing me from attending it to be arrested for doing so. NYPD John Doe4 10/12/17 is clearly heard at the elapsed time of 32 seconds in the video recording that I just discussed as he expressed his refusal to have a commanding officer within the NYPD to come to where he, Defendant Lance, and I then were by telling me "absolutely not sir." The next screenshot shows Defendants NYPD John Doe4 10/12/17 and Lance in the video that I just discussed at the elapsed time of 34 seconds. Mr. Lance is the Black male in the lower-right corner who wore a hat.



58.     At the elapsed time of 23 seconds in that video, I'm heard saying the following as I stood

next to Defendant Lance and near NYPD John Doe4 10/12/17:

You know, I was in court today."

59.     By making that remark to them then, it was my way of not so subtly warning them that it

was likely that I would pursue entirely valid litigation against them and others in the event that

they continued to illegally not intervene on my behalf to enable me to attend the Mayor's

10/18/17 town hall in the wake of my having actually been in court earlier that day in regards to a matter that partly concerned my efforts to have a judge issue an order that would compel Defendant City to enable me to attend public forums that the Mayor conducted.

60.     The next screenshot is from the elapsed time of 22 seconds in that video and shows Defendant Ioveno on the left. He is bald and stood roughly within 20 feet of where I then was. He didn't make any effort to intervene on my behalf to enable me to attend the Mayor's 10/18/17 town hall.  This screenshot also shows that other senior members of the NYPD were then arriving to the site of the Mayor's town hall on that date as all members of the NYPD at that location illegally refused and otherwise didn't make any effort to intervene on my behalf to attend that town hall in spite of the fact that they were required to have done so and they had a realistic opportunity to intervene partly by arresting everyone who was preventing me from attending that town hall.



61.     Although I talked with several members of the NYPD on 10/18/17 at the site of the Mayor's 10/18/17 town hall before it began and as it was conducted to try to have them perform their legal duty to intervene on my behalf to enable me to exercise the entire array of my constitutional rights and those pursuant to New York State's Open Meetings Law that applied to attending the Mayor's 10/18/17 town hall, all of them refused to intervene on my behalf.

62.     The next screenshot is from what appears in the Mayor's 10/18/17 town hall video at the elapsed time of 12 minutes and 49 seconds as I played back that video with the closed-captioning feature enabled. It confirms that the Mayor was then in the middle of telling the audience at that town hall that its members could meet with the other government officials who also attended that town hall at the end of that meeting within the room in which it was conducted to talk with them about whatever was on the minds of the members of the public who attended that town hall and that those government officials would stay there all night to talk with them, if necessary.



them and raise any concerns that you
have so it's almost like there's two

63.    By making such remarks then, the Mayor confirmed that town hall was a quorum that

was comprised of senior government officials of his administration was present at that town hall

and that they would be conducting public business during that meeting by being available for the

audience members to talk with during that meeting. The Mayor's remarks then about that also

confirmed that that meeting was mostly a traditional public forum because he explicitly stated

that the members of the audience could meet with such senior government officials during that

meeting to freely talk with them. That circumstance also largely caused him to be a sideshow and

irrelevant during that meeting because the members of the audience weren't allowed to have a

free-flowing discussion with him during that meeting in contrast to the free-flowing back and

forth discussion that they could instead have with senior government officials of his administration at the end of that meeting that included Mr. Banks.

64.     The public notice that was issued for the Mayor's 10/18/17 town hall clearly contains false and fraudulent advertising in flagrant violation of New York State General Business Law §349 by stating the following about how members of the public would be granted access to that town hall:

    "FIRST COME, FIRST SEATED"

65.     Hindsight confirms that was false and fraudulent advertising by virtue of the fact that I was illegally denied access to that town hall and was among the first members of the public to arrive to the site of that town hall on 10/18/17 to lawfully attend that public forum.

66.     Through their illegal acts and omissions against me on 10/18/17, the defendants that my 10/18/17 claims concern illegally chilled my First Amendment right to expression as a speaker during the Mayor's 10/18/17 town hall by preventing me from attending it as well as the public's corresponding First Amendment right to receive information from speakers. Those illegal acts and omissions flagrantly violated my First Amendment right of assembly in a public forum as well as the remainder of my constitutional rights that applied that that public forum and caused me irreparable harm in that regard. That experience also caused me reputational harm, embarrassment, humiliation, and enormous justifiable anger and stress largely as a result of having been illegally prevented from attending that town hall. A key but-for cause for that experience was negligent failure to train and supervise by Defendant Carrion, Redmond, O'Neill, Shorris, the Mayor, and other defendants in this action who directly and indirectly supervised those who illegally prevented me from attending that town hall.

**Facts about the Mayor's 10/25/17 resource fair:**

20.     Prior to trying to attend the Mayor's 10/25/17 resource fair, I attended a public meeting about tenants rights and legal assistance on 10/24/17 that was conducted in Harlem at 527 West 125th Street. The panel of speakers at that meeting included the following people:

    a.      Jordan Dressler of HRA. He is the head of its Office of Civil Justice that is responsible or coordinating the provision of pro-bono and lost-cost legal representation and legal assistance to New Yorkers for a variety of legal matters through HRA's business partners that it funds for that purpose and refers people to in order to have them undergo an intake meeting with such partners to determine whether they will be provided such representation and/or assistance by them.

    b.      New York City Councilman Mark Levine.

    c.      Elsia Vasquez. She is the founder of a tenant advocacy organization named P.A.'L.A.N.T.E. Harlem Inc.

    d.      Rodrigo Sánchez-Camus, who works for Northern Manhattan Improvement Corporation ("NMIC") as its Legal Director.

21.     During that meeting, I recorded a video recording at 7:28 pm that is available on the Internet at https://drive.google.com/open?id=1fIKkIA6KjevDPdUH2hPs20kIvw1IK3M of that meeting's speakers.

22.     The next screenshot is from that video and shows Mr. Dressler, Mr. Levine, Mr. Sánchez-Camus, and Ms. Vasquez from left to right.



23.     During that meeting, I talked with Mr. Sánchez-Camus about the fact that I received a notice via e-mail on 4/11/17 from someone named Adlin Adon from his organization while she was worked for it as a paralegal. I told him then that she expressed in that notice that NMIC wouldn't provide me legal assistance nor legal representation in the wake of my having met with her for a legal intake appointment to ascertain whether NMIC would provide me legal assistance or legal representation after I had been referred to it by HRA. I asked him then to better explain why I had been denied that assistance from his legal organization. He lied to me in response by claiming that his organization couldn't provide me legal representation nor legal assistance for the types of matters that I sought such legal representation or legal assistance. He did so in spite of the fact that one of the legal matters for which I sought such assistance from his organization was a housing matter pertaining to my housing in the Bronx. His organization provides legal representation and/or assistance for such matters in the Bronx.

24.     I also talked with Mr. Dressler during that meeting. While I talked with him then, he lied to me by telling me that HRA couldn't cause me to be provided pro-bono or low-cost legal assistance from HRA's business partners that it funds for the types of legal matters for which I sought to such assistance.  He told me that after the Mayor told me during the public town hall meeting that he conducted on 3/15/17 that was recorded on video that the City of New York could cause me to be provided pro-bono legal representation for wage-theft matters and HRA's Deputy General Counsel Ann Marie Scalia issued me a binding and fully-enforceable agreement dated 8/1/17 that lacked any disclaimer, caveat, and qualifying remark in an e-mail message that I received from her in which she explicitly stated that she and HRA would assist me in "any way possible". Ms. Scalia sent me that e-mail message in response to having been referred to me by Mr. Banks following face-to-face conversations that I had with him on 7/18/17 and 7/19/17

during the public town hall meeting and public resource fair meeting that he conducted with the Mayor on those dates while those were rare instances in which members of the Mayor's NYPD security detail, other members of the NYPD, and members of the Mayor's staff took a temporary break from committing criminal acts and omissions against me to briefly allow me to lawfully exercise my First Amendment right to attend those public forums.  Mr. Dressler was bound by the terms of the 8/1/17 binding and fully-enforceable agreement that Ms. Scalia issued to me to assist me in any way possible. New York City Charter §13-b and 18 NYCRR §352.23(a) jointly also obligated HRA to ensure that I had access to HRA's business partners that provide pro-bono legal representation and low-cost legal assistance represent or assist me with legal matters for which I sought such help largely to eliminate my need for further assistance from HRA. I also recall having talked with Ms. Vasquez during that meeting on 10/24/17 about widespread corruption in New York City's government. She agreed with me that such corruption existed and told me that no one was going to help me to contend with and overcome that. The information that I was told by those who I talked with during that meeting was all the more reason why I sought to attend the Mayor's 10/25/17 resource fair meeting to engage in protected whistleblowing that would also be about the fact that HRA and its business partners weren't performing their legal and contractual duty to provide me pro-bono and/or low-cost legal assistance to meet my legal needs. Prior to attending that 10/24/17 meeting, Mr. Banks lied to my face on 4/11/17 in Staten Island about why I hadn't received such legal representation or legal assistance from HRA's business partners as NMIC was one of two organizations that he then lied to me about.

25.     The Mayor's 10/25/17 resource fair meeting was conducted at Brooklyn College at 2705 Campus Road in Brooklyn. Brooklyn College is part of the City University of New York

("CUNY"). CUNY has issued reports as PDF files on the Internet that describe its policies that pertain to First Amendment expression and viewpoint discrimination on its properties. One of those reports is 5 pages in length, available on the Internet at http://www.bcc.cuny.edu/wp-content/uploads/2019/02/freedom-of-expression-and-expressive-conduct-08.26.16-1.pdf, and is entitled "The City University of New York - Policy on Freedom of Expression and Expressive Conduct". Another such report that CUNY issued about that same subject is 8 pages in length, available on the Internet at http://www.bcc.cuny.edu/wp-content/uploads/2019/01/cuny-policy-freedom-of-expression-henderson-rules-1.pdf, and is also entitled "The City University of New York - Policy on Freedom of Expression and Expressive Conduct". The sum and substance of what is discussed in both of those reports clearly confirms that the illegal acts and omissions that were committed against me on 10/25/17 by the defendants that caused me to be illegally prevented from attending the Mayor's 10/25/17 public resource fair were in flagrant contravention of CUNY's policies that pertain to First Amendment activities on its properties.

26.     At 2:13 pm on 10/25/17, a Twitter posting was posted on the Internet at https://twitter.com/RichardBuery/status/923251125058404352 by a Twitter account that is registered to someone named Richard Buery, Jr. That Twitter account has the username of "@RichardBuery" and he then worked for the Mayor's administration. That Twitter posting includes the following remark about the Mayor's 10/25/17 resource fair meeting as well as a photograph that was taken during that meeting that shows the Mayor, Nick Gulotta, and Defendants NYPD John Doe4 10/25/17 and NYPD John Doe6 10/25/17 in it:

        "@NYCMayor with NY's finest at the Brooklyn resource fair! #inBrooklyn #CHIYB"

67.     The next screenshot is from the photograph that is shown in that Twitter posting.



68.    In the preceding screenshot, Defendant NYPD John Doe4 10/25/17 is the male who is shown wearing a white shirt and eyeglasses as NYPD John Doe6 10/25/17 stood immediately to his right. The Mayor appears in the top-right corner and Nick Gulotta appears on the far left in it.

69.    At 10:57 am on 10/25/17, a Twitter posting was posted on the Internet at https://twitter.com/NYCMayorsOffice/status/923201972429303809 by a Twitter account that is registered to the New York City Mayor's office. That Twitter account has the username of "@NYCMayorsOffice". That Twitter posting includes the following remark that hindsight confirms was materially fraudulent and misleading advertising in regards to me about the Mayor's 10/25/17 resource fair meeting as well as an image that is identical to the public notice that was issued for that public resource fair meeting that appears in the annexed exhibits:

> "The Brooklyn Resource Fair is happening today from 11AM-3 PM. Come by, grab some swag, and get your questions answered! #inBrooklyn"

70.     At 4:30 pm on 10/25/17, a Twitter posting was posted on the Internet at

https://twitter.com/NYCMayorsOffice/status/923285762371739648 by someone who used the

Twitter account that has the username of "@NYCMayorsOffice" that I just discussed. That

Twitter posting includes **a)** the following remark that hindsight confirms was materially

fraudulent and misleading in violation of New York State General Business Law §349 in regards

to me about the Mayor's 10/25/17 resource fair meeting and **b)** photographs that were taken by

someone who attended that public resource fair meeting while he or she attended it:

> "Thank you to everyone who came out to the Brooklyn Resource Fair! We were thrilled
> to get the chance to speak with you all."

71.     Contrary to the remark that appears in that Twitter posting, I was illegally prevented from

attending that public resource fair meeting on 10/25/17 and instead continued to stand outside of

its entrance even after I apprised Defendant Shorris as he arrived to the site of that public

resource fair meeting that I was being illegally prevented from attending that resource fair. He

then told me that he would look into that matter before he walked away and entered the building

in which that public forum was being conducted as a traditional public forum. During that

resource fair, the members of the public who attended it were free to move about it in and talk

with whichever government personnel who were in attendance that they chose to about whatever

was on their minds. They were also able to inspect and collect public records that were made

available during that public forum by government personnel who attended it. This fact is clearly

proven by photographs that were taken during that resource fair meeting. This means that those

who illegally prevented me from attending that resource fair meeting also committed the crimes

of illegally depriving me of access to the public records that were made available during that

public forum in violation of NYPL §240.65, NYPL §175.25, and 18 U.S.C. §1513(e) as well as

my rights pursuant to the First Amendment, Fifth Amendment, and Fourteenth Amendment. A

violation of NYPL §175.25 is a felony.

72.      The next screenshot is from one of the photographs that was included in the Twitter

posting that I just discussed that was posted on the Internet at 4:30 pm on 10/25/17 by someone

who used the Twitter account that has the username of "@NYCMayorsOffice". That photograph

clearly shows public records that appear to be flyers that Defendant City's government agencies

made available for inspection and collection to the members of the public who attended the

Mayor's 10/25/17 resource fair.



73.      At 5:22 pm on 10/25/17, a Twitter posting was posted on the Internet at

https://twitter.com/NYCSeniors/status/923298706689949697 by someone who used the Twitter

account that has the username of "@NYCSeniors". That Twitter account is registered to an entity

named NYC Seniors that corresponds to one of Defendant City's government agencies. That

Twitter posting includes the following remark about the Mayor's 10/25/17 resource fair meeting

and a photograph that was taken by someone who attended that public resource fair meeting

while he or she attended it:

> "We had a wonderful time at the Brooklyn Resource Fair today during #CHIYB -
> Brooklyn! Thank you all for coming out."

74.     The next screenshot is from the photograph that was included in that Twitter posting. It

clearly shows public records that appear to be flyers that Defendant City's government agencies

made available for inspection and collection to the members of the public who attended the

Mayor's 10/25/17 resource fair.



75.     At 1:24 pm on 10/25/17, a Twitter posting was posted on the Internet at

https://twitter.com/Joperez26DVS/status/923238765598052354 by someone who used the Twitter account that has the username of "@Joperez26DVS". That Twitter account is registered to an someone named Jo Perez, who works for a New York City government agency that focuses on matters pertaining to military veterans. That Twitter posting includes the following remark about the Mayor's 10/25/17 resource fair meeting and a photograph that was taken by someone who attended that public resource fair meeting while he or she attended it:

> "It's a Pleasure informing #Brooklyn of resources at #CHIYB Brooklyn
> College Student Center"

76.     The next screenshot is from the photograph that was included in that Twitter posting. It also clearly shows public records that appear to be flyers that Defendant City's government agencies made available for inspection and collection to the members of the public who attended the Mayor's 10/25/17 resource fair. Due to my status as a Navy veteran, I clearly had both a First Amendment right and interest in being able to attend the Mayor's 10/25/17 resource fair to inspect and perhaps collect the public records that appear in this screenshot and to publicly and lawfully ridicule the Mayor and his administration during that resource fair for routinely and substantially neglecting the needs of military veterans to hopefully lead a sufficient number of voters to fire him and his administration through the New York City government elections that were conducted in November of 2017.



77.     At 2:36 pm on 10/25/17, a Twitter posting was posted on the Internet at

https://twitter.com/nycgov/status/923256898782224386 by someone who used the Twitter

account that has the username of "@nycgov" that is registered to Defendant City. That Twitter

posting includes the following remark about the Mayor's 10/25/17 resource fair meeting and 3

photographs that were taken by someone who attended that public resource fair meeting while he

or she attended it:

> "A full house at #BrooklynCollege as and reps from NYC agencies
> answer residents' questions at the City Resource Fair. #CHIYB"

78.     The next two screenshots are from one of the photographs that was included in that

Twitter posting. Defendant Carrion is shown in the first screenshot. A further display of public

records appears in the second screenshot. It's objectively reasonable to infer from the totality of

the circumstances that both Defendant Carrion and Ramos continued to be involved with others in having caused me to be illegally barred from the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, and **c)** 10/25/17 resource fair.



79.     At 6:19 pm on 10/25/17, a Twitter posting was posted on the Internet at https://twitter.com/AMBichotte/status/923313069647941633 by someone who used the Twitter account that has the username of "@AMBichotte" that is registered to a politician named Rodneyse Bichotte. That Twitter posting includes the following remark about the Mayor's 10/25/17 resource fair meeting and 4 photographs that were taken by someone who attended that public resource fair meeting while he or she attended it:

> "Happy to have join on #brooklynresourcefair in my district #42
> @NYCMayor @BklynCollege411@fema"

80.     The next screenshot is from one of the photographs that was included in that Twitter posting. In this screenshot, Defendants Ventri and Ramos appear on the far left as the Mayor

stood near Ms. Ramos. Defendant Ringel also is shown in this screenshot along with a

whistleblower news censor in journalism named Yoav Gonen.



81.      At 1:37 pm on 10/25/17, a Twitter posting was posted on the Internet at

https://twitter.com/gracerauh/status/923242204893769729 by someone who used the Twitter

account that has the username of "@gracerauh" that is registered to a former news censor in

journalism named Grace Rauh.  That Twitter posting includes a photograph that was taken of the

Mayor during the Mayor's 10/25/17 resource fair that shows him talking with a member of the

public. Ms. Rauh worked for Spectrum News as a news censor in regards to me on 10/25/17 and

earlier dates. I talked with her both on 9/14/17 and 9/26/17 outside of the buildings that hosted

the town hall meetings that the Mayor conducted on those dates as I was being illegally

prevented from being able to attend those public forums. The fact that she thereafter never

reported anything about that confirms that the official end of her career in journalism was long

overdue.

82.      I recall that I talked with New York City Councilman Bill Perkins as he left the Mayor's

10/25/17 resource fair about the fact that I had been illegally prevented from attending it. I had previously apprised him about the fact that I had also been illegally prevented from attending other public forums that the Mayor had been conducting since 4/27/17. Mr. Perkins never made any attempt to intervene on my behalf to stop the illegal acts and omissions that were being committed against me that prevented me from attending those public forums. That fact is relevant largely because it illustrates that such illegal acts and omissions were clearly pervasive and persistent patterns, practices, policies, and customs of Defendant City's agencies and personnel that were malevolently applied against me at public forums that the Mayor conducted that were condoned by Mr. Perkins and other government personnel that partly include the Mayor, and Defendants Levin, Ramos, Carrion, Vance, Jr., Redmond, and O'Neill.

83.    The next screenshot is from the elapsed time of 1 second in the video recording that I recorded on 10/25/17 at 11:59 am that has the filename of "IMG_2853.MOV". Defendants Baez and Nieves appear from left to right in it as they both were then illegally preventing me from attending the Mayor's 10/25/17 resource fair. I recorded that video near the entrance to a passageway that connects the building that hosted the Mayor's 10/25/17 resource fair to the nearly empty public sidewalk on which I lawfully stood and conducted myself as I recorded that video. This screenshot shows Defendant Nieves as he was in the act of illegally preventing me from attending that public forum as he illegally issued a baseless order to me to move from where I then lawfully stood on a sidewalk that is a traditional public forum while I wasn't obstructing anyone in stark contrast to him and Defendant Baez.



84.     By virtue of the fact that both Defendant Nieves and Baez were then illegally preventing me from walking past them to reach the building that hosted the Mayor's 10/25/17 resource fair, both of them were equitably estopped from ordering me to move from where I then lawfully stood.  By preventing me from attending that resource fair, they violated all of the following:

a.  18 U.S.C. §245(b)(5), 18 U.S.C. §241, 18 U.S.C. §1513(e), 18 U.S.C. §242, 5 U.S.C. §1502(a), 42 U.S.C. §1985, 42 U.S.C. §1986.

b.  NYPL §240.20, NYPL §240.26, NYPL §240.65, NYPL §175.25, NYPL §120.45, NYPL §215.10, CPL §140.50.

c.  My rights pursuant to the First Amendment, Fourth Amendment, Fifth Amendment, Fourteenth Amendment, New York State's Open Meetings Law,

d.  New York State General Business Law §349.

e.  New York City Charter §1116 and New York City Charter Section §435(a).

f.  Their oath of office as members of the NYPD.

g.  The Handschu Agreement.

h.  The following findings from _People v. Howard_, 50 N.Y.2d 583, 430 N.Y.S.2d 578,

408 N.E.2d 908 (1980):

i.  "An individual to whom a police officer addresses a question has a constitutional right not to respond. He may remain silent or walk or run away. His refusal to answer is not a crime. Though the police officer may endeavor to complete the interrogation, h**e may not pursue, absent probable cause to believe that the individual has committed, is committing, or is about to commit a crime**, seize or search the individual or his possessions, even though he ran away."

ii.  "But while the police had the right to make the inquiry, defendant had a constitutional right not to respond. This is so both because the Fifth Amendment to the United States Constitution and its State counterpart (New York Const, art I, § 6) permitted him to remain silent and because the Fourth Amendment and its State counterpart (art I, § 12) protect him from detention amounting to seizure unless there is probable cause. As Mr. Justice **BRANDEIS put it long ago in _Olmstead v United States_ (277 US 438, 478), defendant had "the right to be let alone**.""

(boldface formatting added for emphasis)

85.  The next screenshot is from the elapsed time of 25 seconds in the video recording that I just discussed. It shows Defendant Nieves as he flagrantly violated my Fourteenth Amendment due process and equal protection rights by allowing other members of the public to walk past him and Defendant Baez to the building that hosted the Mayor's 10/18/17 resource fair after they arrived to that location after me. By doing so, he flagrantly discriminated against me and subjected me to selective-enforcement and a patently illegal and malicious abuse of process.



86.     As I discussed earlier in this complaint, Defendants NYPD John Doe1 10/25/17 and

NYPD John Doe2 10/25/17 appear in that video as they observed Defendants Nieves and Baez

illegally preventing me from attending the Mayor's 10/25/17 resource fair and Defendant Nieves

illegally otherwise harassing me on that sidewalk by trying to illegally coerce me to move from

where I lawfully stood. Neither of those additional defendants made an attempt to intervene on

my behalf to enable me to exercise my constitutional right to attend that resource fair and remain

where I stood on that sidewalk without being harassed by Defendant Nieves as I did so.

87.     The next screenshot shows Defendant Nieves at the elapsed time of 13 seconds in the

video recording that I recorded on 10/25/17 at 12:01 pm that has the filename of

"IMG_2854.MOV". A copy of that video is available on the Internet at

https://drive.google.com/file/d/1kngBltVsaK_-4ny_r7nmu7mAxplvuQEi/view?usp=sharing. Mr.

Nieves and Defendant Baez were then continuing to conduct themselves as criminals by

continuing to illegally prevent me from attending the Mayor's 10/25/17 for no valid reason.



88.     Defendant Nieves is shown approaching me at that point in that video as he was again illegally making remarks to me to try to illegally coerce me to move from where I lawfully stood on that nearly sidewalk while I continued to not be obstructing pedestrian traffic in contrast to him and Defendant Baez with respect to me by subjecting me to an unofficial and patently illegal arrest of my ability to walk past them to the building that hosted the Mayor's 10/25/17 resource fair in violation of applicable findings from _People v. Alba_, 81 A.D.2d 345, 440 N.Y.S.2d 230 (App. Div. 1981) and _Dotson v. Farrugia_, No. Civ. 1126 (PAE) (S.D.N.Y. Mar. 26, 2012) that both address such unofficial arrests of an individual's ability to move about freely by a show of authority without a legal justification in violation of the Fourth Amendment. As he approached me then, Mr. Nieves illegally put one of his hands on my body to try to make me move. As a

result, I immediately engaged in lawful self-defense in response to the offensive physical contact

with my body that he deliberately and illegally committed by shoving his hand downward and

away from my body. That prompted Defendants NYPD John Doe5 10/25/17, NYPD John Doe6

10/25/17, and least one other member of the NYPD who I don't presently recall to quickly cross

the street from where Defendant Nieves and I stood to intervene on Defendant Nieves' behalf

against me. As they approached me, however, I immediately told them that I had just lawfully

engaged in self-defense against Defendant Nieves strictly in response to the fact that he had just

illegally put one of his hands on my body. I believe that one of them then lied to my face by

claiming that he hadn't seen Mr. Nieves do that. Moreover, none of them did anything to

intervene on my behalf against Defendants Nieves and Baez to enable me to attend the Mayor's

10/25/17 resource fair in spite of the fact that they were all aware that Defendant Nieves and

Baez were then clearly preventing me from attending that public forum.

89.     The next screenshot is from the elapsed time of 2 seconds in that video and shows a

printed copy of New York State's Open Meeting Law that I was holding to confirm that I was

entirely aware of the fact that I had a legal right to attend the Mayor's 10/25/17 resource fair. As

I recorded that video, I provided narration in which I indicated that Defendants Baez and Nieves

were then violating New York State's Open Meetings Law as I was referring to the fact that they

were illegally preventing me from attending the Mayor's 10/25/17 resource fair.



90.    The next screenshot corresponds to what appears at the very beginning of the video

recording that I recorded on 10/25/17 at 12:48 pm that has the filename of "IMG_2857.MOV". It

shows a video security camera that was installed on the side of the building that hosted the

Mayor's 10/25/17 resource fair in an area that enabled that camera to record the interactions that

I had with Defendants Nieves, Baez, and NYPD John Doe4 10/12/17 as I continued to stand in

the area on the public sidewalk that I discussed earlier where Defendant Nieves had been

illegally harassing me. The City of New York has been legally required to preserve all of the

video recordings that were recorded by that video security camera on 10/25/17 throughout the

entire time that I was at the site of that 10/25/17 resource fair on 10/25/17.



91.     The next screenshot corresponds to the elapsed time of 9 seconds in that same video and

shows Defendants Baez and NYPD John Doe4 10/12/17 as they stood in the gated entrance to

the property of the college that hosted the Mayor's 10/25/17 resource fair as they were illegally

preventing me from being able to walk past them to attend that resource fair. I recall having an

adversarial conversation with NYPD John Doe4 10/12/17 during my interactions with him on

10/25/17 at that location by that entrance about the fact that he, Defendant Nieves, Defendant

Baez, and others were then illegally preventing me from attending the Mayor's 10/25/17

resource fair. To be clear however, I never conducted myself in an unlawful, threatening, or

disorderly way while I was at the site of the Mayor's 10/25/17 resource fair. In stark contrast to

the NYPD and Mayor's staff, I'm not that stupid to do so with such fake law-enforcement

personnel who likely were armed with guns on 10/25/17 and can reasonably be expected to

rarely shoot straight.



92.     The next screenshot corresponds to the elapsed time of 35 seconds in that same video and

shows Defendants NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5

10/25/17, and NYPD John Doe6 10/25/17 from left to right as well as an unknown member of the NYPD who sat in the driver's seat of a NYPD car that had the car identification number of 5249 on it.



93.     The next screenshot corresponds to what appears at the elapsed time of 1 second in the video recording that I recorded on 10/25/17 at 12:59 pm that has the filename of "IMG_2858.MOV". A copy of that video is available on the Internet at

https://drive.google.com/file/d/1qB2-iFDscXuG6YaF7Uae4CkwORuNfq2h/view?usp=sharing.

Defendants Ventri, Redmond, and Gerola are clearly shown doing a "Perp Walk" directly in front of where I then continued to lawfully stand near the entrance to the property of the college that hosted the Mayor's 10/25/17 resource fair while they were all aware that I was being prevented from attending that public forum and illegally didn't attempt to intervene on my behalf to enable me to attend it because they were acting in concert with those who were illegally preventing me from doing so.



94.     The next screenshot corresponds to what appears at the elapsed time of 3 seconds in the

video recording that I recorded on 10/25/17 at 12:59 pm that has the filename of

"IMG_2859.MOV". A copy of that video is available on the Internet at

https://drive.google.com/file/d/1jZfoK8cTjzhRgEakwL1esj8rKTMYpz9K/view?usp=sharing.

Defendant Gerola is shown in that screenshot as continued to do his "Perp Walk" with

Defendants Redmond and Ventri as he also gave Defendant Baez a "thumbs-up" hand signal by

using his left hand to thank him for something that the totality of the circumstances then strongly

suggests was for helping to illegally prevent me from attending the Mayor's 10/25/17 resource

fair.



95.     The next screenshot corresponds to what appears at the beginning of the video recording that I recorded on 10/25/17 at 2:11 pm that has the filename of "IMG_2862.MOV". A copy of that video is available on the Internet at https://drive.google.com/file/d/1UqXvfLP8nrd-3Ii5lNggX8zmxKw6MrWC/view?usp=sharing. Defendant Gerola is shown in that screenshot as he stood in front of Defendant NYPD John Doe4 10/12/17 in an area that was near both **a)** the entrance to the building that hosted the Mayor's 10/25/17 resource fair that was away from the sidewalk where I then stood and **b)** a sign that was posted about the Mayor's 10/25/17 resource fair. It also appears that a metal detector was then in use just inside of the entrance to the building that hosted the Mayor's 10/25/17 resource fair.



96.     The next screenshot corresponds to what appears in that video at the elapsed time of 14 seconds as I was making remarks to members of the public nearby in which I discussed the fact that Defendant Redmond was the defendant in *Sherrard v. City of New York* that I discussed earlier in this complaint. My remarks then as I recorded that video were primarily addressed to a group of elderly Black women who sat nearby who I believed were quite familiar with the civil rights movement in the 1960s that was against discrimination and segregation with respect to the use of public facilities that included schools that Brooklyn College certainly was as it then also hosted the Mayor's 10/25/17 resource fair. I unfortunately recorded that video in a way that had one of my fingers accidentally covering part of the lens for my cell phone's camera that caused Defendant Redmond to be partly obscured in that video as he then wore a blue suit and was

shown on the left in that screenshot.



97.     Prior to 10/25/17, I similarly and lawfully engaged in protected whistleblowing about

Defendant Redmond's status as the defendant in _Sherrard v. City of New York_ on 8/30/17 as I sat

in a chair in the gym that hosted the Mayor's 8/30/17 town hall in Brooklyn shortly before that

town hall began as I talked to female members of the public who then sat near me as Defendant

Redmond approached the area where I then was. He then promptly retaliated against me for

doing so partly by immediately making illegal physical contact with my body while I remained

seated and was conducting myself. He then illegally caused me to be ejected from that building

in retaliation for my protected speech against him that expanded to include justifiably angry

objections about the fact that he illegally and deliberately made physical contact with my body

while I was seated and conducting myself in a lawful manner. As far as I'm concerned,

Defendant Redmond is total trash and I tremendously dislike being in contact with such trash.

98.     The following are the specific remarks that was protected whistleblowing that I stated

about Defendant Redmond and his status as the defendant in _Sherrard v. City of New York_ at the

elapsed time of 14 seconds in the video that I just discussed:

> "So this guy is Howard Redmond. He's the defendant in the federal civil rights lawsuit I was
> talking about…and…Howard Redmond…the case is "Sherrard versus City of New York".
> He put somebody in jail for 19 hours and now he's not letting me into a public meeting."

99.     The next screenshot corresponds to what appears in the video that I just discussed at the

elapsed time of 28 seconds. It shows Defendant Redmond as he made a hand gesture with his left

index finger to Defendant Baez to illegally direct him to illegally coerce me to move from where

I then lawfully stood on a public sidewalk while I continued to not be obstructing anyone's

movements in retaliation for my remarks against Defendant Redmond then. The fact that I

wasn't obstructing anyone's movements then is confirmed by the following facts:

> a.     An unknown girl is partially shown at the elapsed time of 19 seconds in that video
>
> as she freely walked by me from that college's property in the direction of the
>
> sidewalk on which I then stood.  In fact, she is clearly shown at the elapsed time
>
> of 18 seconds in that video as she had to walk around Defendants Redmond and
>
> Baez as they obstructed her ability to exit that property by virtue of where they
>
> stood in relation to that exit.

> b.     Defendant NYPD John Doe2 10/25/17 is partially shown at the elapsed time of 25
>
> seconds in that video as he freely walked by me from that college's property in
>
> the direction of the sidewalk on which I then stood.



100.    The next screenshot corresponds to what appears in the video that I just discussed at the elapsed time of 30 seconds. It shows both Defendant Baez and Redmond as they approached me as Defendant Baez illegally directed me through his remarks and the extension of his left arm toward me to move away from where I then lawfully stood in retaliation for my protected speech against Defendant Redmond.



101.    Through their actions against me then as both Defendants Baez and Redmond sought to

try to illegally intimidate me in retaliation for my protected First Amendment activities of

expression, assembly, and expressive association with other members of the public nearby, both

Defendants Baez and Redmond were then also illegally preventing me from walking past them to

reach the building that hosted the Mayor's 10/25/17 resource fair. As a result, both of them were

also equitably estopped from ordering me to move from where I then lawfully stood.  By

preventing me from attending that resource fair, they also violated all of the following:

      a.    18 U.S.C. §245(b)(5), 18 U.S.C. §241, 18 U.S.C. §1513(e), 18 U.S.C. §242, 5 U.S.C.

          §1502(a), 42 U.S.C. §1985, 42 U.S.C. §1986.

    b. NYPL §240.20, NYPL §240.26, NYPL §240.65, NYPL §175.25, NYPL §120.45, NYPL §215.10, CPL §140.50.

    c. My rights pursuant to the First Amendment, Fourth Amendment, Fifth Amendment, Fourteenth Amendment, New York State's Open Meetings Law,

    d. New York State General Business Law §349.

    e. New York City Charter §1116 and New York City Charter Section §435(a).

    f. Their oath of office as members of the NYPD.

    g. The Handschu Agreement.

    h. The findings in _People v. Howard_ that I presented earlier in this complaint.

102.    The next screenshot corresponds to what appears in the video that I just discussed at the elapsed time of 34 seconds. It shows both Defendants Baez and Redmond as Defendant Baez continued to illegally coerce me to move away from where I lawfully stood on a public sidewalk while I wasn't obstructing anyone's movements. No objectively valid legal justification existed for that coercion. As a result, he and Defendant Redmond were then jointly violating my First Amendment, Fifth Amendment, and Fourteenth Amendment rights that all pertained to being able to freely choose where I would stand on that nearly empty public sidewalk and be able to stand directly next to the gated entrance to the property of the college that hosted the Mayor's 10/25/17 resource fair instead of Defendants Baez and Redmond that I sought to do to continue to effectively engage in protected whistleblowing against Defendant Redmond, other members of the NYPD, and the Mayor's administration as members of the public walked past me.



103.    The next screenshot corresponds to what appears in the video that I just discussed at the elapsed time of 45 seconds right after Defendant Baez finished illegally coercing me to move from where I lawfully stood on that sidewalk. It shows **a)** Defendants Baez and Redmond, **b)** the gated entrance to the property of the college that hosted the Mayor's 10/25/17 resource fair, **c)** elderly Black women to whom I was addressing protected whistleblowing against Defendant Redmond, and **d)** the building that hosted the Mayor's 10/25/17 resource fair.



104.     While I stood on that sidewalk, I also engaged in additional whistleblowing against the

Mayor's administration that was partly about the fact that I had repeatedly and illegally been

prevented from attending earlier public forums that the Mayor conducted as I talked with

members of the public nearby. Just to be clear, my decision to engage in whistleblowing as I

stood on that sidewalk on 10/25/17 was a contingency plan that I would implement in the event

that I would be proven to be correct about my expectation that I wouldn't be permitted to

lawfully attend the Mayor's 10/25/17 resource fair by members of the NYPD and others. For this

reason, since I was illegally prevented from attending that resource fair before I began engaging

in whistleblowing as I stood on that public sidewalk, it cannot be validly claimed that I was

barred from attending that resource fair because of any remarks that I made on 10/25/17 while I

was at the site of that 10/25/17 resource fair.

105.    The next screenshot is from what appears at the elapsed time of 1 second in the video

recording that I recorded on 10/25/17 at 2:32 pm that has the filename of "IMG_2863.MOV".

Defendant NYPD John Doe4 10/12/17 and Ringel are shown from left to right in it as they stood

in front of me on the sidewalk and the gated entrance to the property of the college that hosted

the Mayor's 10/25/17 resource fair. Mr. Ringel was then leaving that area as it appeared that he

had something to say to Defendant NYPD John Doe4 10/12/17 while Defendants NYPD John

Doe4 10/12/17, Baez, and Gerola were then illegally preventing me from attending the Mayor's

10/25/17 resource fair by not allowing me to walk past them through the gated entrance to the

property of the college that hosted that resource fair.



106.    The next screenshot is from what appears at the elapsed time of 2 seconds in the video

that I just discussed. Nick Gulotta of the Mayor's staff is shown in it on the left as he wore a blue

suit and stood in front of Defendant Baez and to the left of Defendant John Doe4 10/12/17 as Mr.

Gulotta left the site of the Mayor's 10/25/17 resource fair and appeared to thank Defendant Baez

for something as he left that area.



107.   The next screenshot is from what appears in the video that I just discussed at the elapsed

time of 5 seconds. Defendant Gerola is shown in that screenshot as he stood in front of me on the

sidewalk and the gated entrance to the property of the college that hosted the Mayor's 10/25/17

resource fair as he let a female walk past him to the building in which that resource fair was

being conducted. Defendants Baez and John Doe4 10/12/17 also appear in this video as they stood near Mr. Gerola and continued to also illegally prevent me from attending the Mayor's 10/25/17 resource fair by not allowing me to reach that building by walking them through that same gated entrance. The smug facial expression that Defendant Gerola is shown exhibiting in this screenshot was indicative of malice and an invidious discriminatory intent by him towards me in regards to illegally preventing me from attending the Mayor's 10/25/17 public resource fair meeting.



108.    Through their illegal acts and omissions against me on 10/25/17, the defendants that my 10/25/17 claims concern illegally chilled my First Amendment right to expression as a speaker during the Mayor's 10/25/17 resource fair meeting by preventing me from attending it as well as the public's corresponding First Amendment right to receive information from speakers. That

also illegally chilled my First Amendment right to receive various information and resources that were made available to those who attended that resource fair by doing so. Those illegal acts and omissions flagrantly violated my First Amendment right of assembly in a public forum as well as the remainder of my constitutional rights that applied that that public forum and caused me irreparable harm in that regard. That experience also caused me reputational harm, embarrassment, humiliation, and enormous justifiable anger and stress largely as a result of having been illegally prevented from attending that resource fair. A key but-for cause for that experience was negligent failure to train and supervise by Defendant Carrion, Redmond, O'Neill, Shorris, the Mayor, and other defendants in this action who directly and indirectly supervised those who illegally prevented me from attending that resource fair. In addition, no one ever made any remark to me on 10/25/17 at the site of the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, and **c)** 10/25/17 resource fair about the existence of buffer zones that were located near the buildings that hosted those public forums in which demonstrating and protest activities were not allowed. This is entirely true and accurate in spite of the fact that I don't regard how I conducted myself on those dates at those sites as having engaged in protesting and demonstrating. I was instead simply trying to exercise my constitutional rights in regards to those public forums that the Mayor conducted with others.

109.    To conclude this section, it's worthwhile to emphasize the material fact that the illegal acts and omissions that were committed against me by the defendants who were present at the site of the Mayor's 10/25/17 resource fair on 10/2517 with respect to my efforts to lawfully attend that public forum weren't isolated illegal acts and omissions by them against me that occurred on just that date for that specific public forum. Instead, the table shown next identifies additional public forums since 4/27/17 that the Mayor and others conducted at which the

defendants that my 10/25/17 claims concern committed very similar illegal acts and omissions against me that among other things **a)** illegally prevented me from attending those public forums altogether, **b)** caused me to be illegally segregated from the room in which town hall meetings were conducted by being restricted to attending them from overflow rooms, **c)** prevented me from attending press conferences that were open to the public to attend, and **d)** caused me to be criminally assaulted, stalked, and harassed by them on a public sidewalk that was adjacent to a building that hosted a public town hall meeting that the Mayor conducted on the date it was conducted.

| # | Defendant | Summary of some of the illegal acts & omissions |
|---|-----------|--------------------------------------------------|
| 1 | Baez | • Illegal exclusion from public town hall meetings and resource fair meetings that the Mayor conducted:<br><br>    7/12/17 and 9/27/17<br><br>• Illegal exclusion from a press conference that was open to the public:<br><br>    10/3/17 at City Hall that involved a press conference that was conducted by people who pushed for reforming the NYPD.<br><br>• Illegal failure to intervene to uphold my constitutional rights at public forums that the Mayor conducted as other members of the NYPD violated them:<br><br>    7/12/17 |
| 2 | Gerola | • Illegal exclusion from public town hall meetings and resource fair meetings that the Mayor conducted:<br><br>    5/23/17, 6/8/17, 7/12/17, 9/14/17, 9/26/17, 9/27/17, 9/28/17<br><br>• Illegal stalking, harassment, detention, and restraint on other First Amendment activities on a public sidewalk next to a building that just hosted a town hall that the Mayor conducted:<br><br>    4/27/17<br><br>• Illegal failure to intervene to uphold my constitutional rights at public forums that the Mayor conducted as other members of the |

| | | |
|---|---|---|
| | | NYPD violated them:<br><br>4/27/17, 5/23/17, 7/12/17, 9/14/17, 9/27/17, 9/28/17 |
| 3 | Nieves | • Illegal exclusion from public town hall meetings and resource fair meetings that the Mayor conducted:<br><br>5/23/17, 7/12/17, 8/30/17, 9/14/17, 9/26/17, 10/4/17<br><br>• Illegal stalking, harassment, detention, and restraint on other First Amendment activities on a public sidewalk next to a building that just hosted a town hall that the Mayor conducted and in a courthouse hallway as the Mayor conducted a public resource fair in that courthouse:<br><br>4/27/17, 5/23/17, 8/30/17, 9/14/17<br><br>• Illegal ejection from an area where the Mayor conducted a public forum:<br><br>8/30/17<br><br>• Illegal seizure of personal property:<br><br>8/30/17 in the gym that hosted the town hall meeting that the Mayor conducted in it shortly thereafter<br><br>• Illegal failure to intervene to uphold my constitutional rights at public forums that the Mayor conducted as other members of the NYPD violated them:<br><br>4/27/17, 5/23/17, 7/12/17, 8/30/17, 9/8/17, 9/14/17, 9/26/17, 10/4/17 |
| 4 | NYPD John Doe4 10/12/17 | • Illegal exclusion from public town hall meetings and resource fair meetings that the Mayor conducted:<br><br>9/28/17, 10/12/17, 10/18/17<br><br>• Illegal failure to intervene to uphold my constitutional rights at public forums that the Mayor conducted as members of the Mayor's staff and other members of the NYPD violated them:<br><br>9/28/17, 10/12/17, 10/18/17 |
| 5 | Redmond | • Illegal exclusion from public town hall meetings, resource fair meetings, and public press conferences that the Mayor conducted:<br><br>4/27/17, 7/25/17, 8/30/17 |

| | | • Illegal stalking, harassment, seizure, assault, detention, and restraint on and retaliation for First Amendment activities at a public press conference that the Mayor conducted: |
| | | 7/25/17 |
| | | • Illegal harassment, First Amendment retaliation, and ejection from a town hall that the Mayor conducted: |
| | | 8/30/17 |
| | | • Illegal failure to intervene to uphold my constitutional rights at public forums that the Mayor conducted as other members of the NYPD violated them: |
| | | 5/23/17, 6/8/17, 7/12/17, 7/25/17, 9/14/17, 9/28/17 |

**Facts about the Mayor's 3/18/19 public hearing:**

110.    The next screenshot is from what appears at the elapsed time of 17 minutes and 28

seconds in the Mayor's 3/18/19 public hearing video. As a reminder, that video recording is

available on the Internet at https://www.youtube.com/watch?v=rqwyR7ZD23M.



111.    NYPD John Doe1 3/18/19 is clearly shown in that screenshot as he illegally assaulted,

seized, and harassed me as he illegally engaged in witness tampering with the Mayor by abruptly

ending my ability continue to lawfully testify to the Mayor and the public in the Mayor's 3/18/19 public hearing as the Mayor also illegally subjecting me to witness tampering by deliberately and impermissibly interfering with and interrupting my testimony while he needed to instead shut up on account of the fact that I never asked him a question during my testimony. NYPD John Doe1 3/18/19 is shown in this screenshot as he illegally seized my left arm and illegally made contact with my back with his right hand as he proceeded to illegally kick me out of the Blue Room in City Hall in which that meeting was conducted. The reason why I was then carrying my laptop was because I sought to exercise my First Amendment right to playback relevant video recordings of conversations that I previously had with the Mayor about labor rights matters **a)** on 3/15/17 during the Mayor's 3/15/17 town hall and **b)** on 7/18/17 during the Mayor's 7/18/17 public resource fair after the Mayor's office illegally concealed the video recording of the Mayor's 7/18/17 public resource fair from the public and whistleblower news censors in journalism named Michael Gartland and Gloria Pazmino unconscionably withheld reporting about the conversation that I had with the Mayor during that public resource fair from the public that directly and materially facilitated the ability of the Mayor, his staff, and the Mayor's NYPD security detail to steal the results of the 2017 New York City government elections for the Mayor's benefit and their own largely by extending their job security and access to opportunities to further advance their careers.

112.    What follows is an entirely accurate transcript that I prepared of the entirety of the remarks that the Mayor and I said to one another during the Mayor's 3/18/19 public hearing. My testimony in that hearing begins at the elapsed time of 17 minutes and 3 seconds in the video of the Mayor's 3/18/19 public hearing as the Mayor was clearly then shown in that video as he exhibited an irritated demeanor on his face as he clearly scowled at me.

| Me: | "Good afternoon, Mr. Mayor." |
|---|---|
| Mayor: | "Good afternoon." |
| Me: | "Um, you and I have talked a few times about this company NTT Data. You've said in the press recently that, um, "Too much money is in the wrong hands". So, for the benefit of this audience, I'm going to begin my testimony by playing back a video that…of our conversation on March 15th of 2017 at your town hall in Chelsea." |
| Mayor: | I don't know if that's uh…if that's…<br><br>(Crosstalk between the Mayor and I then immediately ensued as he continued to willfully violate my First Amendment rights to testify in that hearing in the precise manner that I sought as he used a fraudulent pretext to interrupt and block the remainder of my lawful testimony as NYPD John Doe1 3/18/19 quickly approached me from behind while I lawfully resisted the Mayor's illegal efforts to subject me to what I was acutely aware of was flagrant witness tampering and obstruction in violation of my rights pursuant to the First Amendment, Fourteenth Amendment, and New York State's Open Meetings Law to lawfully testify in that hearing without being interrupted). |
| Me: | "Actually, the First Amendment. The First Amendment. First Amendment rights." |
| Mayor: | "First Amendment rights are great. But, I just want to say, I don't know if we accept that in the testimony. So, keep moving forward. |

113.    The next screenshot sufficiently establishes that the Mayor engaged in fraud and

deception by claiming to me on 3/18/19 during his public hearing that he didn't know if my

playback of video recordings was acceptable while I testified to a New York City government

official in City Hall. That screenshot is from page 162 in the written transcript that is available as

a PDF file from the City Council's web site at

https://legistar.council.nyc.gov/View.ashx?M=F&ID=6652094&GUID=B513FE70-8924-4EB6-

9E35-D8B38ED66290 that the City Council arranged to be prepared from the public hearing that

the City Council's Committee on General Welfare conducted on 9/20/18 in the main chamber

inside of City Hall and corresponds to testimony that I then provided to that committee's

members that included Defendant Levin.

```
     COMMITTEE ON MENTAL HEALTH, DISABILITIES AND
 1   ADDICTION JOINTLY WITH COMMITTEE ON GENERAL WELFARE
                                                      162
 2   So, you guys can watch this video or at least listen

 3   to the audio.

 4               VIDEO PLAYING:

 5               TOWAKI KOMATSU:  So, Robert, I'm

 6   recording the video.

 7               ROBERT:  I don't know.

 8               TOWAKI KOMATSU:  So, you're a disabled

 9   Marine, right?

10               ROBERT:  Well, we're in a community.  You

11   know the state are often here to go.  I got two of

12   them awards. (sic)

13               TOWAKI KOMATSU:  Okay, can I record you on

14   video?
```

114.    No rational reason exists to believe the Mayor's claim to me on 3/18/19 about him not knowing whether my playback of video recordings in conjunction with that hearing could be accepted after I previously played video recordings in conjunction with testimony that I gave during other public hearings that were previously conducted in City Hall.  Following 3/18/19, I continued to be able to playback video recordings as I testified in other public hearings that were conducted in City Hall as well. The preceding screenshot incidentally corresponds to testimony that I gave on behalf of Robert Vargas who resided in the building in which I reside and I discussed earlier in this complaint.

115.    The next screenshot is from what appears at the elapsed time of 17 minutes and 29

seconds in the Mayor's 3/18/19 public hearing video and clearly shows Defendant NYPD John

Doe1 3/18/19 and I on the right side in it as he continued to illegally assault me by having his

right hand on my back in an area near my right shoulder blade without my consent that I

continued to regard as offensive physical contact largely because he was illegally preventing me

from lawfully finishing my testimony in that public hearing on my own terms in accordance with

my rights pursuant to the First Amendment, Fourth Amendment, Fifth Amendment, Fourteenth

Amendment, and New York State's Open Meetings Law. At that time, he was illegally escorting

me to the exit of that room while Defendants NYPD John Doe2 3/18/19 and NYPD John Doe3

3/18/19 were then inside of that room and illegally didn't intervene on my behalf against both the

Mayor and Defendant NYPD John Doe1 3/18/19 to enable me to lawfully complete my

testimony in that hearing in the precise manner in which I then sought to lawfully testify at the

Mayor's expense to befit the public's interest in **a)** government transparency, **b)** government

accountability, **c)** learning about violations of the Hatch Act that stole the 2017 New York City

government elections for the Mayor, **d)** proper and ethical procurement practices for government

contracts, and **e)** fighting wage-theft, voter suppression, voter fraud, and whistleblower

retaliation.



116.    I never yelled, shouted, nor used any offensive language while I was in the Blue Room on

3/18/19. I never engaged in any behavior in that room on that date that was threatening,

disorderly, and disruptive. Instead, the Mayor and Defendant NYPD John Doe1 3/18/19 jointly,

willfully, malevolently, and oppressively did so against me.

117.    Neither the Mayor nor Defendant NYPD John Doe1 3/18/19 provided me any due

process before Defendant NYPD John Doe1 3/18/19 illegally seized, assaulted, harassed, and

ejected me from the Blue Room on 3/18/19. Although the Mayor didn't explicitly direct

Defendant NYPD John Doe1 3/18/19 to seize, assault, harass, and eject me from the Blue Room

on 3/18/19, he is jointly liable with Defendant NYPD John Doe1 3/18/19 for all of that having

occurred because he clearly acted in concert with Defendant NYPD John Doe1 3/18/19 in regard

to that largely because the Mayor's interruption of my testimony in that 3/18/19 public hearing

was the but-for cause for the decision that Defendant NYPD John Doe1 3/18/19 made to illegally

seize, assault, harass, and eject me from the Blue Room on that date.

118.   Defendant NYPD John Doe1 3/18/19 violated all of the following through his illegal acts

against me on 3/18/19 in the Blue Room:

    a.   18 U.S.C. §245(b)(5), 18 U.S.C. §241, 18 U.S.C. §1513(e), 18 U.S.C. §242, 42

         U.S.C. §1985, 42 U.S.C. §1986.

    b.   NYPL §240.20, NYPL §240.26, NYPL §120.45, NYPL §215.10, CPL §140.50.

    c.   My rights pursuant to the First Amendment, Fourth Amendment, Fifth Amendment,

         Fourteenth Amendment, New York State's Open Meetings Law,

    d.   New York State General Business Law §349.

    e.   New York City Charter §1116 and New York City Charter Section §435(a).

    f.   His oath of office as a member of the NYPD.

    g.   The findings from _People v. Howard_, _People v. Alba_, _Dotson v. Farrugia_, and _Frain_

         _v. Baron_ that I presented earlier in this complaint as well as relevant findings in _Elrod_

         _v Burns_ and _Piesco v. City of New York, Dept. of Personnel_.

119.   The following are several relevant excerpts from _Piesco v. City of New York, Dept. of_

_Personnel_ that certainly apply to the illegal acts and omissions that were committed against me

on 3/18/19 while I was in the Blue Room in City Hall:

    a.   "Whatever differences may exist about interpretations of the First Amendment,
         there is practically universal agreement that a major purpose of that Amendment
         was to protect the free discussion of governmental affairs. This of course includes
         discussions of candidates, structures and forms of government, _the manner in_
         _which government is operated or should be operated_, and all such matters relating
         to political processes."

    b.   "The Supreme Court has recognized that one of the critical purposes of the first
         amendment is to provide society with a basis to make informed decisions about
         the government."

    c.   The "first amendment guarantees that debate on public issues is "`uninhibited,
         robust, and wide open'".

d.    Speech "on matters of public concern is that speech which lies `at the heart of the First Amendment's protection'".

120.    In a similar vein, the U.S. Supreme Court stated in _Elrod v. Burns_ that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury".

121.    Upon information and belief, at least two video security cameras that were controlled by the NYPD were installed in the Blue Room in City Hall as I testified in that hearing. Defendant City has been legally required to preserve all video recordings that were recorded by those video security cameras throughout the entire time that I was inside of the Blue Room on 3/18/19 and property of mine was inside of that room on 3/18/19 after I was illegally ejected from that room.

122.    The next screenshot is from what appears at the elapsed time of 17 minutes and 30 seconds in the Mayor's 3/18/19 public hearing video and clearly shows the Mayor as he clearly appeared to be smirking or grinning to express pleasure and satisfaction about the fact that I was then being criminally seized, assaulted, harassed, and subjected to witness tampering by Defendant NYPD John Doe1 3/18/19 in support of the Mayor's obstruction of my testimony during that hearing.



123.    The next screenshot is from what appears at the elapsed time of 17 minutes and 32

seconds in the Mayor's 3/18/19 public hearing video and clearly shows the Mayor as he clearly

appeared to be smiling as he continued to express pleasure and satisfaction about the fact that I

was just illegally ejected from the Blue Room in City Hall by Defendant NYPD John Doe1

3/18/19.



124.    The Mayor violated all of the following through his illegal acts against me on 3/18/19 in the Blue Room as he illegally subjected me to First Amendment retaliation, viewpoint discretion, and an illegal prior restraint of my First Amendment right to lawfully express myself as an abuse of process to block testimony that would be critical of him and his administration:

    a.    18 U.S.C. §241, 18 U.S.C. §1513(e), 18 U.S.C. §242, 42 U.S.C. §1985, 42 U.S.C. §1986.

    b.    NYPL §240.20, NYPL §240.26, NYPL §215.10, and NYPL §195.00.

    c.    My rights pursuant to the First Amendment, Fourteenth Amendment, and New York State's Open Meetings Law.

    d.    New York State General Business Law §349.

    e.    New York City Charter §1116.

    f.    His oath of office as an employee of the City of New York and New York City's

Mayor.

g.   The findings from _Frain v. Baron_, _Elrod v Burns_, and _Piesco v. City of New York, Dept._
     _of Personnel_ that I presented earlier in this complaint.

125.   The following is another relevant excerpt from _Piesco v. City of New York, Dept. of_

_Personnel_ that certainly applies to the Mayor's erroneous and irrelevant remarks to me during

the 3/18/19 public hearing about whether my playback of relevant video recordings in

conjunction with my testimony could be accepted.

> "Without a searching inquiry into these motives, those intent on punishing the exercise of
> constitutional rights could easily mask their behavior behind a complex web of post hoc
> rationalizations."

126.   On a related note, the U.S. Supreme Court stated the following about illegal prior

restraints on First Amendment rights in _McCutcheon v. Federal Election Com'n_, 134 S. Ct. 1434,

572 U.S. 185, 188 L. Ed. 2d 468 (2014):

>  "The First Amendment "is designed and intended to remove governmental restraints
> from the arena of public discussion, putting the decision as to what views shall be voiced
> largely into the hands of each of us, ... in the belief that no other approach would comport
> with the premise of individual dignity and choice upon which our political system rests."
> _Cohen v. California_, 403 U.S. 15, 24, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). As relevant
> here, the First Amendment safeguards an individual's right to participate in the public
> debate through political expression and political association. See _Buckley_, 424 U.S., at
> 15, 96 S.Ct. 612."

127.   The Mayor also illegally didn't intervene on my behalf by ordering NYPD John Doe1

3/18/19 to immediately get his hands off of me to enable me to lawfully complete the remainder

of my testimony in that 3/18/19 public hearing in the precise manner that I sought to testify.

128.   The Mayor never stated during the 3/18/19 public hearing that my playback of video

recordings in conjunction with my testimony couldn't be accepted during that hearing. Instead,

he clearly expressed that he wasn't sure about that at the same time that it was well-settled that

ignorance was no excuse for him nor anyone else to violate my rights. Moreover, the Mayor's

claim to me on 3/18/19 during his public hearing that he didn't know about whether my playback of video recordings in conjunction with my testimony could be accepted is thoroughly exposed as baseless by the U.S. Supreme Court's landmark decision in _Goldberg v. Kelly_, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970) that addressed what is required of due process. In _Goldberg v. Kelly_, the U.S. Supreme Court explicitly stated the following:

     a.     "The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard."

     b.     The hearing must be "at a meaningful time and in a meaningful manner."

     c.     "The fundamental requisite of due process of law is the opportunity to be heard."

129.    After I was illegally ejected from the Blue Room in City Hall on 3/18/19, my backpack continued to be in it and I was illegally prevented from re-entering that room to retrieve that property on my own. Instead, a member of the Mayor's NYPD security detail collected it and brought it to me as I stood just outside of that room. I believe that Defendant NYPD John Doe3 3/18/19 was the person who brought it to me then as he violated my Fourth Amendment, Fifth Amendment, and Fourteenth Amendment rights that partly pertain to due process, equal protection, discrimination, abuse of process, and selective-enforcement that corresponds to the class-of-one legal theory that is based upon an illegitimate animus by illegally denying me my right to lawfully retrieve my own property in that room without him nor anyone else touching it. I certainly then regarded him, the Mayor, and every other member of the NYPD who was in the Blue Room with me on 3/18/19 as total garbage largely because no member of the NYPD performed his legal duty to intervene on my behalf against both the Mayor and Defendant NYPD John Doe1 3/18/19 to uphold my constitutional rights to lawfully testify in and attend that hearing for its entire duration.

130.    The illegal harassment that I experienced on 3/18/19 by both the Mayor and Defendant

NYPD John Doe1 3/18/19 while I was in the Blue Room in City Hall wasn't an isolated incident of comparable harassment that involved both of them against me. The next screenshot is from the elapsed time of 2 minutes and 10 seconds from the video clip of the video recording that I recorded from the separate video recording that I was provided by the Mayor's office that it arranged to be recorded of the public resource fair meeting that the Mayor conducted on 7/18/17 in Kew Gardens in Queens. As a reminder, that video clip is available on the Internet at https://drive.google.com/open?id=1-ZUN22r8q4qARLEbMk8FVg4KuLqfTtcc. This screenshot clearly shows NYPD John Doe1 3/18/19 as he illegally and deliberately had his right hand on a backpack that I wore as the Mayor was harassing me also by trying to touch me near my right shoulder with his right hand while I was conducting myself in an entirely lawful manner in stark contrast to both of them at the end of the conversation that I just had with the Mayor that included a discussion about NTT and the fact that Defendant Redmond illegally prevented me from attending the Mayor's 4/27/17 town hall meeting. In this screenshot, I was deliberately leaning backwards to engage in social-distancing from the Mayor while trying to avoid having being touched by him then and needing to thereafter take an extra long shower to wash his filth off of me. Through their actions against me that are shown in this screenshot, both the Mayor and NYPD John Doe1 3/18/19 were then violating 18 U.S.C. §245(b)(5) by trying to intimidate me in retaliation for what I publicly discussed with the Mayor then in front of censors in journalism, Mr. Banks, and members of the public.



131.    The next screenshot is from what appears in that same video at the elapsed time of 2

minutes and 12 seconds and clearly shows NYPD John Doe1 3/18/19 as he illegally continued to

have his right hand on my backpack as I was leaving the Mayor's wretched company after his

father did.



132.    The next screenshot is from what appears in that same video at the elapsed time of 2

minutes and 12 seconds and clearly shows NYPD John Doe1 3/18/19 as he illegally pushed me

away without any legal justification whatsoever as I continued to voluntarily leave the Mayor's

wretched company and that of Mr. Banks, who also appears in this screenshot as he wore

eyeglasses and remained bald while Defendant Ramos was holding up the microphone that

appears in this screenshot.



133.    On a related note, Defendant NYPD John Doe1 3/18/19 also violated the Handschu

Agreement in regards to me on 11/30/17 as he illegally conducted surveillance against me and

harassed me by doing so while subjecting me to illegal selective-enforcement and an abuse of

process as I lawfully conducted myself while I sat in a chair and attended the Mayor's 11/30/17

town hall meeting from within the room in which it was conducted. The next screenshot is from

the elapsed time of 10 seconds within the video recording that I recorded with my laptop on

11/30/17 at 7:24 pm that has the filename of "town hall 11-30.mov" and is available on the

Internet at https://drive.google.com/file/d/1yPXmVyjX2_-80dQzak0HsU1byN2i65tE/view?usp=sharing. This screenshot clearly shows Defendant NYPD John Doe1 3/18/19 watching how I was using my laptop as he stood behind me and to my right while he was subjecting me to illegal surveillance. A diligent inspection of his eyes then confirm that they were looking downwards in the direction of my laptop's screen while I was calm and conducting myself in a lawful manner. Defendant Ventri also appears in this screenshot as he wore a suit and red tie. Defendant NYPD John Doe1 3/18/19's illegal surveillance of me during that town hall meeting occurred after Defendant Stribula illegally tried to prevent me from attending that town hall meeting.



134.    At the elapsed time in the video from which the preceding screenshot was recorded, I was engaged in clearly protected activity as I was typing something on my laptop that was in an early

draft version of a complaint that I intended to thereafter file in litigation that I would commence against Defendant City partly in response to illegal acts and omissions were committed against me at public forums that the Mayor conducted since 4/27/17. The next screenshot is from a screenshot that I took at 8:52 pm on 11/30/17 while I continued to work on that complaint while attending the Mayor's 11/30/17 town hall meeting.

G. To have this Court issue an order granting Plaintiff immediate injunctive relief and a restraining order to address unlawful acts that Defendant's employees committed against Plaintiff at 18 public meetings that the New York City Mayor held between 4/27/17 and 11/27/17 that caused him irreparable harm while violating his rights bestowed upon him by the United States Constitution's First Amendment, Fourth Amendment, Fifth Amendment, Fourteenth Amendment as well as New York State's Open Meetings Law.

H. To have this Court issue an immediate order that provides appropriate injunctive and equitable relief by voiding the results of the New York City government elections that were held on 9/12/17 and 11/7/17 on the grounds that employees of Defendant's NYPD and New York City Mayor's Community Affairs Unit

135.    Furthermore, the specific information that I sought to lawfully testify about during the Mayor's 3/18/19 public hearing was also related to face-to-face conversations that I had with the Mayor on 12/5/17 and 12/20/17 while I legally recorded those conversations on audio as I attended the town hall meetings that he conducted on those dates. The following is a link to a copy of the audio recording on the Internet that I recorded on 12/5/17 at 9:57 pm that has the filename of "The Mayor on 12-5-17 at 9-57 pm_20171205 215741.m4a":

https://drive.google.com/file/d/1uNN5V0RYMkLp5qcFBgf8XNYGIo3g4Ggd/view?usp=sharing

136.    At the elapsed time of 4 minutes and 38 seconds in that recording, I'm heard as I talked to the Mayor and said the following to him:

"Mr. Banks lied to me at your last town hall."

137.    That remark concerned a lie that Mr. Banks expressed to me on 11/30/17 as I talked with him at the end of the town hall meeting that he conducted with the Mayor. Mr. Banks lied to me then about a request that I made to the Mayor on 7/18/17 while I talked with him during the public resource fair meeting that he conducted with Mr. Banks as I asked the Mayor then to have Defendant City cancel all of its government contracts with NTT because NTT was continuing to subject me to wage-theft that I had previously discussed with Mr. Banks. The Mayor is heard lying to me in the audio recording that I just discussed and recorded during his 12/5/17 town hall meeting as he stated the following to me to respond to the preceding remark that I made to him about Mr. Banks' dishonesty and NTT:

"Brother, we've been over this a thousand times".

138.    I would like this Court to order the Mayor to prove that he and Mr. Banks engaged in activities "a thousand times" that were in response to my 7/18/17 request to have Defendant City to cancel all of its government contracts with NTT by making him and identify every single time that he and Mr. Banks engaged in such activities and explain in detail precisely what those activities entailed. Since all of those contracts continue to be financed by taxpayers during the ongoing Coronavirus pandemic while New Yorkers are struggling with the finances, granting this specific request would befit the public's interest in government transparency, accountability, ethical procurement practices for services and goods, and not supporting organizations that

commit wage-theft to end the Mayor's unconscionable practice of keeping money in the wrong

hands that Scott Stringer has condoned.  I previously talked with Mr. Stringer about this specific

issue on 4/6/17, 4/18/17, and 6/5/17 during town hall meetings that he conducted in Manhattan

and Brooklyn with others while those conversations were recorded on video. The following is a

screenshot from the elapsed time of 5 seconds in a video recording that I recorded of him on

4/18/17 at 7:54 pm that is available on the Internet at

https://drive.google.com/file/d/164mfbqJX0kueL8SDfeiaZ4_szKcoU2CJ/view?usp=sharing as I

talked with him in the Flatbush section in Brooklyn about that issue during a town hall meeting

that he conducted with Jumaane Williams and Eric Gonzalez who are now New York City's

Public Advocate and the Brooklyn District Attorney, respectively.



139.    When I talked with him on 6/5/17 in lower Manhattan during a town hall meeting that he

conducted with New York City Councilwoman Carlina Rivera, he both acknowledged that he

and had previously talked about that as he continued to stonewall me about matter as he made it clear that he condoned the fact that Defendant City is keeping the government contracts that it has with NTT. By doing so, he has firmly established that he neither supports labor rights nor ethical procurement practices in regards to government contracts. The following is a link to a copy of the video recording that I recorded of my conversation on 6/5/18 at 7:29 pm about that matter during the town hall meeting that he conducted:

https://drive.google.com/file/d/10ybFjNnThwig9CaUX1BdSsTIOjnDUgKD/view?usp=sharing

140.    The next screenshot is following from what appears at the elapsed time of 42 seconds in that video recording as I asked Mr. Stringer to tell me when he would allow New Yorkers to no longer have to pay for the contracts that Defendant City has with NTT as NTT continued to subject me to wage-theft that I previously apprised him about. The way that an elderly woman is shown looking at me in that video as I asked Mr. Stringer that question leads me to believe that certain New Yorkers certainly care about having their tax dollars used in a responsible manner by government officials instead of allowing that funding to go to companies that continue to commit wage-theft against military veterans during a pandemic.



141.    While I talked with Mr. Stringer about that matter in April of 2017 and specifically asked

him if he would be willing to have Defendant City to cancel all of its government contracts with

organizations that commit wage-theft, he idiotically told me on 4/18/17 that Defendant City

would have no one to do business with instead of demonstrating leadership and ethics.

142.    The following is a link to a copy of the audio recording on the Internet that I recorded on

12/20/17 at 9:35 pm that has the filename of "Voice_20171220_213511.wav":

https://drive.google.com/file/d/1EE9E4UMI5G5ur_YdPPizwcEzApmOx_zk/view?usp=sharing

143.    At the elapsed time of 3 minutes and 9 seconds in that recording, I'm heard as I talked to

the Mayor and said the following to him:

"We met on July 18[th]. You said that uh, Mr. Banks would do as he says. He hasn't done that in 5 months."

144. The Mayor is then heard in that audio recording as he responded to me by saying the following:

"We've been over it a couple times. I don't know why you keep coming back."

[inaudible]

"I've raised it to him. He's looked at it. He's given you an answer. I'm sorry. We're done. Stop coming back."

145. Immediately after the Mayor stated the preceding remarks to me in that audio recording, I'm heard in it as I stated the following in order to him and Defendant Carrion who was also nearby:

a. "First Amendment, Sir." That remark was addressed to the Mayor to emphatically point out to him that I had a First Amendment right to attend all public forums that he conducted and was in direct response to how he had just tried to illegally intimidate me by directing me to stop attending public forums that he conducted.

b. "So that was Bill de Blasio lying to me, um…" I said that to identify the Mayor as the person who had just talked with.

c. "See? This is what happens. He just lied to me…again." These remarks were directed to Defendant Carrion as he stood nearby and Mr. Carrion is heard saying "Okay" to me in response.

d. "I'll talk to the reporters." This remark was also to Defendant Carrion.

e. "He also told me to stop coming back, so that's, um…intimidation right there." Mr. Carrion is heard saying "Okay" to me in response.

146. Coincidentally, Defendants Redmond, Ringel, Miller, Carrion, NYPD Detective

Christopher Fowler, and another member of the Mayor's NYPD security detail illegally

subjected members of the public to First Amendment retaliation near where I sat during the

Mayor's 12/20/17 town hall meeting as I recorded that on video at 7:48 pm then. That occurred

while the Fourteenth Amendment due process and equal protection rights of those people as well

as their right to not be subjected to selective-enforcement and discrimination were flagrantly

violated as a result by being illegally coerced leave that town hall. With respect to information

that I discussed earlier in this complaint about the Mayor's 9/28/17 town hall meeting, that

occurred meeting less than 3 months after Defendant Redmond, other members of the Mayor's

NYPD security detail, and members of the Mayor's staff let a fantastic Black woman to **a)** steal

the stage from the Mayor during his 9/28/17 town hall as she similarly shouted and marched to

the center of the room in which that town hall meeting was conducted as it was conducted and **b)**

continue to attend that town hall meeting for another 30 minutes in spite of her behavior at that

town hall that was very comparable to the behavior of the people who were illegally ejected from

the Mayor's 12/20/17 town hall. Those who illegally caused the people to be ejected from the

Mayor's 12/20/17 town hall also violated my rights pursuant to the First Amendment and

Fourteenth Amendment that pertain to due process and equal protection to have been able to

continue to hear the views that those people sought to continue to express during that 12/20/17

town hall as boisterously as the fantastic Black woman from the Mayor's 9/28/17 town hall had

been permitted to. A copy of the video recording that I recorded at 7:48 pm on 12/20/17 during

the Mayor's 12/20/17 town hall is available on the Internet at

https://drive.google.com/file/d/1D9wIPRjvdcz7wMhedaqtd_XIrFP8yCby/view?usp=sharing.

The people who were illegally ejected from that town hall meeting are shown and heard

expressing their views at the beginning of that video recording and I'm shown giving them a

thumbs-up sign at the elapsed time of 13 seconds in that video. Defendant Ringel is shown at the

elapsed time of 2 seconds in that video as he harassed them. The next screenshot is from the

elapsed time of 30 seconds in that video and shows Defendant Ringel, an unknown male member

of the Mayor's NYPD security detail, NYPD Christopher Fowler of the Mayor's NYPD security

detail, Defendant Redmond, and Defendant Carrion as they harassed the members of the public

who were illegally ejected from that town hall in an area where a video security camera was

installed on a wall.



147.    New York City Councilwoman Laurie Cumbo was the moderator for the Mayor's

12/20/17 town hall meeting and condoned the fact that people were illegally ejected from that

public forum. She is also presently contending with a lawsuit that was commenced on 6/1/20

against her and others by a woman named Sakia Fletcher that corresponds to the case of *Fletcher v. Medgar Evers College*, No. 20-cv-4163(VEC)(S.D.N.Y.). That lawsuit partly concerns allegations that Ms. Cumbo illegally subjected Ms. Fletcher to First Amendment retaliation after Ms. Fletcher spoke out against Ms. Cumbo during a public forum.

148.    The discussion that follows pertains to patently illegal selective-enforcement, discrimination, and abuse of process that was committed against me on 3/18/19 by members of the Mayor's NYPD security detail and other members of the NYPD immediately after I was illegally ejected from the Mayor's 3/18/19 public hearing by comparing that experience to the fact that members of the Mayor's NYPD security detail and other members of the NYPD allowed activists and members of the City Council to conduct a sit-in protest on 12/11/18 inside of City Hall's building while blocking the flow of pedestrian traffic.

149.    At 2:45 pm on 12/11/18, a Twitter posting was posted on the Internet at https://twitter.com/katie_honan/status/1072578252479348739 by a Twitter account that is registered to a journalist named Katie Honan who works for the Wall Street Journal. That Twitter account has the username of "@katie_honan". That Twitter posting included the following remark and a video recording that shows Defendant Gerola in it as he stood in public area on the first floor in City Hall's building while activists sat on the ground nearby while conducting a sit-in protest as they clearly blocked passageways in public areas in that building near its main entrance:

"Advocates demanding 30,000 units for homeless New Yorkers inside City Hall. No sign of @NYCMayor here."

150.    The next screenshot is from the video recording in that Twitter posting that most likely was recorded on that date and shortly before that Twitter posting was posted on the Internet. Defendant Gerola is clearly shown as the first person on the left in it who was then standing. And

doing absolutely nothing to eject those who were obstructing public areas in City Hall's building

in an area that is near the Blue Room in City Hall before I was illegally ejected from both City

Hall and City Hall's entire property on 3/18/19 while I was illegally subjected to selective-

enforcement, abuse of process, discrimination, and flagrant violations of my due process, ad

equal protection rights by comparison to those who were permitted by Defendant Gerola and

other members of the NYPD on 12/11/18 to obstruct passageways in City Hall's building while

being disruptive in that way.



151.    At 3:09 pm on 12/11/18, a Twitter posting was posted on the Internet at

https://twitter.com/JustinBrannan/status/1072584066741035009 by a Twitter account that is

registered to New York City Councilman Justin Brannan. That Twitter account has the username

of "@JustinBrannan". That Twitter posting included the following remark to point out that

people were illegally blocking all exit doors in City Hall as well as a photograph that appeared to

confirm that at least the main exit in City Hall was then blocked in an area where there are video

security cameras installed that are controlled by the NYPD:

> "Current situation: @VOCALNewYork blocks all exit doors at City Hall chanting "we
> need 30,000 units to house the homeless!" They're not wrong."

152.    On 12/11/18, the New York Daily News published a news article on the Internet at

https://www.nydailynews.com/news/politics/ny-pol-city-hall-protest-no-arrests-20181211-

story.html that was written by Jillian Jorgensen and is entitled "Police are Hands-Off at City Hall

Sit-In Protest Demanding Housing for the Homeless" about the protest that was conducted in

City Hall on that date that I just discussed. The following is a relevant excerpt from that news

article that addressed the elephant in the room about that protest in regards to the issue of illegal

selective-enforcement by the NYPD of applicable law:

> "What's a city councilman have to do to get arrested in this town?
>
> City Council members and advocates for the homeless demonstrated for more than an
> hour at City Hall Tuesday, blocking doorways in an effort to be arrested that was
> ultimately unsuccessful."

153.    Given that those people were permitted by the NYPD to conduct a peaceful protest inside

of City Hall then that was disruptive to others who may have sought to be able to freely enter and

exit City Hall through its main entrance without encountering any obstructions, it cannot be

credibly claimed that any legitimate justification existed for members of the NYPD to interfere

with my efforts to have both **a)** testified to the Mayor on 3/18/19 during the his public hearing in

City Hall's Blue Room on that date and **b)** remain in City Hall and otherwise on City Hall's

property after I was illegally ejected from that public hearing with the Mayor. Quite to the contrary, I had a clear First Amendment and Fourteenth Amendment due process and equal protection right with respect to those who protested in City Hall on 12/11/18 that I just discussed to testify in the Mayor's 3/18/19 public hearing without any interference and to remain in City Hall's building and on its grounds on that date after I was illegally ejected from that hearing.

154.    What follows is a discussion about how the defendants in this action illegally ejected me from City Hall's building and its property on 3/18/19 after I was then illegally ejected from the Blue Room as well as how those defendants also illegally harassed, stalked, and assaulted as that occurred. On 3/18/19, shortly after I was ejected from the Blue Room and was handed my backpack by NYPD John Doe3 3/18/19 in the immediate area located directly outside of that room, I met Defendant Gungor in that area and he began to escort me out of City Hall. As we walked toward its main exit, I noticed Defendant Carrion as he descended a set of stairs that were located to my right from the second floor in City Hall. I then told him that had just been illegally ejected from the Blue Room and that I was being illegally coerced to leave City Hall by the NYPD. He responded by telling me that there was nothing that he could do about that and that was a NYPD issue. Mr. Gungor and I then exited City Hall through its main entrance. Defendant Gungor and I began to be recorded on video at the elapsed time of 54 minutes and 11 seconds by the video recording that has the filename of "Aerial view of entrance to City Hall from Park Row on 3-18-19_7.26183 - Park RowCITYHALL-C114-EXT-City Hall Plaza PTZ (26118).mp4" that I briefly discussed earlier in this complaint and will hereinafter refer to as "3/18/19 aerial video". Mr. Gungor and I are shown at that point in that video as we exited City Hall through its main exit while I wore a white sweat and Mr. Gungor wore a dark jacket. Defendants NYPD John Doe2 3/18/19 and Defendant Dwyer quickly followed us outside through that same exit.

155.    The next screenshot shows what appears in a magnified version of  3/18/19 aerial video at the elapsed time of 54 minutes and 20 seconds. Defendant Gungor, myself, and Defendants NYPD John Doe2 3/18/19 and Defendant Dwyer appear in it from left to right in front of the entrance to City Hall's building.



156.    The next screenshot shows what appears in a magnified version of 3/18/19 aerial video at the elapsed time of 54 minutes and 27 seconds. Defendant Gungor and I appear in it as we stood near the flagpole that is located in front of City Hall's building and I was mostly obscured from view by that flagpole as I began to record a video recording with my cellphone of Mr. Gungor that I will discuss next.



157.    The video recording that has the filename of "IMG_8277.MOV" that I began recording at 5:04 pm on 3/18/19 that I briefly discussed earlier in this complaint recorded some of my interactions with the defendants who were personally involved in causing me to be illegally ejected from City Hall's grounds after I exited City Hall's building on 3/18/19 and otherwise illegally didn't intervene on my behalf against other members of the NYPD as I was then being illegally ejected from City Hall's grounds, harassed, stalked, assaulted, and subjected to attempts to intimidate me for that purpose in flagrant violation of my constitutional rights and other applicable laws. The next screenshot shows what appears in that video of 6 seconds and shows Defendant Gungor as he raised his left hand while appearing to be friendly in spite of the fact that he was then actually illegally coercing me to leave City Hall's grounds while I was continuing to conduct myself in an entirely lawful manner in stark contrast to him, other members of the NYPD nearby who were illegally condoning the fact that I was being coerced to leave City Hall's grounds, and the Mayor.



158.    At the elapsed time of 8 seconds in that video, I'm clearly heard asking Mr. Gungor to provide me his name. He ignored my request in response and instead chose to focus on continuing to illegally coerce me to leave City Hall's grounds through its exit by Park Row. The next screenshot is from the elapsed time of 13 seconds in that video and shows Defendant NYPD John Doe2 3/18/19 on the left and Defendant Dwyer on the right as he stood behind a pillar near the main entrance to City Hall's building as they illegally didn't intervene on my behalf to uphold my constitutional right to remain on City Hall's grounds and to be accorded proper due process in regards to the decision that was made to illegally eject me from the Blue Room in City Hall, City Hall's building, and City Hall's entire property.



159.    At the elapsed time of 22 seconds in that video, I'm heard providing narration for it as I made remarks that I addressed to U.S. District Judge Lorna Schofield. She is assigned to K1. In those remarks, I explained that I just tried to testify in the Mayor's 3/18/19 public hearing and that I was illegally ejected from it after I was illegally assaulted by a member of the Mayor's NYPD security detail as I testified in it. I was then referring to Defendant NYPD John Doe1 3/18/19 as the person who assaulted me during that hearing. I also then stated in that video that Mr. Gungor was Defendant NYPD John Doe1 3/18/19's supervisor. At the elapsed time of 37 seconds in that video, I'm heard stating that though I asked for the identities of the members of the NYPD who were personally involved in assaulting me in the Blue Room on that date and coercing me to leave City Hall, my requests were not being complied with. Mr. Gungor is then shown and heard at the elapsed time of 42 seconds in that video as he told me that he would give me all of his information of that nature that I had requested. At the elapsed time of 1 minute in that video, Defendant Gungor is shown raising his left hand again to again acknowledge that he

was then Defendant NYPD John Doe1 3/18/19's supervisor. He did so in response to additional

narration that I just provided for that video as I explained that immediately after I was assaulted

by Defendant NYPD John Doe1 3/18/19 in the Blue Room and ejected from it, I asked to talk

with his supervisor and =promptly met Mr. Gungor as a result. Defendant Gungor identified first

himself as "Sergeant Gungor" at the elapsed time of 1 minute and 2 seconds in that video. After I

then immediately asked for his NYPD badge number, he ignored that request and instead told me

that he would provide me that information later. At the elapsed time of 1 minute and 14 seconds

in that video, I then asked Mr. Gungor to explain to Judge Schofield through that video why I

was escorted out of the Mayor's 3/18/19 public hearing. In response, he is shown and clearly

heard lying to me at the elapsed time of 1 minute and 28 seconds by fraudulently claiming that

the Mayor's 3/18/19 public hearing was just a bill signing instead of being the actual public

hearing that it was in which members of the public were legally entitled to testify about proposed

legislation that was on the agenda for discussion during that hearing. The next screenshot shows

Mr. Gungor as he lied about that.



160.    . The next screenshot shows Defendant Barker and Mr. Gungor at the elapsed time of 1 minute and 34 seconds as Mr. Gungor and I approached the security screening area that has a metal detector machine in it and is closest to the Park Row exit for City Hall as Mr. Barker stood near that screening area.



161.    . The next screenshot shows Defendant Klein on the left as he wore a blue tie and padded dark jacket and Defendant Gungor's left arm on the right at the elapsed time of 1 minute and 34 seconds as I asked Mr. Klein if he was Mr. Gungor's supervisor. Mr. Gungor then immediately told me that he was the boss instead of other people in that area. At the elapsed time of 1 minute and 41 seconds in that video, Mr. Gungor suddenly came far too close to me to try to intimidate me for no reason whatsoever while I continued to conduct myself in an entirely lawful manner as I then immediately him who his supervisor was. He then began to tell me that Defendant Redmond was his supervisor as he continued to illegally try to intimidate me in order to coerce me to leave City Hall's grounds faster than I was then doing as I was instead focused on

diligently gathering relevant information to use for subsequent litigation against him and others

for what was continuing to occur then. At the elapsed time of 1 minute and 44 seconds in that

video, I'm clearly heard ordering Mr. Gungor to not put his hands on me after he just illegally

did so. In response, he ignored what I just and illegally put his hands on me again without any

legal justification. That prompted me to order him to get his damn hands off of me. After then

told me that he would give me a business card of his that had his NYPD identification

information shown on it, I pointed out that that didn't' give him any ground whatsoever to have

put his hands on me then. At the elapsed time of 1 minute and 53 seconds in that video, I'm

heard asking Defendant Klein why he also put his hands on me after he did so while I was

lawfully walking toward the Park Row exit of City Hall as he also stalked me toward that area.

The next screenshot is from the elapsed time of 1 minute and 58 seconds in that video as Mr.

Klein lied by claiming that he didn't put his hands on me.  He absolutely did so and that was

assault against me that I immediately regarded as offensive physical contact with my body.



162.    The next screenshot is also from the elapsed time of 1 minute and 58 seconds in that

video and shows Mr. Klein's face as he again lied by claiming that he didn't put his hands on

me.



163.    The next screenshot is from the elapsed time of 1 minute and 59 seconds in that video and shows Mr. Klein's face as I asked him what his name was. In response, he immediate told me, 'I'm not telling you my name."



164.    By refusing to tell me his name then, Mr. Klein flagrantly violated my First Amendment right to be immediately apprised of that information. He also engaged in obstruction of justice by doing so. I sought that information to report a valid complaint against him and to commence valid litigation against him. At that time, he and Defendant Gungor were acting in concert against me as they violated all of the following through their illegal acts against me as they coerced me to leave City Hall's grounds:

      a.    18 U.S.C. §245(b)(5), 18 U.S.C. §241, 18 U.S.C. §1513(e), 18 U.S.C. §242, 42

            U.S.C. §1985, 42 U.S.C. §1986.

      b.    NYPL §240.20, NYPL §240.26, NYPL §240.65, NYPL §175.25, NYPL §120.45,

NYPL §215.10, CPL §140.50.

c.  My rights pursuant to the First Amendment, Fourth Amendment, Fifth Amendment, Fourteenth Amendment, New York State's Open Meetings Law,

d.  New York State General Business Law §349.

e.  New York City Charter §1116 and New York City Charter Section §435(a).

f.  Their oath of office as members of the NYPD.

g.  The findings from *People v. Howard* that I discussed earlier in this complaint.

165.   The next screenshot is from the elapsed time of 2 minute and 02 seconds in that video and shows Mr. Klein's chest as he began illegally assaulting me by pushing me toward the exity of City Hall by Park Row as I was asking him if he was a member of the NYPD because he wasn't wearing a NYPD uniform and didn't have any NYPD badge displayed. As I asked him that, my remark suddenly was cut short because he illegally assaulted me by pushing me in my chest that caused my speech to be disrupted. I genuinely regret not having immediately used that opportunity to engage in legal self-defense against him by breaking both his arms and legs that he was then using to push me with. I really should have done so. If I hadn't believed that he was armed with a gun and that other members of the NYPD would shoot me if I tried to legally do so, it's entirely conceivable that I may have otherwise then done so. However, my experience with the NYPD's criminal mob is that its gang-members are scared of having a fair fight when they illegally instigate such confrontations and provide entirely valid grounds for people to legally engage in self-defense against that criminal and Nazi mob that is disguised as law-enforcement every single day instead of just Halloween.



166.    The next screenshot is from the elapsed time of 2 minute and 04 seconds in that video

and shows the zipper for the jacket that Mr. Klein was wearing as he continued to criminally

assault me by illegally pushing me as I clearly ordered him to get off of me.



167.   The next screenshot is from the elapsed time of 2 minute and 05 seconds in that video and shows the zipper for the jacket that Mr. Klein was wearing as well as the collar of his white shirt as he continued to criminally assault me that caused me to stutter as I spoke to provide further narration for that video while I then directed my remarks to Judge Schofield as I pointed out that Mr. Klein was then illegally assaulting me.



168.    The next screenshot is from the elapsed time of 2 minute and 07 seconds in that video and shows a close-up of Mr. Klein's face as he continued to criminally assault me by pushing me while I was continuing to conduct myself in an entirely lawful manner in contrast to him and other members of the NYPD who were then nearby and illegally made no attempt to intervene on my behalf against him while they had a legal duty and realistic opportunity to have done so to end Mr. Klein's abuse that was violating my Fourth Amendment rights among other things. Mr.

Klein was so close to me then that a reflection of me is seen in his left eye in this screenshot.



169.    At the elapsed time of 2 minutes and 10 seconds in that video, NYPD John Doe4 3/18/19

stood just to the right of Defendant Klein as I was clearly heard in that video as I stated that Mr.

Klein was continuing to push me in spite of the fact that I was trying to leave City Hall's

grounds. Defendant NYPD John Doe4 3/18/19 illegally made no attempt to intervene on my

behalf against Mr. Klein to get him to stop assaulting me by pushing me. The specific remark that I then said about that was the following:

"I'm trying to leave and you're pushing me."

170.    At the elapsed time of 2 minutes and 12 seconds in that video, Defendant Klein is shown and heard as he said, "Get out of the way" to me.

171.    The next screenshot is from the elapsed time of 2 minute and 13 seconds in that video and shows Defendant Klein's right arm as he then illegally used it to put his right hand on my body again and assaulted me as he did so by virtue of the fact that I immediately regarded that as offensive physical contact and I had previously ordered him not to touch me. NYPD John Doe4 3/18/19 was then still standing to Mr. Klein's right and still illegally refused to intervene on my behalf against Mr. Klein. Mr. Klein's right arm is shown in this screenshot at the top as it was then raised and extended toward the left side of my body. NYPD John Doe4's left arm and hand appear lowered in this screenshot. I'm heard then in that video as I stated, "Get the fuck off me" to Defendant Klein.



172.    The next screenshot is also from the elapsed time of 2 minute and 13 seconds in that

video and shows Defendant NYPD John Doe4 3/18/19's chest as he continued to be Defendant

Klein's criminal accomplice as he joined him in trying to illegally intimidate me to coerce me to

leave City Hall's grounds without any valid legal justification. The area outside of City Hall's

main building is a public forums where people frequently gather to conduct public press

conferences, hold rallies, and otherwise have informal conversations with New York City

government officials as they enter and exit City Hall's building. I had a First Amendment and

Fourteenth Amendment right then to lawfully exercise my First Amendment right to assemble

directly in front of the main steps to City Hall then largely to see if I would cross paths with a

member of the City Council and/or a reporter to whom I could engage in protected

whistleblowing about the illegal acts and omissions that were being perpetrated against me on

that date by the Mayor and members of the NYPD. I certainly sought to then do so and was

illegally prevented from doing so.



173.    Through his illegal acts and omissions against me then, Defendant NYPD John Doe4

3/18/19 violated all of the following:

    a.   18 U.S.C. §245(b)(5), 18 U.S.C. §241, 18 U.S.C. §1513(e), 18 U.S.C. §242, 42

        U.S.C. §1985, 42 U.S.C. §1986.

    b.   NYPL §240.20, NYPL §240.26, NYPL §120.45, CPL §140.50.

    c.   My rights pursuant to the First Amendment, Fourth Amendment, Fifth Amendment,

        and Fourteenth Amendment.

    d.   New York State General Business Law §349.

    e.   New York City Charter §1116 and New York City Charter Section §435(a).

    f.   His oath of office as a member of the NYPD.

    g.   Findings in _People v. Howard_ that I discussed earlier in this complaint.

174.    The next screenshot is also from the elapsed time of 2 minute and 20 seconds in that video and shows Defendant Dwyer and Defendant NYPD John Doe2 3/18/19 in the distance as they walked toward where I then was. However, they certainly weren't then doing so to try to intervene on my behalf. They were instead then doing so to make certain that I immediately left City Hall's grounds. Defendant Dwyer appears on the left and Defendant NYPD John Doe2 3/18/19 appears on the right. Both of them then faced me.



175.    As a result of their illegal omissions against me then as they acted in concert with Defendant Klein, Defendants Dwyer and NYPD John Doe2 3/18/19 violated all of the following:

   a.   18 U.S.C. §241, 18 U.S.C. §1513(e), 18 U.S.C. §242, 42 U.S.C. §1985, 42 U.S.C. §1986.

   b.   NYPL §240.20, NYPL §240.26, NYPL §120.45, CPL §140.50.

   c.   My rights pursuant to the First Amendment, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment.

   d.   New York State General Business Law §349.

   e.   New York City Charter §1116 and New York City Charter Section §435(a).

   f.   Their oaths of office as members of the NYPD.

   g.   Findings in *People v. Howard* that I discussed earlier in this complaint.

176.    The next screenshot is from the elapsed time of 2 minute and 32 seconds in that video and shows an unknown woman as she stood near the NYPD guardhouse that is located just inside of the entrance to City Hall by Park Row after I just exited City Hall's grounds. I had just asked Mr. Klein why I hadn't received a business card that Defendant Gungor had previously told me he would give to me that contained his NYPD identification information on it. The relevance that this unknown woman has in this complaint pertains to the fact that Defendant Klein and Defendant NYPD John Doe4 3/18/19 were among other NYPD defendants who illegally caused me embarrassment as a result of imposing a stigma on me by virtue of the fact that their illegal acts and omissions against me then occurred in full view of the public that likely let this woman and other members of the public to erroneously assume that I had done something wrong and was conducting myself in some disorderly and/or unlawful way to have justified that treatment in spite of the fact that members of the NYPD then were instead committing acts as

thugs while violating my constitutional rights and other applicable laws. I certainly suffered

entirely undue and substantial reputational harm, humiliation, justifiable anger as a direct result

of the illegal acts and omissions that the Mayor and NYPD defendants who my 3/18/19 claims

involve committed against me on 3/18/19 while they were in my presence and otherwise in my

line of sight while they had a legal and/or inherent ethical and/or affirmative duty to intervene on

my behalf and did not do so.



177.    The next screenshot is from the elapsed time of 2 minute and 34 seconds in that video

and shows Defendant NYPD John Doe5 3/18/19 on the left. His presence there then confirms

that he had just been nearby as Defendants Klein and NYPD John Doe4 3/18/19 were illegally

coercing me to leave City Hall's grounds without a legal justification.



178.    Defendant NYPD John Doe5 3/18/19 had a legal duty to have intervened on my behalf

then to uphold my constitutional rights that largely pertain to my First Amendment right to

lawfully assemble and my Fourteenth Amendment due process and equal protection rights.

However, he illegally made no effort to intervene on my behalf because he was acting in concert

with them through his failure to act on my behalf. As a result, he is also liable for having violated

all of the following in regards to me and the fact that I was illegally coerced to leave City Hall's

grounds:

      a.    18 U.S.C. §241, 18 U.S.C. §1513(e), 18 U.S.C. §242, 42 U.S.C. §1985, 42 U.S.C.

         §1986.

b.  NYPL §240.20, NYPL §240.26, NYPL §120.45, CPL §140.50.

c.  My rights pursuant to the First Amendment, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment.

d.  New York State General Business Law §349.

e.  New York City Charter §1116 and New York City Charter Section §435(a).

f.  His oath as a member of the NYPD.

g.  Findings in *People v. Howard* that I discussed earlier in this complaint.

179.    The next screenshot is from the elapsed time of 2 minute and 35 seconds in that video and shows Defendant Barker on the right as he wore a NYPD uniform that included a hat as he then stood to the right of Defendant NYPD John Doe4 3/18/19.



180.    For the same reasons that I just discussed about Defendant NYPD John Doe5 3/18/19,

Defendant Barker is also liable for having violated all of the following in regards to me and the

fact that I was illegally coerced to leave City Hall's grounds:

a.   18 U.S.C. §241, 18 U.S.C. §1513(e), 18 U.S.C. §242, 42 U.S.C. §1985, 42 U.S.C.

§1986.

b.   NYPL §240.20, NYPL §240.26, NYPL §120.45, CPL §140.50.

c.   My rights pursuant to the First Amendment, Fourth Amendment, Fifth Amendment,

and Fourteenth Amendment.

d.   New York State General Business Law §349.

e.   New York City Charter §1116 and New York City Charter Section §435(a).

f.   His oath as a member of the NYPD.

g.   Findings in *People v. Howard* that I discussed earlier in this complaint.

181.   The next screenshot is from the elapsed time of 2 minute and 36 seconds in that video and shows Defendant NYPD John Doe2 3/18/19 on the left in the distance as Defendant NYPD John Doe5 3/18/19 stood much closer to where I then was and faced me while Defendant NYPD John Doe4 3/18/19 also stood nearby as his back was turned to me.



182.   The next screenshot is from the elapsed time of 2 minute and 39 seconds in that video and shows Defendant Klein as he wore an earpiece near his left ear that security personnel use that likely also enabled him to have conducted a diligent and timely investigation to objectively

determine whether I had committed any illegal act to have justified having been ejected from the Blue Room, City Hall's building, and City Hall's grounds instead of assuming that I had done so based on how others were treating me. He had the opportunity to ask to immediately see all relevant video security camera recordings in conjunction with such an objective investigation. However, he didn't make any attempt to conduct an investigation about that and instead exacerbated matters by criminally assaulting me and illegally refusing to identity himself to me.



183.    All remarks that I made to Mr. Klein and other members of the NYPD as I was being illegally coerced to leave City Hall's grounds on 3/18/19 were in the context of making entirely valid complaints to them about how they were committing illegal acts and omissions against me

and was therefore protected speech as per findings that were issued in *Barboza v. D'Agata,* 151 F. Supp. 3d 363 (S.D.N.Y. 2015). The following is a relevant excerpt from *Doe v. City of New York*, No. 18-cv-670 (ARR)(JO) (E.D.N.Y. Jan. 9, 2020) that also concerns that matter:

> "Finally, "[t]he right to criticize public officials is at the heart of the First Amendment's right of free speech." *Kaluczky v. City of White Plains,* 57 F.3d 202, 210 (2d Cir. 1995) (citing *N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 282 (1964)). Indeed, the "right to criticize the police without reprisal" is "clearly" an "interest protected by the First Amendment," *Kerman v. City of New York,* 261 F.3d 229, 241-42 (2d Cir. 2001), as "[t]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers[,]" *id.* at 242 (quoting *City of Houston v. Hill,* 482 U.S. 451, 461 (1987)). Thus, on summary judgment, the Second Circuit has held that a plaintiff established a First Amendment retaliation claim when he proffered facts showing that police officers retaliated against him for making derogatory comments to the officers and for threatening to sue them. *Kerman,* 261 F.3d at 241-42.[3]"

184.    The next screenshot is from the elapsed time of 2 minute and 40 seconds in the video recording that I have been discussing and shows Defendants Barker and Klein from left to right as it clearly also shows that Defendant Barker was then armed with a gun that appears near his right hip. I'm heard at that point in that video providing narration in which my remarks were addressed to Judge Schofield as I pointed out that Defendant Klein had assaulted me. It's my view that Defendant Barker should have used his gun to perform his legal duty to have intervened on my behalf against Defendant Klein by shooting Mr. Klein's legs to get him on the ground and end his assaults against me before allowing me to walk back to the area in front of City Hall's building by its main entrance and step on Mr. Klein's hands, arms, and legs in the specific areas where he would have just been shot by Defendant Barker.



185.    The next screenshot is from the elapsed time of 2 minute and 42 seconds in that same

video and shows Defendant Barker looking at me as he stood in front of Defendant Klein while

roughly 5 people are shown in the background as they were then on the steps of City Hall in

front of the main entrance to that building with whom I had a First Amendment and Fourteenth

Amendment right to try to lawfully then engage protected whistleblowing and expressive

association in that specific area about the illegal acts and omissions that were committed against

me by the Mayor and members of the NYPD at City Hall. This means that Defendants Barker,

Klein, and the other members of the NYPD that I have been discussing illegally chilled my First

Amendment protected speech in regards to my ability to have then talked with those people in

that specific area to illegally cover-up their illegal acts and omissions against me on that date.



186.    At the elapsed time of 2 minutes and 47 seconds in that video, I'm clearly heard stating

that there would be a public hearing on 3/19/19 that would be conducted by the City Council's

Committee on Public Safety. That committee is responsible with others for providing proper

oversight of how the NYPD operates and I intended to testify in that hearing against the NYPD.

Here is another screenshot of Defendant Barker from that elapsed time in that video as his NYPD badge is clearly shown.



187.   At the elapsed time of 2 minutes and 52 seconds in that video, I'm clearly heard telling someone nearby who isn't shown in that video that I was just illegally coerced to leave City Hall's property after I was illegally ejected from the Mayor's 3/18/19 public hearing in which I briefly testified.

188.   The next screenshot is from the elapsed time of 3 minute and 11 seconds in that same

video and shows the NYPD guardhouse on the left that is located just inside of the Park Row

entrance to City Hall and several people in the background that includes someone who was

walking in my direction and appeared to be holding something in his left hand as he had a jacket

open that he was wearing. I was about to have a brief conversation with that person where I then

stood.



189.    The next screenshot is from the elapsed time of 3 minute and 20 seconds in that same

video and shows Defendant Gungor as he approached me while holding a business card in his

left hand to give to me.



190.    The next screenshot is of a scanned copy of the business card that he gave me on which

he crossed out some information that was printed on it.



191.     The information on that business card indicates that he was a sergeant in the NYPD and

assigned to the NYPD's Executive Protection Unit that has been the subject of numerous

lawsuits largely thanks to Defendant Redmond being a defendant in them. Mr. Gungor crossed

out information on that business card that appears to indicate the following:

      a.        His office telephone number then was 212-696-6069.

      b.        His cell phone number then was 347-855-8680.

      c.        His fax number then began with 212-233-5 while the last number was 8.

      d.        E-mail addresses that he then used were **a)** Jgungor@cityhall.nyc.gov and

            **b)** Jemal.Gungor@nypd.org.

192.     At the elapsed time of 3 minutes and 23 seconds in that video, I'm heard telling Mr.

Gungor as he gave me his business card that Defendant Klein illegally put his hands on me again

after Mr. Gungor walked away from where Mr. Klein and I were. I then asked Mr. Gungor to

provide me Mr. Klein's name. Mr. Gungor illegally withheld that information from me in

violation of my First Amendment rights. The CCRB later identified Mr. Klein for me instead. In

that same conversation that I had with Mr. Gungor then, he lied to me by telling me that

whatever information I then needed about my interactions with the NYPD on 3/18/19 at City

Hall was on the business card that he just handed to me. However, that business card only has

information about Mr. Gungor on it instead of also having information about other members of

the NYPD.

193.    The next screenshot is from the elapsed time of 3 minute and 31 seconds in that same

video and shows Defendant Gungor as he walked away from me without having identified

Defendant Klein to me to try to illegally prevent me from being able to have Mr. Klein held

properly responsible for the illegal acts and omissions that he committed against me on that date

at City hall.



194.    The next screenshot is from the elapsed time of 3 minute and 33 seconds in that same video and shows a man that I briefly discussed earlier in this complaint. I talked with him then as I continued to stand just outside of City Hall's entrance by Park Row. I then asked him if he worked for the Mayor's office. He told me that he did and that he worked for a division of it that is known as the "Mayor's Advance".



195.    I'm heard in that video at the elapsed time of 3 minutes and 43 seconds as I asked him that if the Mayor conducts a public hearing, do members of the public have a right to testify in it. He told me that wasn't a question that he could answer because it was above his pay grade and that he wasn't sure how that worked. That video recording ended shortly after that conversation ended.

196.    Shortly after that video ended, I walked to the area by the Broadway entrance to City Hall to try to have an opportunity to talk with journalists, members of the City Council, and others

who had been in the Blue Room in City Hall while I was in it on that date that I might cross

paths with as they then entered or exited City Hall near where I then was. I sought to talk with

them about the illegal acts and omissions that were committed against me by the Mayor and

NYPD on that date at City Hall. While I was in that area between 4:10 pm and 6 pm on 3/18/19,

I happened to cross paths with New York City Councilman Ritchie Torres on that sidewalk near

that entrance to City Hall in an area where there are video security cameras that are controlled by

the NYPD that record the area where we then stood. I also talked with a man named Daniel D.

Brownell who was in the Blue Room in City Hall while I was in it on 3/18/19. I also talked with

Paul Ochoa of the Mayor's staff and NYPD Officer Ocasio-Torres (badge # 5886) while she was

assigned to the NYPD guardhouse that is located just inside of the Broadway entrance to City

Hall. I talked with all of them then about the fact that I was illegally ejected from the Mayor's

3/18/19 public hearing as I lawfully conducted myself during it, I attempted to testify in that

hearing and the Mayor and a member of the Mayor's NYPD security detail illegally disrupted

my testimony, and that I was then illegally coerced to leave both City Hall's building and City

Hall's property by members of the NYPD.

197.    When I talked with Mr. Torres about that then, I clearly asked him about what he could

do about that largely because he was the chairman of the City Council's Committee on Oversight

and he had previously introduced legislation about NYPD reforms. He told me then that he really

couldn't do anything about that because what happened to me on that date was limited to me

instead of being what he regarded as a systemic problem. By refusing to intervene on my behalf

then, Mr. Torres clearly established that he is not a leader and shies away from performing his

duties as a public servant and lawmaker in situations when he is presented with a meaningful

opportunity to intervene to address major abuses of power by the Mayor and the NYPD that

violate fundamental constitutional rights in public forums and other applicable laws.

**Facts about spoliation of video recording evidence by the NYPD concerning my 3/18/19 claims Mayor's 3/18/19 town hall**:

198.     Although I thereafter submitted a timely FOIL demand to the NYPD on 3/18/19 to provide me video recordings that were recorded by video security cameras that it controls that would have otherwise caused me to be provided with a video recording that was recorded by one or more video security cameras of my interactions with Mr. Torres while he and I talked on 3/18/19 after 4:30 pm on the sidewalk near City Hall's Broadway entrance, the NYPD illegally withheld those video recordings from me in flagrant violation of my rights pursuant to the First Amendment, Fifth Amendment, and Fourteenth Amendment as well as FOIL. Defendant City has had a legal duty to have preserved those video recordings because they were related to the illegal acts and omissions that were committed against me on 3/18/19 by the Mayor and other members of the NYPD at City Hall. However, it appears that the NYPD illegally allowed those video recordings of my interactions with Mr. Torres on 3/18/19 to have been overwritten. When I talked with Mr. Brownell about what transpired in the Blue Room in City Hall on 3/18/19 in regards to me and the fact that I was illegally seized and ejected from it after the Mayor engaged in illegal witness tampering as I testified in it, I asked him if understood why that occurred. He told me that he didn't know why that occurred and wished me well. When I talked with Mr. Ochoa about that, I believe that he fraudulently claimed to me then that I couldn't present recordings in conjunction with testimony that I gave during public hearings that the Mayor conducted in spite of the fact that no policy nor law exists in writing to prohibit that. Prior to 3/18/19, Mr. Ochoa was personally involved with others in having illegally prevented me from testifying in a public hearing that the Mayor conducted on 1/8/18 in the Blue Room in City Hall

about proposed legislation that concerned reforming the NYPD after the agenda for that specific

hearing was changed by the Mayor's staff at the last minute on that date. I will pursue entirely

valid legal claims against him and others about that in a separate complaint. When I talked with

NYPD Officer Ocasio-Torres after 4 pm by the NYPD guardhouse that is located just inside of

the entrance to City Hall's property by Broadway, she essentially told me that she didn't care

about the illegal acts that were committed against me inside of City Hall's building and on City

Hall's property by the Mayor and members of the NYPD and pointed out that she hadn't been

involved in those matters. She told me that in spite of the fact that she sued the City of New York

for harassment that she experienced by members of the NYPD and she was previously harassed

by a judge while she was assigned to the NYPD guardhouse where I talked with her on 3/18/19.

199.    The following is a relevant excerpt from an e-mail message that I received on 3/18/19 at

6:36 pm from the NYPD that was in response to a FOIL demand that I submitted to it on that

date for all of the video recordings that were in its possession and recorded by video security

cameras it controls that pertained to **a)** illegal acts and omissions that were committed against me

on City Hall's property on 3/18/19 by members of the NYPD and **b)** conversations that I had

with Ritchie Torres, Mr. Brownell, Mr. Ochoa, and NYPD Officer Ocasio-Torres about those

illegal acts and omissions as well as the illegal acts that the Mayor committed against me on that

date in the Blue Room in City Hall:

> **From:** <openrecords@records.nyc.gov>
> **Subject: [OpenRecords]** Request FOIL-2019-056-04374 Submitted to New York City
> Police Department (NYPD)
> **Date:** March 18, 2019 at 6:36:33 PM EDT
> **To:** <towaki_komatsu@yahoo.com>
>
> Your request FOIL-2019-056-04374 has been successfully submitted to the New York City
> Police Department (NYPD). The details of your request are shown below.
> Request Title: Video demand

Request Description: Immediately provide me with copies of all and and video recordings that were recorded by video security cameras on 3/18/19 that are controlled by the NYPD between 4:10 pm and 5:30 pm while I was inside of New York City Hall and while I was outside of it in the following areas: a) By the guardhouse located by Park Row both upon arriving to City Hall and while departing City Hall. b) Between the main entrance to City Hall in front of it and the entrance to City Hall's compound by Park Row during both the times that I entered City Hall from that guardhouse and passed it while leaving City Hall. c) By the guardhouse to City Hall located by Broadway while NYPD Officer Ocasio-Torres (badge # 5886) was assigned to that guardhouse after I left City Hall through its exit on Park Row and then met her by its entrance on Broadway. d) While I talked with New York City Councilman Ritchie Torres, Paul Ochoa of the Mayor's office, and Daniel D. Brownell right outside of the entrance to the City Hall compound on Broadway. While I was inside of City Hall on 3/18/18, I was primarily inside of its Blue Room after 4:15 pm. However, I was also illegally assaulted by a Black male member of the NYPD. I was also assaulted by a Caucasian male with grey hair as I was leaving City Hall then through its exit on Park Row.

200.    In addition to having illegally withheld from me and likely destroyed the video

recordings that were recorded on 3/18/19 by video security cameras it controls of my interactions

with Ritchie Torres near the Broadway entrance to City Hall, the NYPD illegally did the same

with the video recordings that were recorded by its video security cameras of the interactions that

I had after 4 pm on 3/18/19 with Mr. Brownell, Mr. Ochoa, and NYPD Officer Ocasio-Torres

(badge # 5886) in that same area. The NYPD previously engaged in such flagrant obstruction of

justice against me with respect to video recordings that were recorded on 9/8/17 that were

recorded by video security cameras it controls of the area by the Park Row entrance to City Hall

after NYPD Officer Cruz (badge #: 751) was among people who illegally prevented me from

attending a public hearing on that date that the Mayor conducted in the Blue Room in City Hall

that concerned proposed legislation that was about NYPD reforms that Ritchie Torres had

worked on with others. I had also submitted a timely FOIL demand to the NYPD for those 9/8/17

video recordings.

201.    The following shows a relevant excerpt from the e-mail message that I sent to the NYPD

on 9/8/17 at 9:29 pm in which I submitted my FOIL demand to it for the 9/8/17 video recordings

before the NYPD illegally didn't provide me any video recordings in response to illegally cover-

up the illegal acts that NYPD Officer Cruz committed against me on that date at City Hall and

violate my constitutional rights and other applicable laws in the process:

> **From:** Towaki Komatsu <towaki_komatsu@yahoo.com>
> **Subject:** Re: FOIL demand
> **Date:** September 8, 2017 at 9:29:01 PM EDT
> **To:** FOIL@nypd.org
>
> NYPD FOIL Team,
>
> I'm sending you this message to demand that the NYPD immediately provide me with all
> security camera video recordings that shows me talking with NYPD Officer Cruz (badge #:
> 751) between 1:45 pm and 2 pm just inside of the visitor's entrance to City Hall located by
> Park Row and while he was stationed in the guardhouse there.
>
> In addition, I further demand to be provided with the telephone numbers for calls he made
> and received from the telephone in that guardhouse while I stood outside of it and was
> waiting for him to let me proceed to the security area in order to attend a public 2 pm located
> in the Blue Room in City Hall that had been scheduled.
>
> Pursuant to New York State's Open Meetings Law that I explained to Officer Cruz today, I
> had a right to attend that public meeting. However, I was illegally deprived of my ability to
> exercise that right by being denied access to it.

202.     The following shows an e-mail message that I received from the NYPD on 3/21/19 at

12:04 pm that indicated that Defendant Halk was assigned to work on the FOIL demand that I

submitted to the NYPD on 3/18/19 for video recordings that pertained to the illegal acts and

omissions that were committed by members of the NYPD against me at City Hall on 3/18/19 as

well as the conversations that I had with Ritchie Torres, Mr. Brownell, NYPD Officer Ocasio-

Torres, and Paul Ochoa after 4 pm near the Broadway entrance to City Hall:

> **From:** <openrecords@records.nyc.gov>
> **Subject:** [OpenRecords] Request FOIL-2019-056-04374 Acknowledged
> **Date:** March 21, 2019 at 12:04:18 PM EDT
> **To:** <towaki_komatsu@yahoo.com>
>
> The New York City Police Department (NYPD) has acknowledged your FOIL request FOIL-
> 2019-056-04374.

You can expect a response on or about Wednesday, July 31, 2019.

Additional Information:
Your request has been assigned to Detective Halk (646-610-6430)

Please visit FOIL-2019-056-04374 to view additional information and take any necessary action.
DO NOT RESPOND TO THIS EMAIL. For information or questions about this request please use the Contact the Agency link on the request page in OpenRecords.

203.    What follows shows an e-mail message that I timely sent on 4/27/19 at 8:40 pm to the NYPD team that handles appeals of FOIL matters after I received a CD-Rom disk from the NYPD on 4/26/19 in response to my 3/18/19 FOIL demand to the NYPD for video recordings. That CD-Rom didn't include the entirety of the video recordings that I ordered the NYPD to provide to me through my 3/18/19 FOIL demand to it. As a result, I submitted a timely appeal to the NYPD on 4/27/19 in response to its illegal failure to provide me the entirety of the video recordings that I directed it to provide to me.

**From:** Towaki Komatsu <towaki_komatsu@yahoo.com>
**Subject:** Appeal for FOIL-2019-056-04374
**Date:** April 27, 2019 at 8:40:10 PM EDT
**To:** FOIL APPEALS <FOILAppeals@NYPD.org>

The following is the FOIL demand that I submitted for FOIL #: 2019-056-04374

On 4/26/19, I received a CD-Rom disk in response to that FOIL demand that contained just 1 hour of video.

That fact clearly violates my First Amendment right to have the NYPD promptly and fully comply with the FOIL demand that I submitted that was for 5 hours of video for that FOIL demand.

I also clearly requested all responsive video in relation to that demand. However, the video that I was provided was from less than the number of video security cameras that the NYPD controls from which responsive video recordings were availalbe. This fact violates my First Amendment and FOIL rights as well.

Immediately comply.

I will apprise a federal judge of the NYPD's illegal non-compliance with this FOIL demand shortly.

204.     What follows shows a relevant excerpt from an e-mail message that I received on 5/2/19 at 9:29 am from Defendant Mazur in response to the appeal that I submitted to the NYPD on 4/27/19 that I just discussed.

> **From**: FOIL APPEALS <FOILAppeals@nypd.org>
> **Subject**: RE: Appeal for FOIL-2019-056-04374
> **Date**: May 2, 2019 at 9:29:36 AM EDT
> **To**: Towaki Komatsu <towaki_komatsu@yahoo.com>
>
> Mr. Komatsu,
>
> Please see attached appeal determination. Thank you.
>
> Best,
>
> Sergeant Jordan S. Mazur
> Records Access Appeals Officer
> NYPD Legal Bureau
> 1 Police Plaza, Room 1406
> New York, NY 10038
> E-Mail: FOILAppeals@NYPD.org

205.     The e-mail message that I received from Mr. Mazur that I just discussed also had a PDF file attached to it. The next 2 screenshots are of relevant excerpts from that PDF file that is 2 pages in length. In short, Mr. Mazur stated in that PDF file that I would not be provided further video recordings in response to my 3/18/19 FOIL demand to the NYPD that pertained to that demand. Although he claimed that the reason for that was because the NYPD no longer had those video recordings, that was totally irrelevant because Defendant City was legally required to have preserved the entirety of the video recordings that were recorded by NYPD video security cameras that pertain to my 3/18/19 claims in this action on account of the fact that I reported numerous, timely, and entirely valid complaints to the NYPD, CCRB DOJ, NYAG, and City

Council about the illegal acts and omissions that were perpetrated against me on 3/18/19 by the Mayor and members of the NYPD at City Hall. My submission of such timely complaints about that was the trigger that thereafter caused Defendant City to be required to preserve all of those video recordings that include the video recordings of my conversations with Ritchie Torres, Paul Ochoa, Mr. Brownell, and NYPD Officer Ocasio-Torres on 3/18/19.



**POLICE DEPARTMENT**
**Office of Deputy Commissioner,**
**Legal Matters**
**One Police Plaza, Room 1406A**
**New York, New York 10038**
FOILAppeals@NYPD.org

May 2, 2019

Towaki Komatsu
towaki_komatsu@yahoo.com

RE:    FREEDOM OF INFORMATION LAW
REQUEST: FOIL-2019-056-04374
Re: Video – 3/18/19

Dear Mr. Komatsu:

This letter is in response to your email dated April 27, 2019 appealing the determination of the Records Access Officer made on April 24, 2019 regarding records requested from the New York City Police Department. Your request, pursuant to the Freedom of Information Law, was originally received by the FOIL unit on March 18, 2019 and subsequently granted to the extent that the RAO provided certain records responsive to your request.

Your appeal of that determination is denied because a diligent search has been conducted for the requested video; however, no video was located. Video from NYPD surveillance cameras is kept for a period of thirty (30) days from the date of incident. In this case, as of the date of your appeal, the video that you seek from March 18, 2019 is no longer available.

The New York Court of Appeals has determined that "[w]hen an agency is unable to locate documents properly requested under FOIL, Public Officers Law § 89(3) requires the agency to certify that it does not have possession of a requested record or that such record cannot be found after diligent search . . . Neither a detailed description of the search nor a personal statement from the person who actually conducted the search is required" *Raittley v. New York City Police Dept.*, 96 NY2d 873, 875; 730 NYS2d 768 (2001).

Furthermore, in 2009, the Appellate Division held that an agency cannot produce documents it does not possess or cannot disclose and that the Court cannot require respondents to produce documents that they certify they cannot find after a diligent search because petitioner "has received all that he . . . is entitled to under the law" *Bernstein Family Ltd. P'ship v. Sovereign Partners, L.P.*, 66 AD3d 1, 8; 883 NYS2d 201, 206 (1st Dept 2009).

You may seek judicial review of this determination by commencing an Article 78 proceeding within four months of the date of this decision.

Sincerely,

*Jordan S. Mazur*
Jordan S. Mazur
Sergeant
Records Access Appeals Officer

c:  Committee on Open Government

206.    Defendants Mazur and Halk are jointly liable with Defendant City for having illegally failed to preserve the video recordings that were recorded on 3/18/19 that I ordered the NYPD to provide to me that I have discussed in this complaint. They're also liable for failure to properly train and supervise others and violating my rights pursuant to the First Amendment, FOIL, Fifth Amendment, and Fourteenth Amendment with respect to abuse of process and violations of my due process rights in regards to that matter.

207.    On a related note, the discussion that follows sufficiently and clearly confirms that the NYPD illegally withheld video recordings from me that were recorded on 3/18/19 by additional video security cameras that the NYPD controls of the area where Defendant Klein and others were illegally coercing me to leave City Hall's property on 3/18/19. This revelation is achieved by virtue of the fact that the NYPD provided me a video recording that was recorded on 4/8/19 by a video security camera that it controls that includes the following image in that video in which I'm shown standing near the Park Row entrance to City Hall while NYPD Officer Feeney (badge #: 30475) was illegally preventing me from walking past him to reach City Hall's building while the Mayor was inside of the SUV that is shown in this screenshot and was parked on City Hall's grounds:



208.    Although I arrived to that location on 4/8/19 before the bald man who stood behind me,

NYPD Officer Feeney allowed that bald man to walk past me to enter City Hall's grounds in

flagrant violation of my Fourteenth Amendment due process and equal protection rights as well

as my First Amendment rights while the Mayor was still in that SUV. I was there then to meet

with people who worked for the City Council to check on the status of a video recording that was

required by law to be available to the public on the Internet by 3/28/19 of testimony that I gave

on 3/25/19 to the City Council's Committee on General Welfare that illegally still wasn't

available on the Internet on 4/8/19. The preceding screenshot corresponds to the elapsed time of

30 minutes and 40 seconds within the video recording that is available on the Internet at

https://drive.google.com/open?id=1T8zj7ZgSg4M4DxE7jsBVxLpkLxP_ZSsg.

209.    The next screenshot is from the elapsed time of 32 minutes and 52 seconds in that video as the whistleblower news censor in journalism named Graham Rayman that I discussed earlier in this complaint is shown approaching the Park Row exit for City Hall as he walked next to NYPD Officer Feeney.



210.    The next screenshot is from the elapsed time of 32 minutes and 58 seconds in that video as I talked with Mr. Rayman by that exit and apprised him that I was illegally being prevented by NYPD Officer Feeney from accessing City Hall's grounds. Although Mr. Rayman then questioned Mr. Feeney about that and Mr. Feeney didn't give him a valid explanation for why I was being illegally prevented from accessing City Hall's grounds, Mr. Rayman didn't report anything about that in the news in spite of the fact that it was actually part of a continuation of a longstanding pattern of violating my constitutional rights at public forums by members of the NYPD that I had been in contact with him about in June of 2017 and fully substantiated back then as well.



211.    The next screenshot is from that same video at a point in it that was shortly after I

finished my conversation with Mr. Rayman as I was then permitted by NYPD Officer Feeney to

enter City Hall. This screenshot is a magnified version of what appears in that video then and

sufficiently confirms that if the NYPD had provided me a video recording that was recorded on

3/18/19 by the same video security camera that recorded this video on 4/8/19, I could have

similarly thoroughly inspected what was shown in it and magnified that video to gather further

proof that Defendant Klein illegally assaulted me on 3/18/19 as he illegally coerced me to leave

City Hall's grounds then. This is due to the vantage point that corresponds to the camera angle at

which that video security camera was then installed.



212.    The discussion that follows concerns what appears in 3/18/19 aerial video to which I referred earlier in this complaint. The next screenshot is from the elapsed time of 56 minutes and 39 seconds as I played back that video while magnifying what appeared in it. That screenshot shows Defendant NYPD John Doe2 3/18/19 in the upper-left area and Defendant Dwyer in the lower-right corner as they approached where I was then being illegally coerced to leave City Hall's grounds without having tried to intervene on my behalf to stop that and uphold my constitutional rights to have then remained on City Hall's grounds in the area where they then were largely to try to have an opportunity to apprise journalists and members of the City Council about the illegal acts and omissions that the Mayor and members of the NYPD were perpetrating against me then at City Hall and perpetrated earlier on that date at City Hall.



213.    The discussion that follows concerns what appears in 3/18/19 aerial video to which I

referred earlier in this complaint. The next screenshot is from the elapsed time of 56 minutes and

39 seconds as I played back that video while magnifying what appeared in it. That screenshot

shows Defendant NYPD John Doe2 3/18/19 in the upper-left area and Defendant Dwyer in the

lower-right corner as they approached where I was then being illegally coerced to leave City Hall's grounds without having tried to intervene on my behalf to stop that and uphold my constitutional rights to have then remained on City Hall's grounds in the area where they then were largely to try to have an opportunity to apprise journalists and members of the City Council about the illegal acts and omissions that the Mayor and members of the NYPD were perpetrating against me then at City Hall and perpetrated earlier on that date at City Hall.

214.     The next screenshot is from the elapsed time of 56 minutes and 39 seconds in the video that I discussed earlier in this complaint and is referred to as "NYPD 3/18/19 video2". As a reminder, a copy of that video is available on the Internet at

https://drive.google.com/open?id=1IKBHpLvN7zSX6RLwaBiQ5G6a1JKokErR. I'm shown on the far left in this screenshot as I wore a white sweater and was recording a video with my cell phone of Defendant Klein as he stood in front of me and was coercing me with other members of the NYPD to leave City Hall's property immediately. Defendant Gungor appears in the upper-right corner of this screenshot as he stood in front of a SUV.



215.     The preceding screenshot clearly illustrates the fact that it would have been much easier for me to better substantiate my claims against Defendant Klein for having illegally assaulted me on 3/18/19 by pushing me as he illegally coerced me to leave City Hall's property if the NYPD had complied with its legal duty to have provided me the entirety of the video recordings that I

ordered it to provide to me on 3/18/19.  Defendant Zappia was also in the immediate vicinity of where Defendant Klein and other members of the NYPD were coercing me to leave City Hall's property on 3/18/19 as Defendant Zappia illegally didn't intervene on my behalf in regards to that.

216.    Prior to commencing this action to pursue entirely valid claims against the defendants for the illegal acts and omissions that they committed against me that pertain to my 3/18/19 claims, I promptly reported entirely valid complaints against the Mayor, NYPD John Doe1 3/18/19, and Defendants Gungor and Klein in response to those illegal acts and omissions to the NYAG, DOJ, CCRB, DOI, and members of the City Council within one week thereafter and a complaint about that to the NYPD's IAB on 3/30/19. To submit those complaints, I visited the offices of the NYAG, DOJ, and DOI during that period, sent an e-mail about that to the CCRB and IAB, and testified on 3/19/19 and 3/26/19 to Donovan Richards and Ritchie Torres on those dates during public hearings that they conducted as the chairmen of the City Council's Committees on **a)** Public Safety and **b)** Oversight.

217.    However, I have no reason to believe that any of the government bodies and government officials to whom I reported those entirely valid complaints thereafter took any appropriate corrective action about that matter. I instead have every to believe that those illegal acts and omissions that were committed against me were condoned and adopted to a degree by at least 3 of the government officials to whom I directly and indirectly reported those valid complaints.

218.    The following is a link to the video recording that the City Council arranged to be recorded of the public hearing that the Donovan Richards conducted on 3/19/19 as the chairman of the City Council's Committee on Public Safety:

https://councilnyc.viebit.com/player.php?hash=xCbxmcRFE4wC

219.    As I testified in that hearing at the elapsed time of 3 hours, 41 minutes, and 25 seconds, I apprised Mr. Richards, everyone who attended that hearing, and all who watched the video recording of that hearing of the illegal acts and omissions that the Mayor and members of NYPD committed against me on 3/18/19 as I played back a video recording in conjunction with my testimony that showed how those illegal acts and omissions occurred. While I testified in that hearing, I calmly expressed an objection at the elapsed time of 3 hours, 41 minutes, and 5 seconds to New York City Councilman Rory Lancman as he sat near where I testified about the fact that he was flagrantly violating my due process rights by playing around with his cell phone instead of paying proper attention to my testimony in violation of rules of the City Council that I believe exist and prohibit its members from using such electronic devices while they attend public hearings in which members of the public testify as they testify in them. In response, Mr. Lancman didn't deny that he was then using such a device and irrelevantly stated that he was multitasking. That occurred before Mr. Lancman presided over an additional City Council public hearing that was conducted later that same day for which I had registered to testify in before Mr. Lancman illegally didn't allow me to do so in flagrant violation of my First Amendment and Fourteenth Amendment rights while that hearing was also recorded on video as a result of arrangements that the City Council made. Mr. Lancman instead ended that hearing before I could testify in it as I attended that hearing and conducted myself in an entirely lawful manner while waiting for a chance to testify in it. That public hearing was conducted by the City Council's Committee on the Justice System for which Mr. Lancman is the chairman. The video recording that the City Council arranged to be recorded of that hearing is available on the Internet at https://councilnyc.viebit.com/player.php?hash=IIBAIGAerS78.

220.    The following is a link to the video recording that the City Council arranged to be

recorded of the public hearing that the Ritchie Torres conducted on 3/26/19 as the chairman of

the City Council's Committee on Oversight:

https://councilnyc.viebit.com/player.php?hash=PVKea3TdHUTv

221.    As I testified in that hearing at the elapsed time of 41 minutes, and 37 seconds, I apprised

Mr. Torres, everyone who attended that hearing, and all who watched the video recording of that

hearing of the illegal acts and omissions that the Mayor and members of NYPD committed

against me on 3/18/19 as I played back a video recording in conjunction with my testimony that

showed how those illegal acts and omissions occurred.  Also, as I testified in that hearing, I

reminded Mr. Torres about the conversation that he and I had on 3/18/19 near the Broadway

entrance of City Hall that concerned the very same illegal acts and omissions that were

committed on that date about which I then testified to him on 3/26/19. I also pointed out to Mr.

Torres during that 3/26/19 hearing that the 2nd Circuit had conducted an oral arguments hearing

earlier that day in the landmark case of _Knight First Amendment Inst. Columbia v. Trump_, 928

F.3d 226 (2d Cir. 2019) that concerned viewpoint discrimination by government officials as that

pertained to public forums.

222.    Prior to testifying to Mr. Torres in that 3/26/19 City Council public hearing, I also

testified to him on 3/26/18 while he was the chairman of that same committee. When I testified

to him on 3/26/18, I apprised him and New York City Councilman Kalman Yeger of the fact that

I was repeatedly and illegally prevented from attending public town hall meetings and public

resource fair meetings that the Mayor conducted in 2017 as he ran for re-election. I was referring

to that as I told Mr. Yeger and Mr. Torres at the elapsed time of 2 hours, 41 minutes, and 15

seconds in the video recording that the City Council arranged to be recorded of that hearing that

is available at https://councilnyc.viebit.com/player.php?hash=1diWh0EurD71 that that illegal

practice of barring me from such public forums while I was a whistleblower and sought to

engage in whistleblowing while lawfully attending them constituted voter suppression and voter

fraud for the Mayor's benefit. It's worthwhile to point out that instead of having taken

appropriate corrective action in response to my conversations with him on 3/26/18, 3/18/19, and

3/26/19 about the illegal acts and omissions that were committed against me at public forums

that the Mayor conducted, Mr. Torres illegally and flagrantly subjected me to First Amendment

retaliation, viewpoint discrimination, standardless discretion, abuse of process, and violation of

my due process and equal protection rights as he abruptly terminated my ability to testify on

11/13/19 in the public hearing that he conducted for the City Council's Oversight committee

while that hearing was recorded on video as a result of arrangements that the City Council

conducted that is available on the Internet at

https://councilnyc.viebit.com/player.php?hash=mrXTN2FyDz20. My testimony in that hearing

begins at the elapsed time of roughly 36 minutes and 56 seconds in that video recording. That

video recording confirms that I lawfully criticized Mr. Torres about dishonesty by him in what I

intended to be brief preliminary remarks that I would make before quickly moving to the

remainder of my testimony that was directly related to the subject matter of that hearing. Mr.

Torres promptly interrupted my testimony after just a few seconds and abruptly terminated that

hearing shortly after he blatantly lied to me by telling me that I didn't have any right to testify to

the City Council and fraudulently suggested that I had violated some rule that actually didn't

exist. That occurred after I learned that a Twitter account that is registered to him was blocking a

Twitter account that is registered to me in violation of *Knight First Amendment Inst. Columbia v.*

*Trump*, 928 F.3d 226 (2d Cir. 2019).

223.    Prior to Letitia James becoming the New York State Attorney General, all of the

following is entirely true, accurate, and relevant:

a.  I talked with her on 10/26/17 at the site of the public town hall meeting that the Mayor conducted in Brooklyn on that date as she arrived at that site before she entered the building in which that town hall was conducted. At that time, I was being illegally prevented from attending that town hall by members of the NYPD and Mayors' staff in spite of the fact that I was conducting myself in an entirely lawful manner in stark contrast to them while that was occurring in full view of many witnesses that consisted of other members of the public who were waiting to be granted access to that town hall. I told Ms. James then while she was then New York City's Public Advocate that I was being illegally prevented from attending that town hall meeting. She told me then in response that she would look into that matter. She then left and entered the building that hosted that public forum. I never heard from her again nor a member of her staff to receive an update about anything that she may have possibly learned about my illegal exclusion from that town hall. That fact leads me to believe that she lied to my face on 10/26/17 and never followed-up about that matter.

b.  Ms. James attended the public town hall meeting that the Mayor conducted on 3/15/17 during which I talked with the Mayor and engaged in protected whistleblowing that was largely against Mr. Banks and HRA's business partners. At the elapsed time of 28 seconds in the video recording that the Mayor's office arranged to be recorded of that town hall meeting that is available on the Internet at https://www.youtube.com/watch?v=i5LjWB2d2vc, the Mayor is shown making a hand gesture and facial expression that was directed at Ms. James as she sat

among the audience as he entered the room in which that town hall was conducted. In short, that hand gesture and facial expression is widely known to represent the act of blowing a kiss to someone that Ms. James is shown accepting in that video.

c.  On 3/18/18, I recorded a short video at 2:51 pm that is available on the Internet at https://drive.google.com/file/d/1fFgHFzfihrHPDoSQVU6toVXyYq-8ipmF/view?usp=sharing of Ms. James as she was interviewed by someone in Foley Square in Manhattan shortly before I then talked with her and legally recorded an audio recording of that conversation at 2:51 pm as well. That audio recording is available on the Internet at

https://drive.google.com/file/d/1fFgHFzfihrHPDoSQVU6toVXyYq-8ipmF/view?usp=sharing. That audio recording confirms that I reminded her at the elapsed time of 12 seconds of the prior meeting she and I had on 10/26/17 at the site of the Mayor's town hall meeting on that date and the fact that she told me then that she would look into the matter of why I was being illegally barred from that public forum. She told me on 3/18/18 that she didn't recall my conversation with her on 10/26/17. At the elapsed time of 44 seconds in that 3/18/18 audio recording, Ms. James is heard telling me that she would follow-up about entirely valid complaints that I reported to her against Defendant Redmond for violating my civil rights and those of others as I pointed out to her during that conversation that Mr. Redmond was then the head of the Mayor's NYPD security detail. Hindsight strongly suggests that Ms. James lied to my face on 3/18/18 by claiming that she would follow-up about that.

d.   On 5/21/18, I recorded a video recording at 12:51 pm that is available on the

Internet at

https://drive.google.com/file/d/12d_ISpRFGIkQ_ljY64Meo7uDR2tAVgkS/view?

usp=sharing as I coincidentally crossed paths with Ms. James again while she was

walking with New York City Councilman Corey Johnson near her office by City

Hall while she continued to be New York City's Public Advocate. The next

screenshot is from the elapsed time of 39 seconds as I reminded her that she told

me on 3/18/18 that she would look into my complaints against Defendant

Redmond as I then sought to try to get an update from her about that. In short, she

essentially ignored me then and walked away without providing me any update

that left me with the firm belief that she is totally untrustworthy and doesn't mind

criminal acts by the NYPD and Mayor's staff that violate the civil rights of New

Yorkers at public forums.



e.      On 6/17/20 and 6/18/20, Ms. James conducted public hearings remotely to allow

New Yorkers to testify in them about terrorism by members of the NYPD in

response to terrorism that that committed since May of 2020 in relation to

widespread protests across New York City. Although I was among those who

registered to testify in those hearings in accordance with my rights pursuant to the

First Amendment and Fourteenth Amendment, I was illegally prevented from

doing so. Instead, the video recordings that the New York State Attorney

General's office arranged to be recorded of those hearings confirm that Ms. James

used part of those hearings to talk to someone who testified in them about dogs

that he was taking care of in spite of the fact that that was totally unrelated to the

subject matter of those hearings and the length of time that she talked with that

person about that should have instead been allocated to me and others who had

relevant testimony to provide during those hearings.

224.    To close out this section, it is worth pointing out that the New York City 2017 general

elections were held in November of 2017 and likely heavily factored into the decisions that were

made to commit the illegal acts and omissions against me on 10/12/17, 10/18/17, and 10/25/17 in

relation to my efforts to have lawfully attended the public forums that this complaint concerns to

minimize, marginalize, and murder my First Amendment and Fourteenth Amendment right to

lawfully assassinate the character of the Mayor, members of his NYPD security detail, Mr.

Banks, other personnel of HRA, and others as they ran for re-election and otherwise stood to

benefit from Bill de Blasio being re-elected as New York City's Mayor in order to allow New

Yorkers to make better informed and independent decisions about firing Bill de Blasio and his

administration through the power of their votes and word-of-mouth advertising that they could spread for that endeavor. The timing of the illegal acts that continued to be perpetrated against me on 10/12/17, 10/18/17, and 10/25/17 truly matters in that sense. Also, the illegal acts and omissions that were committed against me on 3/18/19 occurred as Bill de Blasio was making arrangements to compete in the U.S. presidential election before he hilariously crashed and burned in that pursuit because the public proved decisively that it just isn't as stupid as he likely thought it was and never allowed him to have much support in that naked publicity stunt by him.

## CAUSES OF ACTION

1.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

**CLAIM #1:**   Violations of the First Amendment right of access to a public forum, to protest in a public forum, to record audio and video recordings in a public forum, to take photographs in a public forum, to receive information in a public forum, to have the opportunity to talk with journalists in a public forum, to distribute whistleblowing literature in a public forum, to engage in lawful assembly in a public forum, to engage in freedom of expression in a public forum, to otherwise engage in whistleblowing and criticism of government officials in a public forum, to engage in expressive association, and to petition government officials in a public forum for redress of grievances

**A.  For my 10/12/17 claims:**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.    I also incorporate by reference as though fully set forth herein the decision that was

issued on 5/19/20 in _Dunn v. City of Fort Valley,_ No. 19-cv-287(TES) (M.D. Ga. May 19, 2020)

due to relevant findings it contains about First Amendment rights in public forums, supervisory

liability, and other pertinent things.

3.       My right to lawfully protest in a public forum in a manner that doesn't disrupt how that

public forum is conducted while valid time, place, and manner restrictions do not exist to

prohibit such protest in a public forum was acknowledged the following remark that Judge

Schofield expressed in the decision that she issued in _Gonzalez v. City of New York_, No. 14 Civ.

7721 (LGS) (S.D.N.Y. Sept. 29, 2016):

> "Two branches of First Amendment claims are relevant to the present case: (a)
> interference with the right to protest in a public forum and (b) retaliation for exercising
> First Amendment rights."

4.       More importantly, my right to lawfully protest in a public forum in a manner that doesn't

disrupt how that public forum is conducted while valid time, place, and manner restrictions do

not exist to prohibit such protest in a public forum was confirmed by the following excerpt from

_Occupy Nashville v. Haslam_, 949 F. Supp. 2d 777 (M.D. Tenn. 2013):

> "a state may not restrict First Amendment rights, absent valid time, place, or manner
> restriction. _See Dean,_ 354 F.3d at 551; _Galvin v. Hay,_ 374 F.3d 739, 751 (9th
> Cir.2004) (**"As speakers may generally control the presentation of their message by
> choosing a location for its importance to the meaning of their speech, speakers may
> ordinarily— absent a valid time, place and manner restriction—do so in a public
> forum.");** _**Childs v. Dekalb Cnty., Ga.,**_ **286 Fed.Appx. 687, 693-94 (11th
> Cir.2008)** (denying qualified immunity and stating that, based on Supreme Court
> precedent, "police officers have known for decades that protestors present on public
> property have a First Amendment right to peacefully express their view, in the absence of
> narrowly tailored ordinances restricting the time, place, or manner of the speech")."

> (boldface formatting added for emphasis)

5.       Due to the facts and circumstances that I have discussed at length and with sufficient

specificity in this pleading, I have decisively established that the Defendants identified above

that this claim concerns were personally involved in having willfully, callously, and wantonly

illegally violated my First Amendment rights in relation to my efforts to have attended the

Mayor's 10/12/17 town hall.

6.      I have further established that the defendants that this claim concerns violated my First

Amendment right of access to public records that were made available in the building that hosted

the Mayor's 10/12/17 town hall that were made available strictly to the members of the public

who were permitted to attend that town hall.

7.      Ms. Ramos is also liable for this cause of action due to her role as co-conspirator in that

conspiracy as she illegally deceived Ms. Durkin on 6/28/17 and 6/29/17 in e-mail messages that

she sent to Ms. Durkin about me and the illegal acts that continued to be illegally committed

against me on 10/12/17 and prevented me from being able to lawfully attend the Mayor's

10/12/17 town hall. Ms. Ramos sent those e-mail messages to Ms. Durkin about me in

furtherance of a fraudulent scheme to try to illegally cover-up such illegal acts and omissions

that were committed against me. Relevant findings that support this assertion about Ms. Ramos'

liability exist in the decisions that were issued in *US v. Blackmon*, 839 F.2d 900 (2d Cir. 1988),

*Escalera v. Samaritan Village Men's Shelter*, No. 17-cv-4691 (CM) (S.D.N.Y. Sept. 27, 2019),

*US v. Basey*, 816 F.2d 980 (5th Cir. 1987), *Vann v. City of New York*, 72 F.3d 1040 (2d Cir.

1995), *Pangburn v. Culbertson*, 200 F.3d 65 (2d Cir. 1999), and *Dunn v. City of Fort Valley,* No.

19-cv-287(TES) (M.D. Ga. May 19, 2020).

   **B.   For my 10/18/17 claims:**

   (Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1
   10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17,
   NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17,
   NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de
   Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

   C.   **For my 10/25/17 claims:**

      (Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD
      John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD
      John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD
      John Doe6 10/25/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.   I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set

   forth herein.

2.   The defendants that this claim concerns are liable for it due to the information that I

   presented in this complaint.

   D.   **For my 3/18/19 claims:**

      (Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John
      Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4
      3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, de Blasio, O'Neill,
      Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**CLAIM #2:**      **First Amendment Retaliation, Viewpoint Discrimination,**
                   **and Standardless Discretion in Denying Access to a Public Forum**

   A.   **For my 10/12/17 claims:**

      (Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason,

Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

## B. <u>For my 10/18/17 claims</u>:

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1 10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

## C. <u>For my 10/25/17 claims</u>:

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**D.** **For my 3/18/19 claims:**

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #3:** **Violations of the Fourth Amendment**

**A.** **For my 10/12/17 claims:**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**B.** **For my 10/18/17 claims:**

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1 10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

### C.  <u>For my 10/25/17 claims:</u>

   (Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD
   John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD
   John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD
   John Doe6 10/25/17**,** Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

### D.  <u>For my 3/18/19 claims:</u>

   (Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John
   Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4
   3/18/19, NYPD John Doe5 3/18/19, Dwyer, Carrion, Ramos, de Blasio, O'Neill, Vance,
   Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

### CLAIM #4:                   <u>Violations of the Fifth Amendment</u>

### A.  <u>For my 10/12/17 claims:</u>

   (Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason,
   Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD

John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD
John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD
Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio,
O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**B.  For my 10/18/17 claims:**

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1
10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17,
NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17,
NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de
Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**C.  For my 10/25/17 claims:**

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD
John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD
John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD
John Doe6 10/25/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**D. For my 3/18/19 claims:**

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #5:**               **Violations of the Fourteenth Amendment**
                            **Substantive Due Process Rights**

**A. For my 10/12/17 claims:**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**B. For my 10/18/17 claims:**

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1 10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### C. For my 10/25/17 claims:

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### D. For my 3/18/19 claims:

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### CLAIM #6:              Violations of Procedural Due Process

### A. For my 10/12/17 claims:

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason,

Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### B. For my 10/18/17 claims:

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1 10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### C. For my 10/25/17 claims:

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**D.  For my 3/18/19 claims:**

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.       I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.       The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**CLAIM #7:**                              **Violations of the Fourteenth Amendment**
                                          **Equal Protection Rights**

**A.  For my 10/12/17 claims:**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.       I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.       The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**B.  For my 10/18/17 claims:**

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1 10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**C.  For my 10/25/17 claims:**

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17**,** Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**D.  For my 3/18/19 claims:**

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #8:              Violations of the Fourteenth Amendment
                         Prohibitions Against Selective-Enforcement**

**A.  For my 10/12/17 claims:**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### B.  For my 10/18/17 claims:

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1 10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### C.  For my 10/25/17 claims:

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

### D.  For my 3/18/19 claims:

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### CLAIM #9:                Failure to Intervene in Violation of the Fourteenth Amendment

### A.  For my 10/12/17 claims:

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### B.  For my 10/18/17 claims:

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1 10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de

Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris**)**

1.  I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.  The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**C.  For my 10/25/17 claims:**

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17**,** Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.  I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.  The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**D.  For my 3/18/19 claims:**

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.  I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.  The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #10:**                      **Failure to Train and Supervise**

**A.  For my 10/12/17 claims:**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**B.  For my 10/18/17 claims:**

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1 10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Redmond, Carrion, Ramos, Levin, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**C.  For my 10/25/17 claims:**

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

### D. **For my 3/18/19 claims:**

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Redmond, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

## CLAIM #11:        **Violation of the New York State's Open Meetings Law**

### A. **For my 10/12/17 claims:**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### B. **For my 10/18/17 claims:**

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1 10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

   **C.  For my 10/25/17 claims:**

   (Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

   **D.  For my 3/18/19 claims:**

   (Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #12:**                               **Abuse of Process**

   **A.  For my 10/12/17 claims:**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.    The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### B.  <u>For my 10/18/17 claims:</u>

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1 10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.    The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### C.  <u>For my 10/25/17 claims:</u>

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.    The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

### D.  **For my 3/18/19 claims:**

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### CLAIM #13:                          **Deliberate Indifference**

### A.  **For my 10/12/17 claims:**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### B.  **For my 10/18/17 claims:**

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1 10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de

Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris**)**

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

   C.  **For my 10/25/17 claims:**

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17**,** Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

   D.  **For my 3/18/19 claims:**

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #14:      Fraudulent Misrepresentation and Fraudulent Inducement**

   A.  **For my 10/12/17 claims:**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**B.  For my 10/18/17 claims:**

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1 10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**C.  For my 10/25/17 claims:**

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.  I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set

forth herein.

2.  The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

### D.  <u>For my 3/18/19 claims</u>:

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

### CLAIM #15:      <u>Violation of New York State General Business Law 349</u>

### A.  <u>For my 10/12/17 claims</u>:

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

### B.  <u>For my 10/18/17 claims</u>:

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1 10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### C.  For my 10/25/17 claims:

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### D.  For my 3/18/19 claims:

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

## CLAIM #16:                                    Negligence

### A.  For my 10/12/17 claims:

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### B.  For my 10/18/17 claims:

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1 10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### C.  For my 10/25/17 claims:

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

### D. For my 3/18/19 claims:

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### CLAIM #17:                    Municipal Liability

### (Against Defendant City of New York)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      Defendant City of New York is liable for this claim due to the information that I presented in this complaint.

### CLAIM #18:      Intentional and Negligent Infliction of Emotional Distress

### A. For my 10/12/17 claims:

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**B.  <u>For my 10/18/17 claims</u>:**

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1
10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17,
NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17,
NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de
Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**C.  <u>For my 10/25/17 claims</u>:**

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD
John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD
John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD
John Doe6 10/25/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**D.  <u>For my 3/18/19 claims</u>:**

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John
Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4
3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio,
O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**CLAIM #19:**              **Conspiracy to Violate Civil Rights and**
                           **Cover-Up Such Abuse**

**A.  For my 10/12/17 claims:**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason,
Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD
John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD
John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD
Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio,
O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**B.  For my 10/18/17 claims:**

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1
10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17,
NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17,
NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de
Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**C.  For my 10/25/17 claims:**

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17**,** Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### D. <u>For my 3/18/19 claims</u>:

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

### CLAIM #20:                          <u>Unjust Enrichment</u>

### A. <u>For my 10/12/17 claims</u>:

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**B.  For my 10/18/17 claims:**

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1
10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17,
NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17,
NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de
Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**C.  For my 10/25/17 claims:**

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD
John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD
John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD
John Doe6 10/25/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**D.  For my 3/18/19 claims:**

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John
Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4
3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio,
O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**CLAIM #21:**                          **Public and Private Nuisance**

**A.  For my 10/12/17 claims:**

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason,
Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD
John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD
John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD
Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio,
O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**B.  For my 10/18/17 claims:**

(Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1
10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17,
NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17,
NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de
Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.


**C.  For my 10/25/17 claims:**

(Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.


### D.  For my 3/18/19 claims:

(Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.


### CLAIM #22:      Violations of the Hatch Act (see 5 U.S.C. §1502(a)(1))

### A.  For my 10/12/17 claims:

(Against Defendants City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Redmond, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**B.  <u>For my 10/18/17 claims</u>:**

(*Against Defendants City of New York, Atcheson, Ringel, Ridener, Stribula, Jane Doe1 10/18/17, Ioveno, Santana, NYPD John Doe4 10/12/17, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Carrion, Ramos, Levin, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris*)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**C.  <u>For my 10/25/17 claims</u>:**

(*Against Defendants City of New York, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe4 10/12/17, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17*, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr., Shorris)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**D.  <u>For my 3/18/19 claims</u>:**

(*Against Defendants City of New York, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, O'Neill, Vance, Jr., Byrne, Jr.*)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.    The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #23:**                                        **Assault**

    **A. For my 10/25/17 claims:**

(Against Defendant Nieves)

1.  I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.    Defendant Nieves is liable for this claim due to the information that I presented in this complaint.

**CLAIM #24:**               **Spoliation of Evidence & Violation of FOIL**

    **A. For my 3/18/19 claims:**

(Against Defendants Mazur and Halk)

1.  I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.    The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**DEMAND FOR A JURY TRIAL**

1.    I demand a trial by jury in this action on each and every one of my damage claims.

**PRAYER FOR RELIEF**

WHEREFORE, this Court should accept jurisdiction over this entire matter and grant me additional relief by:

1.     Causing this Court to exercise supplemental jurisdiction over K1, K2, K3, K4, K5, and K6 before then consolidating them with this action that will result in having this action to control how all of that litigation is conducted. This request stems from a common nucleus of operative fact and is pursuant to FRCP Rule 42.

2.     Empaneling a jury to hear and decide this case strictly on its merits.

3.     Granting me the following additional relief against the defendants individually and jointly:

a.     Compensation for violations of my constitutional rights, defamation, abuse of process, nuisance, unjust enrichment, wire fraud, and fraudulent misrepresentations as well as pain, suffering, mental anguish, and humiliation that I experienced due to the illegal acts and omissions by the defendants.

b.     Declaratory, injunctive, and equitable relief through the issuance of an order that voids the results of the 2017 New York City government elections for the jobs of New York City Mayor, New York City Councilmember, Bronx District Attorney, Queens Borough President, New York City Comptroller, and New York City Public Advocate primarily because it is reasonable to believe that results of those elections were materially tainted by voter fraud, voter suppression, and whistleblower retaliation in violation of 5 U.S.C. §1502(a)(1) that occurred partly by illegally:

i.     Preventing whistleblowers from attending public forums that the Mayor conducted with them and were partly used as campaign events to attract various types of support from voters and prospective voters.

ii.     Segregating and discriminating against whistleblowers at such public forums.

c.     Declaratory, injunctive, and equitable relief in accordance with findings expressed in

_Capitol Records, Inc. v. Thomas-Rasset_, 692 F.3d 899 (8th Cir. 2012) through the issuance of an order that enjoins Defendant City's personnel and agencies from continuing to commit illegal acts and omissions against me that violate my rights.

d.      Further declaratory, injunctive, and equitable relief through the immediate issuance of an order that:

i.      Prohibits all members of the NYPD from deliberately making any physical contact with me while I am conducting myself in a lawful manner.

ii.     Requires all members of the Mayor's NYPD security detail to not come within 10 feet from me while they are on-duty as members of the Mayor's NYPD security detail and I am conducting myself in a lawful manner, unless I explicitly grant consent for that to occur.

iii.    Requires all members of the Mayor's CAU to not come within 10 feet from me while I am conducting myself in a lawful manner and they are on-duty as members of the Mayor's CAU, unless I explicitly grant consent for that to occur.

iv.     Prohibits Defendant City's personnel from illegally interfering with my ability to attend public forums that the Mayor may conduct from within the room in which he does so as he does so.

v.      Prohibits Defendant City's personnel from illegally interfering with the rights that other people have to lawfully attend public forums that the Mayor conducts that may allow others and I to exercise our First Amendment right to observe, hear, and enjoy lawful speech and other expression that such people may engage in to criticize the Mayor and others during them.

vi.     Prohibits Defendant City's personnel from illegally interfering with the First

Amendment and Fifth Amendment rights that people have to **a)** bring literature and signs with them into rooms in which the Mayor conducts public forums, **b)** lawfully distribute such literature during those meetings without disrupting those meetings, **c)** distribute such literature and otherwise show it and signs in the rooms in which the Mayor conducts such meetings before they begin and after they end, and **d)** Keep such literature and signs with them as the Mayor conducts such public forums.

vii.   Requires Defendant City to grant access to public forums that the Mayor conducts inside of buildings based on the order in which members of the public line up directly outside of those buildings shortly before those meetings begin to be granted access to the room in which the Mayor conducts such public forums on those dates.

viii.   Prohibits Defendant City from allowing its personnel to prevent members of the public from attending public forums that the Mayor conducts inside of buildings from within the rooms in which he does so while sufficient seating is available in those rooms.

ix.   Orders Defendant City to immediately cause all members of the NYPD who are present in areas where the Mayor conducts public town hall meetings, public resource meetings, public hearings, and press conferences that the public may observe to wear body-cameras that are always on and always recording both audio and video recordings.

x.   Orders Defendant City of New York to provide all audio and video recordings from such body-cameras in unedited and non-redacted form along with their audit

trail records to allow for an independent forensic analysis within 24 hours of any adverse encounter that occurs between a) members of the public and b) the members of the NYPD wearing those body-cameras.

xi.  Orders Defendant City to immediately a) cause clear audio recordings to be recorded of all verbal communications that members of the NYPD have while they are on-duty as members of the NYPD and present in areas where the Mayor conducts public town hall meetings, public resource meetings, public hearings, and press conferences that the public may observe.

xii.  Orders Defendant City of New York to provide all such audio recordings in unedited and non-redacted form that includes information that identifies the date and time when those recordings began to be recorded as well as the speakers heard in those communications that are personnel of Defendant City within 24 hours of any adverse encounter that occurs between **a)** members of the public and **b)** the members of the NYPD heard in those audio recordings while they are being recorded.

xiii.  Orders Defendant City to immediately cause all other electronic communications (such as e-mail messages, cell phone text messages, and encrypted communications) that are engaged in by those who are part of the Mayor's NYPD security detail to be recorded and preserved for possible use in litigation by people that they commit illegal acts and omissions against.

xiv.  Orders Defendant City to provide all such electronic communications within 24 hours in unedited and non-redacted form that includes information that identifies the date and time when those communications occurred and the identities of those

who engaged in them to members of the public who have adverse encounters with members of the Mayor's NYPD security detail to the extent that those communications concern those adverse encounters.

xv.   Orders Defendant City to provide me copies of all communications that its personnel have had about me since 2/1/16 in unedited and non-redacted form. This includes, but is not limited to all of the following:

1)   All communications that have taken place by using personally-owned devices, personal e-mail accounts, personal encrypted messaging accounts, and personal cell phone plans as well as by using computers and other devices that are owned or leased by Defendant City and e-mail, cell phone, and encrypted messaging accounts that are administered and/or controlled by Defendant City.

e.   Further declaratory, injunctive, and equitable relief through the immediate issuance of an order that:

i.   Orders Defendant City to immediately cause the CCRB and DOI to be provided all video recordings within 24 hours after a complaint is reported to them about illegal acts and omissions that are committed by members of the NYPD and other personnel of Defendant City that are recorded by video security cameras that Defendant City controls. This includes, but is not limited to illegal acts that are related to public forums that the Mayor conducts and occur on the dates and at the locations where the Mayor conducts them.

ii.   Further orders Defendant City to make those video recordings available within 24

hours in unedited and non-redacted form to those who report such illegal acts and omissions to the CCRB and DOI.

iii.   Orders that the following Defendants are also required to be fired at the earliest possible instead of practical or convenient time from the jobs that they hold with Defendant City of New York largely pursuant to Section 1116 of the New York City Charter in response to the illegal acts and omissions that they committed against me in relation to my efforts to have lawfully attended the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, **d)** 3/18/19 public hearing and that they are prohibited from being employed by Defendant City again:

> Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Atcheson, Ringel, Ridener, Jane Doe1 10/18/17, Ioveno, Santana, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Carrion, Ramos, de Blasio, Shorris, O'Neill, Vance, Jr., Byrne, Jr.

iv.   Orders the following defendants to immediately and fully reimburse the City of New York with pre-judgment and post-judgment interest for the total value of pay and benefits that they received that directly correspond to the length of time during which they were involved in the illegal acts and omissions that were committed against me in relation to my efforts to have lawfully attended the

Mayor' **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair,

and **d)** 3/18/19 public hearing:

> Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri, Suzuki,
> NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John
> Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17,
> NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane
> Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17,
> Atcheson, Ringel, Ridener, Jane Doe1 10/18/17, Ioveno, Santana, NYPD
> John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3
> 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD
> John Doe6 10/18/17, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John
> Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17,
> NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John
> Doe6 10/25/17, Gungor, Klein, Zappia, Barker, NYPD John Doe1
> 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD
> John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Carrion, Ramos,
> de Blasio, Shorris, O'Neill, Vance, Jr., Byrne, Jr.

v.    Restrains Defendant City's personnel and agencies from continuing to commit

illegal acts and omissions against me that violate my rights, especially in all areas

that are public forums.

vi.    Restrains the City of New York from allowing the NYPD to provide more

security and law-enforcement that would benefit members of the press in public

forums and other public areas than what members of the NYPD extended to

Plaintiff on 10/12/17, 10/18/17, 10/25/17, and 3/18/19 in relation to Plaintiff's

efforts to attend public town hall meetings, resource fair meetings, and public

hearings that the Mayor conducted on those dates and to otherwise lawfully

assemble inside of City Hall and on its property on 3/18/19 on the grounds that

such greater security and law-enforcement would violate Plaintiff's Fourteenth

Amendment rights that pertain to selective-enforcement, equal protection, due

process, and discrimination.

vii.  Declares that the ban that the Mayor announced that prohibits large gatherings of people in New York City and protests from being conducted is overly broad, pretextual, void, and unenforceable largely because it impermissibly violates core First Amendment rights as well as Fifth Amendment and Fourteenth Amendment rights that pertain to due process, selective-enforcement, equal protection, and liberty.

viii.   Further declares that though it may possibly be advisable to wear a face mask in New York City, no one is required to do so partly because **a)** members of the NYPD are not themselves wearing face masks outside and **b)** doing so impedes the flow of oxygen to healthy people and impermissibly infringes upon the First Amendment rights that people have to engage in freedom of expression, such as by having people see them smiling, expressing affection by kissing, being able to yawn without having to wear a face mask, and having other facial expressions that they make seen by others. Although it is potentially dangerous to one's health to engage in a wide variety of other activities that include driving a car because of the possibility that a drunk driver may pass by and having a drink in a bar because there is a possibility to breathe in second-hand smoke, bans on driving and visiting bars have not been imposed due to such risk factors.

ix.  Similarly declares that the social-distancing restrictions in New York State are overly broad, void, and unenforceable for the same reasons just discussed and declares that those restrictions have been selectively-enforced by the NYPD in violation of the Fourteenth Amendment.

f.  Declaratory relief by declaring that the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17

town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing were public forums that were subject to New York State's Open Meetings Law and that all actions that were taken in relation to those meetings are void pursuant to Section 107 of New York State's Public Officer Law because those public forums were conducted in violation of New York State's Open Meetings Law.

g. Injunctive and equitable relief by ordering Defendant City to immediately provide me the following in unedited and non-redacted form:

 i. Copies of all video recordings and photographs that were recorded and otherwise taken by Defendant City's personnel inside of the buildings that hosted the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing between the time when **a)** the first member of the public entered those buildings on the dates when those public forums were conducted in relation to attending those public forums and **b)** everyone who attended those public forums exited those buildings after they concluded on the dates when they were conducted.

 ii. Copies of all video recordings and photographs that were recorded and otherwise taken by Defendant City's personnel in the areas where I interacted with the defendants on 10/12/17, 10/18/17, 10/25/17, and 3/18/17 at the sites of the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing while they and/or others illegally prevented me from attending those public forums through their illegal acts and omissions and otherwise caused me to be illegally ejected from the Mayor's 3/18/19 public hearing and coerced to exit City Hall's grounds on 3/18/19.

iii.   Copies of all records that have been in the possession of Defendant City's
personnel that pertain to the deliberations, planning, coordination, execution, and
cover-up that took place in regards to my having been illegally:

1)   Prevented from attending the Mayor's **a)** 10/12/17 town hall, **b)**
10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19
public hearing.

2)   Ejected from the Mayor's 3/18/19 public hearing and coerced to
exit City Hall's grounds on 3/18/19.

iv.   Copies of all records that have been in the possession of Defendant City's
personnel that describe staff assignments that were issued to the members of the
Mayor's staff, the Mayor's CAU, the members of the Mayor's NYPD security
detail, and the other members of the NYPD who were assigned work to do in
relation to the Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17
resource fair, and **d)** 3/18/19 public hearing.

v.   Copies of all records that have been in the possession of Defendant City's
personnel that consist of the names and contact information for the members of
the public who registered to attend the Mayor's **a)** 10/12/17 town hall, **b)**
10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing as
well as the names and contact information for the journalists who attended those
public forums

h.   Injunctive and equitable relief by ordering Defendant City of New York to
immediately provide me all video recordings as an ".avi", ".mp4", or ".mov" computer file
that were recorded on 2/19/20 by all video security cameras that were installed in the school

and are controlled by DOE that hosted the town hall meeting that the Mayor conducted on

that date between the times when the first member of the public was allowed into that school

for the purpose of attending that town hall until everyone who attended that town hall exited

that school.

i.        Compensation for all costs and attorney fees that are related to my pursuit of this civil

action.

j.        Equitable and injunctive relief that authorizes me and others that I may ask to help me

to paint, write, or draw any message or image of any size indefinitely throughout New York

City without needing pre-approval from anyone on any public street, sidewalk, public

passageway, concourse, and park indefinitely by using resources that will be provided to me

by the City of New York for that purpose.

k.        Equitable and injunctive relief that orders the City of New York to cause its NYPD to

accord whatever messages and images that I may paint, write, or draw in public areas

throughout New York City to receive equal law-enforcement protection that is accorded to

Black Lives Matter signs on streets in New York City, especially the one located in front of

Trump Tower in Manhattan.

l.        An award of damages against the following defendants pursuant to 18 U.S.C. §1986

for having not intervened on my behalf in relation to my effort to have attended the Mayor's

he Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)**

3/18/19 public hearing:

> The City of New York, Stribula, Miller, Jane Doe1 10/12/17, Mason, Lance, Ranieri,
> Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3
> 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6
> 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3
> 10/12/17, NYPD Jane Doe4 10/12/17, Atcheson, Ringel, Ridener, Jane Doe1 10/18/17,
> Ioveno, Santana, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John

Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, Carrion, Ramos, de Blasio, Shorris, O'Neill, Vance, Jr., Byrne, Jr.

m.     An award of damages against the following defendants pursuant to New York State General Business Law §349 for deception in relation to my efforts to have attended the Mayor's he Mayor's **a)** 10/12/17 town hall, **b)** 10/18/17 town hall, **c)** 10/25/17 resource fair, and **d)** 3/18/19 public hearing with respect to how those defendants conducted themselves as criminal accomplices instead of the law-enforcement personnel that they technically were on 10/12/17 and 10/18/17, 10/25/17, and 3/18/19:

> Mason, Lance, Ranieri, Suzuki, NYPD John Doe1 10/12/17, NYPD John Doe2 10/12/17, NYPD John Doe3 10/12/17, NYPD John Doe4 10/12/17, NYPD John Doe5 10/12/17, NYPD John Doe6 10/12/17, NYPD Jane Doe1 10/12/17, NYPD Jane Doe2 10/12/17, NYPD Jane Doe3 10/12/17, NYPD Jane Doe4 10/12/17, Ioveno, Santana, NYPD John Doe1 10/18/17, NYPD John Doe2 10/18/17, NYPD John Doe3 10/18/17, NYPD John Doe4 10/18/17, NYPD John Doe5 10/18/17, NYPD John Doe6 10/18/17, Redmond, Nieves, Baez, Gerola, Ventri, NYPD John Doe1 10/25/17, NYPD John Doe2 10/25/17, NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, NYPD John Doe6 10/25/17, Gungor, Klein, Zappia, Barker, NYPD John Doe1 3/18/19, NYPD John Doe2 3/18/19, NYPD John Doe3 3/18/19, NYPD John Doe4 3/18/19, NYPD John Doe5 3/18/19, Dwyer, Mazur, Halk, O'Neill, Cyrus Vance, Jr., Byrne, Jr.

n.     An award of punitive damages for all of my claims set forth in this pleading.

o.     An award of pre-judgment and post-judgment interest.

p.     Declares that the Mayor's 10/12/17 town hall was illegally conducted inside of a public school.

q.     Equitable and injunctive relief that orders the City of New York to remove all obstructions from public sidewalks, public streets, public parks, and public concourses that

include traditional public forums within 24 hours that the NYPD and Mayor's office has set

up and otherwise allowed to exist on them and to not setup such obstructions again in such

public areas nor otherwise allow them to exist on and in them without prior approval by this

Court. The existence of such obstructions on sidewalks violates New York City

Administrative Code §16-122(b). Also, such obstructions impermissibly infringe upon and

otherwise burden the First Amendment rights that people have to lawfully walk, bicycle, and

otherwise freely move about and congregate in such areas – especially on sidewalks and in

parks that are traditional public forums – while some who seek to do so may have various

disabilities that include blindness and physical ailments. Allowing such obstructions to exist

on public sidewalks, in public streets, in public parks, and on public concourses in New York

City is clearly inequitable and quite literally an insult to injury with respect to my claims in

this action that largely concern illegal acts and omissions that were committed against me

while no pandemic existed in New York City that prevented me from lawfully attending

public forums. It is patently inequitable to my countervailing interest and ability to lawfully

exercise my constitutional rights on public sidewalks and in parks to be curtailed by the

NYPD and Mayor's administration during the ongoing Coronavirus pandemic to

accommodate such things as outdoor dining after the NYPD and Mayor's administration

flagrantly, willfully, criminally, and repeatedly violated my constitutional rights to lawfully

attend public forums inside of buildings that the Mayor and other government officials

conducted. In the same way that I took a risk that I would be illegally prevented from

lawfully attending such public forums that the Mayor conducted while no pandemic existed

in New York City as I visited the sites where those public forums were conducted on the

dates when they were conducted, the owners of restaurants and other businesses that would

benefit by being able to expand their operations on public sidewalks and in public parks in New York City at the expense of my First Amendment, Fifth Amendment, and Fourteenth Amendment rights to freely make use of all areas on such public sidewalks and public parks that are traditional public forums took a risk that circumstances beyond their control would possibly arise that would materially and repeatedly disrupt their ability to operate their businesses. A reasonable, equitable, and creative accommodation may be made for owners of businesses that wish to conduct their operations outside by having this Court order the immediate bulldozing of City Hall; the NYPD headquarters, precincts, and training facilities; and Gracie Mansion to allow such businesses to promptly expand their operations on account of the fact that those locations have been the primary sanctuaries of mobsters dressed as government officials and members of the NYPD that committed illegal acts and omissions that rigged and stole the 2017 New York City government elections through voter suppression, voter fraud, whistleblower retaliation, and terrorism that persists against New Yorkers.

r.     Equitable relief that will have this Court adopt the practice in _USA v. Donziger_, No. 11-cv-0691(LAK)(RWL)(S.D.N.Y.) to similarly appoint private prosecutors to commence criminal prosecutions against the defendants that this action concerns in response to criminal acts and omissions that they committed and/or condoned against me that are addressed in this complaint to remedy the fact that prosecutors have negligently refused to do so.

s.     Orders the City of New York to immediately implement a procedure by which all members of the public can obtain free, unedited, and non-redacted copies of all video recordings within 48 hours after they are recorded by video security cameras that are controlled by the NYPD that will begin in the next 7 calendar days for which the following

relevant facts apply to befit the public's interest in government transparency, accountability, being accorded proper due process while testifying in public hearings and otherwise talking with government officials, and having a means with which to measure the extent to which **a)** due process is and isn't accorded to members of the public during such interactions members of the news media inappropriately and consistently censor those who testify in public hearings that aids and abets greater societal ills that include terrorism by the NYPD, voter suppression, whistleblower retaliation, viewpoint discrimination, and voter fraud:

     i.   Such video recordings to be made available to the public within 48 hours include those that are recorded inside of City Hall's building in all areas in which public hearings are conducted as well as all other public areas inside of City Hall's building.

    ii.   Such video recordings to be made available to the public within 48 hours include those that are recorded by all video security cameras of those areas by video security cameras that are controlled by the NYPD.

   iii.   Such video recordings to be made available to the public within 48 hours also include those that are recorded outside of and in the immediate vicinity of City Hall's building of the property of City Hall for all areas of that property.

    iv.   Such video recordings to be made available to the public within 48 hours include those that are recorded by all video security cameras of the areas just discussed by video security cameras that are controlled by the NYPD.

    v.   Such video recordings to be made available to the public within 48 hours also include those that are recorded of all areas of the sidewalks and other passageways and walkways that immediately surround City Hall's property.

vi.     Such video recordings to be made available to the public within 48 hours include those that are recorded by all video security cameras of the areas just discussed by video security cameras that are controlled by the NYPD.

vii.    Such video recordings to be made available to the public within 48 hours must be made available as types of video recordings that that have the file extension of ".mp4", ".avi", and ".mov" that can readily be played back on computers that run the operating systems for Windows and Macintosh computers without the need for special software to do so.

viii.   Such video recordings to be made available to the public within 48 hours must include information in them that show the date and time when they were recorded.

t.      Restrains the City of New York from transferring the NYPD's authority to issue and revoke press credentials to another entity within Defendant City's government.

u.      Immediately revokes the NYPD's authority to issue and revoke press credentials and empowers me and a group of other whistleblowers who are independent of the influence of both **a)** Defendant City and **b)** alleged news organizations to act in the NYPD's place to determine who will and will not have press credentials issued to them as well as those who will have their existing press credentials revoked to befit the public's interest in transparency, government accountability, and inappropriate and complicit censorship by the press that aids and abets societal ills within an illegitimate, corrupt, and dysfunctional government.

v.      Declares that New York City has proven to be and remains an anarchist jurisdiction largely because of illegal acts and omissions that the defendants in this action criminally perpetrated in New York City in relation to the constitutional rights that people have to

lawfully attend and participate in public forums in New York City.

w.    Declares that all restrictions that have been established in New York City by New York State Governor Andrew Cuomo. Defendant de Blasio, and the NYPD that restrict peaceful **a)** protesting and demonstrating activities outdoors and indoors and **b)** gatherings of people indoors and outdoors for other purposes that may possibly include obtaining information from witnesses and formulating plans to establish a class-action lawsuit against the City of New York in relation to this case and related litigation that I commenced impermissibly violate the First Amendment, are overly broad, is clear standardless discretion, are an unlawful prior restraint on First Amendment rights, are being selective-enforced in violation of the Fourteenth Amendment, and are void.

x.    Injunctive and equitable relief by ordering Defendant City to immediately provide me within 24 hours all "Unusual Occurrence Reports" and related reports that members of the NYPD were required to complete in relation to their acts and omissions against me that caused and otherwise enabled me to have been **a)** prevented from attending the Mayor's 10/12/17 town hall, 10/18/17 town hall, 10/25/17 resource fair, and 3/18/19 public hearing and **b)** coerced to leave City Hall's grounds on 3/18/19.

y.    Orders the City of New York to immediately provide me records of the names of the NYPD personnel who were assigned to NYPD car number 5249 on 10/25/17 while it was parked across the street from where I stood near the entrance to the property of the college that hosted the Mayor's 10/25/17 resource fair; clear photographs of the faces of faces shows Defendants NYPD John Doe3 10/25/17, NYPD John Doe4 10/25/17, NYPD John Doe5 10/25/17, and NYPD John Doe6 10/25/17 in color that show them as they appeared on 10/25/17; and all communications that they engaged in about me on 10/25/17.

z.      Orders the City of New York to immediately close the buildings in which New York City's Housing Courts operate that the City of New York maintains until 60 days after the following occurs:

i.      All New York City public libraries have fully re-opened to allow all members of the public to use the Internet access and other resources that such libraries make available that would be of benefit to pro se litigants who need Internet access and may not otherwise have that with which to:

1)  Engage in legal research and prepare legal papers to properly prepare for legal proceedings assigned to New York City's housing courts.

2)  Search for and apply for employment opportunities.

3)  Stay abreast of news pertaining to the coronavirus and how best to take care of themselves, their families, and friends to stay healthy during the ongoing coronavirus pandemic.

4)  Engage in research to make contingency plans about housing and other matters.

5)  Stay abreast of news pertaining to upcoming government elections that directly impact their life.

aa.     Declares that video evidence and the totality of the circumstances sufficiently confirm that Defendant de Blasio flagrantly, willfully, oppressively, and wantonly committed illegal acts and omissions during the Mayor's 3/18/19 public hearing against Plaintiff directly with respect to Plaintiff's status as a speaker and the general public by extension with respect to public's First Amendment right to receive information from speakers in violation of his oath of office as the New York City Mayor, the First Amendment, Fourteenth Amendment, New

York State's Open Meetings Law, New York City Charter §1116, NYPL §195.00, NYPL §215.10, 18 U.S.C. §1513(e), 18 U.S.C. §245(b)(5), 18 U.S.C. §241, 42 U.S.C. §1985, 42 U.S.C. §1986, NYPL §240.20, NYPL §240.26, NYPL §240.65, and NYPL §175.25 partly by illegally subjecting Plaintiff to viewpoint discrimination and First Amendment in response to testimony that was protected activity that Plaintiff attempted to lawfully deliver during the Mayor's 3/18/19 public hearing that was also the but-for cause for Plaintiff having been illegally seized, assaulted, and ejected from both the Blue Room in City Hall and City Hall's grounds immediately thereafter without any due process having been accorded to Plaintiff that caused Plaintiff substantial and irreparable harm partly to his First Amendment freedoms.

bb.     Orders the City of New York to immediately both suspend and terminate the employment of Defendant de Blasio as an employee of the City of New York and to bar him from future employment opportunities with the City of New York pursuant to New York City Charter §1116.

cc.     Such other, further, and different relief as the interests of justice and equity may require.


Dated:          New York, New York
                October 17, 2020




                                        From,


                                        s_/Towaki Komatsu


                                        *Plaintiff, Pro Se*
                                        802 Fairmount Pl., Apt. 4B

Bronx, NY 10460
(347) 872-1205
Towaki_Komatsu@yahoo.com

# Exhibit A



**Council Member Rosie Mendez**
with Borough President Gale A. Brewer
& Assembly Member Brian Kavanagh
present

## WORKING FOR **COUNCIL DISTRICT 2**



# TOWN HALL

*- with -*

# Mayor Bill de Blasio

**THURSDAY,** October 12ᵀᴴ at 7pm
DOORS OPEN AT 6:00PM AND CLOSE AT 7:30PM

## PS 188 - The Island School
442 East Houston Street, New York, NY 10002
(Main entrance on corner of East Houston & Baruch Drive)

**Space is limited - please RSVP by October 10th at 5PM**



**TOWN HALL** CO-SPONSORS
**MANHATTAN** Community Boards **2, 3, 5 & 6**
**GRAND STREET** Settlement
**HENRY STREET** Settlement
**THE LOISAIDA** Center

**TO RSVP**
**Visit:** www.nyc.gov/cd2townhall
**Email:** manhattantownhall@cityhall.nyc.gov
**or Call:** (212) 788-2781

ACCESS PROVIDED:

Please contact us if you have any additional accessibility needs.



**Council Member Stephen T. Levin**
with Borough President Eric L. Adams
U.S. Representative Nydia Velázquez
Assembly Member Jo Anne Simon
present

WORKING FOR **COUNCIL DISTRICT 33**



# TOWN HALL

- with -

# Mayor Bill de Blasio

**WEDNESDAY,** October 18TH at 6pm

DOORS OPEN AT 5:00PM AND CLOSE AT 6:30PM

**FIRST COME, FIRST SEATED**

St. Francis College
180 Remsen Street, Brooklyn, NY 11201
(Between Clinton and Court Streets)

**Space is limited - please RSVP by October 16th at 6PM**



**TOWN HALL** CO-SPONSORS

**BROOKLYN** Community boards **1, 2, 3 & 6**
**FRIENDS** of Bushwick Inlet Park
**DOWNTOWN** Brooklyn Partnership

TO RSVP

**Visit:** www.nyc.gov/cd33townhall
**Email:** brooklyntownhall@cityhall.nyc.gov
**or Call:** (212) 788-7929

ACCESS PROVIDED:

Please contact us if you have any additional accessibility needs.




The Office of the Mayor and
Office of the Brooklyn Borough President

*cordially invite you to:*

# CITY HALL IN YOUR BOROUGH:
# CITY RESOURCE FAIR

## Wednesday October 25th, 2017   |
## 11:00 A.M. to 3:00 P.M.

**Brooklyn College Student Center**
2705 Campus Road 2nd Floor (Entrance at Amersfort Place)
Brooklyn, NY 11210

Meet with top city commissioners and senior staff during scheduled office hours to address your questions and concerns.

Meet with top representatives from City Hall, Department of Transportation, Department of Finance, NYPD, Economic Development Corporation, Department of Education, Department of Health, Small Business Services, Department of Parks and Recreation, and more.

**Sign Up Here to Attend:** www.nyc.gov/brooklyn or by calling 212-748-0281



# **<u>Exhibit B</u>**

| From: | Stribula, Shauna |
|---|---|
| Sent: | Thursday, April 27, 2017 2:46 PM |
| To: | @CAU3; Gold, Jennifer; McCrayer, Jenika |
| Subject: | Updated Staff Plan |

**Staff Plan**
**CM Van Bramer 4/26 Town Hall**

Load in:

*Captains are listed first and underlined.*

*Outside*



- Amoy/Eden/Sadaf: Check In RSVP line
- Harold: Manage non-rsvp line

*Inside*

**During event:**

- Mic Runners Shift Teams:

# **<u>Exhibit C</u>**

# SUMMARY STATEMENT ON APPLICATION FOR
# EXPEDITED SERVICE AND/OR INTERIM RELIEF
### (SUBMITTED BY MOVING PARTY)

Date __10/18/17__

Title of Matter __Towaki Komatsu v.__  Index/Indict # __100054/2017__

__New York City Human Resources  Administration__

Appeal by __Petitioner__ from | order judgment of decree | Supreme Surrogate's Family | County __New York__

Court entered on __August 21__ , 20 __17__

Name of Judge __Nancy Bannon__

Notice of Appeal filed on _____ __September 29__ , 20 __17__

If from  administrative determination, state agency __New York City Human Resources Administration__

Nature of action or proceeding __Hybrid article 78__

Provisions of | order judgment  appealed from decree

This application by | appellant respondent  is for __Due to the space constraints here, please refer to the attached sheet__

__that is entitled "Interim Relief Sought."__

If applying for a stay, state reason why requested _____

Has any undertaking been posted __No__          If "yes", state amount and type _____

Has application been made to court below for this relief __Yes__      If yes, state Disposition __Denied__
Has there been any prior application herein in this court __No__      If "yes", state dates and nature _____

Has adversary been advised of this application __Yes__      Does he/she consent __I do not know__

Attorney for Movant | Attorney for Opposition

Name _Towaki Komatsu, Pro Se_    Jeffrey Mosczyc

Address _802 Fairmount Place_    150 Greenwich St.

_Apt. 4B_    38th Fl.

_Bronx, NY 10460_    New York, NY 10007

Tel. No. _718-450-6951_    929-221-6558

Appearing by _____

(Do not write below this line)

**DISPOSITION**

Interim stay denied, however, the
Court takes no position as to any
purported exclusion orders issued by
any public or private entity. No such order
or orders are before the Court.

Justice _Richard T. Andrias_   Date 10/18/17

Motion Date _11/24/17_    Opposition _11/10/17_    Reply _11/24/17_

EXPEDITE _____   PHONE ATTORNEYS _____   DECISION BY _____

ALL PAPERS TO BE SERVED PERSONALLY.    _AW_
serve motion papers +                    Court Attorney
copy of this order

"Revised 02/01"